R. Craig Martin (RM-1971)
Mordechai Y. Sutton (MS5781)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Richard A. Chesley
John K. Lyons
Jeffrey Torosian
**DLA PIPER LLP (US)**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516

*Counsel to the Club Lender Parties*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| **CHINA FISHERY GROUP LIMITED (CAYMAN),** | |
| | Case No. 16-11895 (JLG) |
| Debtor. | |
| | (Joint Administration Pending) |

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| **PACIFIC ANDES INTERNATIONAL HOLDINGS LIMTED (BERMUDA),** | |
| | Case No. 16-11890 (JLG) |
| Debtor. | (Joint Administration Pending) |

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| **N.S. HONG INVESTMENTS (BVI) LIMITED,** | |
| | Case No. 16-11899 (JLG) |
| Debtor. | |
| | (Joint Administration Pending) |

1

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| **SOUTH PACIFIC SHIPPING AGENCY LTD. (BVI),** | : | |
| | : | Case No. 16-11924 (JLG) |
| | : | |
| Debtor. | : | (Joint Administration Pending) |
| ------------------------------------------------------------ x | | |

| | | |
|---|---|---|
| ------------------------------------------------------------ x | | |
| In re: | : | |
| | : | Chapter 11 |
| **CHINA FISHERIES INTERNATIONAL LIMITED (SAMOA),** | : | |
| | : | Case No. 16-11896 (JLG) |
| | : | |
| Debtor. | : | (Joint Administration Pending) |
| ------------------------------------------------------------ x | | |

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| **CFGL (SINGAPORE) PRIVATE LIMITED,** | : | |
| | : | Case No. 16-11915 (JLG) |
| Debtor. | : | |
| | : | (Joint Administration Pending) |
| ------------------------------------------------------------ x | | |

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| **CHANERY INVESTMENT INC. (BVI),** | : | |
| | : | Case No. 16-11921 (JLG) |
| Debtor. | : | |
| | : | (Joint Administration Pending) |
| ------------------------------------------------------------ x | | |

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| **CHAMPION MARITIME LTD (BVI),** | : | |
| | : | Case No. 16-11922 (JLG) |
| Debtor. | : | |
| | : | (Joint Administration Pending) |
| ------------------------------------------------------------ x | | |

2

| | |
|---|---|
| In re: :<br>:<br>**GROWING MANAGEMENT LIMITED (BVI)**, :<br>:<br>Debtor. :<br>:<br>: | Chapter 11<br><br>Case No. 16-11919 (JLG)<br><br>(Joint Administration Pending) |
| ----------------------------------------------------------------- x | |
| In re: :<br>:<br>**TARGET SHIPPING LIMITED (HONG KONG)**, :<br>:<br>Debtor. :<br>:<br>: | Chapter 11<br><br>Case No. 16-11920 (JLG)<br><br>(Joint Administration Pending) |
| ----------------------------------------------------------------- x | |
| In re: :<br>:<br>**FORTRESS AGENTS LIMITED (BVI)**, :<br>:<br>Debtor. :<br>:<br>: | Chapter 11<br><br>Case No. 16-11916 (JLG)<br><br>(Joint Administration Pending) |
| ----------------------------------------------------------------- x | |
| In re: :<br>:<br>**OCEAN EXPERT INTERNATIONAL<br>LIMITED (BVI),** :<br>:<br>Debtor. :<br>:<br>: | Chapter 11<br><br>Case No. 16-11917 (JLG)<br><br>(Joint Administration Pending) |
| ----------------------------------------------------------------- x | |
| In re: :<br>:<br>**PROTEIN TRADING LIMITED (SAMOA)**, :<br>:<br>Debtor. :<br>:<br>: | Chapter 11<br><br>Case No. 16-11923 (JLG)<br><br>(Joint Administration Pending) |
| ----------------------------------------------------------------- x | |

| | |
|---|---|
| In re: | : |
| | :     Chapter 11 |
| **CFG PERU INVESTMENTS PTE. LTD.** | : |
| **(SINGAPORE),** | :     Case No. 16-11914 (JLG) |
| | : |
|             Debtor. | :     (Joint Administration Pending) |
| ------------------------------------------------------------ x | |
| In re: | : |
| | :     Chapter 11 |
| **SMART GROUP LIMITED (CAYMAN),** | : |
| | :     Case No. 16-11910 (JLG) |
|             Debtor. | : |
| | :     (Joint Administration Pending) |
| ------------------------------------------------------------ x | |
| In re: | : |
| | :     Chapter 11 |
| **SUPER INVESTMENT LIMITED (CAYMAN),** | : |
| | :     Case No. 16-11903 (JLG) |
|             Debtor. | : |
| | :     (Joint Administration Pending) |
| ------------------------------------------------------------ x | |

## CLUB LENDER PARTIES' STATEMENT, LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE DEBTORS' FIRST DAY MOTIONS AND REQUEST FOR A SCHEDULING CONFERENCE

Coöperatieve Rabobank U.A. ("Rabobank"), Standard Chartered Bank (Hong Kong) Limited, China CITIC Bank International Limited, and DBS Bank (Hong Kong), Limited (collectively, the "Club Lender Parties"), lenders under a $650,000,000 facility agreement (the "Club Facility") dated 20 March 2014 (as amended from time to time) to CFG Investment S.A.C. ("CFG"), China Fisheries International Limited ("CFIL"), and Corporación Pesquera Inca S.A.C ("Copeinca"), by and through their undersigned counsel, respectfully submit this objection and statement with respect to the *Debtors' Motion for an Order Extending Time to File Lists,*

4

*Schedules and Statements and Waiving Certain Requirements* [Docket No. 4] (the "Schedules Extension Motion").

The Club Lender Parties intend to file a motion seeking the appointment of a trustee in these Chapter 11 cases to ensure independent fiduciary oversight to preserve the estates' equity stakes in a lucrative fishery business and processing plants in Peru operated by certain non-Debtor affiliates (the "Peruvian Business"). The Debtors' equity stakes in the Peruvian Business—which is operated by certain affiliates whose only connections to the United States are professional retainers and a New York bond indenture, and are the subject to coordinated so-called "involuntary" bankruptcy proceedings in Peru—comprise the single most valuable asset of the Debtors' estates, the proceeds of which will dictate recoveries in these chapter 11 cases.

The Club Lender Parties, and other creditors[1], will likely seek alternate and additional relief to provide the Club Lender Parties and other creditors with appropriate protections and ensure the Debtors do not use the Chapter 11 process or this Court to perpetuate continued mismanagement, lack of proper corporate governance, and lack of transparency. In light of the facts and circumstances of these Chapter 11 cases as discussed below, the Club Lender Parties therefore respectfully request that this Court set an expedited schedule with respect to such motions.

In support hereof, the Club Lender Parties respectfully represent as follows:

**BACKGROUND**

1. <u>The Club Lenders</u>. The Club Lender Parties and Hongkong and Shanghai Banking Corporation Limited ("HSBC") (collectively, the "Club Lenders") are lenders under an the Club Facility. CFIL is a chapter 11 debtor in these cases while CFG and Copeinca are

---

[1] The Club Lender Parties understand other creditors of the Debtors are considering filing various threshold motions regarding the appropriateness of the filing of the chapter 11 cases including motions to dismiss, relief from the stay, and other relief.

5

putative foreign debtors in pending Chapter 15 proceedings that seek recognition of coordinated involuntary proceedings in Peru in which the Chapter 15 debtors have not sought a hearing or provisional relief. The Club Lenders constitute the largest creditor group of the Pacific Andes/China Fishery Group holding over $413 million in principal amount of loans. Apart from a small number of local creditors, loans under the Club Facility constitute the only significant debt of Copeinca and, together with the $300 million 9.75% senior notes due 2019 (the "CFG Bonds"), the only significant debt of CFG. Sustainable Fishing Resources S.A.C. ("SFR") is a guarantor of the CFG Bonds.

2. <u>The Valuable Peruvian Fishery Business</u>. Loans under the Club Facility are direct obligations of Debtors China Fishery Group Limited ("CFGL") and CFIL and non-debtors CFG and Copeinca. CFG, Copeinca, and SFR (the "Peruvian Opcos") are the corporate entities that operate the lucrative fishery business and processing plants in Peru. The Peruvian Business is the single most valuable asset of Pacific Andes/China Fishery Group. *See Declaration of Ng Puay Yee Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (the "First Day Declaration") [Docket No. 2], at ¶ 74. The Peruvian Business holds the largest quota of any fishing company for anchovy fishing in Peru, represents 22.5% of total fishmeal production for Peru in 2015, and constitutes one of the largest fishmeal producers in the world. *See* First Day Declaration, at ¶ 45.

3. <u>Club Facility Defaults and Questionable Intercompany Transfers.</u> In April 2014, the Debtors and the Peruvian Opcos began to default, and to require multiple waivers, under the Club Facility. *See* First Day Affidavit, at ¶¶ 100-102. Moreover, from early 2015, it became apparent that the Debtors were experiencing increasing financial and other difficulties and also engaged in various forms of misconduct, such as illegal fishing in February 2015 and over $30

6

million in questionable intercompany transactions with related companies Qingdoa Deep-Sea Fishing Co. Ltd. and Protein Trading Ltd. that remain subject to investigation by Grant Thornton Recovery & Reorganisation Limited ("Grant Thornton"). There are also questionable transactions totaling over $1.0 billion involving the Pacific Andes/China Fishery Group[2] and suspicions of substantial overstatements or fabrications of revenues and receivables/prepayments which have been the subject of reports by FTI Consulting Hong Kong Limited ("FTI"). These reports have left many unanswered questions about the bona fide nature of the investigated intercompany transactions and management's transparency with respect to these issues. The intercompany transactions identified in the FTI reports are currently being investigated by independent forensic accountants.

4. Winding Up Proceedings and Deed of Undertaking. Based on the FTI reports (amongst other things), HSBC, one of the Club Lenders, filed a winding up petition and related application for the appointment of provisional liquidators in Hong Kong and the Cayman Islands against Debtors CFGL and CFIL, the ultimate parent companies of the Peruvian Opcos (together, the "CF Group"), appointing joint provisional liquidators in each jurisdiction. On January 20, 2016, the proceedings were discharged following the negotiation of two consensual Deeds of Undertaking. Under the CF Group Deed of Undertaking,[3] the CF Group undertook to appoint Paul Brough as an independent Chief Restructuring Officer (the "CRO") and an independent reporting accountant, Grant Thornton, to ensure transparency and conduct a sale process for the

---

[2] One of the Debtors' affiliates implicated in this investigation -- nondebtor affiliate Pacific Andes Resources Development limited ("PARD") – is not a debtor in these Chapter 11 cases. PARD stands to receive any surplus proceeds from the sale of the Peruvian Business.

[3] In December 2015, debtor Pacific Andes International Holdings Limited ("PAIH") and PARD also signed a Deed of Undertaking with Club Lender Parties and the Hong Kong High Court, in which they agreed to appoint PwC as independent reporting accountant and to appoint a Chief Restructuring Officer. The Chief Restructuring Officer, Mr. Patrick Wong, recently resigned and the Debtors terminated the appointment of PwC shortly after filing.

Peruvian Business to maximize value for stakeholders, which the CF Group said they needed six months to achieve.  In exchange for these assurances of independent fiduciary oversight and compliance with other obligations and milestones, including a July 15, 2016 outside termination date which were also provided to the Hong Kong and Cayman Islands courts as undertakings (the "Undertakings"), HSBC agreed to seek an order terminating the appointment of the Cayman provisional liquidators, which it did, and dropped an appeal in the Hong Kong proceeding. However, if the Peruvian Business was not sold by July 15, 2016, or other Undertakings were breached, the CF Group agreed that HSBC and Bank of America, N.A. would individually have the right to apply to the Cayman Court for the immediate re-appointment of the Cayman provisional liquidators.

5. The Sale Process and Independent Fiduciary Oversight.  In April 2016, with the independent fiduciary oversight in place, an information memorandum for the sale of the Peruvian fishing businesses was sent to target purchasers.  During this process, certain of the Club Lenders provided up to $25.5 million in short term working capital to the Peruvian Business; however, this full amount was not drawn due to the inability of the Peruvian Opcos to adopt appropriate governance changes required by the lending facility, which changes were precipitated by Copeinca's previous unauthorized transfer of real estate to a third party. Nonetheless, by June 1, 2016, seven non-binding expressions of interest were received.  *See* First Day Declaration, at ¶ 136.

6. The Chapter 11 Filings and Departure of the CRO and Grant Thornton.  On June 30, 2016, less than two weeks before the July 15th deadline, the Debtors commenced these Chapter 11 cases.  The CRO, who had not been consulted or informed about the Chapter 11 filings in advance of a June 30 board meeting to authorize the filings, resigned as he was unable

8

to carry out his primary mandate to sell the Peruvian Business.  The Debtors also terminated the appointment of Grant Thornton.

7. The Peruvian "Involuntary" Filings.  Based upon the Declaration of Francisco Paniagua, General Manager of CFG, submitted in support of the Chapter 15 petitions, CFG was precluded from commencing voluntary ordinary restructuring proceedings in Peru because the Peruvian Opcos did not have audited financial statements.  Faced with this barrier, the Peruvian Opcos reached out to "work with local creditors for an involuntary ordinary bankruptcy proceeding to be instituted. . . .".  *See Declaration of Francisco Paniagua in Support of (1) Recognition of Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1515 and 1517, and (2) Relief Pursuant to 11 U.S.C. §§ 1520 and 1521 ("*Paniagua Declaration*")*, at ¶ 27.  Based upon this outreach, three Peruvian creditors with claims totaling $1,111,847, or .01% of the total debt owed by the Peruvian Opcos to the Club Lenders and holders of the Bonds, each commenced a separate "involuntary" ordinary bankruptcy proceeding against CFG (Fishman S.A.C.), Copeinca (Construcciones y Reparaciones S.A.C.), and SFR (Marines Force S.A.C.).  *Id.*, Exhibit B.  In his Declaration, Mr. Paniagua submitted the same factual predicate that the Debtors submitted in support of Chapter 11 jurisdiction –  retainers paid to professionals and the New York bond indenture –  to support jurisdiction for the Chapter 15 petitions for recognition.  *See* Paniagua Declaration, at ¶ 33.  In his declaration, Mr. Paniagua offered no explanation why the Peruvian Opcos decided not to join their affiliates in filing Chapter 11 petitions, thus subjecting the Peruvian Business to this Court's jurisdiction along with the Bankruptcy Code's disclosure requirements and independent fiduciary oversight.

8. These filings are in breach of the Undertakings[4] and lack all the hallmarks of a standard Chapter 11 case. They appear designed not to effect a restructuring or sale under Section 363 of the Bankruptcy Code but to derail the months-long, on-going process that has been implemented in multiple jurisdictions to maximize the value of the Debtors' assets for the benefit of its stakeholders. The filings have caused further erosion of creditor trust of those in control of the Debtors, whose delays, duplicity and breach of the Undertakings to creditors and courts leave the Club Lender Parties with no confidence in the Debtors' willingness and ability to implement any restructuring plan.

## STATEMENT AND LIMITED OBJECTION

### A.   General Statement Regarding Commencement of the Cases

9. The Debtors assert that the purpose of the filing was to obtain breathing spell to implement a restructuring, and avoid a forced sale process, to maximize value for all stakeholders. *See* First Day Affidavit, at ¶ 20. However, the timing of the filing – in the midst of a court-sanctioned six month sale process that the Debtors previously acknowledged was sufficient and two weeks before the expiration of the Deed of Undertaking – belies the purpose. Rather, the true purpose behind the actions of the Debtors and their sponsors was to derail the timely completion of a sale process, eliminate independent fiduciary oversight, and avoid governance changes requested by the Club Lenders that had been the subject of negotiations over several months. *See* First Day Declaration, at ¶¶ 139-145.

10. Moreover, there are also several troubling facts that indicate the Debtors are using these Chapter 11 filings to abuse creditors rather than acting on their behalf to maximize their recoveries:

---

[4] As the Undertakings to implement the sale process were given to the Hong Kong and Cayman Islands courts, these breaches amount to a contempt of those courts.

10

11.     <u>First</u>, the Debtors failed to include the Peruvian Opcos – which own the valuable Peruvian Business – as Chapter 11 filers.  Instead, the Debtors coordinated an "involuntary" filing in Peru instigated by three friendly local creditors, creditors holding less than .01% of the total Peruvian Opcos' creditor claims, and subsequently sought to have this proceeding recognized by this Court through concurrent Chapter 15 petitions.  By doing so, the Debtors seek to have the benefit of this Court's automatic stay enjoining creditor action while attempting to shield their single most valuable asset from the effective jurisdiction of the Court.  The Club Lender Parties, along with other significant creditors of the Debtors, remain very concerned that the valuable Peruvian Business is outside the Chapter 11 estates and that local management may take precipitous action to destroy the value under the direction of the Debtors' sponsors.

12.     <u>Second</u>, the Debtors have taken steps to eliminate independent fiduciary oversight.  Concurrently with the filings, the CRO resigned and Grant Thornton was fired.  The CRO and Grant Thornton had been overseeing the Peruvian Business and running the sale process.  The Debtors have not indicated, nor is it credible to believe, that there will be any effective independent fiduciary oversight with respect to the Peruvian Business which is run by the Peruvian Opcos.  Given the lack of transparency and unexplained past intercompany transfers, the debtors' affirmative steps to eliminate this oversight is alarming.

13.     <u>Third</u>, the Debtors failed to file a standard first day motion seeking approval of their cash management system, much less explain how the Debtors' cash management system intersects with the Peruvian Opcos.  Exhibit E to the First Day Declaration suggests that all of Debtors' bank accounts are located outside the United States, thus violating § 345(b) of the Bankruptcy Code.  Furthermore, because the Peruvian Opcos are not subject to the filing, the cash generated by the Peruvian Business – the great bulk of revenue of the Debtors' consolidated

11

business -- will not be subject to Court oversight. This lack of transparency and accountability is particularly troubling given its contemporaneous departure of the CRO and Grant Thornton and questionable intercompany transactions identified by Grant Thornton and FTI. Again, the Debtors unfairly seek to obtain the benefit of this Court's automatic stay without meeting its burden of transparency, protection of estate assets, and independent fiduciary oversight. Remarkably, the Debtors even note that as a result of their strategy to separate the cash-flow generating Peruvian Opcos from these Chapter 11 cases, they are likely administratively insolvent on arrival. *See* First Day Declaration, at ¶ 147 ("As noted above, a number of the direct or indirect subsidiaries of certain of the Debtors are the subject of the Peruvian Restructurings. These entities generate a substantial portion of the Debtors' revenue. In light of the Peruvian Restructuring Proceedings, it is unclear how much cash will be available to the Debtors during the pendency of these cases.")

14.  Fourth, the Club Lender Parties believe that the overwhelming number of creditors oppose the Debtors' filing of these cases. Other creditors share the Club Lender Parties' concern expressed in this Statement regarding the serious breaches of court Undertakings, elimination of independent fiduciary oversight, inappropriate shielding of the Peruvian Business from effective oversight of this Court, and suspension of the sale process for the Peruvian Business. Thus, the Debtors' stated goal of filing the cases – to maximize value for all creditors – has no credible creditor support.

15.  In sum, the Debtors are seeking to use Chapter 11, and obtain all of its benefits including the imposition of the automatic stay, without complying with its burdens of subjecting their meaningful assets to Court supervision and the Bankruptcy Code's mandate of transparency and independent fiduciary oversight.

B.     **Objection to Schedule Extension Motion.**

16.    As discussed above, the lack of transparency and independent fiduciary oversight mandates that the Debtors strictly adhere to deadlines to file schedules and statement of affairs. Moreover, the Court should require that the Debtors file reports of financial information that disclose the value, operations, and profitability of each of the Peruvian Opcos and other non-debtors. *See* Fed. R. Bank. Pro. 2015.3. In addition to remedies available under other sections of Chapter 11 of the Bankruptcy Code, the Club Lender Parties reserve their right to seek an order requiring the Peruvian Opcos to file schedules of assets and liabilities and statements of financial affairs for these entities as a condition to recognition of the Chapter 15 cases. *See* 11 U.S.C. § 1522 (a) ("The court may grant relief under §§ 1519 or 1521, or may modify or terminate relief under subsection (c), ***only if the interests of the creditors*** and other interested entities, including the debtor, ***are sufficiently protected***.") (emphasis added).

### REQUEST FOR A SCHEDULING CONFERENCE

17.    As indicated above, the Club Lender Parties believe there are sufficient grounds to move for the appointment of a Trustee in the Chapter 11 cases (the "Trustee Motion") or, alternatively, grounds for modification of the stay in the Chapter 11 and Chapter 15 cases to permit the Club Lenders to exercise their remedies. Indeed, courts in this jurisdiction, in not dissimilar situations, have noted that when the Court is "on notice that there are matters that need to be investigated" the Court should "place that investigation in the hands of an independent fiduciary in whom the stakeholders and [the Court] can have confidence, and who is not subject to the conflicts of interest that otherwise would so plainly exist." *In re Soundview Elite, Ltd.*, 503 B.R. 571, 582 (Bankr. S.D.N.Y. 2014). This prescient statement applies here: after the long history regarding this corporate group, the stakeholders have no confidence in existing

13

management properly using Chapter 11 to serve creditors interests and several of the creditors need additional limited time to finish preparing a motion for the appointment of an independent fiduciary in whom they can have confidence or a related pleading to address similar issues.

18. The Club Lender Parties understand that other creditors may file other expedited motions to lift the automatic stay, dismiss the cases or pursue additional case threshold relief (together with the Trustee Motion, the "<u>Threshold Motions</u>"). Accordingly, the Club Lender Parties respectfully request that this Court set the following schedule with respect to the Threshold Motions:

- July 15: Deadline to File Threshold Motions
- July 22: Deadline to Respond to the Threshold Motions
- July 26: Deadline to Reply to Responses

The Club Lender Parties further request that the Court schedule a hearing on the Threshold Motions as soon after the reply deadline as the Court's schedule permits.

## **RESERVATION OF RIGHTS**

19. The Club Lender Parties expressly reserve the right to supplement and amend this objection, seek further discovery with respect to the same, and introduce evidence at any hearing relating to the First Day Motions and this objection. In addition, the Club Lender Parties expressly reserve all rights to contest any factual or legal assertions contained in the first day pleadings and do not waive, admit, or acknowledge any of the assertions contain therein. Further, the Club Lender Parties expressly reserve the right to object to any final order to be entered in respect of any of the First Day Motions. Finally, the Club Lender Parties reserve the right to respond, further object, join in, or amend any objection herein with respect to any argument or objection made by any person relating to the First Day Motions.

## **CONCLUSION**

WHEREFORE, the Club Lender Parties respectfully request that the Court (a) deny the Schedules Extension Motion; (b) compel the Debtors to comply with § 345 of the Bankruptcy Code; (c) set a schedule with respect to the Threshold Motions; and (d) grant such other and further relief as the Court deems equitable, just, and proper.

Dated: New York, New York
       July 8, 2016

Respectfully submitted,

**DLA PIPER LLP (US)**

By: /s/ R. Craig Martin
R. Craig Martin (RM-1971)
Mordechai Y. Sutton (MS5781)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Richard A. Chesley
John K. Lyons
Jeffrey Torosian
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516

*Counsel to the Club Lender Parties*