UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CHINA FISHERY GROUP LIMITED (CAYMAN), *et al.*,<br><br>Debtors[1]. | Chapter 11<br><br>Case No. 16-11895 (JLG)<br><br>(Jointly Administered) |

### DECLARATION OF RENZO AGURTO IN SUPPORT OF THE CLUB LENDER PARTIES' MOTION FOR THE ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. § 1104(a)(2)

I, Renzo Agurto, under the penalty of perjury, hereby declare:

1. I am a citizen of Peru over the age of 18 years. I respectfully submit this Declaration in connection with the Club Lenders' Motion for the Entry of an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)(2). If called upon to testify, I could and would testify competently to the statements set forth herein.

2. I am an attorney licensed to practice law in Peru. I obtained my law degree from the Universidad de Lima. I received an LLM in Business, Corporate and Maritime Law from Erasmus University, Rotterdam, The Netherlands. I am and have been Counsel at Miranda & Amado since 2015. I was formerly Counsel in the Bankruptcy Area at Rebaza, Alcázar & De las Casas Abogados Financieros; and an Associate in the Banking, Finance and Bankruptcy Area at Benites, Forno & Ugaz Abogados.

---

[1] The Debtors are N.S. Hong Investment (BVI) Limited ("NS Hong"), Super Investment Limited (Cayman) ("Super Investment"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), China Fishery Group Limited (Cayman) ("CFGL"), Smart Group Limited (Cayman) ("Smart Group"), Protein Trading Limited (Samoa) ("Protein Trading"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), China Fisheries International Limited (Samoa) ("CFIL"), Growing Management Limited (BVI) ("Growing Management"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), CFGL (Singapore) Private Limited ("CFGLPL") and Ocean Expert International Limited (BVI) ("Ocean Expert").

1

3. My scope of practice focuses on Insolvency and Bankruptcy. I have handled several and complex restructuring and winding-up transactions for an amount of US$ 600 MM of debts.

4. I have taught as a Professor at Universidad ESAN, Program of Finance and Corporate Law (Postgraduate) and Universidad Católica del Perú (Undergraduate).

5. The Peruvian Insolvency Law, approved by Law No. 27809 on August, 2002, and most recently amended on August, 2015, establishes the general framework of the Peruvian insolvency regime.

6. The general purpose of the Peruvian Insolvency Law is the collection of credits by setting an appropriate forum for the creditors of a Peruvian debtor to decide whether such debtor will be submitted to a capital restructuring or a dissolution and liquidation process.



7. An involuntary insolvency proceeding may be initiated by one or more creditors by filing a petition with INDECOPI, provided that certain requirements are met. After INDECOPI makes the decision to declare the bankruptcy of the debtor, it has to make a publication in the Peruvian Official Gazette informing this situation to the general public. Under the Peruvian Insolvency Law, INDECOPI is obligated to resolve on the petition in a term no longer than ninety (90) days. Law No. 27809, Art. 137.1. Pursuant to the report of INDECOPI for the year 2015, the average time for INDECOPI to resolve petitions for the commencement of an insolvency proceeding is of approximately thirty-seven (37) days, less than the legally established term of ninety (90) days.

8. Under the Peruvian Insolvency Law, a debtor in an involuntary proceeding may pay the full amount of the creditors' claims (or "cover" the amount in accordance with the Civil Code and Civil Procedure Code) in which case the obligation to the person who commenced the

2

involuntary cases is extinguished. *Id.*, Art. 28.1 a) & 28.2. The debtor could also oppose the claims and, if that opposition is well founded, the request for initiating the insolvency proceedings is to be denied and the proceeding declared concluded. *Id.*, Art. 28.1 c) & 28.5. If the debtor does not pay the debt and acquiesces to the application, however, then the public entity that oversees Peruvian bankruptcy proceedings, INDECOPI, declares the initiation of the insolvency proceeding of the debtor and calls for the creditors to file their proofs of claims. Then, INDECOPI shall resolve on each of the proofs of claims filed by the creditors. *Id.*, Arts. 37-41.

9. Once the claims have been recognized, then INDECOPI calls for a creditors meeting. *Id.*, Art. 43. In my experience, it is not uncommon for it to take more than fourteen (14) months after initial of insolvency proceedings in Peru to impanel a creditors meeting, during which time the current management of the Peruvian debtor remains in control of the business and continues unfettered management of its operations. For instance, in a recent case called Doe Run Peru, INDECOPI made public the insolvency proceeding of the debtor in August 16th, 2010, and called for the creditors meeting in January, 2012. Also, in another case involving a Peruvian debtor called Castrovirreyna Compañía Minera S.A., the insolvency proceeding was made public by INDECOPI on June 15th, 2015, and the creditors meeting has not yet been called as of the date of this declaration.

10. Under Article 51, the creditors have the power at the meeting to decide the fate of the debtor as either a restructuring or a dissolution and liquidation, to supervise the compliance with the agreements executed to carry out the foregoing, and to request preparation and filing of financial economic reports it may deem necessary. *Id.*, Art. 51.1. Within forty-five (45) days of its formation, the creditors determine whether the debtor will be submitted to a "capital

3

restructuring" or whether the company will be dissolved and liquidated. *Id.*, Arts. 50.4, 51.1, 58, and 24.2. If a reorganization process of the debtor is agreed upon at the creditors meeting, the creditors also determine whether governance (called "administration" in the translated version of the Peruvian Act) should continue the same as before the case commenced, should be changed to an Administrator registered with INDECOPI, or whether the company should be jointly administered by the previous governance, in whole or in part, acting together with administrators appointed by the creditors meeting. *Id.*, Art. 61.1. Importantly, "related creditors" are permitted to vote at creditors meetings and on any proposed restructuring plan. *See* Peruvian Act, art. 59.

11.     Once the capital restructuring of the Peruvian debtor is agreed upon by the creditors meeting, a Plan of Reorganization must be approved no later than sixty (60) days after that decision. *Id.* Art. 65. The majorities required for determination of the fate of the debtor and for approving a restructuring plan are (a) on the first call, the vote of creditors representing credits for an amount greater than 66.6% of the total amount of credits recognized by INDECOPI; and (b) on the second call, the vote of creditors representing more than 66.6% of the total amount of credits represented in the meeting. *Id.*, Art. 53.1. Other agreements and actions need only be approved by more than 50% of the recognized debt, at the first call, and by more than 50% by the attending creditors, at the second call.

12.     Under Article 59 of the Peruvian Act, when related creditors hold more than 50% of the total recognized credits, there is a special voting rule for determining the fate of the debtor and for approving the Restructuring Plan. First, there is a vote in which more than 66.6% of unrelated creditors must approve the fate of the debtor or the restructuring plan and then there is a second vote where more than 66.6% of the related creditors must approve those items. On

4

the second call, more than 66.6% of the creditors in attendance, either related or unrelated, must vote to approve the fate of the debtor or the restructuring plan. Thus, if related companies of the Peruvian Debtors upstream within the corporate family file large claims, they may have the power to block a restructuring plan even if the other creditors fully support such a plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 9, 2016

Renzo Agurto