Frederick D. Hyman
Christine A. Walsh
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone No.:  212 506-2500
Facsimile No.:  212 262-1910

*Attorneys for Malayan Banking Berhad,
Hong Kong Branch*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **CHINA FISHERY GROUP LIMITED (CAYMAN),** *et al.*, | **Case No. 16-11895 (JLG)** |
| Debtors[1]. | **(Jointly Administered)** |

**MAYBANK'S JOINDER IN RESPECT OF THE
CLUB LENDER PARTIES' MOTION FOR THE ENTRY
OF AN ORDER DIRECTING THE APPOINTMENT OF A
CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. § 1104(a)(2)**

Malayan Banking Berhad, Hong Kong Branch ("Maybank"), by and through their undersigned counsel, respectfully submit this joinder (this "Joinder") in respect of the motion of

---

[1] The Debtors are N.S. Hong Investment (BVI) Limited ("NS Hong"), Super Investment Limited (Cayman) ("Super Investment"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), China Fishery Group Limited (Cayman) ("CFGL"), Smart Group Limited (Cayman) ("Smart Group"), Protein Trading Limited (Samoa) ("Protein Trading"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), China Fisheries International Limited (Samoa) ("CFIL"), Growing Management Limited (BVI) ("Growing Management"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), CFGL (Singapore) Private Limited ("CFGLPL") and Ocean Expert International Limited (BVI) ("Ocean Expert").

1

the Club Lender Parties[2] for the entry of an order directing the appointment of a Chapter 11 trustee (the "Club Lender Parties' Motion") in the above-captioned Chapter 11 cases (the "Cases") in accordance with sections 105(a) and 1104(a)(2) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Maybank hereby joins in the Club Lender Parties' Motion and concurs that the appointment of a Chapter 11 trustee is in the best interests of the creditors and other interest holders of these Debtors and asserts that the factors to be considered under section 1104(a)(2) of the Bankruptcy Code weigh in favor of such appointment. The Debtors' creditors have legitimate cause for concern regarding the Ng family's ability to exercise sound business judgment and provide the expertise, oversight and guidance that creditors and other interest holders should be able to reasonably expect of a chapter 11 debtor. These causes for concern arise from, among many other things: (i) the facts and circumstances with regard to the commencement of these Cases in conjunction with other insolvency proceedings in Peru, Singapore and elsewhere, (ii) the exclusion of many material affiliates from the various insolvency proceedings (thereby limiting disclosure regarding their activities), (iii) the existence of questionable pre-petition intercompany and third party transactions that have yet to be investigated, (iv) the dismissal and resignation of independent fiduciaries that had been in place with the agreement of the Debtors prior to the filings, and (iv) the utter lack of transparency and ordinary course reporting from the Debtors and their non-Debtor affiliates while under the control of the Ng family, including the inability or unwillingness to prepare audits.

---

[2] The "Club Lender Parties" are, collectively, Coöperatieve Rabobank U.A., Standard Chartered Bank (Hong Kong) Limited, China CITIC Bank International Limited, and DBS Bank (Hong Kong), Limited.

2

In support hereof, Maybank respectfully represents as follows:

## INTRODUCTION

1. Nearly six (6) weeks into these Cases, the Debtors have sought virtually no substantive relief from this Court. Moreover, those entities that have filed Chapter 15 petitions have not even sought a hearing or any provisional relief. To date, the Debtors have filed motions seeking the bare minimum of administrative relief, including a motion for joint administration, a motion to extend their time for filing statements and schedules, applications to approve the retention of professionals having no identifiable presence in Hong Kong, and a motion to approve a cash management system that, if approved, would create a troubling precedent leaving elements of the Debtors' cash management under the control of non-Debtor entities and potentially beyond the jurisdiction of this Court. *See* Cash Mgt. Mot., ¶¶ 17, 18 [Doc. No. 29]. Other requests for typical "first day" relief have not been sought. Notably, the Debtors have failed to seek the approval of debtor-in-possession financing or the use of cash collateral, despite having only approximately $300,000 of cash on hand on the petition date. The financial wherewithal of the Debtors to fund these Cases to the barest minimum remains unexplained and questionable -- even the sizable retainers to its proposed professionals were funded by non-Debtors.

2. Rather than commence these Cases to consummate a restructuring or orderly sale under Chapter 11 of the Bankruptcy Code, it is evident from their actions and inactions to date that these Cases were filed by the Debtors' solely to forestall their many creditors from the benefit of their bargain and the pursuit of their contractual and legal rights. Now filed, and protected by the automatic stay under Section 362 of the Bankruptcy Code, the Debtors seem content to allow these Cases to meander while many of their creditors are forced to expend

considerable expense retaining additional professional to represent their interests in a jurisdiction that is foreign to them. The Debtors have failed to express any plan or strategy for emerging from Chapter 11. This has done nothing to restore any faith that the Debtors' various creditors may have once had, but long ago lost, in the management teams of the Debtors and their non-Debtor affiliates managed by the Ng family.

3. Moreover, the Debtors represent only a fraction of the corporate enterprise that makes up the Pacific Andes Group.[3] Many of the affiliates, both wholly- and partially-owned, have significant unpaid obligations to their respective creditors and are co-obligors with certain Debtors, yet are not Debtors in these Cases (or subject to other foreign insolvencies). *See* Declaration of Ng Puay Yee Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "First Day Declaration"), Ex. A. These non-Debtors, although placed throughout the corporate family tree, will not be subject to the oversight and review of this Court. Unlike those entities carefully chosen by the Ng family to submit to the jurisdiction of this Court, these non-Debtor affiliates will not be required to file either statements of their assets and liabilities or statements of their financial affairs. The operation and management of their businesses will not be subject to the oversight of this Court.

4. To the extent that the Debtors have focused any of their attention to these Cases, it has been with respect to the so-called "Peruvian assets" which are owned and controlled by those Debtors and non-Debtors that are junior to CFGL in the Pacific Andes Group capital structure. The Debtors have stated that the material value of the Debtors' estates rests at these entities. This

---

[3] The "Pacific Andes Group" is that collection of Debtor and non-Debtor affiliates for which PAIH is the ultimate holding company. The Pacific Andes Group involves three listed entities within a sprawling corporate structure. Singapore-listed CFGL is a Hong Kong-based industrial fishing company, with operations in Peru, Russia and Africa. CFGL's indirect majority shareholders include Hong Kong-listed PAIH (as defined below), a Bermuda company, which indirectly controls a significant stake through Singapore-listed PARD (as defined below), also a Bermuda company.

4

should not, and cannot, distract attention from the rest of the corporate enterprise, Debtor and non-Debtor alike.  Naturally, Maybank, like other similarly situated creditors at the upper tiers of the capital structure, has a material interest in maximizing the value of assets owned by CFGL and its subsidiaries but is also focused on, and concerned about, about the management and guidance of its direct obligors.  That same focus and concern must be shared with those that are charged with managing the operations of the Pacific Andes Group.  Maybank asserts that only a Chapter 11 Trustee can be trusted with such role at this time.

5. The Club Parties' Motion includes a detailed discussion of the Debtors' Peruvian fishery business, including, among other things, the financing of its operations, the related sale process and the domestic proceedings brought against the relevant entities in Peru and certain forensic issues highlighted by, among other things, the breach of undertaking provided by members of the Pacific Andes Group in favor of The Hongkong and Shanghai Banking Corporation Limited and approved by courts in the Cayman Islands and Hong Kong, which need not be restated herein.

6. Similarly, Maybank does not repeat in full comments made in its Statement in Respect of the Debtors' First Day Motions and Request for a Scheduling Hearing.

## BACKGROUND

<u>The Maybank Facilities</u>

7. Maybank, one of the largest creditors of the Pacific Andes Group, is the lender under the following facilities, each of which is in default: (i) a US$100,000,000 facility agreement (as amended, supplemented or otherwise modified from time to time, the "<u>PATM Facility</u>") dated March 21, 2014 to Pacific Andes Treasury Management Limited ("<u>PATM</u>"), (ii) a US$65,000,000 facility agreement (as amended, supplemented or otherwise modified from

5

time to time, the "PAE/PGL Facility") dated August 21, 2014 to Pacific Andes Enterprises (BVI) Ltd ("PA Enterprises") and Parkmond Group Ltd ("Parkmond") and (iii) a US$70,000,000 facility agreement (as amended, supplemented or otherwise modified from time to time, the "Europaco Facility"; together with the PATM Facility and the PAE/PGL Facility, the "Maybank Facilities") dated September 30, 2014 to Europaco Limited ("Europaco").  As of the petition date, the aggregate amount outstanding under the Maybank Facilities was in excess of US$198 million.

8.      PAIH, a Debtor in these cases and the first tier subsidiary below Debtor N.S. Hong Investment (BVI) Ltd., is a guarantor of (i) the obligations of PATM under the PATM Facility and (ii) the obligations of Europaco under the Europaco Facility.  Pacific Andes Resources Development Limited ("PARD"), an indirect subsidiary of PAIH and a non-Debtor, is a guarantor of the PAE/PGL Facility. Although the obligations owing in respect of each of the Maybank Facilities is in default, the obligors PARD, PATM, PA Enterprises, Parkmond and Europaco -- despite having an overwhelming amount of debt as identified in the corporate structure chart attached as Exhibit A to the First Day Declaration and being managed by the Ng family -- are not Debtors in these Cases.

9.      On July 1, 2016, PARD voluntarily made an application under section 210(10) of the Singapore Companies Act, Chapter 50, to stay all actions and legal proceedings against PARD, PA Enterprises, Parkmond and Pacific Andes Food (Hong Kong) Limited, and had obtained such a stay from the High Court of Singapore for a period of six weeks until August 12, 2016 and which has been extended for PARD (but discharged with respect to PA Enterprises, Parkmond and Pacific Andes Food (Hong Kong) Limited) until September 5, 2016.  PARD, a subsidiary sitting below PAIH and above CFGL, and the other entities have not sought

6

protection under either Chapter 11 or Chapter 15 of the Bankruptcy Code. Absent a filing in the United States, or other protocol between this Court and the court in Singapore, the Debtors' creditors and interest holders remain at risk of inconsistent outcomes.

## REQUESTED RELIEF

10.     This Court has the authority to appoint a chapter 11 trustee under section 1104(a) of the Bankruptcy Code. Section 1104(a)(2) provides that the court shall order the appointment of a trustee "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate .…" 11 U.S.C. § 1104(a)(2).

11.     For the reasons stated in the Club Lender Parties' Motion, and those additional reasons stated herein, this Court should direct the appointment of a Chapter 11 Trustee under Section 1104(a)(2) of the Bankruptcy Code. In the instant case (i) the Debtors' relationships with their various creditors have been marked with their refusals to continue the retention of independent oversight or otherwise provide satisfactory information regarding their operations and finances, (ii) the Debtors', and their non-Debtor affiliates', business practices have failed to meet common standards for operations of their purported size; and (iii) the Debtors have been unable or unwilling to collate, interpret and/or process relevant data available to them and make that information available to their constituents. The need for independent oversight by a Chapter 11 Trustee is glaring and in the best interests of the Debtors' constituents in order to maximize the value of the estates.

12.     Further, the Debtors' energies seem solely focused on responding to the demands made in respect of their breached undertaking to sell the Peruvian assets. Responsibility should be turned over to a Chapter 11 Trustee equipped to make an independent and reasoned determination as to how best to address the Peruvian assets in a manner that will maximize their

value for the benefit of creditors of the Debtors and their non-Debtor affiliates. Moreover, without proper oversight, the needs of other aspects of the Pacific Andes Group's businesses and operations may be neglected or ignored to the detriment of the estates.

13. Maybank respectfully submits that a Chapter 11 Trustee should be appointed who will be charged with managing these estates for the benefit of all creditors, analyzing not just the sale or other capital transaction relating to the Peruvian assets but also the other assets of the Debtors' and their affiliates' estates, providing sophisticated oversight to aid in preserving a balanced process in terms of time and focus for the variety of creditors involved.

## **RESERVATION OF RIGHTS**

14. Maybank expressly reserves the right to supplement and amend this Joinder, seek further discovery with respect to the same, and introduce evidence at any hearing relating to the Motion and this Joinder. In addition, Maybank expressly reserves all rights to contest any factual or legal assertions contained in the first day pleadings and does not waive, admit, or acknowledge any of the assertions contain therein. Further, Maybank expressly reserves the right to object to any final order to be entered in respect of the Club Lender Parties' Motion. Finally, Maybank reserves the right to respond, further object, join in, or amend any objection herein with respect to any argument or objection made by any person relating to the Club Lender Parties' Motion or this Joinder.

\*   \*   \*

WHEREFORE, Maybank respectfully requests that the Court (a) grant the Club Lender Parties' Motion and direct the appointment of a Chapter 11 Trustee; and (b) grant such other and further relief as may be just and necessary under the circumstances.

Respectfully submitted this 10th day of August, 2016,

**MAYER BROWN LLP**

By:  /s/ Christine A. Walsh
Frederick D. Hyman (FH7832)
Christine A. Walsh (CW9533)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone No.: 212 506-2500
Facsimile No.: 212 262-1910

*Attorneys for Malayan Banking Berhad, Hong Kong Branch*