```
1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
2                                           .
     IN RE:                                 .   Chapter 11
3                                           .
     CHINA FISHERY GROUP, LIMITED           .   Case No. 16-11895-jlg
4    (CAYMAN)                               .
                                            .   New York, New York
5                         Debtor.           .   Friday, July 29, 2016
     . . . . . . . . . . . . . . . . . .        11:55 a.m.
6
                      TRANSCRIPT CASE MANAGEMENT MOTION
7                BEFORE THE HONORABLE JAMES L. GARRITY
                    UNITED STATES BANKRUPTCY JUDGE
8
     APPEARANCES:
9
     For the Debtor:              Howard B. Kleinberg, Esq.
10                                Edward J. LoBello, Esq.
                                  MEYER, SUOZZI, ENGLISH & KLEIN, PC
11                                990 Stewart Avenue
                                  Garden City, New York 11530
12
     For Certain Club
13   Lender Parties:              R. Craig Martin, Esq.
                                  DLA PIPER, LLP (US)
14                                1201 North Market Street
                                  Suite 2100
15                                Wilmington, Delaware 19801

16   For Bank of America:         Lee S. Attanasio, Esq.
                                  Andrew P. Propps, Esq.
17                                SIDLEY AUSTIN, LLP
                                  787 Seventh Avenue
18                                New York, New York 10019

19   (Appearances Continued)

20   Audio Operator:              Electronically Recorded
                                  by F. Ferguson, ECRO
21
     Transcription Company:       Reliable
22                                1007 N. Orange Street
                                  Wilmington, Delaware 19801
23                                (302)654-8080
                                  Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.
```

```
 1   APPEARANCES:   (Continued)

 2   For Rabo Bank:              Michael Luskin, Esq.
                                 LUSKIN, STERN & EISLER, LLP
 3                               Eleven Times Square
                                 New York, New York 10036
 4
     For Maybank:                Frederick D. Hyman, Esq.
 5                               MAYER BROWN, LLP
                                 1221 Avenue of the Americas
 6                               New York, New York 10020

 7   APPEARANCES VIA TELEPHONE:

 8   For the Debtor:             Gustavo Millich, Esq.
                                 MEYER, SUOZZI, ENGLISH & KLEIN, PC
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (Proceedings commence at 11:55 a.m.)

2    THE COURT:  Good morning.

3    MR. KLEINBERG:  Good morning, Your Honor.

4    THE COURT:  Can I get appearances, please?

5    MR. KLEINBERG:  Good morning again.  Howard Kleinberg, Meyer Suozzi, for the debtors, along with my partner at counsel table, Edward LoBello.

8    THE COURT:  Mr. LoBello, Mr. Kleinberg.

9    MR. LOBELLO:  Good morning.

10   MR. MARTIN:  Good morning, Judge Garrity.  Craig Martin from DLA Piper, LLP (US).  I don't have Mr. Lyons with me today, and it's dawned on me that I've never introduced Mr. Leitch.  Jonathan Leitch from our Hong Kong office.

14   THE COURT:  All right.  Mr. Leitch.

15   MR. MARTIN:  He's been here all week for the negotiations.

17   THE COURT:  All right.

18   MR. LUSKIN:  Michael Luskin, Luskin, Stern & Eisler, Rabo Bank.

20   THE COURT:  Mr. Luskin.

21   MR. HYMAN:  Good morning, Your Honor.  Rick Hyman from Mayer Brown on behalf of Maybank.

23   THE COURT:  Mr. Hyman.

24   MS. ATTANASIO:  Lee Attanasio, with my colleague Andrew Propps, from Sidley Austin, on behalf of Bank of

1  America.
2       THE COURT:  Good morning.  Okay.
3       MR. KLEINBERG:  Thank you, Your Honor.
4       So we're here on a case statute report.  We were here
5  last on Monday, I believe it was.  I want to report to Your
6  Honor that the counsel for the parties and the parties
7  themselves have continued to have very intense discussions
8  about both --
9       THE COURT:  Oh, no, I'm sorry to interrupt you.
10      MR. KLEINBERG:  Yes.
11      THE COURT:  I think, also, we have somebody on the
12 phone?  Is that right?
13   (Participants confer)
14      THE COURT:  I think we have a number of people on the
15 phone.  I just wanted to make sure.  Okay.  Go ahead.
16      MR. MILLICH:  (Via telephone) (indiscernible)
17      THE COURT:  Thank you.
18      MR. KLEINBERG:  Thank you, Your Honor.  Gustavo, as
19 you'll recall, is the Peruvian operating company's --
20      THE COURT:  Yes.
21      MR. KLEINBERG:  -- Lima counsel.
22      So we have had very intense discussions.  There's been
23 a bunch of -- a raft of paperwork prepared and exchanged among
24 the parties, in an effort to move things forward, and very
25 intense discussions with respect to what we've been calling the

1  "threshold" or "gatekeeper" issue, which means the status of
2  the Peruvian insolvency proceedings under the Indecopi
3  authority in Lima, Peru, as a question of how that goes
4  forward.
5  　　　　Unfortunately, I must report that we are at an impasse
6  today, as to that core threshold issue.  We have not been able
7  to bridge the cap between the two parties.  And while,
8  certainly, the debtor's desire is to continue to talk, not only
9  about that, but also about the financial and management issues
10 that are part of point two of the package of an interim
11 agreement for getting some peace here, I believe it's the
12 lender's desire, at this point, to move forward on a trustee
13 motion.
14 　　　　Mr. Martin and I discussed in the hallway, just this
15 morning, that fact, but also that we would work and talk over
16 the weekend to try to develop a consensually based scheduling
17 and briefing and pretrial deposition -- pretrial discovery
18 schedule for the motion, and to present it, hopefully on a
19 consensual basis, to Your Honor early next week.
20 　　　　THE COURT:  The schedule?
21 　　　　MR. KLEINBERG:  But if we can't reach agreement on
22 that --
23 　　　　THE COURT:  The schedule?
24 　　　　MR. KLEINBERG:  A schedule, purely a scheduling order.
25 　　　　THE COURT:  So we'll --

1  MR. KLEINBERG: The motion is not filed.

2  THE COURT: We'll start small here. We'll see if we
3  can get agreement on the schedule to fight, but unfortunately,
4  we can't get agreement on a way to get out, but it's a start.

5  MR. KLEINBERG: It's a start. And of course, it was
6  also a necessity to ask for another hearing date early next
7  week, in the event that we can't even reach agreement --

8  THE COURT: Sure.

9  MR. KLEINBERG: -- on the scheduling.

10  THE COURT: Sure.

11  MR. KLEINBERG: The motion has not, obviously, yet
12  been filed, so, from the debtor's point of view, we would like
13  to take a look at it before we have intense discussions about
14  scheduling, and that's going to take a little bit more time.

15  THE COURT: Now is the issue one as it deals with the
16  Peruvian proceedings on the timing, is it still -- I think what
17  you had described the last time we were together is that there
18  are certain timing issues; that certain events may unfold in
19  that proceeding, which would then make it impossible for the
20  creditors to try to come to an agreement and try to move
21  forward in a different direction. Is that still the problem,
22  or is it --

23  MR. KLEINBERG: Well, I --

24  THE COURT: -- or is it more deeply seeded?

25  MR. KLEINBERG: I don't want to speak for the lenders.

1 I think timing is their major concern, perhaps the existential
2 existence of the Peruvian proceedings is their concern. But I
3 think timing is primary right now, and we, frankly, feel that
4 timing is less of an issue than they think it is. But that's -
5 - again, they can speak for their position.
6     THE COURT: All right.
7     MR. KLEINBERG: So it is timing, to a large extent,
8 and also where the Peruvian proceeding might lead to.
9     THE COURT: All right. Mr. Martin?
10     MR. MARTIN: Yes, Your Honor. Thank you.
11     I know, at least from the professionals, I imagine
12 that this is not the report that we wanted to give Your Honor,
13 and I'm sure this is not exactly the report Your Honor wanted
14 to receive. But unfortunately, sometimes, clientele do reach
15 an impasse, and we felt that it was important to report it to
16 the Court. However, it wasn't without effort.
17     We did, after we last left here, submit, I think a
18 total of three or four different proposed forms of orders, some
19 termsheets. We've had continuing email and phone call
20 discussions, so there has been enormous effort, both in New
21 York and Peru, amongst the professionals.
22     And the timing issue is certainly that gives many of
23 the lenders, and not just my clients, but certain of the other
24 lenders represented on the telephone -- we have a clicking
25 clock.

1            THE COURT:  A ticking tock.

2            MR. MARTIN:  A ticking clock.

3            THE COURT:  Clock.

4            MR. MARTIN:  There we go.  The alliteration was

5    getting me.

6            THE COURT:  We'll get there.

7            MR. MARTIN:  A ticking clock.

8            THE COURT:  Between the two of us, we'll get it.

9        (Laughter)

10           THE COURT:  Maybe.

11           MR. MARTIN:  It's ticking, and we've proposed some

12   ways to try to stop that, so that we could negotiate because,

13   while we did submit termsheets and proposed forms of order,

14   they're very complicated; they involve bondholders and debt

15   around the globe, and there's probably 15 to 20 days that need

16   to go into negotiating those.  And our concern is, if we get

17   another 15 or 20 days on the 30 that have already passed since

18   the Peruvian proceedings were filed, then we're really in a

19   bind because now we're 50 days into some time frame and, you

20   know, we may have a week.

21           So we feel we need to start the clock ticking on the

22   trustee process.  We have been able to speak with the debtor's

23   counsel about a schedule that's less aggressive than the one we

24   had originally proposed, but is still somewhat of a two-phase

25   process.  And hopefully, we'll be -- the first phase will be

1  something that we're looking at over the course of a thirty-day

2  time period, rather than, you know, the two weeks that we had

3  initially proposed.

4  And one aspect that I would like to ask the Court, as

5  we discuss it, so that we are best informed, is, in looking at

6  Your Honor's chambers procedures, we noted and observed that

7  you typically like agreed exhibit binders and joint pretrial

8  orders and the like.  Obviously, part of the concept behind

9  phase one is that we're trying to limit the evidentiary

10 presentation, but we certainly didn't want to presume that Your

11 Honor would be comfortable deviating from your normal practices

12 without court permission.

13 And so it's possible that we may agree to either no

14 depositions or just two or three.  We may agree to witness

15 testimony by declaration, with cross-examination.  I think the

16 parties are a little bit skittish about a joint pretrial order

17 because we all know how much works goes into that, and if we're

18 doing something on a thirty-day time period, without real

19 discovery, just more stipulated agreements, a joint pretrial

20 order may not be appropriate.

21 And the Court doesn't have to answer that today, if

22 you don't want to, but those are some of the things that we

23 intend to speak with debtor's counsel over the weekend --

24         THE COURT:  All right. Look, I -- look, I am -- I

25 know how hard you've worked, or you've certainly -- I don't

1  know that, but you've represented it and you -- we've talked.

2  And I have no doubt that you folks have worked hard to try to

3  work this out, and that we're at a point where we're not going

4  to be able to get it resolved, which is unfortunate.  I think

5  the best course is, as you've suggested, to spend the time to

6  see if you can come to an agreement with regard to the motion

7  and the timing of the motion.

8           You should know that I will be out of the office

9  during the week of the 5th.  I have --

10          MR. MARTIN:  That's September?

11          THE COURT:  September 5th.

12          MR. MARTIN:  Okay.

13          THE COURT:  I have -- basically, the week of the 12th

14 is problematic.  I have a mediation that I need to deal with

15 for a couple of days that week.  So, if we're going to do this,

16 we wouldn't be able to start to look at it before the week of

17 September the 19th.

18          MR. MARTIN:  Okay.  And what about the week before

19 Labor Day?  I had tentatively scratched out a schedule that, if

20 the Court had some time, we might be able to do something that

21 week.

22          THE COURT:  The 29th, the week of the 29th?

23          MR. MARTIN:  Yes, sir.

24          THE COURT:  I -- oh, you know what?  We -- I have my

25 consumer calendar on that Wednesday -- that Thursday the 1st.

1  That doesn't preclude us from doing other things, but it's a
2  very, very long and busy calendar that day. So why don't you
3  folks put your heads together, come up with a schedule. We'll
4  get an adjourned date. When do you want to come back to talk
5  about it?
6       MR. MARTIN: I think, in light of mister -- we didn't
7  discuss it exactly. But in light of debtor's counsel's
8  statement that he wants to look at the motion, to be able to,
9  we were thinking either late Tuesday, or more probably
10 Wednesday, but I don't want to presume that that's acceptable
11 without express consultation.
12      MR. KLEINBERG: Tuesday, I do have a conflicting
13 appearance in the Eastern District, so, if it could be
14 Wednesday.
15      THE COURT: All right, if you'd just check. Why don't
16 we just say tentatively at --
17      MR. MARTIN: And certainly, Your Honor, if -- on a
18 scheduling order type, it might be less intense than things in
19 the past, so I certainly would have no opposition to the phone,
20 if that was convenient for the Court.
21      THE COURT: No, that's fine. I'll tell you what. Why
22 don't you get me -- why don't you send us the proposed
23 schedule, and then we can take a look at it. I may have a
24 problem on -- I've got to be at a meeting Wednesday morning,
25 out of the office. So why don't -- so do you -- will we get

1  the schedule by Tuesday, or do you want to get it to us on
2  Wednesday?  And then we'll look at it and reach out to you
3  folks.  And if we think we need to have you in, we'll arrange
4  for a date or a time.
5       You can actually come -- the next day is our consumer
6  day, so maybe you'd like to sit through ...
7     (Laughter)
8          MR. MARTIN:  Always --
9          THE COURT:  That might get you to settle, actually.
10    (Laughter)
11         MR. MARTIN:  Always enjoy seeing the trustee deal with
12 200 13's.
13         THE COURT:  But -- so, all right.  So look, so why
14 don't you submit the proposed scheduling order by the 31st.
15         MR. MARTIN:  I don't have my calendar with me, I'm
16 sorry.
17         THE COURT:  I'm sorry.  I'm looking at the wrong
18 month.  I apologize.  Wait a second.
19    (Participants confer)
20         MR. MARTIN:  No, Monday is the 1st.
21         THE COURT:  No, no, I'm sorry.
22         MR. KLEINBERG:  Monday is the 1st.
23         THE COURT:  Monday is the 1st.
24         MR. KLEINBERG:  So Wednesday is the 3rd.
25         THE COURT:  Wednesday, thank you.

1  MR. MARTIN: So do you want us to shoot for by close
2 of business on the 2nd?
3  THE COURT: Yeah, the 2nd, or just get it to us by the
4 3rd, and then we can look at it.
5  MR. MARTIN: The morning, on the 3rd.
6  THE COURT: Right. Okay? Does that work for you
7 guys?
8  MR. KLEINBERG: It does work for us. And if there's
9 no agreement, would Your Honor prefer a counter proposed
10 scheduling order, or just to have us come in and talk about it?
11  THE COURT: Probably the latter.
12  MR. KLEINBERG: Okay.
13  THE COURT: But again, I'm assuming that the
14 difference is going to be in timing and not scope, right? It's
15 that what you think the issues are going to be, that you're
16 going to want more time?
17  MR. KLEINBERG: I think that's right. I mean, scope
18 is often a matter of procedural right. So, if we wanted six
19 depositions, I think they would be hard-pressed to say no, so
20 then it becomes a matter of timing.
21  THE COURT: Right. All right.
22  MR. MARTIN: And in that example, if they wanted six,
23 and we thought four were appropriate, we can certainly, you
24 know, leave that number blank, and come down and explain to the
25 Court our rationale behind the two positions.

1   THE COURT:  Right.

2   MR. KLEINBERG:  Exactly.

3   THE COURT:  Okay.  And that's fine.  So when can we
4   expect it then?

5   MR. MARTIN:  We're going to shoot for Tuesday, close
6   of business.

7   THE COURT:  Okay.

8   MR. MARTIN:  If we're unable to do it, if it's
9   acceptable, we can maybe call chambers and advise that we'll
10  have it first thing in the morning, on Wednesday.

11  THE COURT:  Okay.  And that's fine.  And if you have
12  to come down, when you will come down will be Thursday, late in
13  the afternoon.

14  MR. MARTIN:  Okay.

15  THE COURT:  All right?  All right.  Anything further?

16  MR. MARTIN:  Should we say 4 p.m., or just --

17  THE COURT:  Yeah, 4 is probably about right, maybe a
18  little later.

19  MR. MARTIN:  Okay.  Fair enough.

20  THE COURT:  Depending.  I mean, it's just -- it's a
21  long calendar, so -- all right?  Anything else?

22  MR. KLEINBERG:  No, Your Honor.

23  THE COURT:  Okay.  Well, thank you all very much.

24  MR. KLEINBERG:  Thank you, Your Honor.

25  MR. MARTIN:  Thank you.

```
 1            THE COURT:  Thank you.
 2       (Proceedings concluded at 12:09 p.m.)
 3                          *****
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

_____          July 29, 2016

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable