| | |
|---|---|
| Alan D. Halperin, Esq. | Hearing Date: August 29, 2016 |
| Carrie E. Essenfeld, Esq. | @ 10:00 a.m. |

**HALPERIN BATTAGLIA BENZIJA, LLP**
40 Wall Street – 37th Floor
New York, New York 10005
Telephone: (212) 765-9100
Facsimile: (212) 765-0964
Email: ahalperin@halperinlaw.net
            cessenfeld@halperinlaw.net

*Counsel to the Informal Steering Committee of*
*Bondholders of Pacific Andes Resources Development Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| CHINA FISHERY GROUP LIMITED (CAYMAN), *et al.*, | Case No. 16-11895 (JLG) |
| | (Jointly Administered) |
| Debtors.[1] | |

_____

**OBJECTION OF THE INFORMAL STEERING COMMITTEEE OF THE BONDHOLDERS OF PACIFIC ANDES RESOURCES DEVELOPMENT LTD. TO THE CLUB LENDER PARTIES' MOTION FOR THE ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. SECTION 1104(a)(2)**

The Informal Steering Committee of the Bondholders of Pacific Andes Resources Development Ltd., (the "Informal Steering Committee"), by and through their undersigned counsel, hereby objects to the Club Lender Parties' Motion for the Entry of

---

[1] The Debtors are N.S. Hong Investment (BVI) Limited ("NS Hong"), Super Investment Limited (Cayman) ("Super Investment"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), China Fishery Group Limited (Cayman) ("CFGL"), Smart Group Limited (Cayman) ("Smart Group"), Protein Trading Limited (Samoa) ("Protein Trading"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), China Fisheries International Limited (Samoa) ("CFIL"), Growing Management Limited (BVI) ("Growing Management"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), CFGL (Singapore) Private Limited ("CFGLPL") and Ocean Expert International Limited (BVI) ("Ocean Expert") (collectively, the "Debtors").

an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)(2) (the "Motion") [ECF Dkt. 57].

## INTRODUCTION

1.  Frustrated by these Chapter 11 filings and the resulting inability to force a sale process for the Debtors' businesses, the Club Lenders seek extraordinary relief in the form of a Chapter 11 trustee to accomplish their goal in the infancy of these Chapter 11 cases. A quick sale may benefit the Club Lenders but, as set forth below, it is unlikely to benefit other creditors. Accordingly, the Informal Steering Committee objects to the Motion, and respectfully states as follows:

## FACTUAL BACKGROUND

2.  The Informal Steering Committee consists of holders of bonds issued by Pacific Andes Resources Development Limited. The bonds were issued on July 30, 2014, in the aggregate principal amount of $200,000,000 and are due on July 30, 2017, with the Hongkong and Shanghai Banking Corporation Limited serving as trustee.

3.  On June 30, 2016, each of the Debtors filed with the Court a voluntary petition under Chapter 11, title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  The Debtors, along with certain non-Debtor affiliated entities, are part of a corporate family known as the Pacific Andes Group, one of the world's largest seafood procurement companies. The Pacific Andes Group has operations in the People's Republic of China, the United States and Peru, as well as processing businesses in China, Germany, France, the United States and Peru.

2

5. The China Fishery Group ("CFG") is a group of subsidiaries of the Pacific Andes Group that harvests mackerel and delivers fishmeal and fish oil to plants that it owns in Peru.

6. The Debtors are comprised primarily of investment holding companies and non-operating companies that were engaged in the business of trading frozen seafood products or providing freight service.

7. Certain affiliates of the Debtors, who are part of the Pacific Andes Group are the subject of Chapter 15 filings before this Court and the Pacific Andes Resources Development Group is the subject of insolvency proceedings in Singapore. There are other additional entities in the Pacific Andes Group, which may be the subject of insolvency proceedings outside the United States.

8. On August 9, 2016 the Club Lenders filed their Motion to appoint a trustee pursuant to section 1104(a)(2) of the Bankruptcy Code.[2]

9. In the Motion, the Club Lenders allege improper conduct on the part of the Debtors' current management mostly relating to the proposed sale of the Peruvian Business. The Debtors' interest in the Peruvian Business comprises the majority of the value in the Debtors' estates. Both the Club Lenders and the Debtors' state that these cases were filed to slow or halt the sale of the Peruvian Business.

## ARGUMENT

**The Allegations Set Forth in the Motion are
Insufficient to Justify the Appointment of a Trustee**

10. Bankruptcy Code 1104(a)(2) provides that:

---

[2] Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Motion.

3

> At any time after the commencement of a case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee if such appointment is in the interests of creditors, any equity security holders, and other interest of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11. U.S.C. § 1104(a)(2).

11. The "standard for §1104 appointment is very high." Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166,167 (2d Cir. 2005). The appointment of a Chapter 11 trustee is an "extraordinary remedy." In re Euro-American Lodging Corp., 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007); In re Adelphia Comm'ns Corp., 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006), aff'd, 342 B.R. 122 (S.D.N.Y. 2006). Accordingly, the movant "must prove the need for a trustee by clear and convincing evidence." Adelphia, 336 B.R. at 656.

12. There is a strong presumption that the debtor should remain in possession. In re The 1031 Tax Group LLC, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007); Ionosphere Clubs, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990); see also In re Sharon Steel Corp., 871 F.2d 1217, 1225 (3rd Cir. 1989) ("It is settled that appointment of a trustee should be the exception, rather than the rule."). This presumption is based on the fact that there is no need for a trustee in most cases because the debtor-in-possession is already a fiduciary for the estate and has familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations. In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998).

13. To find that the appointment of a Trustee is required under this section, courts will weigh the costs and benefits of appointment and "engage[] in a fact-driven

4

analysis, principally balancing the advantages and disadvantages of taking such a step, mindful of the many cases … that have held that appointment of a trustee is an extraordinary remedy, and should be the exception, rather than the rule." Adelphia, 336 B.R. at 658 (citation omitted).

14.     While the Motion contains allegations of improper conduct on the part of Debtors' management, the information contained in the Motion does not rise to the level of demonstrating by clear and convincing evidence that the extraordinary remedy of appointing a Chapter 11 trustee is warranted.

**Appointing a Chapter 11 Trustee is not in the
Best Interests of all of the Debtors' Creditors and Parties in Interest**

15.     Section 1104(a)(2) envisions a flexible standard for the appointment of a trustee when to do so would serve "the interests of the creditors, equity security holders, and other interests of the estate." Marvel, 140 F.3d at 474; see also 11. U.S.C. § 1104(a)(2); Collier on Bankruptcy, 1104.02[3][d][i] (15th ed. 2015).

16.     In reconciling the interests of the estate standard with the cause standard, Collier notes:

> "the 'interests' standard may initially seem less stringent than the 'cause' standard. After all, no showing of wrongful behavior on the part of management is required, as long as interested parties can show a meaningful benefit from the appointment of a trustee. However, it is important to remember that the 'interests' standard requires a finding that appointment of a trustee would be in the interest of essentially **all interested constituencies**."

Collier on Bankruptcy, Para. 1104.02 at 1104-14 (emphasis added).

Under this standard, creditors cannot obtain an appointment under § 1104(a)(2) that would disenfranchise or decrease value for other creditors. Rather, the appointment of a

5

trustee must be in the interest of the estate generally in order to satisfy this statutory "interests" standard.

17. It is clear that both the Debtors and the Club Lenders believe that the Debtors interest in the Peruvian Business is the most valuable asset in these cases. It is also clear from the Motion that the Club Lenders believe that the immediate sale of the Peruvian Business is the best course of action to satisfy the claims of the Club Lenders. However, the desire of one group of creditors to appoint a trustee is not the standard required by the Bankruptcy Code or the case law. The law requires that the interests of all parties to be considered.

18. Given the current posture of these cases, it is difficult for the Informal Steering Committee to identify the benefits the appointment of a trustee would afford the bondholders, or the Debtors' other unsecured creditors, whose debt may be structurally subordinated to that of the Club Lenders.

19. As discussed in the First Day Affidavit, these cases were "caused by a series of events, some natural and others man-made" which included the Peruvian government's mandated suspension of the Peruvian Business operations, which when combined with the Debtors' issues with certain of its lenders caused the liquidity crisis that caused the Debtors to file these cases. See Declaration of Ng Puay Yee Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York ( the "1007 Declaration") [ECF Dkt. 2 at para. 20].

20. The Debtors' have had less than 60 days in their bankruptcy cases, and the Informal Steering Committee submits the appointment of a trustee at this time will not be beneficial to the bondholders. At this time the Debtors, and their creditors, need an

opportunity to evaluate their options and make a deliberate and well-guided decision regarding the best way to create value on a going forward basis for all creditors.

21.     The Informal Steering Committee questions whether the appointment of a trustee to pursue the immediate sale of the Peruvian Business is the best course of action especially given the recent issues relating to the Peruvian Business.  The Informal Steering Committee is concerned that the appointment of a trustee to sell the business now, before there is a chance to recover from its suspension of operations, and reestablish operations and normalized cash flow, could easily lead to depressed sale prices to the detriment of unsecured creditors.  Further, a sale by a replacement fiduciary, like a Chapter 11 trustee could create the expectation that the asset will be sold at "fire sale" prices, especially in foreign jurisdictions with different insolvency processes, which could in turn further depress sale prices and creditor recovery.

22.     While the Informal Steering Committee sees few benefits from appointing a trustee at this time to pursue an immediate asset sale, there are real reasons that the costs and risks associated with the appointment of a trustee may not be in the best interests of the estate.

23.     Notably, the Debtors have engaged effective and experienced attorneys, accountants and restructuring advisors who have spent significant time becoming familiar with the Debtors' businesses and needs.  Should a trustee be appointed, there would be a significant 'lag-time' and cost while the trustee and its professionals became acquainted with the Debtors' businesses.

24.     In the Motion, the Club Lenders are dismissive of the Debtors' chosen professionals seemingly because they believe the professionals will not create a strategy

7

to satisfy the immediate needs of the Club Lenders. The Informal Steering Committee submits that the ability of a debtor to hire counsel and professionals of its choosing is a pillar of Chapter 11 and should not be given short shrift because one group of creditors is displeased that the professionals chosen are not pursuing their preferred course of action. Further, given that competent advisors have been retained, the Informal Steering Committee does not see what added value a trustee would bring in the present circumstances. At this time, the Informal Steering Committee believes that the Debtors should be afforded a breathing spell to restart and stabilize their businesses, normalize operations, and thereby augment the value of their businesses for the benefit of all creditors.

## RESERVATION OF RIGHTS

25. The Informal Steering Committee expressly reserves the right to supplement and/or amend this Objection from time to time and at any time. The Informal Steering Committee further reserves any and all rights to raise any additional objections with respect to the Motion or otherwise with respect to any relief requested.

## CONCLUSION

26. The Informal Steering Committee believes that creditors and parties in interest would be better served at this time through the currently retained professionals continuing work to restart and stabilize business operations critical to value, rather than starting from scratch with the appointment of a trustee charged with the task of selling business assets for the benefit of senior creditors, and all of the attendant and duplicative associative costs, that will likely hurt value and the prospects for recovery of unsecured

creditors.  Accordingly, the Informal Steering Committee respectfully requests that this Court deny the Motion.

Dated: August 23, 2016

Respectfully submitted,

**HALPERIN BATTAGLIA BENZIJA, LLP**

*/s/ Alan D. Halperin*
Alan D. Halperin, Esq.
Carrie E. Essenfeld, Esq.
40 Wall Street – 37th Floor
New York, New York 10005
Telephone: (212) 765-9100
Facsimile: (212) 765-0964
Email: ahalperin@halperinlaw.net
         cessenfeld@halperinlaw.net

*Counsel to the Informal Steering Committee of Bondholders of Pacific Andes Resources Development Ltd.*