Hearing Date: October 25, 2016 at 2:00 p.m. (NY Time)
Objection Deadline: October 18, 2016 at 4:00 p.m. (NY Time)

Howard B. Kleinberg, Esq.
Edward J. LoBello, Esq.
Jil Mazer-Marino, Esq.
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
1350 Broadway, Suite 501
New York, New York 10018
Telephone: (212) 239-4999
Email: hkleinberg@msek.com
        elobello@msek.com
        jmazermarino@msek.com

*Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)**, *et al.*,[1] | Case No. 16-11895 (JLG) |
| Debtors. | Jointly Administered |

---

## NOTICE OF HEARING ON DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

**PLEASE TAKE NOTICE** that a hearing (the "**Hearing**") on the *Debtors' Motion for Entry of Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* (the "**Motion**"), a copy of which is attached hereto, filed on behalf of the above-captioned debtor China Fishery Group Limited (Cayman) ("**China Fishery**"), and certain of its affiliated debtors and debtors-in-possession (collectively, the

---

[1] The Debtors are China Fishery Group Limited (Cayman) ("China Fishery" or "CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), and Super Investment Limited (Cayman) ("Super Investment").

"**Debtors**"), will be held before the Honorable James L. Garrity Jr., United States Bankruptcy Judge (the "**Court**"), in Courtroom 601 at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004-1408 on **October 25, 2016 at 2:00 p.m. (NY Time)** or as soon thereafter as counsel can be heard.

    **PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion and the relief requested therein, if any, shall be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York, set forth the basis for the response or objection and the specific grounds therefor, and shall be filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with two hard copies delivered directly to Chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as to be actually received no later than **October 18, 2016 at 4:00 p.m. (NY Time)** (the "**Objection Deadline**") by: (a) counsel for the Debtors, Meyer, Suozzi, English & Klein, P.C., 990 Stewart Avenue, Suite 300, P.O. Box 9194, Garden City, New York 11530-9194, Attention: Howard Kleinberg, Esq., Edward J. LoBello, Esq. and Jil Mazer-Marino, Esq., and (b) the Office of the United States Trustee, 201 Varick Street, Room 1006, New York, NY 10006, Attn: Susan Golden.

    **PLEASE TAKE FURTHER NOTICE** that a copy of the Motion and any pleadings may be obtained by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

    **PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

    **PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Court an order substantially in the form annexed as **Exhibit A** to the Motion, which order the Court may enter with no further notice or opportunity to be heard.

**Dated: New York, New York**
       **October 7, 2016**

                          **MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**

                   **By:**    */s/ Edward J. LoBello*
                          **Howard B. Kleinberg**
                          **Edward J. LoBello**
                          **Jil Mazer-Marino**
                   **1350 Broadway, Suite 501**
                   **New York, New York 10018**
                   **(212) 239-4999**

                   *Counsel to the Debtors and Debtors in Possession*

Hearing Date: October 25, 2016 at 2:00 p.m (NY Time)
Objection Deadline: October 18, 2016 at 4:00 p.m. (NY Time)

**Howard B. Kleinberg, Esq.**
**Edward J. LoBello, Esq.**
**Jil Mazer-Marino, Esq.**
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
**1350 Broadway, Suite 501**
**New York, New York 10018**
**Telephone:   (212) 239-4999**
**Email: hkleinberg@msek.com**
**Email: elobello@msek.com**
**Email: jmazermarino@msek.com**

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **CHINA FISHERY GROUP LIMITED (CAYMAN),** *et al.,*[1] | **Case No. 16-11895 (JLG)** |
| | **Jointly Administered** |
| **Debtors.** | |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

China Fishery Group Limited (Cayman) ("**China Fishery**"), and certain of its affiliated

debtors and debtors-in-possession (collectively, the "**Debtors**"), by their undersigned counsel,

hereby submit this motion (the "**Motion**") for an order substantially in the form attached hereto

as **Exhibit A** (the "**Proposed Order**"), authorizing the Debtors to retain and compensate certain

---

[1] The Debtors are China Fishery Group Limited (Cayman) ("China Fishery" or "CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), and Super Investment Limited (Cayman) ("Super Investment").

1

professionals utilized in the ordinary course of the Debtors' businesses in accordance with the procedures set forth below without the need for each professional to file formal application for retention and compensation.

In support of this Motion, the Debtors rely upon the *Declaration of Ng Puay Yee Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York and In Support of Debtors' First Day Motions and Applications* (the "**First Day Declaration**") [Docket No. 2] filed on June 30, 2016, and incorporated herein by reference, and respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On June 30, 2016 (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered under case number 16-11895 (JLG).

4.      To date, no creditors' committee has been appointed in these chapter 11 cases by the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**").

2

5.    The Debtors, along with certain non-Debtor affiliated entities, are part of a corporate family known as the Pacific Andes Group, which is one of the world's foremost vertically integrated seafood companies.  The Pacific Andes Group provides seafood products to leading global wholesalers, processors and food service companies, and has operations across the seafood value chain.

6.    As part of its business, the Pacific Andes Group engages in (or previously engaged in) harvesting, sourcing, ocean logistics and transportation, food safety testing, processing, marketing and distribution of frozen fish products, as well as fishmeal and fish oil. The Pacific Andes Group's businesses span the globe with major operations in the People's Republic of China, the United States and Peru, as well as processing businesses in China, Germany, France, the United States and Peru.

7.    The China Fishery group of companies (the "**CF Group**")[2], a subset of the Pacific Andes Group, sources, harvests, onboard-processes and delivers high quality mackerel to consumers around the world.  The CF Group is also one of the leading producers of fishmeal and fish oil through its processing plants located along Peru's coast.

8.    The Debtors are comprised primarily of investment holding companies and non-operating companies that previously were in the business of trading frozen seafood products or providing freight service.   The Debtors also include: Protein Trading, a fishmeal trading company; SPSA, which provides shipping agency services; CFGLPL, a property investment company; and CFIL, which provides treasury services to its affiliates.

---

[2] The Debtors in the CF Group are Ocean Expert, CFGL, Smart Group, Protein Trading, SPSA, CFG Peru Singapore, CFIL, Growing Management, Chanery, Champion, Target Shipping, Fortress, and CFGLPL.

9.      In addition to the Debtors in these chapter 11 cases, other entities included in the Pacific Andes Group may be the subject of bankruptcy, insolvency or equivalent proceedings in courts outside of the United States.

10.     CFG Investment S.A.C., Corporacion Pesquera Inca S.A.C. and Sustainable Fishing Resources, S.A.C., affiliates of the Debtors and part of the Pacific Andes Group and its subset the CF Group, are the subject of insolvency proceedings in Peru and the subject of chapter 15 filings before this Court.

11.     Pacific Andes Resources Development Limited ("**PARD**") and certain of its subsidiaries, also affiliates of the Debtors and part of the Pacific Andes Group were the subject of insolvency proceedings in Singapore.  On September 29, 2016, PARD filed a chapter 11 petition in this Court.  On September 26, 2016, the Singapore court supervising PARD's reorganization proceedings held that, notwithstanding the orders granted by the Singapore Court in July 2016 and August 2016, the Singapore court had no jurisdiction to restrain creditor actions outside the territorial confines of Singapore, and was therefore unable to provide PARD with the global protection it requires.  The Singapore court also held that it had no jurisdiction to provide relief for PARD's subsidiaries.  Although the Singapore court expressed its hope that PARD's reorganization could continue under the supervision of the Singapore court, lenders to PARD, in particular Malayan Banking Berhad and Cooperatieve Rabobank U.A., took actions against PARD by filing a winding up petition in the Supreme Court of Bermuda and applying for the appointment of provisional liquidators over PARD within hours of the Singapore court's decision.  PARD is in the process of withdrawing from the Singapore proceedings, having filed an affidavit with the Singapore court of its decision to withdraw therefrom.

4

12.     Richtown Development Limited is the subject of insolvency proceedings in the British Virgin Islands.

13.     On July 19, 2016, the Debtors filed applications to retain: (a) Meyer, Suozzi, English & Klein, P.C., as counsel for the Debtors [ECF Doc. No. 34]; (b) Goldin Associates, LLC, as financial advisor for the Debtors [ECF Doc. No. 32]; and (c) RSR Consulting, LLC, as restructuring consultant for the Debtors [ECF Doc. No. 33].   On August 18, 2016, the Court issued orders authorizing the retention and employment of Meyer, Suozzi, English & Klein, P.C. and RSR Consulting, LLC [ECF Doc. Nos. 88-89].   On August 19, 2016, the Court issued an order authorizing the retention and employment of Goldin Associates, LLC [ECF Doc. No. 92].

14.     On August 9, 2016, certain of the Debtors' creditors filed a *Motion For The Entry Of An Order Directing The Appointment Of A Chapter 11 Trustee Pursuant To 11 U.S.C. § 1104(a)(2)* (the "**Trustee Motion**") [ECF Doc. No. 57].   The Debtors' filed opposition to the Trustee Motion as did the ultimate equity holders of the Debtors, the Chapter 15 Debtors through special counsel and a number of creditors.   The parties engaged in extensive discovery and depositions in connection with the Trustee Motion, all of which was conducted on an expedited basis.   A trial on the Trustee Motion was held on August 29, 2016 and August 30, 2016.   The parties' post-trial submissions, including proposed findings of fact and conclusions of law, were filed with the Court on September 2, 2016.

15.     The Debtors' 341 meeting was held and closed on September 21, 2016.

16.     Additional factual background relating to the Debtors, their businesses and the commencement of these chapter 11 cases is set forth in detail in the First Day Declaration.

**RELIEF REQUESTED**

17.     The statutory bases for the relief requested herein are sections 105(a), 327, 330, and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**").

18.     By this Motion, the Debtors seek entry of the Proposed Order authorizing, but not directing, the Debtors to (i) retain and employ the Ordinary Course Professionals (as defined below) without the necessity of separate, formal retention applications approved by this Court for each Ordinary Course Professional, which employment shall be effective *nunc pro tunc* to the Petition Date, and (ii) compensate, subject to certain limits set forth below, and reimburse the expenses of the Ordinary Course Professionals without the necessity of any further Court approval.

A.     **Ordinary Course Professionals**

19.     The Debtors employ various professionals (each, an "**Ordinary Course Professional**" or "**OCP**" and, collectively, the "**Ordinary Course Professionals**" or "**OCPs**"). The OCPs render services to the Debtors in a variety of matters unrelated to these chapter 11 cases. Such OCPs will not play central roles in the administration of these Chapter 11 cases. A list of the Debtors' current and anticipated OCPs is attached hereto as **Exhibit B**.[3]

20.     Notwithstanding the Debtors' belief that certain of the OCPs are not "professional persons" as contemplated by section 327 of the Bankruptcy Code, out of an abundance of caution, the Debtors hereby move this Court for entry of an order authorizing, but not directing, the retention and payment of all OCPs on the terms set forth herein.

---

[3] The Debtors continue to review the list of OCPs and, to the extent of any changes, will supplement such list with separate filing on the Court's docket.

21.    The Debtors submit that the continued employment and compensation of the OCPs is in the best interests of their estates, creditors and other parties-in-interest. Although the Debtors anticipate that the OCPs will wish to continue to provide services to the Debtors during these chapter 11 cases, many would not be in a position to do so if the Debtors cannot pay them on a regular basis.

22.    Without the background knowledge, expertise and familiarity that the OCPs have relative to the Debtors and their operations, the Debtors undoubtedly would incur additional and unnecessary expenses in educating and retaining replacement professionals. Accordingly, the Debtors' estates and their creditors are best served by avoiding any disruption in the professional services that are required for the day-to-day operation of the Debtors' businesses.

23.    Moreover, in light of the number of OCPs and the costs associated with the preparation of retention applications for those professionals who will receive relatively modest fees, the Debtors submit that it would be impractical, inefficient and extremely costly for the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for each OCP. Although some of the OCPs may hold relatively small unsecured claims against the Debtors in connection with services rendered to the Debtors prepetition, the Debtors do not believe that any of the OCPs have an interest materially adverse to the Debtors, their creditors or other parties-in-interest.

B.    **The Proposed OCP Procedures**

24.    Specifically, the Debtors request that the Court approve the following procedures (the "**OCP Procedures**") for retaining and compensating OCPs:[4]

> a.    Within thirty (30) days following the later of (i) entry of the Proposed Order or (ii) the commencement of services for a Debtor,

---

[4] For the avoidance of doubt, except as authorized by the Court, the OCP Procedures shall not apply to professionals retained by the Debtors pursuant to separate orders of the Court.

each OCP shall provide the Debtors' attorneys with (i) a declaration of disinterestedness (each, a "**Declaration of Disinterestedness**") substantially in the form attached hereto as **Exhibit C** and (ii) a completed retention questionnaire substantially in the form attached hereto as **Exhibit D** (the "**Retention Questionnaire**").

b. The Debtors shall subsequently file the Declaration of Disinterestedness and the Retention Questionnaire with the Court and serve a copy upon: (i) the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), and (ii) U.S. counsel for Standard Chartered Bank (Hong Kong) Limited, Cooperatieve Rabobank, U.A., DBS Bank (Hong Kong) Limited, an ad hoc noteholders committee, Bank of America N.A., Malayan Banking Berhad, Hong Kong Branch and Fredrich von Kaltenborn-Stachue, the insolvency administrator for the Pickenpack companies, and (iii) counsel to any official committee appointed in these chapter 11 cases (each a "**Notice Party**" and collectively, the "**Notice Parties**");

c. The Notice Parties shall have fifteen (15) days after the filing and service of a Declaration of Disinterestedness to object to the retention of the OCP (the "**Objection Deadline**"). Any objecting party shall serve its objection upon the Notice Parties, the Debtors' attorneys and the relevant OCP on or before the Objection Deadline. If an objection cannot be resolved within ten (10) days after the Objection Deadline, then the retention of the OCP that is the subject of the objection shall be scheduled for hearing by the Debtors at the next regularly scheduled hearing date that is no less than twenty (20) days from that date or on a date otherwise agreed to by the parties. The Debtors shall not be authorized to retain and pay such OCP until all outstanding objections have been withdrawn, resolved or overruled by order of the Court.

d. If no objection is received from any of the Notice Parties prior to the expiration of the Objection Deadline with respect to an OCP, the Debtors shall be authorized to retain and pay that OCP in accordance with the OCP Procedures *nunc pro tunc* to the Petition Date or the date on which the OCP commenced services, without further order from this Court.

e. The Debtors are authorized to retain an OCP and pay such OCP, without formal application to the Court by any OCP, 100% of fees and disbursements to each of the OCPs retained by the Debtors after such OCP has on file with the Court and properly served on the Notice Parties a (i) Declaration of Disinterestedness and the

8

Retention Questionnaire for which the Objection Deadline lapses and no objections are pending and (ii) submits to the Debtors an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date; provided, however, that each OCP's fees, excluding costs and disbursements, do not exceed $75,000 per month on a rolling three-month basis (the "**OCP Monthly Cap**").

f.      To the extent that fees payable to any OCP exceed the OCP Monthly Cap set forth in sub-paragraph (e) above, the OCP shall file a fee application (a "**Fee Application**") with the Court for the amount in excess of the OCP Monthly Cap in accordance with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), the fee guidelines promulgated by the Executive Office of the United States Trustee, and any applicable orders of the Court, unless the U.S. Trustee agrees otherwise.

g.      In the event that an OCP incurs more than $500,000 during the course of these chapter 11 cases, such professional shall file an application with the Court (i) to be retained in accordance with section 327 of the Bankruptcy Code and (ii) for the full amount of its fees and expenses incurred during the course of these chapter 11 cases in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the fee guidelines promulgated by the U.S. Trustee and any and all orders of the Court.

h.      At three month intervals during the pendency of these chapter 11 cases, beginning ninety (90) days after the Petition Date, and for each three-month period thereafter (each, a "**Quarter**"), the Debtors shall file with the Court and serve on the Notice Parties, no later than thirty (30) days after such Quarter, a statement that shall include the following information for each OCP: (i) the name of the OCP; (ii) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by that OCP during the reported Quarter; (iii) all postpetition payments made to that OCP to date; and (iv) a general description of the services rendered by that OCP.

i.      The Debtors reserve the right to retain additional OCPs from time to time during these chapter 11 cases by (i) including such OCPs on an amended version of **Exhibit B** attached to the Motion that is

9

filed with the Court and served on the Notice Parties and (ii) having such OCPs comply with the OCP Procedures.

25.    The Debtors reserve the right, upon notice and a hearing, to amend the compensation limits described above.

### **BASIS FOR RELIEF**

26.    Section 327(a) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

27.    Section 327(e) of the Bankruptcy Code provides that "with court's approval" a debtor may employ:

> for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

28.    In determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code and, therefore, must be retained by express approval of the court, courts generally consider whether such entity is involved in the actual reorganization effort, rather than a debtor's ongoing business operations. *See, e.g.*, *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) ("[T]he phrase 'professional persons,' as used in § 327(a), is a term of art reserved for those persons who play an intimate role in the reorganization of a debtors' estate."); *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) ("[P]ersons in

10

occupations ordinarily considered professions are not necessarily professionals whose retention

by the estate requires court approval. For the purposes of section 327(a), 'professional person' is

limited to persons in those occupations which play a central role in the administration of the

debtor proceeding."). In making this determination, courts often consider the following factors

in determining whether an entity is a "professional" within the meaning of section 327 of the

Bankruptcy Code:

a.      whether the entity controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization;

b.      whether the entity is involved in negotiating the terms of a plan of reorganization;

c.      whether the entity is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

d.      whether the entity is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate; the extent of the entity's involvement in the administration of the debtor's estate; and

e.      whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

*See, e.g., In re First Merchs. Acceptance Corp.*, No. 97-1500, 1997 WL 873551, at *3 (D. Del.

Dec. 15, 1997) (listing factors); *In re Sieling Assocs. Ltd. P'ship*, 128 B.R. 721, 723 (Bankr. E.D.

Va. 1991) (authorizing the debtor to retain an environmental consultant in the ordinary course of

business); *In re Riker Indus., Inc.*, 122 B.R. 964, 973-74 (Bankr. N.D. Ohio 1990) (not requiring

section 327 of the Bankruptcy Code approval of the fees of a management and consulting firm

that performed only "routine administrative functions" and whose "services were not central to

[the] bankruptcy case"); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (only those

professionals involved in the actual reorganization effort, rather than debtors' ongoing business, require approval under section 327 of the Bankruptcy Code).

29.    The foregoing factors must be considered as a whole when determining if an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code.  None of the factors alone is dispositive. Considering all of the factors, the Debtors do not believe that the OCPs are "professionals" requiring full retention under section 327 of the Bankruptcy Code.

30.    The OCPs will not be involved in the administration of these chapter 11 cases. Instead, the OCPs will provide services in connection with the Debtors' ongoing business operations, which services are ordinarily provided by non-bankruptcy professionals.  Many of the OCP's are located and perform services outside of the United States.  Nevertheless, to provide clarity and an opportunity for oversight, the Debtors seek the relief requested herein to establish clear mechanisms for the retention and payment of the OCPs and thereby avoid any subsequent controversy with respect thereto.

31.    Moreover, bankruptcy courts in this district have regularly approved similar OCP Procedures in other chapter 11 cases. *See, e.g., In re Nautilus Holdings Limited*, Case No. 14-22885 (Bankr. S.D.N.Y. July 11, 2014); *In re Genco Shipping & Trading Limited*, Case No. 14-11108 (Bankr. S.D.N.Y. May 16, 2014); *In re Excel Maritime Carries Ltd.*, Case No. 13-23060 (Bankr. S.D.N.Y. Aug. 5, 2013); *In re Great Atl. & Pac. Tea Co.*, Case No. 10-24549 (Bankr. S.D.N.Y. Jan. 12, 2011). The Debtors submit that the present circumstances warrant similar relief in these chapter 11 cases.

32.    In light of the number of OCPs and the costs associated with the preparation of retention applications for professionals who will receive relatively modest fees, the Debtors submit that it would be impractical, inefficient and extremely costly for the Debtors and their

legal advisors to prepare and submit individual applications and proposed retention orders for each OCP. Therefore, the Debtors submit it is in the best interest of all creditors and parties-in-interest to avoid any disruption in the professional services that are required for the day-to-day operation of the Debtors' businesses by retaining and compensating the OCPs in accordance with the OCP Procedures.

## NOTICE

33.    No creditors' committee, trustee, or examiner has been appointed in these chapter 11 cases. The Debtors have provided notice of this Motion to the following parties, or, in lieu thereof, their counsel: (a) the Office of the U.S. Trustee for the Southern District of New York; (b) creditors holding the fifty largest claims as set forth in the consolidated list filed with the Debtors' petitions; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the United States Securities and Exchange Commission; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. A copy of this Motion is also available on the Court's website. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

## NO PRIOR REQUEST

34.    No prior motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the

Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, and (b) grant the

Debtors such other and further relief as is just and proper.

Dated: October 7, 2016
        New York, New York

                                MEYER, SUOZZI, ENGLISH & KLEIN, P.C.


                                By:    */s/ Edward J. LoBello*_____
                                       **Howard B. Kleinberg**
                                       **Edward J. LoBello**
                                       **Jil Mazer-Marino**
                                **1350 Broadway, Suite 501**
                                **New York, New York 10018**
                                **(212) 239-4999**

                                *Counsel to the Debtors and Debtors in Possession*

**EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:                                              Chapter 11

**CHINA FISHERY GROUP LIMITED**                     Case No. 16-11895 (JLG)
**(CAYMAN)**, *et al.*,[1]

                                                    **Jointly Administered**

                    **Debtors.**

---

## ORDER IMPLEMENTING PROCEDURES TO
## RETAIN, COMPENSATE AND REIMBURSE PROFESSIONALS
## UTILIZED IN THE ORDINARY COURSE OF BUSINESS

Upon the motion, dated October 7, 2016 (the "**Motion**"),[2] of China Fishery Group

Limited (Cayman) ("**China Fishery**"), and certain of its affiliated debtors and debtors-in-

possession (collectively, the "**Debtors**"), for an order (this "**Order**"), authorizing the Debtors'

retention and compensation of certain professionals utilized in the ordinary course of business;

and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334;

and venue of these chapter 11 cases and the Motion in this district being proper pursuant to 28

U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. §

157(b); and this Court having found that proper and adequate notice of the Motion and the relief

requested therein has been provided in accordance with the Bankruptcy Rules and the Local

Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and

objections (if any) to the Motion having been withdrawn or overruled on the merits; and a

---

[1] The Debtors are China Fishery Group Limited (Cayman) ("China Fishery" or "CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), and Super Investment Limited (Cayman) ("Super Investment").

[2] All capitalized terms used and not defined herein shall have the meaning ascribed to them in the Motion.

hearing having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not required, to retain and pay reasonable fees and expenses for the services of various professionals listed on **Exhibit B** attached to the Motion in the ordinary course of their businesses (each, an ordinary course professional or "**OCP**" and, collectively, the "**OCPs**"),[3] *nunc pro tunc* to the Petition Date, to assist and advise the Debtors in the operation of their businesses and to defend the Debtors in matters arising in the ordinary course of the Debtors' businesses.

3.      The following procedures (the "**OCP Procedures**") for the retention of OCPs are hereby approved :

a.      Within thirty (30) days following the later of (i) entry of this Order or (ii) the commencement of services for a Debtor, each OCP shall provide the Debtors' attorneys with (i) a declaration of disinterestedness (each, a "**Declaration of Disinterestedness**") substantially in the form attached to the Motion as **Exhibit B** and (ii) a completed retention questionnaire substantially in the form attached to the Motion as **Exhibit C** (the "**Retention Questionnaire**").

b.      The Debtors shall subsequently file the Declaration of Disinterestedness and the Retention Questionnaire with the Court and serve a copy upon: (i) the Office of the United States Trustee

---

[3] Except as authorized by the Court, the OCP Procedures shall not apply to professionals retained by the Debtors pursuant to separate order of the Court.

2

for the Southern District of New York (the "**U.S. Trustee**"), and (ii) U.S. counsel for Standard Chartered Bank (Hong Kong) Limited, Cooperatieve Rabobank, U.A., DBS Bank (Hong Kong) Limited, an ad hoc noteholders committee, Bank of America N.A., Malayan Banking Berhad, Hong Kong Branch and Fredrich von Kaltenborn-Stachue, the insolvency administrator for the Pickenpack companies, and (iii) counsel to any official committee appointed in these chapter 11 cases (each a "**Notice Party**" and collectively, the "**Notice Parties**").

c.     The Notice Parties shall have fifteen (15) days after the filing and service of a Declaration of Disinterestedness to object to the retention of the OCP (the "**Objection Deadline**"). Any objecting party shall serve its objection upon the Notice Parties, the Debtors' attorneys and the relevant OCP on or before the Objection Deadline. If an objection cannot be resolved within ten (10) days after the Objection Deadline, then the retention of the OCP that is the subject of the objection shall be scheduled for hearing by the Debtors at the next regularly scheduled hearing date that is no less than twenty (20) days from that date or on a date otherwise agreed to by the parties. The Debtors shall not be authorized to retain and pay such OCP until all outstanding objections have been withdrawn, resolved or overruled by order of the Court.

d.     If no objection is received from any of the Notice Parties prior to the expiration of the Objection Deadline with respect to an OCP, the Debtors shall be authorized to retain and pay that OCP in accordance with the OCP Procedures *nunc pro tunc* to the Petition Date or the date on which the OCP commenced services, without further order from this Court.

e.     The Debtors are authorized to retain an OCP and pay such OCP, without formal application to the Court by any OCP, 100% of fees and disbursements to each of the OCPs retained by the Debtors after such OCP has on file with the Court and properly served on the Notice Parties a (i) Declaration of Disinterestedness and the Retention Questionnaire for which the Objection Deadline lapses and no objections are pending and (ii) submits to the Debtors an appropriate invoice setting forth in reasonable detail the nature of the services to be rendered after the Petition Date; provided, however, that each OCP's fees, excluding costs and disbursements, do not exceed $75,000 per month on a rolling three-month basis (the "**OCP Monthly Cap**").

f.     To the extent that fees payable to any OCP exceed the OCP Monthly Cap set forth in sub-paragraph (e) above, the OCP shall

file a fee application (a "**Fee Application**") with the Court for the amount in excess of the OCP Monthly Cap in accordance with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), the fee guidelines promulgated by the Executive Office of the United States Trustee, and any applicable orders of the Court, unless the U.S. Trustee agrees otherwise.

g.  In the event that an OCP incurs more than $500,000 during the course of these chapter 11 cases, such professional shall file an application with the Court (i) to be retained in accordance with section 327 of the Bankruptcy Code and (ii) for the full amount of its fees and expenses incurred during the course of these chapter 11 cases in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the fee guidelines promulgated by the U.S. Trustee, and any and all orders of the Court.

h.  At three month intervals during the pendency of these chapter 11 cases, beginning ninety (90) days after the Petition Date, and for each three-month period thereafter (each, a "**Quarter**"), the Debtors shall file with the Court and serve on the Notice Parties, no later than thirty (30) days after such Quarter, a statement that shall include the following information for each OCP: (i) the name of the OCP; (ii) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by that OCP during the reported Quarter; (iii) all postpetition payments made to that OCP to date; and (iv) a general description of the services rendered by that OCP.

i.  The Debtors reserve the right to retain additional OCPs from time to time during these chapter 11 cases by (i) including such OCPs on an amended version of **Exhibit B** attached to the Motion that is filed with the Court and served on the Notice Parties and (ii) having such OCPs comply with the OCP Procedures.

4.  The Debtors may amend the compensation limitations set forth in this Order upon motion to the Court and due notice to parties-in-interest, including the Notice Parties.

5.  The form of Declaration of Disinterestedness is approved.

6.  The form of Retention Questionnaire is approved.

4

7.      This Order shall not apply to any professional retained by the Debtors pursuant to a separate order of the Court.

8.      The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

9.      The requirements set forth in Local Rule 9013-1(b) are satisfied.

10.     This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

11.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

Dated: _____, 2016
      New York, New York


                      _____
                      HON. JAMES L. GARRITY
                      UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

## Ordinary Course Professionals List

## Ordinary Course Professionals List[1]

| Name of Professional | Address / Contact | Services Provided |
|---|---|---|
| B.A.C.S. Private Limited | 8 Robinson Road, #03-00 ASO Building Singapore 048544 | Share registrar services |
| Baker & McKenzie | 14th Floor, Hutchison House, 10 Harcourt Road, Central, Hong Kong | Non-bankruptcy legal services / Regulatory compliance |
| BMI Appraisals Limited | 33rd Floor, Shui On Centre, 6-8 Harbour Road, Wanchai, Hong Kong | Valuation/Appraisal services |
| David Lim & Partners LLP | 50 Raffles Place, #17-01 Singpore Land Tower, Singapore 048623 | Non-bankruptcy legal services |
| Deloitte & Touche LLP | 6 Shenton Way, OUE Downtown 2 #32-00, Singapore 068809 | Accounting and tax services |
| Deloitte Touche Tohmatsu | 35/F One Pacific Place, 88 Queensway, Admiralty, Hong Kong | Accounting and tax services |
| Drew & Napier LLC | 10 Collyer Quay, #10-11. Ocean Financial Centre, Singapore 049315 | Non-bankruptcy legal services / Regulatory (Compliance) |
| Epiq Systems Limited | 1102-1104 Central Plaza, 18 Harbour Road, Wanchai, Hong Kong | Non-bankruptcy legal support |
| Estera Corporate Services (HK) Limited | 2206-19 Jardine House, 1 Connaught Road Central, Hong Kong | Non-bankruptcy legal services / Corporate |
| Forbes Hare | 4th Floor Qwomar Building, Road Town, Tortola, British Virgin Islands VG 1110 | Non-bankruptcy legal services |
| GenNex Financial Media Limited | 9/F, Gloucester Tower, The Landmark, 15 Queen's Road Central, Hong Kong | Printing services for annual reports and public announcements |
| Haldanes | 7/F Ruttonjee House, 11 Duddell Street, Central, Hong Kong | Non-bankruptcy legal services / litigation |
| Ho, Justin | 16/F., One Pacific Place, 88 Queensway, HK | Non-bankruptcy legal services / litigation |

[1] The list of Ordinary Course Professionals includes companies which provide legal support, printing services and share registrar services such as Epiq Systems Limited, GenNex Financial Media Limited, B.A.C.S. Private Limited and Tricor Services Limited. Although these companies provide services for the Debtors more appropriately characterized as clerical, rather than professional, they are being included out of abundance of caution.

1

| Kwon Yih & Chan | Suites 2103-05, 21/F, Queen's Road Central, Hong Kong | Non-bankruptcy legal services |
| Liaoning Movictor Law Firm | Room 1207, Anda Building, No. 78 Luxun Road, Zhongshan Distract, Dalian 116001 | Non-bankruptcy legal services / litigation |
| Ng, Bernard | Unit 906, 9/F, CC Wu Building, 302-308 Hennessy Road, Wanchai, Hong Kong | Accounting and tax services |
| PA Corporate Advisory Service Limited | Unit 906, 9/F, CC Wu Building, 302-308 Hennessy Road, Wanchai, Hong Kong | Accounting and tax services |
| Reed Smith Richards Butler | 20/F Alexandra House, 18 Chater House, Hong Kong | Non-bankruptcy legal services / Regulatory |
| RSM Corporate Advisory (Hong Kong) Limited | 29/F Lee Garden Two. 27 Yun Ping Road, Causeway Bay, Hong Kong | Accounting and tax services |
| Tricor Services Limited | Level 54, Hopewell Centre, 183 Queen's Road East, Hong Kong | Share registrar services |

## EXHIBIT C

### Declaration of Disinterestedness

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                          Chapter 11

**CHINA FISHERY GROUP LIMITED**              Case No. 16-11895 (JLG)
**(CAYMAN)**, *et al.*,[1]
                                                **Jointly Administered**
                        Debtors.

## DECLARATION OF DISINTERESTEDNESS

I, _____, declare under penalty of perjury:

1.    I am a _____ [position] of _____

_____ [Firm], located at _____ [Street, City, State, Zip Code] (the

"**Firm**").

2.    China Fishery Group Limited (Cayman) and its affiliated debtors and debtors-in-

possession in the above-captioned cases (collectively, the "**Debtors**"), have requested that the

Firm provide _____

_____ [specific description]

services to the Debtors, and the Firm has consented to provide such services.

3.    The Firm may have performed services in the past, may currently perform

services and may perform services in the future, in matters unrelated to these chapter 11 cases,

for persons that are parties-in-interest in these chapter 11 cases.  The Firm does not perform

---

[1] The Debtors are China Fishery Group Limited (Cayman) ("China Fishery" or "CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), and Super Investment Limited (Cayman) ("Super Investment").

1

services for any such person in connection with these chapter 11 cases, or have any relationship with any such person, their attorneys or accountants that would be adverse to the Debtors or their estates.

    4.    As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants against or employees of the Debtors, or other parties-in-interest in these chapter 11 cases.

    5.    Neither I, nor any principal, partner, director, officer of, or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm.

    6.    Neither I, nor any principal, partner, director, officer of, or professional employed by the Firm, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Firm is to be employed.

    7.    The Debtors owe the Firm $[_____] for prepetition services, the payment of which is subject to limitations contained in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

    8.    As of the Petition Date, the Firm **[was/was not]** party to an agreement for indemnification with certain of the Debtors. A copy of such agreement is attached as <u>Exhibit</u> 1 to this Declaration.

    9.    [The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its

employment, if the Firm should discover any facts bearing on the matters described herein, the

Firm will supplement the information contained in this Declaration.][2]

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: _____, 2016

 

                                       _____
                                              [DECLARANT]

---

[2] If necessary.

3

**EXHIBIT D**

**Retention Questionnaire**

In re China Fishery Group Limited (Cayman), *et al.*
Chapter 11 Case No. 16-11895 (JLG) (Bankr. S.D.N.Y.)

## RETENTION QUESTIONNAIRE

TO BE COMPLETED BY PROFESSIONALS EMPLOYED BY CHINA FISHERY GROUP
LIMITED (CAYMAN) OR ANY OF ITS DEBTOR AFFILIATES (collectively, the "**Debtors**").

DO NOT FILE THIS QUESTIONNAIRE WITH THE COURT.  RETURN IT FOR FILING BY
THE DEBTORS, TO:

        Meyer, Suozzi, English & Klein, P.C.
        990 Stewart Avenue, Suite 300
        P.O. Box 9194
        Garden City, NY  11530
        Telephone: (516) 741-6565
        Facsimile: (516) 741-6706
        Attention:  Howard B. Kleinberg (hkleinberg@msek.com)

All questions **must** be answered.  Please use "none," "not applicable," or "N/A," as appropriate.
If more space is needed, please complete on a separate page and attach.

1.     Name and address of firm:

      _____

      _____

      _____

      _____

2.     Date of retention:   _____

3.     Type of services provided (accounting, legal, etc.):

      _____

      _____

      _____

      _____

1

4.    Brief description of services to be provided:

_____

_____

_____

_____

5.    Arrangement for compensation (hourly, contingent, etc.):

_____

(a)    Average hourly rate (if applicable):

_____

(b)    Estimated average monthly compensation based on prepetition retention (if firm was employed prepetition):

_____

6.    Prepetition claims against the Debtors held by the firm:

Amount of claim:    $ _____

Date claim arose:    _____

Source of claim:    _____

7.    Prepetition claims against the Debtors held individually by any member, associate, or professional employee of the firm:

Name:    _____

Status:    _____

Amount of claim:    _____

Date claim arose:    _____

Source of claim:    _____

8.      Disclose the nature and provide a brief description of any interest adverse to the Debtors or to their estates with respect to the matters on which the above-named firm is to be employed.

_____

_____

_____

_____

9.      Name of individual completing this form:

_____

3

1131130