**Hearing Date: October 25, 2016 at 2:00 p.m. (NY Time)**
**Objection Deadline: October 18, 2016 at 4:00 p.m. (NY Time)**

Howard B. Kleinberg, Esq.
Edward J. LoBello, Esq.
Jil Mazer-Marino, Esq.
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
1350 Broadway, Suite 501
New York, New York 10018
Telephone: (212) 239-4999
Email: hkleinberg@msek.com
        elobello@msek.com
        jmazermarino@msek.com

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **CHINA FISHERY GROUP LIMITED (CAYMAN),** *et al.,*[1] | Case No. 16-11895 (JLG) |
| Debtors. | Jointly Administered |

## NOTICE OF HEARING ON DEBTORS' MOTION FOR AN ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

**PLEASE TAKE NOTICE** that a hearing (the "**Hearing**") on the *Debtors' Motion for an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* (the "**Motion**"), a copy of which is attached hereto, filed on behalf of the above-captioned debtor China Fishery Group Limited (Cayman) ("**China Fishery**"), and certain of its affiliated debtors and debtors-in-possession (collectively, the

---

[1] The Debtors are China Fishery Group Limited (Cayman) ("China Fishery" or "CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), and Super Investment Limited (Cayman) ("Super Investment").

"**Debtors**"), will be held before the Honorable James L. Garrity Jr., United States Bankruptcy Judge (the "**Court**"), in Courtroom 601 at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004-1408 on **October 25, 2016 at 2:00 p.m. (NY Time)** or as soon thereafter as counsel can be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion and the relief requested therein, if any, shall be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York, set forth the basis for the response or objection and the specific grounds therefor, and shall be filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with two hard copies delivered directly to Chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as to be actually received no later than **October 18, 2016 at 4:00 p.m. (NY Time)** (the "**Objection Deadline**") by: (a) counsel for the Debtors, Meyer, Suozzi, English & Klein, P.C., 990 Stewart Avenue, Suite 300, P.O. Box 9194, Garden City, New York 11530-9194, Attention: Howard Kleinberg, Esq., Edward J. LoBello, Esq. and Jil Mazer-Marino, Esq., and (b) the Office of the United States Trustee, 201 Varick Street, Room 1006, New York, NY 10006, Attn: Susan Golden.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion and any pleadings may be obtained by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

**PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Court an order substantially in the form annexed as **Exhibit A** to the Motion, which order the Court may enter with no further notice or opportunity to be heard.

**Dated: October 7, 2016**
    **New York, New York**

                              **MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**


                              By:    */s/ Howard B. Kleinberg*_____
                                     **Howard B. Kleinberg**
                                     **Edward J. LoBello**
                                     **Jil Mazer-Marino**
                              **1350 Broadway, Suite 501**
                              **New York, New York 10018**
                              **(212) 239-4999**

                              *Counsel to the Debtors and Debtors in Possession*

Hearing Date: October 25, 2016 at 2:00 p.m.
Objection Deadline: October 18, 2016 at 4:00 p.m.

Howard B. Kleinberg, Esq.
Edward J. LoBello, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
1350 Broadway, Suite 501
New York, New York 10018
Telephone: (212) 239-4999
Email: hkleinberg@msek.com
Email: elobello@msek.com
Email: jmazermarino@msek.com

*Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **CHINA FISHERY GROUP LIMITED (CAYMAN),** *et al.,*[1] | Case No. 16-11895 (JLG) |
| | **Jointly Administered** |
| Debtors. | |

## DEBTORS' MOTION FOR AN ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

China Fishery Group Limited (Cayman) ("**China Fishery**"), and certain of its affiliated

debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby submit this motion (the

"**Motion**") for an entry of an order, substantially in the form attached hereto as **Exhibit A** (the

---

[1] The Debtors are China Fishery Group Limited (Cayman) ("CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), and Super Investment Limited (Cayman) ("Super Investment").

"**Proposed Order**"), extending by 150 days the exclusive periods during which only the Debtors may file a chapter 11 plan and solicit acceptances thereof. Specifically, the Debtors seek to (a) extend the exclusive period to file a chapter 11 plan (the "**Exclusive Filing Period**") for each Debtor through and including March 30, 2017, and (b) extend the exclusive period to solicit acceptances of a chapter 11 plan of each Debtor (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**") through and including May 31, 2017.

In support of this Motion, the Debtors rely upon the *Declaration of Ng Puay Yee Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York and In Support of Debtors' First Day Motions and Applications* (the "**First Day Declaration**") [ECF Doc. No. 2] filed on June 30, 2016, and incorporated herein by reference, and respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.      GENERAL

3.      On June 30, 2016 (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated

for procedural purposes only and are being jointly administered under case number 16-11895 (JLG).

4.      To date, no creditors' committee has been appointed in these chapter 11 cases by the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**").  As discussed below, on August 9, 2016, certain creditors filed a motion for the appointment of a trustee.  To date, the Court has not ruled on such motion and no trustee has been appointed.

5.      The Debtors, along with certain non-Debtor affiliated entities, are part of a corporate family known as the Pacific Andes Group, which is one of the world's foremost vertically integrated seafood companies.  The Pacific Andes Group provides seafood products to leading global wholesalers, processors and food service companies and has operations across the seafood value chain.

6.      As part of its business, the Pacific Andes Group engages in (or previously engaged in) harvesting, sourcing, ocean logistics and transportation, food safety testing, processing, marketing and distribution of frozen fish products, as well as fishmeal and fish oil. The Pacific Andes Group's businesses span the globe with major operations in the People's Republic of China, the United States and Peru, as well as processing businesses in China, the United States and Peru.

7.      The China Fishery group of companies (the "**CF Group**")[2], a subset of the Pacific Andes Group, sources, harvests, onboard-processes and delivers high quality mackerel to

---

[2] The Debtors in the CF Group are Ocean Expert, CFGL, Smart Group, Protein Trading, SPSA, CFG Peru Singapore, CFIL, Growing Management, Chanery, Champion, Target Shipping, Fortress, and CFGLPL.

consumers around the world. The CF Group is also one of the leading producers of fishmeal and fish oil through its processing plants located along Peru's coast.

8.    In addition to the Debtors in these chapter 11 cases, other entities included in the Pacific Andes Group are the subject of bankruptcy, insolvency or equivalent proceedings in courts inside or outside of the United States.

9.    CFG Investment S.A.C., Corporacion Pesquera Inca S.A.C. and Sustainable Fishing Resources, S.A.C. (the "**Chapter 15 Debtors**"), affiliates of the Debtors and part of the Pacific Andes Group, and its subset the CF Group, are the subject of insolvency proceedings in Peru and the subject of chapter 15 filings before this Court.

10.    Pacific Andes Resources Development Limited ("**PARD**") and certain of its subsidiaries, also affiliates of the Debtors and part of the Pacific Andes Group were the subject of insolvency proceedings in Singapore. On September 29, 2016, PARD filed a chapter 11 petition in this Court. On September 26, 2016, the Singapore court supervising PARD's reorganization proceedings held that, notwithstanding the orders granted by the Singapore Court in July 2016 and August 2016, the Singapore court had no jurisdiction to restrain creditor actions outside the territorial confines of Singapore, and was therefore unable to provide PARD with the global protection it requires. The Singapore court also held that it had no jurisdiction to provide relief for PARD's subsidiaries. Although the Singapore court expressed its hope that PARD's reorganization could continue under the supervision of the Singapore court, lenders to PARD, in particular Malayan Banking Berhad and Cooperatieve Rabobank U.A., took actions against PARD by filing a winding up petition in the Supreme Court of Bermuda and applying for the appointment of provisional liquidators over PARD within hours of the Singapore court's

decision.[3]  PARD is in the process of withdrawing from the Singapore proceedings, having filed

an affidavit with the Singapore court of its decision to withdraw therefrom.

11.    In addition, Richtown Development Limited ("**Richtown**"), a wholly owned

subsidiary of PARD, is the subject of insolvency proceedings in the British Virgin Islands.  On

June 30, 2016, Richtown consented to the appointment of a provisional liquidator over it and a

provisional liquidator was appointed for the purpose of preserving the assets of Richtown and

implementing a global restructuring.

12.    The Debtors' meeting with creditors pursuant to 11 U.S.C §341 was held on

September 21, 2016 and closed.

13.    These chapter 11 cases involve sixteen Debtors[4] with over 150 affiliates and the

restructuring of $1.7 billion in unsecured funded debt.  The Debtors' businesses constitute an

international enterprise involving assets located throughout the world and include three publicly-

traded companies.  The debt structure is complicated, with the $1.7 billion in debt comprised of

over thirty separate credit facilities, with different primary obligors and guarantors, but with

many of these facilities having overlapping obligors.

B.    **CHAPTER 11 CASE EVENTS**

14.    On the Petition Date, the Debtors filed a *Motion For An Order Extending Time To

File Lists, Schedules And Statements And Waiving Certain Requirements* (the "**Schedules

Extension Motion**") [ECF Doc. No. 4] seeking an extension of time to file the Debtors'

---

[3] In fact, these lenders sought to appoint persons from FTI Consulting as provisional liquidators over PARD, and these were the same persons involved in the preparation of the FTI report.  This FTI report was the basis on which HSBC applied for the appointment of joint provisional liquidators of CFGL and CFIL, and these joint provisional liquidators were eventually discharged.

[4] A motion to jointly administer PARD's chapter 11 case with the Debtors cases is being filed contemporaneously with this Motion.

Schedules of Assets and Liabilities and Statements of Financial Affairs and waiver of the requirements to file initial Bankruptcy Rule 2015.3 Reports.

15.    Pursuant to an order of this Court entered on July 18, 2016 (the "**Schedules Extension Order**") [ECF Doc. No. 30], the Debtors filed their Schedules and Statements of Financial Affairs (collectively, the "**Schedules**") for four of the Debtors on July 29, 2016 and for the remaining twelve Debtors on August 15, 2016.  In addition, pursuant to the Schedules Extension Order, the Debtors filed their initial Bankruptcy Rule 2015.3 Reports -- for over 150 entities -- on August 19, 2016 and September 2 and 7, 2016.

16.    On July 15, 2016, the Debtors filed their *Motion For Entry Of Order Authorizing The Debtors To (A) Continue Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, And (C) Maintain Existing Bank Accounts* (the "**Cash Management Motion**") [ECF Doc. No. 29].  By the Cash Management Motion, the Debtors sought permission to maintain their existing bank accounts and cash management system.  In addition, to the extent the Debtors' bank accounts did not comply with the requirements of Bankruptcy Code section 345, the Debtors sought permission to maintain their existing bank accounts for an additional forty-five days in order to come into compliance with Bankruptcy Code section 345.

17.    After discussions with certain creditors, the Debtors agreed to modify the form of the proposed cash management order to provide the advisors to those creditors with: (a) 13-week cash flow projections; (b) monthly disclosure of bank balances for over 150 non-Debtor affiliates; and (c) monthly disclosure of intercompany account balances and transactions between the Debtors and all non-Debtor affiliates.  The agreement was memorialized in the *Order Authorizing The Debtors To (A) Continue Their Cash Management System, (B) Honor Certain*

*Prepetition Obligations Related Thereto, And (C) Maintain Existing Bank Accounts* ("**Cash Management Order**"). [ECF Doc. No. 93].

18.     To date, the Debtors have produced on a timely basis all information agreed to under the Cash Management Order.

19.     On August 9, 2016, certain of the Debtors' creditors (the "**Adverse Lenders**") filed or joined a *Motion For The Entry Of An Order Directing The Appointment Of A Chapter 11 Trustee Pursuant To 11 U.S.C. § 1104(a)(2)* (the "**Trustee Motion**") [ECF Doc. No. 57]. The Debtors filed their opposition to the Trustee Motion on August 23, 2016 [ECF Doc. No. 100]. Numerous creditors also filed papers in opposition to the Trustee Motion. [ECF Doc. Nos. 91, 96, 97, 98, 110, 111 and 118.] For nearly three weeks after the Trustee Motion was filed, the parties engaged in extensive discovery and depositions in connection with the Trustee Motion, all of which was conducted on an expedited basis. Preparations for the trial on the Trustee Motion required devotion of extensive Debtor management and professional time and attention. A trial on the Trustee Motion was held on August 29, 2016 and August 30, 2016. The parties' post-trial submissions, including proposed findings of fact and conclusions of law, were filed with the Court on September 2, 2016. The Trustee Motion remains *sub judice*.

20.     As described in detail below, since the Trustee Motion the Debtors have turned their attention to formulating potential plan structures -- including meeting with creditors to ascertain their views -- as well as dealing with various motions, several relating to the Debtors' ability to formulate, negotiate and confirm a plan, including this Motion.

## RELIEF REQUESTED

21.     By this Motion, the Debtors request entry of the Proposed Order, pursuant to section 1121(d) of the Bankruptcy Code, extending (a) the Exclusive Filing Period through and

including March 30, 2017, and (b) the Exclusive Solicitation Period through and including May 31, 2017, in each case without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

## BASIS FOR RELIEF

### A.    Legal Standard for Extending the Exclusivity Periods

22.    The statutory predicate for the relief requested herein is section 1121 of the Bankruptcy Code.  Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan.  Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has an exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptances of its plan.  The Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on October 28, 2016 and December 27, 2016, respectively.

23.    The Debtors request, pursuant to section 1121(d) of the Bankruptcy Code, an extension of the Exclusive Filing Period to and including March 30, 2017 and the Exclusive Solicitation Period to and including May 31, 2017, without prejudice to the Debtors' right to seek additional extensions of such periods.[5]

24.    Section 1121(d) of the Bankruptcy Code authorizes a bankruptcy court to extend a debtor's exclusive period for filing a chapter 11 plan and to solicit votes thereon, for cause show, by as much as 18 months (to file a plan) and 20 months (to solicit votes).  11 U.S.C. § 1121(d)(1)

---

[5] To any extent that this Motion cannot be decided or an order entered by October 28, 2016, the Debtors are requesting that the court enter a bridge order such that exclusivity is preserved pending a final determination of the Motion.

("on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section"); 11 U.S.C. § 1121(d)(2)(A)-(B) (the 120-day period "may not be extended beyond a date that is 18 months after the [commencement] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [commencement] date.").

25.    The Exclusive Periods established by Congress were incorporated in the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a chapter 11 plan and enable solicitation of acceptances of the plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans.  The Debtors' chapter 11 cases are large and complex and in these types of cases an initial extension of exclusivity is routinely granted.  In view of the activities in these cases to date, especially the Trustee Motion, both before its filing relating to efforts to resolve the Adverse Lenders' concerns and through trial and post-trial submissions, it is not realistic to expect that an appropriate plan could be formulated, let along negotiated in such time.

26.    The primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan.  The Debtors intend to achieve this objective.  To terminate the Exclusive Periods in these chapter 11 cases before meaningful and substantive plan negotiations have even had an opportunity to begin would be to defeat the very purpose of section 1121 of the Bankruptcy Code; *i.e.*, affording a debtor the full and fair opportunity to formulate, negotiate and prosecute its proposed chapter 11 plan.    Under the specific circumstances of these chapter 11 cases, the initial 120 and 180-day Exclusivity Periods provided in the Bankruptcy Code simply provide an unrealistic time frame and should be extended.

9

27.    As stated, section 1121(d) of the Bankruptcy Code empowers a Bankruptcy Court to extend the Exclusivity Periods "for cause." The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes express criteria for an extension. The legislative history of section 1121 indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest). This flexibility is intended to give a debtor an adequate opportunity to stabilize its business operations at the outset of the case and to then negotiate a plan with its creditors. *See In re Ames Dep't Stores Inc.*, No, 90 B 11233 (JAG), 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors.").

28.    In exercising its broad discretion, the Bankruptcy Court may consider a variety of factors to assess the totality of circumstances in each case. *See In re Borders Grp., Inc.*, 460 B.R. 818, 821−22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996).

29.    The complexity and size of a chapter 11 case may warrant extension of the exclusive periods in order to permit a debtor a meaningful opportunity to formulate a chapter 11 plan. *See, e.g., In re Texaco Inc.*, 76 B.R. 322, 325-27 (Bankr. S.D.N.Y. 1987) (holding that "cause" existed to grant the debtor's first request to extend exclusivity based on the size and complexity of the case alone). In addition, courts consider the following factors in deciding whether "cause" exists to extend a debtor's exclusive periods:

- the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

- the existence of good faith progress toward reorganization;

- the fact that the debtor is paying its bills as they come due;

- whether the debtor has demonstrated reasonable prospects for filing a viable plan;

- whether the debtor has made progress in its negotiations with creditors;

- the amount of time that has elapsed in the case;

- whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

- the existence of an unresolved contingency.

*See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (listing factors and noting that the facts are "objective factors which courts historically have considered in making determination of this character"); *In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity); *In re Lionel L.L.C.*, No. 04-17324, 2007 WL 2261539 at *6 (Bankr. S.D.N.Y. Aug. 3, 2007); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

30.    The exercise of the Court's discretion is not simply a check-off process, but is based upon the totality of the circumstances. Moreover, the above factors are not the exclusive

bases for the exercise of the Court's discretion to extend the exclusive periods and not all of these factors are relevant in every case, and a finding that any one of these factors exists may justify extending a debtor's exclusive periods. *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (four factors relevant in determining whether cause exists to extend exclusivity); *Matter of Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (four factors showed that bondholders' committee failed to show cause to terminate debtors' exclusivity).

31.     Courts in this district have routinely granted initial requests to extend exclusivity in large and complex reorganizations similar to that of the Debtors. *See, e.g., In re Primorsk Int'l Shipping Ltd.*, Case No. 16-10073 (MG) (Bankr. S.D.N.Y. May 5, 2016) (ECF Doc. No. 170) (initial extension of 120 days); *In re The Great Atlantic and Pacific Tea Co.*, Case No. 10-24549 (Bankr. S.D.N.Y. Mar. 10, 2011) (RDD) (ECF Doc. No. 1003) (initial extension of 142 days); *In re Chemtura Corp.*, Case No. 09-11233 (REG) (Bankr. S.D.N.Y. July 28, 2009) (ECF Doc. No. 843) (initial extension of 120 days).

**B.     Cause Exists to Extend the Exclusive Periods**

32.     As discussed in detail below, the facts and circumstances of these chapter 11 cases satisfy the factors described above and demonstrate that sufficient cause exists to grant the Debtors' requested extension of the Exclusive Periods. The extensions are necessary and appropriate in order for the Debtors to have the opportunity contemplated by the Bankruptcy Code to develop, negotiate and file a chapter 11 plan and solicit acceptances of such plan.

a.     These Chapter 11 Cases are Large and Complex;
       Additional Time Is Needed

33.     It is well-established that the size and complexity of a debtor's case alone may constitute cause to extend the Exclusivity Periods. The legislative history provides that "if an

unusually large company were to seek reorganization under chapter 11, the court would probably

need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-

595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

34.     Similarly, this Court has stated: "The large size of the debtor and the consequent

difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are

important factors which generally constitute cause for extending the exclusivity periods." *In re

Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). *See also In re Borders Group, Inc.*, 2011

WL 9155779, *3 (Bankr. S.D.N.Y. June 2, 2011) (citing *In re Texaco, Inc.*, 76 B.R. at 326 and

granting extension of exclusivity periods for 120 days); *In re Adelphia Commc'ns Corp.*, 336 B.R.

610, 674 (Bankr. S.D.N.Y. 2006) (noting that factors constituting "cause" for extension of

exclusivity periods include "the size and complexity of the case" and "the necessity of sufficient

time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to

allow a creditor to determine whether to accept such plan.").

35.     The size and complexity of these chapter 11 cases alone warrant an extension of

the Exclusive Periods.  These chapter 11 cases involve sixteen Debtors with over 150 affiliates

and the restructuring of $1.7 billion in unsecured funded debt.  The Debtors' businesses

constitute an international enterprise involving assets located throughout the world and include

three publicly-traded companies.

36.     As a result of this international assembly of businesses, insolvency proceedings

have been commenced or are pending in four jurisdictions. The Debtors and their affiliates

believe that the best path forward is to develop a reorganization plan that will be viable in all

appropriate jurisdictions. The coordinated prosecution of such a plan adds to the complexity of

developing a chapter 11 plan, but will enhance the overall prospects of rehabilitation.  To that

end, the Debtors are coordinating with their affiliates in other jurisdictions to develop a global restructuring plan and anticipate filing corresponding plans in all appropriate jurisdictions. The Debtors believe that coordination in the development and proposal of such plans, while necessitating additional time and effort in the early stages, will best serve the estates' interests of timely emergence without undue cost or delay.

37.     The Debtors' debt structure is complicated, with the $1.7 billion in debt comprised of over thirty separate credit facilities, with different primary obligors and guarantors, but with many of these facilities having overlapping obligors. Because of the size and complexity of the Debtors' businesses and creditor relationships, the Debtors sought and obtained an extension of the time to file their Schedules and Statements of Financial Affairs, all of which were timely filed by August 15, 2016.[6]

38.     Thus, as in other large and complex reorganization cases, the Debtors' initial Exclusive Periods do not provide remotely sufficient time to pursue the objectives of chapter 11. The instant chapter 11 cases are the size and complexity that Congress and courts recognized warrant extensions of the Exclusive Periods similar to that which the Debtors here are requesting.

39.     During the first few months of these cases, the Debtors' primary focus has been on, among other things, (a) stabilizing their and their subsidiaries' businesses, (b) engaging in discussions with Adverse Lenders in hopes of staving off the filing of the Trustee Motion and, once filed, (c) defending against the Trustee Motion (including discovery, depositions, a two-day evidentiary hearing and post-trial submissions), and (d) securing consent of the Adverse

---

[6] The Debtors will be seeking the establishment of a bar date, a necessary prerequisite to any chapter 11 plan process, in conjunction with the hearing on this Motion.

Lenders and the Court's and U.S. Trustee's approval with respect to their cash management system.

40.    Activity related to the Trustee Motion consumed nearly two months' attention by the Debtors' senior management and advisors. Additionally, the Debtors prepared and filed Schedules, Statements of Financial Affairs and Bankruptcy Rule 2015.3 reports on a timely basis as well as monthly operating reports. In total, the Debtors have filed more than 200 financial reports with the Bankruptcy Court since the Petition Date. Most recently, and contemporaneously with the filing of this Motion, the Debtors are filing motions to retain ordinary course professionals, allow for monthly payment of professional fees, supplement the Cash Management Order and set a claims-filing bar date. On September 30, 2016, the Debtors filed the Debtor' Motion for an Order Pursuant to 11 U.S.C. §§ 105(A), 327(A), 328 and 363(I) Authorizing The Private Sale of Golf Club Membership *Nunc Pro Tunc* to August 25, 2016, (II) Approving the Terms of the Sale, (III) Authorizing the Employment, Retention of and Payment to Everfine Membership Services Limited, as Broker, *Nunc Pro Tunc* to June 30, 2016, and (IV) Granting Related Relief [ECF Doc. No. 160], to approve a sale of interest of one of the Debtors in a non-core asset. All of these efforts have enabled the Debtors to substantially maintain business as usual and minimize the disruptions often attendant to the commencement of chapter 11 cases.

41.    Further, the Debtors have commenced the chapter 11 plan process including meeting with various creditors both here and in Hong Kong. The administration of these chapter 11 cases and the negotiation, formulation, filing, and prosecution of a chapter 11 plan will require significant additional time and effort. Under these circumstances, the requested

extensions of the Exclusive Periods are necessary and appropriate to afford the Debtors the opportunity to achieve the objectives of chapter 11 on a consensual basis.

b.    The Debtors are Progressing in Good Faith Towards Reorganization

42.    Exclusivity provides debtors with a full and fair opportunity to rehabilitate their businesses and negotiate, develop, propose and, ultimately, confirm and consummate a chapter 11 plan. In the three months since the Debtors commenced these chapter 11 cases, the Debtors believe they have made significant progress in good faith towards achieving this goal. While working to stabilize their global business and develop a business plan for their ongoing operations during these chapter 11 cases, the Debtors anticipate engaging in discussions with various stakeholders, including the Adverse Lenders, regarding the best path forward for the restructuring of the Debtors' estates in the hopes of achieving a consensual chapter 11 plan.

43.    In the months since the Petition Date, including in connection with the Trustee Motion, the Debtors and their creditors have exchanged ideas on value, governance, reporting and post-emergence capital structure. The Debtors and their professionals have considered these ideas in connection with the formulation of a restructuring plan.

44.    With a complex family of companies such as these, the relationships (including claims) among those companies can greatly affect creditor recoveries. Since the Petition Date, the Debtors' professionals have worked to identify the interrelationships among the Debtors and their affiliates. The Debtors' advisors have been developing a recovery model to analyze the effects of intercompany claims on distribution of value. Based on the intercompany claims on the companies' books and records, it does not appear that such claims materially affect value distribution. However, the Debtors and their professionals continue to analyze these claims.

45.    The Debtors' management and professionals have worked diligently to begin charting the framework of a chapter 11 plan and global restructuring. In the approximately ninety days since the Petition Date, the Debtors' managing director, Jessie Ng, has travelled to the United States three times for approximately thirty-six days to attend to these chapter 11 cases, including discussions regarding the development of a plan. Similarly, David W. Prager of Goldin Associates, LLC, the Debtors' financial advisor, recently traveled to Hong Kong to continue the process of developing a restructuring framework and to meet with creditors.

46.    Management of the Debtors and their affiliates, along with their professionals, have actively engaged with creditors around the world. In addition to meetings with the Adverse Lenders, the Debtors are in contact with bank lenders and bondholders who are supportive of the Debtors' management. On Mr. Prager's recent trip to Hong Kong, he met with approximately 20 creditors holding over approximately $1 billion in debt, to assess their receptivity to various plan constructs.    The Debtors are assimilating the information gathered from these meetings in connection with formulating an initial plan proposal.

47.    In addition, management of PARD has met on numerous occasions with many of PARD's creditors beginning on July 1, 2016 immediately after the commencement of reorganization proceedings by PARD in Singapore.    On September 26, 2016, the judge overseeing PARD's Singapore insolvency proceedings, issued a decision which, while upholding PARD's right to relief in that Court, determined that under current Singapore law, the moratorium on creditor actions against PARD does not extend beyond the borders of Singapore and that it does not have jurisdiction over PARD's subsidiaries.    Immediately upon the issuance of that decision Malayan Banking Berhard and Cooperatieve Rabobank U.A. commenced proceedings in Bermuda seeking to wind up PARD and for the immediate appointment of joint

17

provisional liquidators over PARD, thus necessitating the chapter 11 filing by PARD. PARD is in the process of withdrawing from the Singapore proceedings, having filed an affidavit with the Singapore court of its decision to withdraw therefrom.

c.    The Debtors Are Paying Their Bills as They Become Due

48.    Courts considering an extension of exclusivity also may assess a debtor's liquidity and ability to pay costs and expenses of administration. *See Adelphia Commc'ns*, 352 B.R. at 587; *Texaco*, 76 B.R. at 322. After approximately three months of operating in Chapter 11, the Debtors maintain over $1.8 million of cash (approximately $1.5 million from a non-core asset sale is restricted and the Debtors are awaiting court approval for its availability). Moreover, based on the Debtors' cash flow projections, the Debtors will continue to maintain positive cash after projected cash outlays for administrative expenses. The Debtors receive cash from various sources as well as funding by non-Debtor affiliates as contemplated in the Cash Management Order. The Debtors expect that such funding will continue during the foreseeable future. The Debtors and their affiliates are also assessing sales of certain non-core assets as a means of generating additional cash.

d.    The Debtors Have Reasonable Prospects for Filing a Viable Plan

49.    As this Court is well aware, the Debtors' financial difficulties stem in very large part from the disruptive – and usually severe – weather pattern known as El Niño, which during the two years prior to the Petition Date negatively impacted the anchovy fishing industry in Peru and put the Debtors in a difficult liquidity position. With El Niño ending, the Debtors are hopeful that operations in Peru will normalize and that over the next several months the Pacific Andes Group's finances will begin to improve.

50.     The Debtors believe that there is a significant prospect that they will ultimately be able to propose a viable chapter 11 plan and that they have the financial, management and advisory resources to develop, negotiate and prosecute such a plan.  The Debtors are committed to working with their key stakeholders, including the Adverse Lenders, in order to achieve success.  At the early stages of these cases, the fact that the Adverse Lenders have expressed an unwillingness to work with the Debtors should not be grounds for denying an extension of the Exclusive Periods.  In fact, the Adverse Lenders have continued to meet and confer with the Debtors and their advisors.  Based on conversations with creditors, the Debtors believe that many of its creditors recognize the benefits of obtaining a consensual solution.

51.     As noted above, the Debtors and their professionals continue to work diligently toward formulation of a plan, which may entail restructuring of debt, refinancing, equitization and spin-off of certain subsidiaries. The Debtors are and plan to stay in frequent communication with stakeholders to ensure that such a plan can garner sufficient support for confirmation.

52.     Given the number of overlapping jurisdictions, coordination among insolvency proceedings of various affiliates is important. The Debtors and their affiliates are working to jointly develop a restructuring plan that would respect the priority regime in each relevant jurisdiction and anticipate a coordinated confirmation and approval process across such jurisdictions.

53.     The Debtors have already begun the process of obtaining creditor feedback as to an acceptable plan framework.  In the coming weeks, the Debtors hope to propose a specific framework to creditors and will then work to refine such proposal in order to garner sufficient creditor support in advance of the filing of a Chapter 11 plan.

19

e.      Very Little Time Has Elapsed in These Chapter 11 Cases

54.    The Debtors' request for an extension of the Exclusive Periods is the Debtors'

first, and it comes slightly less than three months after the Petition Date. As discussed above,

during these three months, the Debtors accomplished a great deal, especially in light of the time

and energy consumed by the Trustee Motion. The Debtors anticipate that, with the requested

150 day extension of the Exclusive Periods, they will be able to continue their progress and take

further steps toward a successful reorganization.

g.      The Debtors Are Not Seeking an Extension to Pressure Creditors

55.    The Debtors' request to extend the Exclusive Periods is not intended to exert

leverage over any creditors. It is intended to provide the Debtors with a responsible opportunity

to develop and confirm a chapter 11 plan. Indeed, the Debtors intend to propose a plan that

comports with all elements of applicable bankruptcy and non-bankruptcy law.

56.    This is the Debtors' first request for extensions of the Exclusive Periods. The

Debtors are not seeking these extensions to artificially delay the administration of these chapter

11 cases or to hold creditors hostage to an unsatisfactory plan proposal. Simply put, there has

not been a real opportunity for the Debtors to develop, propose, negotiate and file a plan during

the short period of time since the Petition Date, particularly given the time devoted by both the

Debtors and certain creditors to the Trustee Motion. The size and complexities of the instant

cases are patent and, together with what has transpired to date, establish more than adequate

cause for the requested extensions.

57.    In sum, the request for extending the Exclusive Periods is not a negotiation tactic,

but rather a reflection of the fact that these cases are not yet sufficiently mature for the

formulation, filing, and prosecution of a feasible chapter 11 plan.

h.    Important Contingencies Must Be Resolved by the Debtors

58.    Courts have recognized the need to resolve important contingencies as justification for extending the Exclusive Periods. *See, e.g.*, *Borders*, 460 B.R. at 826; *Adelphia Commc'ns*, 352 B.R. at 587. The Debtors have made substantial progress in the prosecution of the chapter 11 cases. However, it is abundantly clear that additional time in which to propose and file a confirmable chapter 11 plan is necessary to allow the Debtors to address a number of key issues, including discussions with key economic stakeholders with respect to a plan of reorganization. Furthermore, for much of the time elapsed since the Petition Date, the Debtors and Adverse Lenders have been engaged in litigation on multiple fronts over control of these and related cases. Not only has such litigation slowed the plan formulation process, the Debtors also believe it has impeded the willingness of certain creditors to engage in meaningful discussions regarding plan issues. The Debtors believe the resolution of these contingencies will expedite the plan process.

59.    Moreover, the extensions of the Exclusive Periods as requested will not prejudice any party in interest, but rather will afford the Debtors a realistic opportunity to propose a feasible and consensual chapter 11 plan. Failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code; *i.e.*, to provide the Debtors with a meaningful and reasonable opportunity to negotiate with their economic stakeholders and propose a confirmable chapter 11 plan. The termination of the Exclusive Periods and the threat of multiple plans would lead to unnecessary adversarial situations, a potential crisis in confidence among the Debtors' and their affiliates' business partners and the attendant deterioration in value of the Debtors' business enterprise, to the detriment of all parties in interest. The Court should not permit such a scenario to unfold.

**NOTICE**

60.    No creditors' committee, trustee, or examiner has been appointed in these chapter 11 cases. The Debtors have provided notice of this Application to the following parties, or, in lieu thereof, their counsel: (a) the Office of the U.S. Trustee for the Southern District of New York; (b) creditors holding the fifty largest claims as set forth in the consolidated list filed with the Debtors' petitions; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the United States Securities and Exchange Commission; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. A copy of this Application is also available on the Court's website.

61.    The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

**NO PRIOR REQUEST**

62.    No prior motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter an order, substantially in the form attached hereto as Exhibit A (or a bridge order as may be necessary pending final determination of this Motion) and (b) grant such other and further relief as is just and proper.

Dated: October 7, 2016
     New York, New York

              **MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**


              By: */s/ Howard B. Kleinberg*
                   **Howard B. Kleinberg**
                   **Edward J. LoBello**
                   **Jil Mazer-Marino**
              **1350 Broadway, Suite 501**
              **New York, New York 10018**
              **(212) 239-4999**

              *Counsel to the Debtors and Debtors in Possession*

## EXHIBIT A

## Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **CHINA FISHERY GROUP LIMITED (CAYMAN),** *et al.*,[1] | **Case No. 16-11895 (JLG)** |
| **Debtors.** | **Jointly Administered** |

## ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Upon the motion, dated October 7, 2016 (the "**Motion**"),[2] of China Fishery Group

Limited (Cayman) ("**China Fishery**"), and certain of its affiliated debtors and debtors-in-

possession (collectively, the "**Debtors**"), for entry of an order (this "**Order**") extending by 150

days (a) the exclusive period of time during which only the Debtors may file a plan of

reorganization (the "**Exclusive Filing Period**") through and including March 30, 2017, and

(b) the period of time during which only the Debtors may solicit acceptances of a plan of

reorganization (the "**Exclusive Solicitation Period**," and, together with the Exclusive Filing

Period, the "**Exclusive Periods**") through and including May 31, 2017; this Court having

jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and venue of these

chapter 11 cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and

---

[1] The Debtors are China Fishery Group Limited (Cayman) ("CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), and Super Investment Limited (Cayman) ("Super Investment").

[2] All capitalized terms used and not defined herein shall have the meaning ascribed to them in the Motion.

1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before the Court; and this Court having found and determined that the relief sought in the Motion is in the best interest of the Debtors, their estates, their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Filing Period is hereby extended through and including March 30, 2017 and the Exclusive Solicitation Period is hereby extended through and including May 31, 2017.

3.      This Order is without prejudice to the Debtors' ability to seek further extensions of the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

4.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

5.      The requirements set forth in Local Rule 9013-1(b) are satisfied.

2

6.    This Court shall retain jurisdiction with respect to any matters, claims, rights or

disputes arising from or related to the Motion or the implementation of this Order.

Dated: October _____, 2016
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

3

1139096