Frederick D. Hyman
Christine A. Walsh
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone No.:  212-506-2500
Facsimile No.:  212-262-1910

*Attorneys for Malayan Banking Berhad,
Hong Kong Branch*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | Chapter 11 |
| **CHINA FISHERY GROUP LIMITED (CAYMAN),** *et al.*, | Case No. 16-11895 (JLG) |
| Debtors[1]. | **(Jointly Administered)** |

**MAYBANK'S OBJECTION TO DEBTORS' MOTION FOR
AN ORDER EXTENDING THE EXCLUSIVE PERIODS
DURING WHICH ONLY THE DEBTORS MAY FILE
A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Malayan Banking Berhad, Hong Kong Branch ("**Maybank**"), by and through its undersigned counsel, hereby submits this objection (this "**Objection**") to the Debtors' Motion For an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof (the "**Exclusivity Motion**") in the above-

---

[1] The Debtors are N.S. Hong Investment (BVI) Limited ("**NS Hong**"), Super Investment Limited (Cayman) ("**Super Investment**"), Pacific Andes International Holdings Limited (Bermuda) ("**PAIH**"), China Fishery Group Limited (Cayman) ("**CFGL**"), Smart Group Limited (Cayman) ("**Smart Group**"), Protein Trading Limited (Samoa) ("**Protein Trading**"), South Pacific Shipping Agency Limited (BVI) ("**SPSA**"), CFG Peru Investments Pte. Limited (Singapore) ("**CFG Peru Singapore**"), China Fisheries International Limited (Samoa) ("**CFIL**"), Growing Management Limited (BVI) ("**Growing Management**"), Chanery Investment Inc. (BVI) ("**Chanery**"), Champion Maritime Limited (BVI) ("**Champion**"), Target Shipping Limited (HK) ("**Target Shipping**"), Fortress Agents Limited (BVI) ("**Fortress**"), CFGL (Singapore) Private Limited ("**CFGLPL**") and Ocean Expert International Limited (BVI) ("**Ocean Expert**").

captioned Chapter 11 cases (the "**Cases**").  In support of this Objection to the Exclusivity Motion, Maybank respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtors have failed to establish "cause" for an extension of the exclusivity period during which they alone can file a plan or plans of reorganization and solicit acceptances thereto, let alone a *five-month* extension of such periods to March 30, 2017 and May 31, 2017, respectively.  Given the lack of any meaningful progress made by any of the Debtors (or any of their affiliates that are subject to insolvency proceedings elsewhere), the exclusivity periods should terminate in accordance with the guidelines set forth in the Bankruptcy Code -- October 28, 2016 for the filing of a plan or plans of reorganization and December 27, 2016 for the solicitation of acceptances.

2. As identified in prior filings, Maybank and other creditors have expressed considerable concern regarding the Ng family's ability to exercise sound business judgment and provide the expertise, oversight and guidance that creditors and other interest holders should be able to reasonably expect of Chapter 11 debtors.  These concerns arise from, among many other things: (i) the utter lack of transparency and ordinary-course reporting from the Debtors and their non-debtor affiliates, including the inability or unwillingness to prepare audits, (ii) the facts and circumstances with regard to the commencement of these Cases in conjunction with other insolvency proceedings in Peru, Singapore and elsewhere, (iii) the recent Chapter 11 filing of Pacific Andes Resources Development Limited ("**PARD**"), previously the subject of proceedings in Singapore and Bermuda, and (iv) the existence of questionable pre-petition intercompany and third-party transactions.  Nearly four months since the Debtors' Cases were commenced, these concerns remain unabated and unaddressed.

2

3.      Maybank's continuing distrust is compounded by the lack of transparency across the Pacific Andes group of companies (the "**Pacific Andes Group**").  The Debtors comprise just a fraction of the Pacific Andes Group that includes not less than 150 additional entities.  *See* Exclusivity Motion at ¶ 13.  Of those, only 17 entities are Chapter 11 Debtors before this Court (including PARD) and another three entities filed Chapter 15 petitions with this Court but have yet to achieve recognition.  Certain of these non-debtor affiliates fall within the direct chain of ownership between NS Hong, as the ultimate parent, and the Pacific Andes Group's most valuable assets located in Peru.  Others are the borrowers of sizable loans extended by Maybank and others which loans are guaranteed by Debtors.  *See* Declaration Of Ng Puay Yee Pursuant to Rule 1007-2 of the Local Bankruptcy Rules For The Southern District of New York and In Support of Debtors' First Day Motions and Applications [Dkt. No. 2] (the "**Ng First Day Declaration**") at Ex. A.  To Maybank's knowledge, none of these non-debtors have engaged the services of the Debtors' professionals in the Cases and, absent those few others subject to foreign proceedings, continue to operate in their ordinary course without oversight or restraint on unacceptable activities.  Indeed, the little financial reporting that the Debtors claim to have produced in their Exclusivity Motion includes little to no valuable information with regard to these non-debtor affiliates which make up more than 85% of the Pacific Andes Group, leaving the inner workings of the corporate enterprise largely a mystery.

4.      The Debtors have failed to propose any cogent plan or strategy for emerging from Chapter 11 or otherwise taken any meaningful steps in advancing the Cases.  Instead, to date, the Debtors have filed motions seeking only the bare minimum of administrative relief.  Notably, the Debtors have failed to seek the approval of commitments to provide debtor-in-possession ("**DIP**") financing or the use of cash collateral.  The financial wherewithal of the Debtors to fund

3

these Cases to the barest minimum remains unexplained and questionable, leaving them reliant on unexplained transfers or advances from related non-debtor entities.[2] This inexplicable lack of preparation and failure to advance any substantive relief leads to a single conclusion -- the *sole* purpose of filing these Cases was to obtain automatic stay relief under Section 362 of the Bankruptcy Code, allowing the Debtors to remain parked in Chapter 11 without any urgency to negotiate with creditors or formulate a plan. While the Cases remain stagnant, creditors are left to fund their own costs and expenses, and are deprived of principal or interest payments from both Debtors and non-Debtors.[3] By the Exclusivity Motion the Debtors now seek to further extend the period during which they can allow these Cases to meander through May 31, 2017.

5. Moreover, the Debtors have also failed to demonstrate that any harm will be caused by allowing creditors or other interest holders an opportunity to propose a plan should they choose to do so. Accordingly, the Exclusivity Motion should be denied in its entirety. Alternatively, if the Court is not inclined to deny an extension of exclusivity altogether, the Court should consider a shorter extension during which period the Debtors must demonstrate meaningful progress in furtherance of an open and transparent reorganization. Maybank suggests a 60-day extension conditioned upon the Debtors providing Maybank and other interested parties with the following: (i) within three days after entry of the order, unrestricted copies of all information required to be provided pursuant to Order Authorizing the Debtors to (A) Continue Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto and (C) Maintain Existing Bank Accounts [Dkt. No. 93] ("**Cash Management**

---

[2] According to the Debtors' Monthly Operating Report for the reporting period ended August 31, 2016 [Dkt. No. 158] (the "**August MOR**"), the Debtors' post-petition debts (with the exception of unpaid wages and other nominal amounts) were classified as "Amounts due to Insiders and Affiliates."

[3] Certain of the Debtors, however, manage to find the resources to fund the salaries of their directors. *See* August MOR at pg. 37.

4

Order"), with copies for this Court and the Office of the United States Trustee (the "**US Trustee**"); (ii) on or before November 1, 2016, a copy of the independent forensic report prepared for the independent review committees of Debtors PAIH and PARD (the "**Committees**") by RSM Corporate Advisory (Hong Kong) Ltd. ("**RSM**")[4]; (iii) promptly upon receipt thereof, a copy of the audited financial statements of the Pacific Andes Group for the fiscal year ended September 2015 prepared by Deloitte LLP; (iv) on or before November 21, 2016, an in-person meeting with the Committees and those creditors wishing to participate to discuss the findings of RSM; and (v) on or before December 31, 2016, a term sheet for a proposed chapter 11 plan of reorganization, together with a comprehensive business plan for the Pacific Andes Group.  This shorter extension coupled with key milestones should, consistent with the purposes of the Bankruptcy Code, motivate the Debtors to work toward formulating a restructuring plan in a meaningful way and allow for a fair evaluation of whether any such plan is ultimately confirmable.

## RELEVANT FACTS

6. On June 30, 2016, the Debtors filed for Bankruptcy protection in the Southern District of New York (the "**Petition Date**").

7. On July 8, 2016, Maybank filed a Statement in Respect of the Debtors' First Day Motions and Request for a Scheduling Conference [Dkt. No. 20] (the "**Statement**").  As set forth in further detail therein, Maybank is one of the largest creditors of the Pacific Andes Group with more than US$198 million aggregate outstanding exposure as of June 30, 2016.

---

[4] The independent forensic report is more fully described in the Declaration Of Ng Puay Yee In Opposition To The Lenders' Motion For The Entry Of An Order Directing The Appointment Of A Chapter 11 Trustee Pursuant To 11 U.S.C. §1104(A)(2) [Dkt. No. 105] (the "**Ng Trustee Declaration**") at ¶¶ 29-35.

8. On August 9, 2016, certain creditors filed a Motion for the Entry of an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)(2) [Dkt. No. 57] (the "**Trustee Motion**").

9. On August 10, 2016, Maybank filed a Joinder In Respect of the Trustee Motion [Dkt. No. 61] (the "**Maybank Joinder**").

10. On September 21, 2016, the Section 341 meeting of creditors was conducted by the US Trustee (the "**341 Meeting**").

11. On October 7, 2016, the Debtors filed the Exclusivity Motion [Dkt. No. 166] seeking to extend the exclusivity period by 150 days such that the deadline to file a plan would be extended through March 30, 2017 and the deadline to solicit acceptance to May 31, 2017.

## **OBJECTION**

12. Section 1121(d)(1) of the Bankruptcy Code gives the Court discretion to extend the exclusivity period *for cause*. *See* 11 U.S.C. § 1121(d)(1). Requests to extend exclusivity should be granted neither routinely nor cavalierly, particularly where such requests are opposed by major constituents. *See In re Curry Corp.*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) ("This court will not routinely extend the exclusivity period absent a showing of 'cause' when creditors object to such requests for extensions. In the face of such an objection, a debtor must establish more than that it is still in the process of preparing financial projections.").

13. The Debtors have properly described the list of factors that courts generally consider in deciding whether cause has been met; however, Maybank disagrees that a review of these factors weighs in favor of finding for cause in these Cases. The factors include: (a) size and complexity of the case, (b) necessity of sufficient time to negotiate and prepare adequate information, (c) existence of good faith progress towards reorganization, (d) whether the debtor

is paying its debts as they become due, (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (f) whether the debtor has made progress in negotiating with its creditors, (g) the amount of time which has elapsed in the case, (h) whether the debtor is seeking an extension to pressure creditors and (i) whether or not unresolved contingencies exist. *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006). Considering these factors, the circumstances of the Debtors' Cases do not merit an extension of exclusivity.

### A. No Good Faith Progress Has Been Made To Date.

14. The Debtors have made virtually no progress to date and have not shown that they will use any additional time to effectively reorganize. *See, e.g., In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("[W]here a debtor is wasting its opportunity, or is incapable of formulating a plan, exclusivity will be shortened."); *see also In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (in considering an extension of a debtor's exclusivity period, courts often assess a debtor's progress towards rehabilitation and development of a consensual plan). In the instant case, the Debtors have not demonstrated why maintaining the exclusive right to formulate a plan is helpful in their efforts.

15. "In virtually every case where an extension has been granted, the debtor has shown substantial progress has been made in formulating a plan during the first 120 days." *In re Southwest Oil Co. of Jourdanton, Inc.,* 84 B.R. 448, 451 (Bankr. W.D. Tex. 1987). Indeed, the legislative history to Section 1121(d) of the Bankruptcy Code indicates that the granting of an exclusivity extension would be based "on a showing of some promise of probable success [for reorganization]." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 406 (1977); S. Rep. No. 95–989, 95th Cong., 2d Sess. 118 (1978), reprinted in 1978 U.S.C.C.A.N., 5787, 5904.

7

16. Rather than demonstrate any such progress toward formulating a plan, the Debtors seek to deflect attention from their failings by pointing the Court to the following: (i) the submission of schedules, statements of financial affairs and monthly operating reports as required by the Bankruptcy Code and Bankruptcy Rules, (ii) the filing of a motion to engage ordinary course professionals more than three and one-half months into theses Cases on a *nunc pro tunc* basis to the Petition Date (and which provides no description of the roles such professionals will fill), (iii) the filing of a motion to allow for monthly payment of their professionals, (iv) the filing of motions to supplement their cash management order and set a bar date and (v) the filing of a motion to approve the sale of a golf club membership that has already closed, seeking approval on a *nunc pro tunc* basis to August 25, 2016 to whitewash their failure to submit on a timely basis. *See* Exclusivity Motion at ¶ 40. Progress in respect of a plan is not made by the filing of administrative and untimely motions.

17. The Debtors admit they have not even had an opportunity to begin plan negotiations. *See* Exclusivity Motion at ¶ 26. The Debtors represent to the Court that after the conclusion of the hearing on the Trustee Motion on August 30, 2016, they finally began "formulating potential plan structures – including meeting with creditors to ascertain their views – as well as dealing with various motions, several relating to the Debtors' ability to formulate, negotiate and confirm a plan, including this Motion." Exclusivity Motion at ¶¶ 20, 56-57. This is misleading. The only motion conceivably relating to formulation, negotiation or confirmation of a plan is the instant Exclusivity Motion. As noted above, other motions are administrative in nature (with the exception of the untimely motion to retroactively sell a golf club membership). Moreover, Maybank, one of the Debtors' largest creditors, has not been contacted by the Debtors

8

to either share information in compliance with transparency or for consultation, or otherwise, in any material way.

18. Six weeks after the conclusion of the hearing on the Trustee Motion, and 14 weeks since the Petition Date, there has been no substantive or constructive communication with Maybank and certain other creditors. Virtually no constructive meetings, presentations or even email correspondence has occurred that Maybank is aware of. Certainly nothing has occurred involving Maybank that has been helpful in connection with any plan formulation. The failure of the Debtors to even begin, on some constructive level, working with many of the creditors that have appeared in the Cases demonstrates the Debtors' interest and willingness in allowing these Cases to flounder toward some uncertain future.

**B.    Size and Complexity Is Not a Defense To Failing To Begin Working.**

19. It is customary in large, complex cases for an extension of exclusivity to be given as it may be unrealistic that the plan formulation and negotiation process be *completed* in the first 120 days of the case. But the whole intention of this statutory milestone is to encourage (if not require) substantive progress be underway and demonstrable when seeking an extension. Needing *more* time is different than having not begun.

20. In fact, the cases cited by the Debtors as examples from this Court where exclusivity was granted all demonstrate that substantial progress had been made in the first few months. For example, the *Primorsk* debtors, during the first few months of their cases, as set forth in their motion for an extension of the exclusivity period, among other things, negotiated with secured lenders for consensual use of cash collateral, set a bar date for claim filings, prepared a going-concern business model and disclosure statement, and had substantive discussions regarding various restructuring alternatives resulting in the decision to sell certain

9

assets and the negotiation and filing of a motion for approval of bid procedures. *See* Debtors' Motion for an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof, *In re Primorsk Int'l Shipping Ltd.*, No. 16-10073 (MG) (Bankr. S.D.N.Y. Apr. 22, 2016), ECF. No. 158; ¶¶ 5-8. Similar substantive progress was made in *A&P's* bankruptcy as A&P secured debtor-in-possession financing, negotiated with critical suppliers, obtained court approval to reject many leases and certain contracts, and nearly completed a business plan, among other substantive activities. *See* Debtors' Motion for Entry of an Order Extending Their Exclusive Periods to File and Solicit Votes for a Chapter 11 Plan Pursuant to Section 1121(d) of the Bankruptcy Code, *In re The Great Atlantic and Pacific Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Feb. 18, 2011); ECF. No. 806; ¶ 2. Lastly, the *Chemtura* debtors had obtained DIP financing, closed on the first amendment to the DIP facility, almost completed a second amendment to the DIP facility, finalized a wind-down of a prepetition accounts receivable facility, reviewed executory contracts determining to reject certain ones, reviewed environmental issues and created a business plan in the first 100 days of the case. *See* Debtors' Motion for an Order, Pursuant to Section 1121(d) of the Bankruptcy Code, Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof, *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. July 2, 2009); ECF. No. 707; ¶ 7. Notably, both the *Primorsk* debtors and the *Chemtura* debtors, even upon a showing of substantial progress, sought an initial extension of only four months. *See id*. at ¶ 10; *In re Primorsk*, ECF. No. 158 at ¶¶ 11-12.

21. Size and complexity alone are not a basis for an extension without a showing of progress.

10

**C.    Reasonable Disputes with Creditors Are Not Sufficient Bases To Extend Exclusivity.**

22.    The Debtors seek to excuse their failures by highlighting their efforts directed toward defending the Trustee Motion. *See* Exclusivity Motion at ¶ 19. The Debtors assert that the actions of certain aggrieved creditors have not allowed the Debtors time to consider or negotiate a plan of reorganization, or, seemingly, begin to undertake transparent, constructive work with the creditor body. The Debtors have retained the services of not less than three sets of professionals in these Cases to assist with their restructuring efforts.

23.    The actions of the Debtors and their non-debtor affiliates have served to thwart the reasonable expectations of foreign lenders and creditors in the exercise of their contractual and statutory rights under indisputable foreign law. The time and effort on behalf of the Debtors in defending lawful creditor action is simply not an excuse for the Debtors' lack of progress. These reasons alone do not justify "cause" to extend exclusivity, let alone by five months. "The ordinary Chapter 11 debtor is expected to bring with it litigation, or the potential for it. Litigation with creditors is not an unusual circumstance, and the fact that litigation is pending with creditors is not in itself sufficient cause to justify an extension of the exclusivity period. . ." *In re Southwest*, 84 B.R. at 452. Any claim that the Debtors' qualified professionals were somehow distracted by the Trustee Motion and therefore unable to provide proper attention to the development of restructuring strategies is at best disingenuous.

**D.    The Debtors Are Not Paying Their Bills as They Become Due.**

24.    It is not true to say that ". . . the extensions of the Exclusive Periods as requested will not prejudice any party in interest. . . ." *See* Exclusivity Motion at ¶ 59. While the Debtors have purportedly made arrangements for the payment of amounts coming due from Debtors by the use of funds from non-debtors, the Debtors themselves are manifestly unable to generate funds needed to make payments themselves. Creditors of the non-debtor funding entities should

11

not have their interests adversely affected by the depletion of those entities' assets for the foreseeable future without any oversight and review by the Court.

**E.    In the Event Any Extension Is Merited, It Should Be Conditioned on a Showing of Meaningful Progress.**

25.    Maybank contends that an extension of exclusivity is not merited under the circumstances of these Cases. If, however, the Court is inclined to grant an extension, such extension should be limited and conditioned upon the delivery of certain information that is critical to a showing of a good faith effort to restructure under Chapter 11.

26.    First, in order to get the benefit of continued exclusivity, the Debtors should be compelled to deliver -- on an unrestricted basis -- their weekly production of 13-week cash flows, and monthly disclosure of bank balances and intercompany transfers between Debtors and non-debtor affiliates as required by the Cash Management Order. This information, which is similar to that information that any creditor should expect in the context of a Chapter 11 case has to date been provided to counsel on an "advisors' eyes only" basis. Cash Management Order at ¶¶ 10, 11. Accordingly, representatives of Maybank and other creditors have not been afforded an opportunity to see, much less digest and analyze, any such information that is critical to understanding the complex maneuverings of cash between and among the Debtors and non-debtors.[5] The value of this information is evident and the Court, the US Trustee and the creditors are entitled to understand the source and uses of these funds and the nature of any pre-existing intercompany obligations to which they relate (if any).

27.    In addition, if the Debtors believe a significantly extended period of time is required to propound a plan of reorganization, the Debtors must be compelled now to provide the basis on which the existing businesses (whether in fact now still operating or not) will be

---

[5] Counsel to the Debtors and Maybank have exchanged drafts with respect to a proposed confidentiality agreement but no agreement has been reached.

12

resuscitated, otherwise there can be no realistic basis upon which a plan, other than a liquidating plan, can be consummated. The Debtors hold insufficient cash and a further delay will only exacerbate the issue. It is not appropriate that the non-debtors' assets are used to settle Debtors' obligations for the foreseeable future.

28. Second, the Court should mandate that the Debtors deliver a copy of the independent forensic report prepared by RSM (to be followed shortly thereafter by the audit opinion to be issued by Deloitte) as soon as possible after it has been delivered. As described in the Ng Trustee Declaration, a forensic accountant (originally PriceWaterhouseCoopers and thereafter replaced by RSM) was retained with the approval and support of the Committees in order to address and investigate issues raised by lenders (*e.g*., allegations of misfeasance/fraud, notably with regard to the Russian prepayments). *See* Ng Trustee Declaration at ¶¶ 29-32. Ms. Ng explained that "the forensic examination was and is important and the Pacific Andes Group wants it completed as quickly as possible." Ng Trustee Declaration at ¶ 33. Moreover, the "completion of the forensic review is crucial in order to confirm that no improper conduct or activity took place, in order to allow business operations throughout the Group to return to normal." Ng Trustee Declaration at ¶ 35. Given the ongoing review, Deloitte has been unable to provide an audit opinion for the fiscal year ended September 2015, more than one year ago. *See* Ng Trustee Declaration at ¶¶ 32, 33. Ms. Ng understood that the RSM review would be completed by September 2016. Ng Trustee Declaration at ¶ 35. Upon receipt of RSM's report, the Debtors should be compelled to coordinate an in-person meeting with the Committees and those creditors wishing to attend to discuss the findings of RSM.

29. Third, in order to demonstrate a good faith effort at proposing and implementing a plan of reorganization, the Debtors should be required to deliver on or before December 31,

13

2016, a comprehensive term sheet for a proposed chapter 11 plan of reorganization for each of the Debtors. Only with a term sheet proposal in hand will the many parties-in-interest be able to properly gauge the prospects for reorganization under the current circumstances.

## CONCLUSION

WHEREFORE, Maybank respectfully requests that the Court: (a) deny the Debtors' Motion in its entirety or, alternatively; (b) approve a 60-day extension conditioned upon the Debtors providing Maybank and other interested parties with the following: (i) within three days after entry of the order, unrestricted copies of all information required to be provided pursuant to the Cash Management Order, with copies for this Court and the US Trustee, (ii) on or before November 1, 2016, a copy of the independent forensic report prepared for the Committees by RSM, (iii) promptly upon receipt thereof, a copy of the audited financial statements of the Pacific Andes Group for the fiscal year ended September 2015 prepared by Deloitte LLP, (iv) on or before November 21, 2016, an in-person meeting with the Committees and those creditors wishing to participate to discuss the findings of RSM, and (v) on or before December 31, 2016, a term sheet for a proposed chapter 11 plan of reorganization, together with a comprehensive business plan for the Pacific Andes Group; and (c) grant such other and further relief as may be just and necessary under the circumstances.

*    *    *

Dated: October 18, 2016
New York, New York

                    **MAYER BROWN LLP**

By:   /s/ Frederick D. Hyman
       Frederick D. Hyman (FH7832)
       Christine A. Walsh (CW9533)
       MAYER BROWN LLP
       1221 Avenue of the Americas
       New York, New York 10020
       Telephone No.: 212 506-2500
       Facsimile No.: 212 262-1910

*Attorneys for Malayan Banking Berhad,*
*Hong Kong Branch*