Hearing Date: October 25, 2016 at 2:00 p.m. (NY Time)

Howard B. Kleinberg, Esq.
Edward J. LoBello, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
1350 Broadway, Suite 501
New York, New York 10018
Telephone: (212) 239-4999
Email:  hkleinberg@msek.com
        elobello@msek.com
        jmazermarino@msek.com

*Counsel to China Fishery Group Limited (Cayman), et al. Debtors and Debtors in Possession*

- and -

Tracy L. Klestadt, Esq.
Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Telephone: (212) 973-3000
Email: tklestadt@klestadt.com

*Proposed Counsel to Pacific Andes Resources Development Limited Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

CHINA FISHERY GROUP LIMITED
(CAYMAN), *et al.*,

Debtors.[1]

Chapter 11

Case No. 16-11895 (JLG)
(Jointly Administered)

---

In re:

PACIFIC ANDES RESOURCES
DEVELOPMENT LIMITED,

Debtor.

Chapter 11

Case No. 16-12739 (JLG)

---

[1] The jointly administered debtors are China Fishery Group Limited (Cayman) ("CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), and Super Investment Limited (Cayman) ("Super Investment").

# DEBTORS' REPLY IN FURTHER
# SUPPORT OF EXCLUSIVITY AND OTHER MOTIONS

China Fishery Group Limited (Cayman) and certain of its affiliated debtors and debtors-in-possession ("**Debtors**")[2], by their counsel Meyer, Suozzi, English & Klein, P.C., respectfully submit this reply ("**Reply**") in further support of the Debtors' motions for (a) an extension of exclusivity (the "**Exclusivity Motion**"), (b) approval of the sale of PAIH's golf club membership, and (c) amendment of the existing cash management order to, inter alia, include Pacific Andes Resources Development Limited ("**PARD**")[3], and in response to objections to such motions filed by certain bank lenders and noteholders ("**Objecting Lenders**").[4]

## PRELIMINARY STATEMENT

1. As demonstrated in the Debtors' Exclusivity Motion, cause exists for the requested extension.

2. Contrary to the position taken by the Objecting Lenders, the Debtors' cases are sufficiently large and complex to justify an extension of exclusivity of the requested length, especially given the distractions that the Debtors faced at the outset of the cases when they were required to devote a substantial portion of their time and energy defending the motion to appoint a trustee (the "**Trustee Motion**").

3. Moreover, as explained in the Exclusivity Motion, the Debtors have already started the process of meeting internally with their professional advisors and with certain creditor

---

[2] Capitalized terms used herein and not defined herein have the meaning ascribed thereto in the Exclusivity Motion or the objections thereto.

[3] PARD, by its counsel, Klestadt Winters Jureller Southard & Stevens, LLP, joins this Reply as it relates to the Objecting Lenders' limited objection to the Joint Cash Management Motion (defined in the Appendix), or as to other issues related to PARD's chapter 11 bankruptcy case.

[4] The motions and objections are listed in the appendix to this Reply.

2

groups in an effort to develop a plan of reorganization. Additional time, however, is required to continue those efforts.

4. The Objecting Lenders do not dispute that the Debtors have complied with all their reporting and other obligations under the Bankruptcy Code and Rules and the Debtors intend to continue to do so. Moreover, notwithstanding suggestions by certain of the Objecting Lenders, there is no issue regarding the administrative solvency of the Debtors. The Debtors have and expect to continue to have sufficient resources to meet their post-petition obligations.

5. In sum, an analysis of the relevant factors demonstrates that sufficient cause exists for an initial extension of the exclusive periods.

## ARGUMENT

### A. The Objecting Lenders' Arguments Are Without Merit.

6. The Objecting Lenders have held an inappropriate and self-servingly distorted view of the Debtors and these chapter 11 cases since their commencement. Since the Filing Date, the Objecting Lenders have given little regard for the right of the Debtors, as debtors in possession, to have a fair opportunity to determine the course of their cases and to reorganize under chapter 11. Rather, the Objecting Lenders have attempted to assert undue control over the Debtors and the disposition of these chapter 11 cases and continue to do so.

7. The Objecting Lenders' overbearing positions in this case were evident at the first day hearing when they propounded statements in opposition to the Debtors and the cases, their use of a threatened trustee motion to demand termination of the Peruvian insolvency proceedings, their demands in the context of the Debtors' cash management motion for financial reporting that exceeds standard chapter 11 reporting (to which the Debtors agreed nevertheless and have fully complied), and their aggressive pursuit of the appointment of a trustee on a highly expedited schedule.

3

8. The Objecting Lenders' efforts to control the Debtors' cases and force a liquidation are now apparent in their objections to the Debtors' motions for an exclusivity extension and approval of a sale of a non-core asset.

9. While unfairly criticizing the Debtors for delay, failing to make sufficient progress in plan of reorganization formulation, purported forum shopping and alleged administrative insolvency, the Objecting Lenders fail to mention their continued attempts outside of this Court to de-rail the Debtors' efforts at reorganization.

10. For example, the Objecting Lenders previously voiced disapproval that PARD was not one of the original Debtors, yet now voice disapproval that PARD, of necessity, has sought chapter 11 protection.[5] In particular, Maybank questioned the propriety of not having filed a chapter 11 case for PARD at the commencement of the Debtors' cases. *See* Maybank's Statement in Respect of the Debtors' First Day Motions and Request for a Scheduling Conference (China Fishery Debtors (Case No. 16-11895 (JLG)), ECF Dkt. No. 20), ¶ 11.

11. The Debtors' request for a five month extension of exclusivity should be granted. This case presents unique circumstances where the Debtors' primary assets are its ownership interests in the non-Debtor Peruvian operating subsidiaries and their viable fishing, fish meal and fish oil processing and sales business. The fact that the Debtors do not directly own the operating businesses does not simplify the reorganization process. Rather, the Debtors' and their affiliates' capital structure, replete with minority ownership interests, complicates the reorganization process, presenting a multiplicity of restructuring considerations. The Objecting Lenders' self-serving presumption that an immediate sale of the Debtors' interests in its Peruvian

---

[5] Following the decision of the High Court in Singapore to limit the scope of its jurisdiction to protect PARD, Maybank immediately commenced and Rabobank supported winding up proceedings against PARD in Bermuda, thus necessitating PARD's resort to this Court for the protection of the automatic stay.

4

business - to such lenders' parochial interest and contrary to the interests of many other creditors and stakeholders - highlights precisely why the Debtors should maintain the exclusive right to propose a bankruptcy plan that balances the interests of all creditors and stakeholders.

### B.  The Debtors Are Formulating A Plan of Reorganization.

12.   Indeed, the Debtors have begun the process of formulating a plan of reorganization through the efforts of management and their advisors, particularly Goldin Associates LLC ("**Goldin**"). This process does, in fact, require additional time given the delay in the administration of the INDECOPI proceedings, the Debtors' complicated corporate structure, and the ongoing efforts of Goldin to gauge the acceptability of particular plan structures among creditors, including the Objecting Lenders.

13.   A number of the Objecting Lenders' arguments are misplaced. For example, the Objecting Lenders repeatedly assert concerns over the administrative solvency of the Debtors, but this issue has no merit because the Debtors are not administratively insolvent. The Debtors continue to maintain a positive cash balance, have minimal expenditures, have liquidated a non-core asset (notwithstanding the Club Lender Parties' overreaching attempt to have such proceeds restricted in order to perpetuate their ill-founded claims of administrative insolvency), and have implemented a reasonable cash funding program with their non-Debtor affiliates as set forth in the Cash Management Order, which was agreed to by the Objecting Lenders and approved by the Court. Accordingly, there is no basis to deny the Debtors an extension of exclusivity based upon their ability to fund the cases.

14.   Similarly, the Objecting Lenders inappropriately criticize the Debtors for having taken only "administrative" actions in the case so far, instead of, for example, obtaining DIP or cash collateral financing which the Lenders suggest are hallmarks of progress in moving the case forward toward plan formulation. But such types of financing are not relevant to the Debtors'

cases. There is no secured lender who has an interest in the Debtors' property or its proceeds -- as such, cash collateral is not at issue. Moreover, the Debtors have no immediate or anticipated need for DIP financing. This is a positive point for the Debtors, not an issue necessitating an appointment of a trustee.

15. The Objecting Lenders assert that only 17 of the approximately 150 companies that comprise the Pacific Andes Group are in chapter 11 and that there is a lack of transparency as to the remaining non-Debtor entities. This argument does not support terminating the Debtors' exclusivity and in any event disregards basic facts of the case. It is fairly common for chapter 11 cases to be limited to some and not all entities in a corporate structure. The Debtors have timely complied with their obligations under Rule 2015.3 of the Bankruptcy Rules to provide financial reporting as to their non-Debtor affiliates and their additional, agreed-to, reporting requirements under the Cash Management Order, negotiated with the Objecting Lenders in July (which include monthly reporting of cash balances as to the approximately 150 non-Debtor affiliates, including with respect to cash balances).

16. Similarly, there is no reason that the Debtors should have to present immediately a business plan for the entire Pacific Andes Group in connection with these cases, although they may choose to do so in the near future in support of a proposed reorganization plan. Accordingly, there is no basis to deny the Debtors' request for an extension of exclusivity for these 16 Debtors based upon the actions or non-actions of the affiliated non-Debtor entities.

17. That a number of the Debtors' directly held businesses are now dormant, and that the Debtors are now primarily holding companies, does not diminish the strong bases supporting the requested first-time extension as outlined in the Exclusivity Motion, particularly in light of the substantial dedication of resources during the first four months of these cases to the

Objecting Lenders' issues following the first-day hearing and, subsequently, to the Trustee Motion. Additionally, it is not uncommon for some of the debtors in large multi-debtor chapter 11 cases to be dormant.

18.  Similarly, the Objecting Lenders' call for the appointment of an independent fiduciary is again reflective of their overarching desire to control these cases and implement a sale process. The Debtors are fulfilling their role as a fiduciary debtor in possession with respect to substantially all chapter 11 functions, albeit not in way that entirely pleases the Objecting Lenders. The Debtors are aware that the US Trustee undertook to appoint a creditors' committee and that there was ultimately insufficient interest from the creditor body. A committee would have provided an independent voice in the case for the Objecting Lenders while allowing advisors' and attorneys' fees to be paid by the estate. However, it is not fair to cast blame for the absence of a committee on the Debtors.

19.  The Debtors are as anxious as any party to emerge from chapter 11. However, at this point, such efforts are dependent on normalizing revenue of the Peruvian operating companies and administering the INDECOPI proceedings, neither of which is subject to manipulation by the Debtors as the Objecting Lenders repeatedly suggest. The Club Lender Parties' arguments, that the value of the Peruvian assets was established in the Trustee Motion trial as being insufficient to pay all creditors in full and that the inevitable result of such proceedings is for the Debtors, and by implication the Ng family, to retain ownership, are inapposite. The complexity of the Debtors' reorganization process is the result of uncertainty as to the ultimate value of the Peruvian and other assets and the way to best distribute such value among creditor, minority interest holders and other stakeholders. An extension of exclusivity is

warranted in order to allow the Peruvian proceedings to progress and have their results factored into the Debtors' plan formulation process.

20. The Debtors have been working with their legal and financial advisors, and particularly Goldin, to prepare a plan outline and/or summary to distribute to major creditor and other constituencies which they believe will serve as a basis for negotiations over a consensual plan of reorganization. In developing an outline, the Debtors must consider the rights of, as well as the limitations on the rights of, each party, so as to create a plan that would maximize value for as many of the parties in interest as possible in the circumstances.

### C. The Debtors Have Engaged the Lenders in Attempts at Constructive Communications and Will Continue To Do So.

21. While Maybank decries the lack of constructive communications from the Debtors, Maybank and its counsel were invited to and attended a meeting with management and Goldin in Hong Kong during the last week in September, as did the Club Lenders and their counsel. This was in addition to meetings held with 20 other creditors across the capital structure of the Pacific Andes Group, a summary of which is attached hereto as **Exhibit A**. A further operational and business update was also disseminated to the Objecting Lenders as well as other bank and non-bank lenders on October 12, 2016 to provide them with visibility into the various businesses of the Pacific Andes Group, and management has committed to provide further regular business updates going forward.

22. The Debtors have been informed by the independent review committee for PAIH that RSM is expecting to deliver its forensic report regarding PAIH's Russian fishing transactions by the end of October. However, the Debtors' management has no control over this process as it is being handled by the independent directors appointed to the review committee directly with RSM.

23.     Accordingly, the audited financial statements that are produced for the Debtors by Deloitte are not currently available and are awaiting the completion of the RSM report. Because three of the Debtors are public companies, the audited financials will be made public.

### D.     Arguments Asserted in the Trustee Motion.

24.     A large number of the objections advanced by the Objecting Lenders in support of terminating or limiting exclusivity are re-hashes of arguments already made at great length in the Trustee Motion trial and post-trial submissions. The Debtors see no need to respond again to such arguments and respectfully refer the Court to the record of the trial and the post-trial submissions on behalf of the Debtors and other parties who opposed the Trustee Motion.

### E.     The Restrictions On Reporting in the Cash Management Order Are Appropriate.

25.     The sole objection filed to the Joint Cash Management Motion was the Club Lenders' limited objection seeking to modify the "advisors' eyes only" restriction on reporting by the Debtors. The terms of the existing Cash Management Order were negotiated with the Objecting Lenders and specifically included an "advisors' eyes only" restriction on reporting. While the Debtors would consider, as they have already with Maybank, entering into a non-disclosure agreement that would allow wider dissemination of the reported information, any inability of the parties to agree on the elimination of such restrictions as contained in the existing Cash Management Order is not a basis to condition the grant of an exclusivity extension, as requested by Maybank, or to deny the Debtors' and PARD's request to supplement the Cash Management Order, as asserted by the Club Lender Parties.

### F.     The Club Lender Parties' Request For Segregation of Golf Club Membership Sale Proceeds Should Be Denied.

26.     The Club Lenders Parties' suggestion that the proceeds of the sale of PAIH's golf club membership should be segregated for use by a trustee, independent CRO or lender financial

9

advisor should be rejected by this Court for a number of reasons. First, the suggestion is premature as to any trustee appointment. Second, there is no basis in the Bankruptcy Code for any party to attempt to determine how the Debtors use unencumbered funds constituting property of the estate, absent allegations of non-compliance with the business judgment rule and section 363 of the Bankruptcy Code, both of which are not the case here. Third, if the Debtors determine to appoint a CRO, they would allocate adequate funds to compensate such individual notwithstanding the availability of the sale proceeds for other administrative expenses as well. In addition, this individual would be focused on assisting and guiding the Pacific Andes Group with its reorganization. Finally, there is no basis to make such funds available to pay a financial advisor for the Objecting Lenders, who each had the opportunity to sit on a creditors' committee which would have been entitled to retain independent professionals to be paid by the estate, and are likely going to seek to recover their attorneys' fees and other expenses as costs of collection under their loan agreements.

WHEREFORE, for the reasons set forth herein and in the Debtors' Motions, the Debtors respectfully request that the Motions be granted together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
October 21, 2016

        MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:   /s/ Howard B. Kleinberg
       Howard B. Kleinberg
       Edward J. LoBello
       Jil Mazer-Marino
1350 Broadway, Suite 501
New York, New York 10018
(212) 239-4999

*Counsel to China Fishery Group Limited (Cayman), et al., Debtors and Debtors in Possession*

- and -

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

By:   /s/ Tracy L. Klestadt
       Tracy L. Klestadt
200 West 41st Street
17th Floor
New York, New York 10036-7203
(212) 972-3000

*Proposed Counsel to Pacific Andes Resources Development Limited, Debtor and Debtor in Possession*

# APPENDIX

## LISTING OF MOTIONS AND OBJECTIONS ADDRESSED IN THIS REPLY

### DEBTORS' MOTIONS

- *Debtors' Motion for an Order Pursuant to 11 U.S.C. §§ 105(A), 327(A), 328 and 363 (I) Authorizing the Private Sale of Golf Club Membership Nunc Pro Tunc to August 25, 2016, (II) Approving the Terms of the Sale, (III) Authorizing the Employment, Retention of and Payment to Everfine Membership Services Limited, as Broker, Nunc Pro Tunc to June 30, 2016, and (IV) Granting Related Relief ("**Sale Motion**") [ECF Dkt. No. 160].*

- *Debtors' Motion for an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof ("**Exclusivity Motion**") [ECF Dkt. No. 166].*

- *Joint Motion For Entry Of Order (A) Authorizing Pacific Andes Resources Development Limited To Continue To Use Its Cash Management System, As Modified; And (B) Granting The Debtors A Limited Waiver Of Bankruptcy Code Section 345 ("**Joint Cash Management Motion**") [ECF Dkt. No. 165; PARD ECF Dkt. No. 10].*

### OBJECTIONS

- *Objection of Bank of America, N.A. to Debtors' Motion for an Order Extending the Exclusivity Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [ECF Dkt No. 187].*

- *Club Lender Parties' Objection to the Debtors' Motion for an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [ECF Dkt. No. 188].*

- *Maybank's Objection to Debtor's Motion for an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [ECF Dkt. No. 184].*

- *Club Lender Parties' Limited Objection to the Debtors' Motion for an Order Authorizing the Private Sale of Golf Club Membership Nunc Pro Tunc to August 25, 2016 and Granting Related Relief [ECF Dkt. No. 185].*

- *Club Lender Parties' Limited Objection to the Joint Motion for Entry of an Order (A) Authorizing Pacific Andes Resources Development Limited to Continue to Use Its Cash Management System, as Modified, and (B) Granting the Debtors a Limited Waiver of Bankruptcy Code Section 345 [ECF Dkt No. 186; PARD ECF Dkt. No. 22].*

- *Senior Noteholder Committee's Limited Objection to Debtor's Motion for an Order Extending The Exclusive Period During which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [ECF. Dkt. No. 191].*

**EXHIBIT A**

## Debtors' and Advisors' Meetings with Creditors

| Date | Bank Lenders | | CFG Bondholders |
|---|---|---|---|
| | Organization | Loan exposure by group | |
| 26th Sep 2016 | • China CITIC Bank International | • PAIH, PARD | |
| 27th Sep 2016 | • Fubon Bank (Hong Kong) Ltd | • PAIH | • DoubleLine Capital LP<br>• Fosun Group<br>• Millennium Capital Management (Singapore) Pte. Ltd.<br>• Arkkan Capital Management Ltd<br>• Deutsche Bank<br>• Serica Partners Asia Ltd<br>• Pioneer Investment |
| 28th Sep 2016 | • Taipei Fubon Commercial Bank Co., Ltd | • PARD | • Davidson Kempner Asia Ltd<br>• Och-Ziff Capital Management Hong Kong Ltd<br>• Cowell & Lee Advisors Ltd<br>• Value Partners Limited |
| 29th Sep 2016 | • Rabobank International<br>• Standard Chartered Bank (HK) Ltd<br>• Maybank<br>• DBS<br>• United Overseas Bank<br>• KBC | • PAIH, PARD, CFGL<br>• PAIH, PARD, CFGL<br>• PAIH, PARD<br>• PAIH, PARD, CFGL<br>• PAIH, PARD<br>• PAIH | • CITIC Securities International Company Limited |

1144465