| | |
|---|---|
| **GREENBERG TRAURIG LLP** <br> Louis Smith <br> Nathan Haynes <br> MetLife Building <br> 200 Park Avenue <br> New York, NY 10166 <br> Tel:  (212) 801-9200 <br> *Attorneys for HSBC North America Holdings Inc.,* <br> *HSBC North America Inc., and HSBC USA Inc.* | **Objections Due**: January 20, 2017 at 4:00 p.m. (ET) <br> **Objections Due (HSBC Entities only)**: February 6, 2017 at 4:00 p.m. (ET) <br> **Second Amended Presentment Date**: February 7, 2017 at 10:00 a.m. (ET) <br> **Hearing Date:** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> CHINA FISHERY GROUP LIMITED (CAYMAN) , et al., <br><br>                         Debtors. <br> ------------------------------------------------- <br> In re: <br><br> CFG PERU INVESTMENTS PTE. LTD. (SINGAPORE), <br><br>                         Debtor. | Case No. 16-11895 (JLG) <br><br> Chapter 11 (Jointly Administered) <br><br><br> Case No. 16-11914 (JLG) <br><br> Chapter 11 |

**HSBC NORTH AMERICA HOLDINGS INC., HSBC NORTH AMERICA INC., AND HSBC USA INC.'S OBJECTION TO THE MOTION OF WILLIAM A. BRANDT, JR., CHAPTER 11 TRUSTEE FOR CFG PERU INVESTMENTS PTE. LTD. (SINGAPORE), FOR ORDER AUTHORIZING ISSUANCE OF SUBPOENAS TO HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION OF WITNESSES**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

    I.    BACKGROUND ............................................................................................................. 1

        A.  HSBC US and HBAP are Wholly Separate Entities................................................ 1

        B.  The Discovery Motion .............................................................................................. 2

        C.  HSBC US Does Not Have Any Lending or Banking Relationships with the Debtors or the CF Group or Documents Responsive to the Trustee's Requests, and Cannot Obtain HBAP's Documents................................................................. 3

    II.   ARGUMENT .................................................................................................................... 4

        A.  HSBC US Cannot Be Subject to Discovery Under Rule 2004, As It Has Never Had A Lending Or Banking Relationship With the Debtors Or the CF Group ........ 5

        B.  HSBC US Cannot Be Compelled to Produce Documents in the Possession of HBAP Because It Does Not Have a Legal Right to Or the Practical Ability to Obtain Such Documents ........................................................................................... 6

CONCLUSION.............................................................................................................................. 13

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Application of Passport Special Opportunities Master Fund, LP for an Order Compelling Compliance with a Subpoena Issued to Deloitte Touche Tohmatsu Ltd. Pursuant to 28 U.S.C.§ 1782, No. 16 MISC. 33(PAE)*,
 2016 WL 844833 (S.D.N.Y. Mar. 1, 2016) ............................................................... 7, 8, 9

*ASI, Inc. v. HSBC Bank USA, N.A.*,
 Civil Action No. 1:16-mc-00269-P1 ................................................................................. 8

*In re CIS Corp.*,
 123 B.R. 488 (Bankr. S.D.N.Y. 1991) ............................................................................... 5

*In re Continuum Care Servs., Inc.*,
 375 B.R. 692 (Bankr. S.D. Fla. 2007) ............................................................................... 7

*Cradle IP LLC v. Texas Instruments, Inc.*,
 2013 WL 1794992 (D. Del. Apr. 29, 2013) .................................................................... 11

*Dartell v. Tibet Pharmaceuticals, Inc.*,
 Civil Action No. 14-cv-3620-MVC-MAG ....................................................................... 8

*Doe Run Per S.R.L. v. Trafigura AG*,
 2011 U.S. Dist. LEXIS 154559 (D. Conn. Aug. 24, 2011) ........................................ 10, 11

*In re Gay*,
 2016 WL 1612942 (Bankr. W.D. Okla. Apr. 21, 2016) ................................................ 5, 6

*In re Hilsen*,
 2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ....................................................... 5

*In re Hughes*,
 281 B.R. 224 (Bankr. S.D.N.Y. 2002) .............................................................................. 5

*In re Ionosphere Clubs, Inc.*,
 156 B.R. 414 (Bankr. S.D.N.Y. 1993) .............................................................................. 5

*In re Marathe*,
 459 B.R. 850 (Bankr. M.D. Fla. 2011) ............................................................................. 5

*In re Millennium Global Emerging Credit Master Fund Ltd.*,
 471 B.R. 342 (Bankr. S.D.N.Y. 2012) .............................................................................. 7

*In re Nortel Networks Corp. Sec. Litig.*,
 2004 WL 2149111 (S.D.N.Y. Sept. 23, 2004) .............................................................. 7, 9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
 233 F.R.D. 143 (D. Del. 2005) .............................................................................................. 11

*In re Recoton Corp.*,
 307 B.R. 751 (Bankr. S.D.N.Y. 2004) ..................................................................................... 5

*S.E.C. v. Credit Bancorp, Ltd.*,
 194 F.R.D. 469 (S.D.N.Y. 2000) .................................................................................. 7, 9, 10

*In re St. Clair*,
 2014 WL 279850 (E.D.N.Y. 2014) ...................................................................................... 6, 7

*Tiffany (NJ) LLC v. Qi Andrew*,
 276 F.R.D. 143 (S.D.N.Y. 2011) ............................................................................................. 7

**Statutes**

11 U.S.C. § 105(a) ......................................................................................................................... 2

11 U.S.C. § 1106(a)(3) .................................................................................................................. 2

**Federal Rules**

Fed. R. Civ. P. 45 .......................................................................................................................... 6

Fed. R. Bankr. P. 2004 ........................................................................................................ *passim*

Fed. R. Bankr. P. 9016 ............................................................................................................. 2, 6

**Other Authorities**

S.D.N.Y. LBR 2004-1 ................................................................................................................... 2

HSBC North America Holdings Inc., HSBC North America Inc., and HSBC USA Inc. (collectively referred to as "HSBC US") respectfully submit this Objection to the Motion of William A. Brandt, Jr. ("the Trustee"), Chapter 11 Trustee for CFG Peru Investments Pte. Ltd. (Singapore) ("CFG Peru"), for Order Authorizing Issuance of Subpoenas to Hongkong and Shanghai Banking Corporation Limited ("HBAP") Directing Production of Documents and Examination of Witnesses (Dkt. No. 294) ("Discovery Motion").

## PRELIMINARY STATEMENT

1. Through the Discovery Motion, the Trustee seeks permission to issue subpoenas to HBAP "and its affiliates" requesting information and documents concerning the Debtors (as defined in footnote 1 of the Discovery Motion) and the CF Group (as defined in footnote 4 of the Discovery Motion). To the extent the Discovery Motion seeks authorization to direct subpoenas to HSBC US, the Court should deny the motion. HSBC US does not have, and has never had, lending or banking relationships with any of the Debtors or the CF Group, and thus does not possess any of the information or documents sought by the Trustee. In addition, HSBC US may not be used as a conduit to obtain documents maintained by HBAP, a foreign affiliate of the HSBC US entities. HSBC US and HBAP are separate and distinct legal entities, and HSBC US does not have possession, custody, or control over HBAP's information and documents.

## I. BACKGROUND

**A. HSBC US and HBAP are Wholly Separate Entities**

2. HSBC North America Holdings Inc. and HSBC North America Inc. are incorporated in Delaware and have their principal place of business in New York, and HSBC USA Inc. is incorporated in Maryland and has its principal place of business in New York. The

1

HSBC US entities are indirectly owned by HSBC Holdings plc, a United Kingdom corporation. *See* Declaration of Nicole A. Annunziata, dated February 3, 2017 ("Annunziata Decl.") ¶ 4.

3.    HBAP is incorporated and headquartered in Hong Kong and is indirectly owned by HSBC Holdings plc. *Id.* ¶ 5.

4.    The HSBC US entities are separate and distinct from HBAP and all other foreign HSBC affiliates. *Id.* ¶ 6.

### B. The Discovery Motion

5.    Pursuant to sections 105(a) and 1106(a)(3) of the Bankruptcy Code, Bankruptcy Rules 2004 and 9016, and Local Bankruptcy Rule 2004-1, the Trustee seeks the Court's authorization to issue subpoenas to HBAP "and its affiliates" for the production of documents and the examination of witnesses, as part of its "examination of parties with significant historic connections with the CF Group." *See* Discovery Motion at ¶¶ 1, 26.

6.    HBAP is one of the Club Lenders (as defined in Dkt. No. 203 at 9), who are the Debtors' largest creditor group. *See* Discovery Motion at ¶ 1. The Discovery Motion raises contentions regarding HBAP's collection efforts over the past two years to obtain repayment of its loans, and seeks information and documents concerning HBAP's conduct in this regard. *See id.* at ¶¶ 2-3, 11-25.

7.    The Discovery Motion identifies various topics concerning the Debtors and the CF Group (entities with which HSBC US has no relationship) on which the Trustee intends to pursue discovery if the Court authorizes the issuance of subpoenas to HBAP and its affiliates. *See* Discovery Motion at ¶ 4; *see also id.* at ¶ 35. The Trustee claims that this information will assist him in "assessing potential estate claims and defenses," "in formulating a chapter 11 plan," and in "administ[ering] CFG Peru's estate." *Id.* at ¶¶ 34, 36.

2

8. The Discovery Motion also proposes procedures to be followed in connection with the subpoenas the Trustee intends to issue, if authorized. *Id.* at ¶ 39.

9. Although the Discovery Motion almost entirely concerns the issuance of subpoenas to HBAP and does not identify any "affiliates" from which the Trustee may seek discovery, HSBC US was served with the Discovery Motion,[1] and thus appears and objects to the Discovery Motion to the extent that the Trustee intends to direct subpoenas to HSBC US. Annunziata Decl. ¶¶ 2-3.

**C. HSBC US Does Not Have Any Lending or Banking Relationships with the Debtors or the CF Group or Documents Responsive to the Trustee's Requests, and Cannot Obtain HBAP's Documents**

10. As set forth in the Declaration of Nicole A. Annunziata, HSBC US has never had a lending or banking relationship with any of the Debtors (including CFG Peru) or the CF Group. *Id.* ¶¶ 7-8.

11. As a result, HSBC US does not have any knowledge, information, or documents concerning the topics on which the Trustee seeks discovery. *Id.* ¶ 9 (citing Discovery Motion at ¶ 4).

12. Nor can HSBC US obtain the documents sought by the Trustee from HBAP. Annunziata Decl. ¶ 10. The HSBC US entities maintain their own computer systems, which are separate and apart from any systems or databases of HBAP or any other foreign HSBC entities. *Id.* Documents of the type requested in the Discovery Motion do not flow freely between HBAP and HSBC US, and HSBC US does not otherwise access HBAP's documents in the ordinary course of business. *Id.* The HSBC US entities do not have access to the records and systems of HBAP or any other foreign HSBC entities, and thus lending and account records, as well as

---

[1] The Certificate of Service the Trustee filed also references HSBC Holdings Inc., but that is not an active entity. *See* Annunziata Decl. ¶ 2.

3

information and documents concerning the items sought by the Trustee, that are maintained by HBAP or any other foreign HSBC entities are not within the possession, custody, or control of HSBC US. *Id.*

13.    HSBC US likewise does not have the practical ability to obtain from HBAP (or any other HSBC foreign entities) information or documents concerning the items sought by the Trustee, as such information and documents would not be provided to HSBC US upon request. *Id.* ¶ 11.

## II. ARGUMENT

14.    To the extent the Trustee intends to issue subpoenas to HSBC US, the Court should reject those efforts, as (a) HSBC US has no relationship with the Debtors or the CF Group and thus does not possess of the information or documents sought by the Trustee; and (b) HSBC US does not have possession, custody, or control over, or the practical ability to obtain, HBAP's documents and thus cannot be compelled to produce such documents.

15.    As a preliminary matter, HSBC US does not have and has never had a lending or banking relationship with any of the Debtors (including CFG Peru) or the CF Group, and thus is not properly subject to examination under Rule 2004. In addition, because HSBC US lacks any kind of relationship with the Debtors or the CF Group, they do not have any knowledge, information, or documents concerning the topics on which the Trustee intends to pursue discovery, or anything within the scope of a proper examination under Rule 2004.

16.    Second, HSBC US cannot be used as a conduit to obtain documents from its foreign affiliate, HBAP, as the HSBC US entities are separate and distinct from HBAP and all other foreign HSBC entities. Indeed, the HSBC US entities maintain their own computer systems, which are separate and apart from any systems or databases of HBAP or any other

4

foreign HSBC entities, and thus do not have possession, custody, or control over, or the practical ability to obtain, information or documents concerning the items sought by the Trustee that are maintained by HBAP.

17. For all of these reasons, the Court should not authorize the issuance of subpoenas to HSBC US.

### A. HSBC US Cannot Be Subject to Discovery Under Rule 2004, As It Has Never Had A Lending Or Banking Relationship With the Debtors Or the CF Group

18. As the Trustee concedes, only entities that have had "dealings" or "a relationship with" the debtor may be subject to a Rule 2004 examination. *See* Discovery Motion at 13-14 ¶¶ 30-31. *See In re CIS Corp.*, 123 B.R. 488, 490 (Bankr. S.D.N.Y. 1991) (discovery under Rule 2004 may extend to those who "have had business dealings with the debtor") (citing *In re Johns–Manville,* 42 B.R. 362, 364 (Bankr. S.D.N.Y.1984)); *see also In re Marathe*, 459 B.R. 850, 860 (Bankr. M.D. Fla. 2011) ("Examinations under Rule 2004 are properly extended to third parties who have had 'dealings with the debtor.'") (quoting *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989)); *In re Hilsen*, 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25, 2008); *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (Bankr. S.D.N.Y. 1993).

19. Thus, as HSBC US has never had any lending or banking relationships with any of the Debtors or the CF Group, *see* Annunziata Decl. ¶¶ 7-8, HSBC US may not be the subject of the Trustee's proposed Rule 2004 examination.

20. In addition, as the Trustee recognizes, the scope of a Rule 2004 examination is limited to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." *See* Discovery Motion at 14 (quoting Fed. Bankr. R. 2004(b)). *See In re Gay*,

5

2016 WL 1612942, at *2 (Bankr. W.D. Okla. Apr. 21, 2016) ("Although the scope of the examination permitted under Rule 2004 is broad, it is not without limits. Examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper.") (citing *In re Johns-Manville*, 42 B.R. at 364).

21.     Because HSBC US lacks any lending or banking relationship with the Debtors or the CF Group, it likewise lacks any knowledge, information, or documents regarding any of the topics on which the Trustee intends to seek discovery, or anything within the scope of Rule 2004(b).  *See* Annunziata Decl. ¶¶ 7-9.

22.     Accordingly, HSBC US would not be able to produce anything from its own records in response to a subpoena requesting information or documents concerning the subjects identified in the Discovery Motion.  *See* Discovery Motion at ¶ 4.  The Court should thus decline to authorize the Trustee to direct any subpoenas to HSBC US.

**B. HSBC US Cannot Be Compelled to Produce Documents in the Possession of HBAP Because It Does Not Have a Legal Right to Or the Practical Ability to Obtain Such Documents**

23.     To the extent the Trustee intends to subpoena HSBC US to obtain HBAP's documents, that effort should be rejected.

24.     Rule 2004(c) provides that a party properly subject to a Rule 2004 examination "may be compelled" to produce documents within the scope of Rule 2004(b) "as provided in Rule 9016." Rule 9016 provides that Federal Rule of Civil Procedure 45 "applies in cases under the Code." Accordingly, a subpoena issued under Rule 2004 must comply with the requirements of Federal Rule of Civil Procedure 45, including that a subpoena commanding the production of documents may seek documents in the subpoenaed party's "possession, custody or control." Fed. R. Civ. P. 45(a)(1)(A)(iii).  *See, e.g.*, *In re St. Clair*, 2014 WL 279850, at *1 (E.D.N.Y. 2014)

6

(recognizing that subpoenas issued under Rule 2004 compel the production of those documents within the "possession, custody, or control" of the subpoenaed party); *In re Millennium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 347 (Bankr. S.D.N.Y. 2012) (same); *In re Continuum Care Servs., Inc.*, 375 B.R. 692, 694 (Bankr. S.D. Fla. 2007) (same).

25.     "Control" has been construed as "the legal right, authority, or practical ability to obtain the materials sought upon demand." *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000). "This principle applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation." *Id.* at 472. "The burden of demonstrating that the party from whom discovery is sought has the practical ability to obtain the documents at issue lies with the party seeking discovery." *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 148 (S.D.N.Y. 2011).  In particular, "where discovery is sought from an entity for documents in the physical possession of another, affiliated entity, '[i]t is the discovering party's burden to demonstrate that the requested entity has either the legal right or the practical ability to obtain the documents in question from their custodian.'" *In re Application of Passport Special Opportunities Master Fund, LP for an Order Compelling Compliance with a Subpoena Issued to Deloitte Touche Tohmatsu Ltd. Pursuant to 28 U.S.C. § 1782*, No. 16 MISC. 33(PAE), 2016 WL 844833, at *4 (S.D.N.Y. Mar. 1, 2016) (hereinafter "*In re Application of Passport*") (alteration in original) (quoting *In re Nortel Networks Corp. Sec. Litig.*, 2004 WL 2149111, at *2 (S.D.N.Y. Sept. 23, 2004)).

26.     Numerous courts have denied motions to compel entities in the United States to produce documents from foreign affiliates in similar circumstances.  Most notably, courts have already considered and decided that a United States-based HSBC entity, HSBC Bank USA, N.A.

7

("HSBC Bank USA"), does not have possession, custody, or control over, or the practical ability to obtain, records from HBAP or other foreign HSBC entities.

27. For example, in *ASI, Inc. v. HSBC Bank USA, N.A.*, Civil Action No. 1:16-mc-00269-P1, an action in the United States District Court for the Southern District of New York, District Judge Engelmayer denied a motion to compel HSBC Bank USA to comply with a subpoena that sought documents in the possession of HBAP and another foreign affiliate located in Hong Kong. *See* Declaration of Louis Smith, dated February 6, 2017 ("Smith Decl.") ¶¶ 4-5, Ex. B. In denying the motion, Judge Engelmayer found that ASI, Inc. ("ASI") failed to carry its burden, and instead credited HSBC Bank USA's statements "that it cannot access records held by [its] foreign affiliates"; "that it maintains its own computer systems and databases that are separate from any systems or databases of the Hong Kong affiliates"; and "that if HSBC [Bank USA] were to request this information, the foreign affiliate would not provide it to HSBC [Bank USA]." *Id.*, Ex. B at 27-28.

28. Likewise, in *Dartell v. Tibet Pharmaceuticals, Inc.*, Civil Action No. 14-cv-3620-MVC-MAG, an action in the United States District Court for the District of New Jersey, Magistrate Judge Hammer denied the plaintiffs' motion to compel arising from a subpoena directed to HSBC Bank USA that sought documents held by HBAP. The court was "satisfied that HSBC Bank USA lacks control over, or the ability to access information regarding the accounts of foreign HSBC entities." *See* Smith Decl. ¶¶ 2-3, Ex. A.

29. A similar issue was addressed in *In re Application of Passport*. In that case, the movant ("Passport") sought to compel nonparty Deloitte Touche Tohmatsu Limited ("DTTL"), a United Kingdom private company, to produce a document ("the Letter") in the possession of an affiliated entity, Deloitte Yousef Adil ("Deloitte Pakistan"). *See* 2016 WL 844833, at **1-2. The

8

Court emphasized that Passport, "as the party seeking discovery, bears the burden of demonstrating that [the respondent] has 'possession, custody, or control' of the Letter" and "must affirmatively show that [DTTL] enjoys such authority." *Id.* at *5. In response to the motion to compel, counsel for DTTL represented that DTTL and the other Deloitte entities (including Deloitte Pakistan) "are legally separate and independent entities, which cannot obligate each other," and that DTTL thus lacked possession, custody, or control over the Letter, as well as the practical ability to obtain the Letter from Deloitte Pakistan. *Id.* at **5-6. Passport was unable to point to any persuasive evidence to refute those representations. *Id.* at **6-9. The Court thus held that Passport had failed to satisfy its burden of proving that DTTL had a legal right to obtain documents from Deloitte Pakistan, and denied the motion to compel. *Id.* at **5-6.

30.     In so holding, the Court noted that a limited exchange of information between two entities is not sufficient to establish "'control' over *all* documents in possession of the other," and that "the mere existence of a 'close working relationship' between two firms with respect to some matters does not demonstrate the practical ability of one to obtain documents upon demand from the other." *Id.* at **7-8. *See also Nortel*, 2004 WL 2149111, at **1-4 (denying motion to compel Deloitte USA to produce documents in the possession, custody and control of "separate entity" Deloitte Canada).

31.     Other courts that have considered a motion to compel the production of documents from an affiliated foreign corporation, known as a foreign "sister" corporation, have focused on the question of access to the affiliate's documents.

32.     In *Credit Bancorp, Ltd.*, the plaintiff served a subpoena on nonparty Swiss American Securities Inc. ("SASI"), which sought documents related to a specific Credit Suisse (Zurich) bank account. *See* 194 F.R.D. 470. As SASI and Credit Suisse (Zurich) are both owned

9

by the same corporate parent, the Credit Suisse Group, they are "sister corporations within the larger group of affiliated Credit Suisse companies." *Id.* at 472. SASI represented to the plaintiff that it did not possess certain of the requested documents and the plaintiff moved to compel compliance with the subpoena, arguing that, even if SASI did not have possession of the documents, it nonetheless had "control" over the documents of its affiliate. *Id.* In support of the motion, the plaintiff "relie[d] primarily on the contention that 'it is inconceivable' that SASI would not have access to these documents in the ordinary course of business," and pointed to securities regulations that established record-keeping requirements. *Id.* at 473. The Court rejected these arguments, finding that "on this record it cannot be concluded that SASI must maintain or have access to such records …. Therefore, [the plaintiff] has not made a sufficient showing as to SASI's control over the documents [the plaintiff] seeks." *Id.* at 475.

33.     Similarly, in *Doe Run Per S.R.L. v. Trafigura AG*, 2011 U.S. Dist. LEXIS 154559 (D. Conn. Aug. 24, 2011), plaintiff Doe Run Per S.R.L. ("DRP") moved to compel defendant Trafigura AG ("TAG") to produce certain documents in the control of its Peruvian affiliate, Conscorcio Minero S.A. ("Cormín"). *Id.* at **1-2. DRP argued that, as affiliates, Cormín and TAG shared information in the ordinary course of business, and thus that TAG had the practical ability to obtain the documents sought. *Id.* at *2. Noting that the burden of proof rested with DRP, as the party seeking the documents, the court framed the issue as follows:

> Cognizant that the relationship of the corporate entities at issue here is that of an affiliate or sister and not a parent or subsidiary, the test is not whether there existed a "free flow of communication" between the entities generally as DRP suggests. Whether TAG exercised control over the documents sought instead turns on the nature of the transactional relationship between the entities as it relates to the documents sought and whether TAG has the practical ability to obtain them.

*Id.* at *6. Considering first the corporate structure, the court recognized that TAG and Cormín were both subsidiaries of the same corporation and that the corporate parent and Cormín shared

10

certain high-level executives. *Id.* at *8. Beyond this, the court found that evidence suggesting "anything other than an affiliate relationship [between TAG and Cormín] in which both entities observe formalities and conduct dealings with each other at arms' length" was "notably absent from the record." *Id.* The court next rejected DRP's argument that TAG's control over Cormín's records was evidenced by the fact that employees of each company were included on the same "email teams." *Id.* at **10-11. In that regard, the court found that, "[a]t most, the emails submitted as evidence by DRP show that Cormín kept its parent and affiliates 'in the loop' and that Cormín, not TAG, controlled the information." *Id.* Accordingly, the court denied the motion to compel, holding that DRP failed to carry its burden of demonstrating that TAG had the practical ability to obtain the requested documents from its affiliate. *Id.* at **12-13.

34.     As the above cases demonstrate, the fact that two companies "are sister corporate entities … does not automatically permit an inference that [the subpoenaed party] controls the documents and information being sought … that are in [the foreign sister's] possession, custody, or control." *See Cradle IP LLC v. Texas Instruments, Inc.*, 2013 WL 1794992, at *2 (D. Del. Apr. 29, 2013) (denying motion to compel United States company to produce documents and information in the possession, custody, or control of its sister Finnish company); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145-46 (D. Del. 2005) (quashing subpoena to United States company to produce documents belonging to its Korean affiliates, noting that, "[i]n addition to being separate legal entities with separate corporate places of incorporation, [the Korean and United States affiliates] also function as separate entities in the business world").

11

35. Indeed, where, as here, a corporation has neither control over, nor the practical ability to obtain, documents from its foreign affiliate, it cannot be compelled to produce documents in the possession of its foreign affiliate.

36. As discussed above, the HSBC US entities and HBAP are all indirectly owned by HSBC Holdings, plc. Annunziata Decl. ¶¶ 4-5. However, these entities are "separate and distinct." *Id.* ¶ 6. Indeed, the HSBC US entities maintain their own computer systems, which are separate and apart from any systems or databases of HBAP or any other foreign HSBC entities. *Id.* ¶ 10. Documents of the type requested in the Discovery Motion do not freely flow between HBAP and HSBC US, and HSBC US does not otherwise have access to HBAP's documents in the ordinary course of business. *Id.* The HSBC US entities do not have access to the records and systems of HBAP or any other foreign HSBC entities, and thus lending and account records, as well as information and documents concerning the items sought by the Trustee, that are maintained by HBAP or any other foreign HSBC entities are not within the possession, custody, or control of HSBC US. *Id.*

37. In addition, HSBC US does not have the practical ability to obtain from HBAP (or any other foreign HSBC entities) information or documents concerning the items sought by the Trustee, as such information and documents would not be provided to HSBC US upon request. *Id.* ¶ 11.

38. In light of HSBC US's affirmative evidence that it does not have possession, custody, or control over, or the practical ability to obtain from HBAP the documents the Trustee intends to request, the Trustee will be unable to satisfy his burden of proof. Accordingly, the Court should deny the Discovery Motion to the extent the Trustee seeks authorization to issue subpoenas to HSBC US.

## **CONCLUSION**

39. For all of the foregoing reasons, HSBC US respectfully requests that the Court deny the Discovery Motion to the extent it seeks to authorize the issuance of subpoenas to HSBC US.

Dated: February 6, 2017

Respectfully submitted,

/s/ Louis Smith
Louis Smith
Nathan Haynes
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
*Attorneys for HSBC North America Holdings Inc., HSBC North America Inc., and HSBC USA Inc.*