DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Timothy Graulich
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telephone:    (212) 450-4000
Facsimile:    (212) 701-5800

BOIES SCHILLER FLEXNER LLP
Scott E. Gant (*pro hac vice*)
1401 New York Avenue, NW
Washington, DC 20005
Telephone:    (202) 237-2727
Facsimile:    (202) 237-6131

- and -

Damien J. Marshall
575 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-2300
Facsimile:    (212) 446-2350

*Counsel to The Hongkong and Shanghai Banking Corporation Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CHINA FISHERY GROUP LIMITED (CAYMAN), *et al.*,[1]<br><br>          Debtors. | Case No. 16-11895 (JLG)<br><br>Chapter 11 (Jointly Administered)<br><br>Related Docket No. 299 |

**OBJECTION OF THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED TO THE MOTION OF WILLIAM A. BRANDT, JR., CHAPTER 11 TRUSTEE, PURSUANT TO 11 U.S.C. §§ 105(A) AND 1106(A)(3), FED. R. BANKR. P. 2004 AND 9016, AND L. BANKR. R. 2004-1, FOR ORDER AUTHORIZING ISSUANCE OF SUBPOENAS TO HONGKONG SHANGHAI BANKING CORPORATION LIMITED DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION OF WITNESSES AND GRANTING RELATED RELIEF**

---

[1] The debtors in these chapter 11 cases (the "**Debtors**") are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman) and Pacific Andes Resources Development Limited.

The Hongkong and Shanghai Banking Corporation Limited ("**HSBC-HK**"), by and through its counsel, submits this objection to the motion of William A. Brandt, Jr. (the "**Trustee**"), Chapter 11 Trustee for CFG Peru Investments Pte. Ltd. (Singapore) ("**CFG Peru**"), for an order authorizing the issuance of subpoenas to the Hongkong and Shanghai Banking Corporation Limited and its affiliates pursuant to 11 U.S.C. §§ 105(A) and 1106(A)(3), Fed. R. Bankr. P. 2004 and 9016, and L. Bankr. R. 2004-1 (the "**2004 Motion**" or the "**Motion**") [ECF No. 299 at 1-2].[2]  In support, HSBC-HK respectfully states the following:

## PRELIMINARY STATEMENT

1.    The Trustee was appointed at the end of October 2016.  Rather than seeking to establish a plan to accomplish his primary responsibility to maximize the value of the Peruvian Business, the Trustee is instead seeking—through "special litigation counsel"—to take broad discovery from HSBC-HK that, in the Trustee's own words, may amount to a "fishing expedition."[3]  The Court should deny the Trustee's request to conduct a discovery "fishing expedition" and direct him to focus instead on maximizing the value of the Debtors' fishing business for the benefit of all creditors.

---

[2] Unless otherwise noted, "ECF No. ___" citations refer to Electronic Case Filing documents in Case No. 16-11895; all pin citations utilize the Court's pagination (rather than ECF pagination).  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Court's Memorandum Decision and Order Granting Motion for the Appointment of a Chapter 11 Trustee [ECF No. 203].

[3] HSBC-HK hereby incorporates by reference the arguments contained in the limited objection it recently filed [ECF No. 333 (the "**Limited Objection**")] to the Trustee's application to retain outside counsel for this and other litigation-related purposes [ECF No. 303 (the "**Application**")].  The Limited Objection was filed on January 31, 2017 because HSBC-HK was unable to obtain a further extension from the Trustee of the objection deadline for the Application.  However, there is a significant linkage between the Application to employ "special litigation counsel" and the 2004 Motion, which seeks permission for that counsel to undertake litigation activities.

2.      It remains a mystery why the Trustee has singled out HSBC-HK for this purpose,[4] particularly when this Court has already heard evidence of misconduct by the Debtors and their management and owners.  [*See* ECF No. 203 at 35-36, 39.]  But it is by all accounts clear that the Trustee's actions are not consistent with the goals set forth for the Trustee by this Court or the goals of chapter 11 proceedings more generally.  And the Trustee provides no good reason to embark on the campaign he asks this Court to authorize.

3.      The Court should therefore deny the Trustee's request to commence immediate and massive discovery of HSBC-HK (or any other party), at least until the Trustee is able to achieve meaningful progress toward a value-maximizing transaction or other strategy for the Peruvian Business.  Indeed, doing so may result in a complete repayment of creditors and entirely moot the need for the Trustee to expend estate resources pursuing claims of speculative value.  If the Trustee wishes to pursue expensive discovery and litigation in the future, the Court may consider such a request (which raises significant legal issues addressed below)—but with the benefit of more complete information regarding the Trustee's efforts to discharge the responsibilities entrusted to him by the Court and the creditors who petitioned for his appointment.

4.      In addition to being wasteful and premature, the 2004 Motion ignores several important obstacles that, in addition to acting as a bar to the Trustee's requested relief, must be addressed before any discovery (or "litigation") against HSBC-HK could proceed.

5.      First, the Trustee fails to address the reality that HSBC-HK is a foreign financial institution that conducts no business in the United States and had no contact with any of the

---

[4] The Trustee, in purporting to set forth the basis for his Motion, does not distinguish between HSBC-HK and/or HSBC entities operating in the United States.  [*See* ECF 299 at 2 (defining "HSBC" to include, collectively, "the Hongkong and Shanghai Banking Corporation Limited and its affiliates").]

Debtors in the United States, much less CFG Peru, the Debtor for which the Trustee was

appointed, and for which HSBC-HK is not (and has never been) a creditor. The Trustee has

identified no relevant contacts between HSBC-HK and the United States, as it is his burden to

do, and there are none.[5]

6.      Second, HSBC-HK has done nothing wrong. Most of the conduct that the Trustee

seeks to "investigate" concerns lawful petitioning activity by a creditor in courts outside of the

United States, which could not serve as the basis for any claims or other affirmative relief by the

Trustee before this Court. And even a cursory examination of the record reveals that HSBC-

HK's actions took place under the supervision of foreign courts and/or administrative bodies and

is entirely divorced from the story the Trustee tells in his 2004 Motion. Assuming *arguendo* that

HSBC-HK (and this chapter 11 proceeding more generally) is even properly before this Court,

HSBC-HK's actions should be examined, if at all, by the foreign courts that presided over such

conduct in the first place.

7.      Finally, should the Court authorize the Trustee to take discovery at any point, the

topics about which the Trustee seeks discovery, as described in the 2004 Motion, are vague,

overbroad and not reasonably tailored to any cause of action he conceivably could seek to bring.

8.      For all of these reasons, the Court should deny the Trustee's request to commence

discovery against HSBC-HK at this time and direct him to focus on maximizing the value of the

Peruvian Business. Discovery aside, the Court should conduct a broader review of the progress

---

[5] This objection is not, and should not be deemed or construed to be, a consent to jurisdiction of the
Bankruptcy Court, or the courts of the United States, over HSBC-HK. HSBC-HK expressly reserves any and all
defenses or objections it may have to claims or actions asserted against it including, without limitation, any defense
based on insufficient service of process, jurisdiction (including personal jurisdiction), or capacity to be sued, and this
objection shall not be deemed or construed to waive any of the foregoing. Further, this objection is not, and should
not be deemed or construed to be, a waiver of any of HSBC-HK's other substantive or procedural rights or claims,
actions, defenses, set-offs, or recoupments, all of which HSBC-HK expressly reserves.

of these chapter 11 cases and whether there is any real prospect of the Trustee and Debtors

bringing them to an expeditious and successful conclusion.[6]

## BACKGROUND

9.      The Court has already issued an opinion setting forth the background and events

that led the CF Group to commence these chapter 11 cases.  [*See* ECF No. 203.]  In order to

provide background that is relevant to the 2004 Motion, HSBC-HK references certain of the

Court's findings as well as additional facts that are particular to HSBC-HK.[7]

10.      HSBC-HK is a non-public banking entity incorporated and headquartered in the

Hong Kong Special Administrative Region of the People's Republic of China ("**Hong Kong**"),

primarily servicing customers that do business in the Asia-Pacific region.

11.      The Debtors in these cases comprise only a small part of the Pacific Andes

Group—a sprawling, international network of fishing companies controlled by members of the

Ng Family through Debtor N.S. Hong Investment (BVI) Limited.  [ECF No. 203 at 2.]

12.      Of the sixteen Debtors, thirteen are members of the China Fishery Group of

companies (the "**CF Group**")—which is operated as a separate business within the Pacific

Andes Group.  In addition to the Debtor entities, the CF Group also includes miscellaneous non-

---

[6] This Court is familiar with the history of the multiple foreign proceedings that preceded the Debtors' filing of these chapter 11 cases, some of which are ongoing.  [*See generally* ECF No. 203 at 19-31.]  HSBC-HK notes that other creditors have already moved to dismiss the chapter 11 case filed on behalf of Debtor Pacific Andes Resources Development Limited ("**PARD**"), including in view of these foreign proceedings, arguing that the chapter 11 process has been abused through the manufacture of U.S. jurisdiction, and that the Court should alternately lift the automatic stay to permit certain foreign proceedings to move forward.  [*See* Case No. 16-12739, ECF No. 36.]  HSBC-HK reserves the right to request dismissal of the chapter 11 proceeding or, alternatively, to lift the automatic stay to allow foreign proceedings to continue.

[7] The factual information set forth below is (1) publicly available to the Trustee, including through bankruptcy filings or otherwise; (2) based on evidence already submitted to this Court—likewise available to the Trustee—in the context of the Court's consideration whether to appoint a chapter 11 trustee [*see* ECF No. 203 at 1 n.2 (describing evidence heard by the Court in the context of hearings held in August 2016)]; or (3) likely to be more readily accessible to the Trustee through CFG Peru or other Debtor entities.

Debtor entities including, notably, three Peruvian operation companies ("**Peruvian OpCos**")

specializing in the sourcing, harvesting, processing, and delivery of fish products to consumers

worldwide ("**Peruvian Business**").  [*Id.* at 8-9.]

13.    The Debtors "consist principally of holding companies and defunct, non-operating

companies" with no assets in the United States "except for their interest in retainers paid to their

United States advisors."  [*Id.* at 2.[8]]  To the extent the Debtors have any value at all, it "is derived

from their mostly indirect interests in" the Peruvian OpCos, each of which are non-Debtors.  [*Id.*

at 2, 6.]

14.    Prior to the events that gave rise to the instant proceeding, HSBC-HK had a

banking relationship (entirely outside the United States) with Pacific Andes Group entities,

including the CF Group.  For example, in an agreement dated March 20, 2014, it extended credit

as part of a "Club Facility" (along with other "Club Lenders") to Debtor China Fisheries

International Limited ("**CFIL**") and two of the Peruvian OpCos.  [*Id.* at 9.]  The Debtors

intended to use that loan to "assist with a corporate restructuring of the Peruvian Business, pay

off existing debt associated with the acquisition of the Peruvian Business, and provide revolving

credit to pay off other existing facilities."  [*Id.* at 9-10.]

15.    Within a month of closing the Club Facility, however, the Pacific Andes Group

began to experience liquidity problems "[l]argely as a result of . . . factors affect[ing] the

anchovy harvest[s]" for 2014 and 2015, and the "associated loss of revenue from the CF Group."

[*Id.* at 14.]

---

[8] According to the motion to dismiss the PARD chapter 11 case, filed by creditor Malayan Bank Berhad, Hong Kong Branch, the U.S.-based retainers ultimately amount to little more than an eleventh-hour attempt to fabricate U.S. jurisdiction.  [*See* Case No. 16-12739, ECF No. 36 at 18-19.]  HSBC-HK expresses no view on this issue, but similarly notes this Court's findings that the Debtors never intended to honor their obligations in foreign proceedings and instead intended to file bankruptcy proceedings in the United States, a fact that was intentionally concealed by management.  [*See* ECF No. 203 at 28-29.]

16.     In an effort to accommodate Debtors' financial constraints, HSBC-HK and the other Club Lenders continued to support them by agreeing to eight separate extension and waiver agreements to the Club Facility.  [*Id.* at 14-18.]  The situation came to a head in September 2015, when the Debtors were unable to continue making scheduled payments under the Club Facility and commenced discussions with creditors on a potential restructuring.  [*Id.* at 15.]  In light of these developments, the Club Lenders sought detailed information, which was initially provided by the Debtors' auditors at Deloitte, and the retention of independent monitors from KPMG to validate the work of Deloitte.  [*Id.* at 15-17.]  These additional precautions were unavailing, however.  For example, it was discovered in November 2015 that the Debtors had made misrepresentations to the Club Lenders regarding about $31 million in refunds purportedly obtained on certain long-term supply contracts ("**LSAs**").  The Debtors had initially represented in writing that such funds had not been received at all, but later conceded they used such funds "to make a regularly scheduled payment" rather than "apply[] those funds towards the prepayment obligation as required by the Club Facility."  [*Id.* at 18.]

17.     Shortly after the expiration of the eighth waiver, HSBC-HK commenced winding-up proceedings in Hong Kong and the Cayman Islands on November 25 and 27, 2015, respectively, seeking among other things the appointment of joint provisional liquidators ("**JPLs**") at CFIL and China Fishery Group Limited ("**CFGL**").  [*Id.* at 19.]

18.     Despite initially granting HSBC-HK's request on an interim basis, a different judge of the Hong Kong court issued an order on January 5, 2016, following a hearing, dismissing the appointment of the Hong Kong JPLs (the appointment of JPLs for CFGL in the Cayman Islands continued).  [*Id.* at 22.]

19.    Because the CF Group remained unable to pay its debts, the winding-up petitions in both Hong Kong and the Cayman Islands continued to proceed.  HSBC-HK advised the Club Borrowers that it intended to appeal the Hong Kong Decision, defend the continued appointment of the Cayman Island JPLs and, separately, proceed with the winding-up petition in both Hong Kong and the Cayman Islands.  [*Id.*].

20.    With the potential for continued litigation and appeals concerning oversight over the Debtors where the outcome would be uncertain, and given the views of the Debtors and other Club Lenders, HSBC-HK agreed to a January 20, 2016 Deed of Undertaking with CFGL and CFIL, pursuant to which CFGL and CFIL agreed to, among other things, pursue a sale of the Peruvian Business on or before July 15, 2016, appoint a Chief Restructuring Officer to oversee the sale process, and make changes to management.  [*Accord id.* at 22-23 & nn.23, 24 (citing Deed of Undertaking, Recital E, Clause 2.2).]

21.    In return, HSBC-HK agreed not to appeal the Hong Kong Decision, to withdraw the Hong Kong and Cayman Islands petitions and to dismiss the JPLs.  [*See id.* at 22.]  If, however, the Debtors did not honor their agreement, HSBC-HK would "individually be at liberty to apply to the Cayman Court for the immediate reappointment of the JPL's [*sic*] . . . and the CF Parties consent to such reappointment . . . ."  [*Id.* at 24 (citing Deed of Undertaking, Clause 4).]

22.    On June 30, 2016, CF Group and its related companies filed insolvency proceedings in multiple foreign jurisdictions, including the United States.  [*Id.* at 30-31.]  By filing insolvency proceedings in various foreign jurisdictions, and by failing to sell the Peruvian

Business on or before July 15, 2016, or to request an extension from HSBC-HK, CF Group

"deliberately breached all aspects of the Deed of Undertaking" with HSBC-HK.  [*Id.* at 36.][9]

23.     Thereafter, various of the Club Lenders (not including HSBC-HK) filed a joint

motion in this Court seeking appointment of a chapter 11 trustee.  After receiving and

considering evidence from the parties to that proceeding, the Court granted that motion on

October 28, 2016.

24.     The Court's decision found "a number of good reasons" to support the conclusion

that movants had "lost all confidence in Debtors' management" including:

- "management's deliberate and premeditated breach of the Deeds of Undertakings";

- "management's surreptitious planning of global bankruptcy and insolvency filings";

- "management's attempt to protect real estate holdings by transferring them to related parties";

- "several billion dollars of unexplained intercompany transactions";

- "hundreds of millions of unexplained purported prepayments to Russian entities";

- "hopelessly conflicted advisors to the Independent Review Committee charged with investigating those suspicious prepayments";

- "admitted misrepresentation regarding the receipt of $31 million of LSA termination repayments";

- "the removal of all agreed-to oversight by independent third parties";

- "conflicts of interest of management";

- "management's large investments in the Debtors that have motivated management to oppose a sale of the Peruvian Business";

- "management's ties to outsiders reaching into lower levels of the Debtors and their affiliates"; and

---

[9] The Deed of Undertaking would be enforceable against the CF Group in either a Hong Kong or Cayman court proceeding.  *See supra* ¶ 21.

- "the uncertainty surrounding the Ng Family's ability to control the Peruvian Business."

[*Id.* at 39-40.]

25.     The Court described the role of the Trustee as follows:  "To be sure, a trustee will be able to review and address the Debtors' multi-billion intercompany balances and investigate any alleged accounting irregularities, without the conflicts of interest that plague current management.  Moreover, a trustee can facilitate between hostile parties in the proposal, review and/or negotiation of a reorganization strategy.  Most importantly, however, is that a trustee is in the best position to evaluate the optimal way to maximize the value of the Peruvian Business and to determine how to realize that value for the benefit of the Debtors' estates and creditors."  [*Id.* at 47-48.]

26.     Seemingly in spite of the Court's findings and notwithstanding the fact that HSBC-HK had not yet filed a Proof of Claim against any Debtor (much less his Debtor),[10] the Trustee filed a motion seeking discovery against non-party HSBC-HK (and its "affiliates") for its allegedly "aggressive campaign to obtain repayment of its loans."  [ECF No. 299 at 3.]  The Trustee also sought to retain U.S.-based law firm Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn Emanuel**") to serve as "special litigation counsel" to investigate and potentially litigate against HSBC-HK.  [*See* ECF No. 303.][11]

---

[10] In addition to post-dating the Trustee's motion, HSBC-HK's Proof of Claim relates to entirely different entities in the Pacific Andes Group structure, not CFG Peru—the sole debtor for which the Trustee was appointed.

[11] The Trustee's proposed engagement with Quinn Emanuel will consist of the following:  "Initially, the engagement will be to assist the Trustee in examining the role and conduct of Hongkong and Shanghai Banking Corporation Limited ('HSBC') in respect of CFG Peru or its affiliates and, if warranted, the defenses of claims asserted by or the prosecution of litigation against HSBC . . . ."  [*See* ECF No. 303 Ex. D at 2.]

10

27.     As discussed above, for most of the two years prior to the commencement of this chapter 11 proceeding, HSBC-HK sought to accommodate Debtors, granting several extensions notwithstanding lack of demonstrable progress, preventing cross-defaults of the Debtors' other debt, and allowing them to continue operating.[12]  It was not until November 2015, after learning that Debtors had, by their own admission, misled HSBC-HK and other creditors, that HSBC-HK elected to protect its interests by availing itself of legal processes in the jurisdictions (all outside the United States) where the now-Debtors operated their businesses (Hong Kong) and where CFGL is incorporated (Cayman Islands).

28.     It is against this backdrop that HSBC-HK has objected to the motion to retain Quinn Emanuel to investigate HSBC-HK's conduct and objects to the motion for discovery under Rule 2004 for the reasons set forth below.

## OBJECTION

### I.     HSBC-HK Is Not Within the Jurisdiction of This Court

29.     Leaving aside other significant legal and practical issues with the Trustee's requested relief, the 2004 Motion proceeds from the fundamentally flawed assumption that the Court has jurisdiction over HSBC-HK.

30.     The Trustee has pleaded no facts establishing this Court's personal jurisdiction over HSBC-HK.  Because he has not shown—and indeed cannot show—that the Court has jurisdiction to enforce a subpoena against HSBC-HK, the Court should deny the 2004 Motion.

---

[12] Indeed, the Court itself has acknowledged that although debtors "customarily enjoy a 'breathing period' immediately following the commencement of their cases to work with their professionals, organize their affairs and reach out to their creditors in an effort to begin to formulate restructuring plans," these were not "typical cases."  To wit:  "[t]hese cases were filed after extended, albeit unsuccessful, efforts to address the defaults under the Club Facility out of court, and thereafter, the commencement and resolution of winding up proceedings commenced against CFGL and CFIL in their home states."  [ECF No. 203 at 41.]

31.     It is axiomatic that "the subpoena power of a court cannot be more extensive than its jurisdiction."  *U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988); *Matter of Marc Rich & Co., A.G.*, 707 F.2d 663, 669 (2d Cir. 1983) ("A federal court's jurisdiction is not determined by its power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction.").

32.     It is equally well settled that the party invoking a court's jurisdiction—here, the Trustee—bears the burden of pleading and proving that jurisdiction exists.  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted") (emphasis in original)); *see also Matter of Marc Rich & Co., A.G.*, 707 F.2d at 669; *In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 882 (Bankr. S.D.N.Y. 2015).

33.     There are only limited bases for personal jurisdiction over a foreign party like HSBC-HK.  The Trustee must show that the Court has general or specific personal jurisdiction over HSBC-HK, or that HSBC-HK has waived (or consented to) the Court's jurisdiction.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 328, 344 (2d Cir. 2016).  None of those bases for jurisdiction exists in this case.

34.     <u>First</u>, there is no general jurisdiction.  HSBC-HK is not incorporated in the United States and does not have its principal place of business here.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 762 (2014); *Gucci Am. Inc., v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (under *Daimler*, "a corporation is at home (and thus subject to general jurisdiction, consistent with due

12

process) only in a state that is the company's formal place of incorporation or its principal place of business").[13]

35.    Second, there is no specific jurisdiction.  The Trustee has not pleaded facts showing that HSBC-HK "'purposefully directed [its] activities at the forum and the litigation arises out of or relates to those activities,'" such that "'the assertion of personal jurisdiction would comport with fair play and substantial justice.'"  *Gucci Am.*, 768 F.3d at 136 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476 (1985)).  In fact, HSBC-HK does no business in the United States, and none of its dealings with any of the Debtors (all of whom are foreign)[14] or its lawful activities in foreign courts had any connection to the United States.  And HSBC-HK had no dealings with the Debtor for which the Trustee acts.

36.    Third, HSBC-HK has not consented to personal jurisdiction for any claim by the Trustee.  All filings that HSBC-HK was required to make to defend its rights implicated by chapter 11 have explicitly disclaimed such consent.  *Accord In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 888 (Bankr. S.D.N.Y. 2015) (acknowledging effectiveness of provisos preserving jurisdictional defenses against proceedings initiated by Trustee against foreign individuals); *see also, e.g.*, ECF No. 333 at 4 n.5; *supra* note 5.

---

[13]  Nor is this an "exceptional case" in which "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home" in this forum.  *Daimler*, 134 U.S. at 761 n.19; *Gucci*, 768 F.3d at 135 (holding that the Bank of China's contacts with the forum—"only four branch offices in the United States and only a small portion of its worldwide business is conducted in New York"—did not subject it to general jurisdiction).  HSBC-HK has no operations in the United States.

[14]  No party could have reasonably assumed that doing business with a non-U.S. group of companies in several foreign jurisdictions would lead to U.S. jurisdiction.  Purported eligibility for insolvency relief pursuant to section 109(a) of the Bankruptcy Code—such as through the mere presence of a "peppercorn" in the United States—does not change this fact.

37.     Other than responding to the Application and the 2004 Motion, the only action HSBC-HK has taken in this jointly administered proceeding is filing Proofs of Claim to preserve its rights against *other* Debtors.

38.     The filing of a Proof of Claim, by itself, is not voluntary submission to the jurisdiction of the Court for all purposes nor purposeful availment of the forum required for the exercise of jurisdiction more generally.  *See, e.g.*, *In re Lehman Bros. Holdings Inc.*, 544 B.R. 16, 35-36 (Bankr. S.D.N.Y. 2015) (filing a proof of claim "represents . . . submission to the jurisdiction of the Court only with respect to litigation concerning the claims allowance process"); *In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. at 887-88 ("[T]he submission to personal jurisdiction" that results from filing a proof of claim "is limited to litigation concerning the claims allowance process.").  *Accord, e.g.*, *Redington v. Touche Ross & Co.*, 612 F.2d 68, 73 & n.7 (2d Cir. 1979) ("[T]he act of filing a proof of claim is not the kind of submission that courts have accepted in the past as constituting voluntary submission under [the statute], at least absent a closer nexus than is present here between the Trustee's claim and the claim filed . . . . Before concluding that a party has consented to the exercise of plenary jurisdiction, courts have required such indicia of consent as a general appearance and consent, or explicit concession of jurisdiction.").

39.     The filing of Proofs of Claim by HSBC-HK also cannot support a finding of jurisdiction because, once these chapter 11 cases were permitted to proceed and a bar date order [ECF No. 253] was entered, the submission of HSBC-HK's Proofs of Claim was effectively involuntary:  HSBC-HK was forced to choose between either forgoing repayment of money owed to it by the Debtors for which it was a creditor, or potentially subjecting itself to claims asserted against it in a forum with which it has no contacts and in which it engaged in no relevant

conduct. *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("If a creditor chooses not to submit a proof of claim, once the debts are discharged, the creditor will be unable to collect on his unsecured loans."); *Stern v. Marshall*, 564 U.S. 462, 493 (2011) ("Pierce did not truly consent to resolution of Vickie's claim in the bankruptcy court proceedings. He had nowhere else to go if he wished to recover from Vickie's estate."); *id.* at 493 n.8 ("Creditors who possess claims that do not satisfy the requirements for nondischargability under 11 U.S.C. § 523 have no choice but to file their claims in bankruptcy proceedings if they want to pursue the claims at all. That is why . . . the notion of 'consent' does not apply in bankruptcy proceedings as it might in other contexts."). And being forced to make such a choice would amount to the imposition of an unconstitutional condition. *See*, *e.g.*, *Koontz v. St. Johns River Water Management District*, 133 S. Ct. 2586, 2594-95 (2013); *Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (rejecting a course of action that would put a litigant in a position to have to choose between "the Scylla . . . and the Charybdis" of forgoing a constitutional right or exposing himself to legal sanctions).

40.    Moreover, HSBC-HK's claims relate to Debtors for which the Trustee has not been appointed. *See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to jurisdiction in one case . . . extends to that case alone."). Whether or not the bankruptcy against all Debtors is jointly administered is immaterial. [*Accord* ECF No. 27 at 6 ("Nothing contained in . . . this order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of these chapter 11 cases[.]"); *see also In re Deltacorp, Inc.*, 179 B.R. 773, 777 (Bankr. S.D.N.Y. 1995).]

41.    For all of these reasons, HSBC-HK is not subject to the jurisdiction of this Court. As a result, HSBC-HK cannot be compelled to respond to a Rule 2004 subpoena, let alone have

judgment entered against it on any potential claim by the Trustee, and the 2004 Motion should be denied.

## II.    The 2004 Motion Is a Waste of Resources and at Best Premature

42.    Even if HSBC-HK were appropriately within the jurisdiction of this Court, the relief the Trustee seeks at this time—wide-ranging discovery and retention of a "special litigation counsel" for that purpose[15]—is also a waste of estate and judicial resources.

43.    It is not clear why the Trustee has raced to discovery and potential litigation, particularly against a foreign entity with no relationship to the Debtor for which he was appointed to act, and apparently before obtaining other information that should be more readily accessible to him, including from the Debtors and their management whose misconduct this Court has previously noted at length.

44.    But even more fundamentally, the Trustee's 2004 Motion is not consistent with his most important responsibility:  maximizing the value of the Peruvian Business for the benefit of all creditors.  [ECF No. 203 at 47-48.  *See generally Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) ("the two recognized policies underlying Chapter 11" are "preserving going concerns" and "maximizing property available to satisfy creditors").]  The Motion is, instead, much more consistent with a rapid dissipation of the Debtors' remaining assets.

45.    As a threshold matter, HSBC-HK has no relationship (contractual or otherwise) with the Debtor for which the Trustee was appointed:  CFG Peru.  The Trustee alleges no

---

[15] Indeed, the 2004 Motion betrays an intention by the Trustee to conduct a broad and costly examination. [*See* ECF No. 299 at 14 ("[T]he scope of a Rule 2004 examination is much broader than discovery under the Civil Rules.  Indeed, courts have recognized that the scope of Rule 2004 examinations is broad, unfettered, and can legitimately be in the nature of a 'fishing expedition.'" (citations omitted).); *accord, e.g.*, ECF No. 303 & Ex. D (Trustee application to appoint "special litigation counsel" for this purpose).]  Such a "fishing expedition," however, seems wholly inconsistent with the maximization of value at this time.

commercial or financial relationship between HSBC-HK and CFG Peru.  And although HSBC-HK has filed Proofs of Claim as a creditor of four other Debtors, it is not (and never has been) a creditor of CFG Peru and has filed no Proof of Claim against that Debtor.

46.    The 2004 Motion admits the significance of this limitation.  In attempting to justify the Trustee's requested relief as relating "specifically to the administration of CFG Peru's estate," the Trustee argues that CFG Peru must "'assess the value of its interests in the Peruvian OpCos and determine how to apply that value in furtherance of the restructuring.'  That value depends on, among other things, *the extent of secured claims asserted against the Peruvian OpCos*."  [ECF No 299 at 16 (quoting ECF No. 203 at 28) (emphasis added).]  However, while two of the Peruvian OpCos are obligors under the Club Facility in which HSBC-HK is a lender, none of the Peruvian OpCos is a Debtor in these chapter 11 cases (or in any bankruptcy proceedings currently pending in the United States or elsewhere).  Thus, there is no claim, secured or otherwise, "against the Peruvian OpCos" that this Court has the power to reduce or otherwise compromise as a result of any efforts by the Trustee.[16]  And the Trustee has asserted

---

[16] Section 524(e) of the Bankruptcy Code provides that, as a general matter, "discharge of the debt of a debtor . . . does not affect the liability of any other entity."  *Accord Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-42 (2d Cir. 2005) (setting forth very limited grounds on which a chapter 11 plan can grant non-consensual third-party releases and observing that "[n]o case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique"); *see also, e.g.*, *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1061-69 (5th Cir. 2012).  And to the extent the Trustee might ultimately seek to object to HSBC-HK's Proofs of Claim against other Debtor entities (an appropriate basis for which is currently unclear), those objections are more properly heard in that context, rather than through an extensive discovery campaign, which was requested even before the bar date for creditor claims.  In any event, objecting to HSBC-HK's Proofs of Claim is unlikely to bring any additional value to stakeholders in CFG Peru or the other Debtors.  Because two of the non-Debtor Peruvian OpCos are obligors for the full amount of the Club Facility, the Club Lenders (including HSBC-HK) are entitled to be repaid *in full* by those entities before any equity value from the Peruvian OpCos flows to CFG Peru or any other Debtors.

no other basis for explaining how the 2004 Motion is consistent with his role as chapter 11 trustee for CFG Peru.[17]

47.     In addition, this Court has already identified serious concerns relating to the conduct of the various Debtors, their management, and owners—which conduct in large part contributed to the Trustee's appointment in the first instance.[18]

48.     The foregoing shows precisely why the discovery campaign the Trustee seeks to launch, if it is ever appropriate, should not be allowed to proceed at this time.  The Trustee was appointed, "[m]ost importantly," to maximize the value of the Peruvian Business [ECF No. 203 at 47]; and that is what he should be focused on, instead of singling out one entity for what is sure to be a costly discovery campaign.  Indeed, if the Trustee is successful in monetizing the Debtors' interests in the Peruvian OpCos, then he may realize enough value to repay the Debtors' creditors and eliminate the need for any further discovery or litigation at all.

49.     Accordingly, the requested discovery is at best premature.  If the Trustee returns to the Court in the future to renew the 2004 Motion, the Court should consider the request not in isolation but rather in the context of whether the Trustee is fulfilling his mandate to maximize the

---

[17] To the extent the Trustee purports to justify the discovery sought in the 2004 Motion by reference to the actions of the JPLs appointed in Hong Kong and Cayman Islands proceedings purportedly damaging the Peruvian Business, this allegation merely repeats that by the Debtors, which was belied by evidence adduced at hearings in this matter.  As this Court has explained:  "Although . . . the Debtors maintain that the JPLs' actions adversely impacted the Peruvian Opcos' operations, [the Court] also notes that those businesses were experiencing substantial problems unrelated to the actions of the JPLs."  [ECF No. 203 at 47; *see also id.* (citing testimony that "'one of the most important factors' in the precipitous decline of the Peruvian Opcos' financial condition was the presence of 'the largest El Nino in the past 15 years," and that "the devastating impact of El Nino was compounded by the Peruvian government's ban on commercial fishing operations during El Nino events.").]  Additionally, the JPLs are independent office holders not under the control of any creditor.

[18] [*See* ECF No. 203 at 35-36 (describing evidence supporting creditors' "good reason to question the trustworthiness of the Debtors"); *id.* at 39 (listing creditors' "good reasons" for having "lost all confidence in the Debtors' management"); *see also supra* ¶ 24.]

value of the Peruvian Business and otherwise discharging the responsibilities given to him in this Court's order of appointment.

### III. The 2004 Motion Proposes to Investigate Conduct that May Not be Subject to Any Cause of Action within the Jurisdiction of the Bankruptcy Court

50.     The 2004 Motion states that the Trustee intends to use discovery from a Rule 2004 investigation of HSBC-HK to pursue defenses to HSBC-HK's claims and explore as-yet unarticulated theories of lender liability.  [ECF No. 299 at 3.]  However, these chapter 11 cases and the matters that the Trustee seeks to investigate are inextricably tied to conduct and events that occurred in foreign jurisdictions and involved foreign parties and assets, and there is considerable doubt as to whether any suits arising from the Trustee's investigation could be heard by a U.S. court.

51.     Indeed, there are several legal obstacles to any actions the Trustee purportedly might pursue against HSBC-HK including, without limitation:  (a) principles of international comity and *forum non conveniens*, (b)  protections attached to lawful petitioning activity outside the United States and (c) recent case law limiting the territorial reach of the Bankruptcy Code's avoidance powers.

52.     Rather than confront these issues, the 2004 Motion simply elides them.  But critically, if the Trustee would be unable to sustain litigation against HSBC-HK before this Court for these or any other reasons, a wide-ranging investigation of HSBC-HK's relationship with the Debtors would serve no apparent purpose in these cases, and instead would be unnecessarily costly, burdensome on the parties and distract from objectives that are more central to the outcome of these chapter 11 cases and the purpose of the Trustee's appointment.

A.      *The Matters the Trustee Seeks to Investigate and Prosecute Are More Appropriately Heard Before Foreign Courts Pursuant to Principles of International Comity and the Doctrine of* <u>Forum Non Conveniens</u>

53.      The Second Circuit has long applied the doctrine of international comity and emphasized the importance of deference by its courts to foreign insolvency proceedings.  *See, e.g., JP Morgan Chase Bank v. Altos Hornos de Mexico S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding"); *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) ("[D]eference to foreign insolvency proceedings will, in many cases, facilitate 'equitable, orderly and systematic' distribution of the debtor's assets."); *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427, 434 (Bankr. S.D.N.Y. 2007) (Bernstein, J.) ("The Second Circuit . . . has frequently underscored the importance of judicial deference to foreign bankruptcy proceedings.").  In considering the importance of comity in U.S. insolvency proceedings, the Second Circuit has considered three factors:  (a) the "primacy" of American versus foreign law to the dispute, (b) the relative interests of the forum and the foreign state in question and (c) whether ideals of international cooperation and harmonization will be served by the court's deference.  *Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp.)*, 93 F.3d 1036, 1051-53 (2d Cir. 1996); *see also In re Commodore Int'l, Ltd.*, 242 B.R. 243, 255-60 (Bankr. S.D.N.Y. 1999) (Garrity, J.).

54.      Here, there can be little doubt that the laws of foreign jurisdictions, rather than U.S. law, would be central to any disputes between the Trustee and HSBC-HK.  Although the Trustee is a creature of the Bankruptcy Code, the Debtor he oversees is a Singapore-incorporated company with its principal asset base in Peru.  [*See* ECF No. 299 at 16.]  HSBC-HK, meanwhile, is a Hong Kong-based bank and its principal relationship with the Debtors and certain of the Peruvian OpCos is through the Club Facility, which is governed by English Law documents.

20

[*See* Addendum to Amended Proof of Claim filed by HSBC-HK on Jan. 13, 2017 against Debtor

CFIL at 2-3 & Ex. A.[19]]  It is thus unlikely, if not impossible, that the subject matter of the 2004

Motion could give rise to a claim by the Trustee that involves prevalent U.S. interests, let alone

primacy of U.S. law.  Similarly, in these chapter 11 cases, which involve proceedings around the

world, the interests of harmonization and cooperation may well be best served by deference of

this Court to its foreign counterparts.

55.    The doctrine of *forum non conveniens* also permits the Court to dismiss a

proceeding in the United States in favor of litigation in an adequate alternative forum for the

convenience of the parties and in the interests of justice.  *Peregrine Myanmar Ltd. v. Segal*, 89

F.3d 41, 46 (2d Cir. 1996).  Courts in the Second Circuit follow a three-step inquiry in

considering *forum non conveniens*:  (1) "the court must determine the degree of deference

properly accorded the plaintiff's choice of forum"; (2) "the court must determine whether an

adequate alternative forum exists"; and (3) "the court must then balance a series of factors

involving the private interests of the parties in maintaining the litigation in the competing fora

and any public interests at stake."  *In re Hellas Telecomm. (Luxembourg) II SCA*, 555 B.R. 323,

345 (Bankr. S.D.N.Y. 2016); *In re Dewey & LeBoeuf LLP*, 522 B.R. 464, 476-77 (Bankr.

S.D.N.Y. 2014); *In re Commodore*, 242 B.R. at 262-63.[20]

56.    Importantly, in undertaking this analysis, courts give little deference to a foreign

plaintiff's choice of a domestic forum.  *In re Hellas*, 555 B.R. at 346 (citing *Iragorri v. United*

---

[19] HSBC-HK also filed proofs of claim with similar addenda in the cases of CFGL, Smart Group Limited and N.S. Hong Investment (BVI) Limited.

[20] "The public interest factors include:  (1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their community. . . . The private interest factors include:  (1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive."  *In re Hellas*, 555 B.R. at 348.

*Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001)).  "In such circumstances, a plausible likelihood

exists that the selection was made for forum-shopping reasons," and regardless, "there is . . .

little reason to assume that it is convenient for a foreign plaintiff."  *In re Hellas*, 555 B.R. at 346.

Accordingly, in considering the application of *forum non conveniens* with respect to future

claims (if any) that the Trustee could conceivably assert following his discovery campaign, there

is little reason to defer to the United States—which the Court found was a forum chosen by the

Debtors for the specific purpose of avoiding the consequences of their court agreed settlements

in Hong Kong, the Cayman Islands [*see* ECF No. 203 at 36]—as the necessary forum for hearing

such claims, which will be between foreign parties under foreign law regarding foreign assets.[21]

    B.    *HSBC-HK's Lawful Petitioning Activities in Foreign Jurisdictions Are Outside
          Any Appropriate Scope of the Trustee's Investigation*

    57.    Several of the topics the Trustee seeks to investigate regarding HSBC-HK directly

or indirectly concern HSBC-HK's lawful petitioning activity outside of the United States.[22]  Just

as the First Amendment to the United States Constitution prohibits conditioning liability on

lawful petitioning activity *inside* the United States, lawful petitioning activity outside the United

States should not serve as the basis for any claims or other affirmative relief by the Trustee.  *See*,

*e.g.*, *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 439-40 (E.D.N.Y. 2013) (statements

before South Korean dispute resolution committee could not serve as basis for liability in U.S.

defamation action because courts have found "absolute privilege" for statements made in judicial

---

[21] In view of the automatic bankruptcy stay, HSBC-HK to date has refrained from taking any action to reopen proceedings in the Hong Kong or Cayman Islands courts for the purpose of remedying the Debtors' breaches of the Deed of Undertaking.  As noted above, *see supra* note 6, HSBC-HK reserves the right to seek such a result if and when it is appropriate to do so.

[22] Relevant topics identified by the Trustee include:  "applications filed in Hong Kong and the Cayman Islands seeking the appointment of joint provisional liquidators for CFGL and [CFIL] including . . . communications between HSBC (and its professionals) and the JPLs (and their professionals)," as well as "the Deeds Of Undertaking" that are part of the Hong Kong court proceedings.  [ECF No. 299 at 4.]

and administrative proceedings extends to "foreign proceedings"); *see also Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1364-68 (5th Cir. 1983) (extending immunity under the *Noerr-Pennington* doctrine to oil companies' publication of objection to Libyan nationalization of oil assets and filing of lawsuits in 29 jurisdictions to defend claims).

58.     HSBC-HK's activities in Peru, Hong Kong and the Cayman Islands, about which the Trustee seeks discovery, were lawful efforts to obtain relief from the government and participate in official proceedings in those jurisdictions, and the Trustee has not alleged that HSBC-HK acted in contravention of any local laws.[23]  Moreover, any *bona fide* dispute as to whether HSBC-HK's conduct was lawful before foreign courts would require this Court to undertake the complex task of making determinations regarding what constitutes lawful petitioning under the laws of each relevant foreign jurisdiction.[24]

59.     Allowing the Trustee to pursue "theories of lender liability, and potentially other affirmative estate claims" in the United States in respect of HSBC-HK's conduct before foreign courts would also be inconsistent with principles of international comity discussed above. Indeed, the 2004 Motion does not merely ask the Court *not* to defer to its foreign counterparts in

---

[23] In addition, although the Trustee insinuates that HSBC-HK acted improperly in initiating winding-up proceedings and seeking appointment of JPLs, which he characterizes as "an aggressive campaign to obtain repayment" [ECF No. 299 at 3], even "aggressive" conduct is generally not a basis for subordination or other equitable remedies under the Bankruptcy Code.  *See, e.g.*, *In re LightSquared Inc.*, 511 B.R. 253, 360-61 (Bankr. S.D.N.Y. 2014) (noting that "[t]he Bankruptcy Code and the chapter 11 process tolerate and even contemplate self-interested and aggressive creditor behavior" and finding that claim of debtors' strategic competitor merited subordination only after specifically finding the competitor had "undermin[ed] the ability of the Debtors, the constituents, and even the Court to conduct the case"); *see also In re W.T. Grant Co.*, 699 F.2d 599, 609-10 (2d Cir. 1983) ("The permissible parameters of a creditor's efforts to seek collection from a debtor are generally those with respect to voidable preferences and fraudulent conveyances . . . apart from these there is generally no objection to a creditor's using his bargaining position . . . to improve the status of his existing claims").  In any event, and contrary to the Trustee's insinuations, the winding-up proceedings and appointment of JPLs for CFGL and CFIL were collective remedies that affected (and benefited) all lenders under the Club Facility, and pursuant to the Club Facility's loan agreement, any repayment received by HSBC-HK would have been shared ratably among the lenders.  [*See* Addendum to Amended Proof of Claim filed by HSBC-HK on Jan. 13, 2017 against Debtor CFIL at Ex. A., Section 27.]

[24] This filing constitutes HSBC-HK's notice that it intends to raise an issue about a foreign country's law. *See* Fed. R. Bankr. P. 9017; Fed. R. Civ. P. 44.1.

adjudicating claims that relate to foreign conduct under substantive foreign law, but asks the

Court to permit a litigant in the United States to investigate foreign court proceedings.  Granting

the 2004 Motion would send these chapter 11 cases down a path that would be increasingly in

tension with the goal of "forbearance and goodwill in the conduct of international bankruptcies"

that the Second Circuit has endorsed and recognized as embedded in the Bankruptcy Code.  *In re

Maxwell Commc'n Corp.*, 93 F.3d at 1053.

        C.     *Recent Case Law Indicates that Overseas Transactions Between the Debtors and HSBC-HK are Beyond the Scope of the Trustee's Avoidance Powers.*

      60.     The 2004 Motion also purports to seek to investigate certain payments involving

HSBC-HK and members of the CF Group, and states that the Trustee intends to use information

gained from the investigation to support "Defenses to HSBC's claims" including, among other

things, "avoidable transfers."  [ECF No. 299 at 3-4.]  However, there is reason to doubt that

statutory provisions in the Bankruptcy Code that give a trustee the power to prosecute avoidance

actions cannot be applied to avoid extraterritorial transfers.  Some recent cases have construed

the "presumption against extraterritoriality" in statutory construction to find that avoidance

provisions in the Bankruptcy Code are inapplicable to foreign transfers that might otherwise be

voidable.  *See In re Ampal-American Israel Corp.*, No. 12-13689 (SMB), 2017 WL 75750, at *8

(Bankr. S.D.N.Y. Jan. 9, 2017) (Bernstein, J.) ("[T]he avoidance provisions of the Bankruptcy

Code, in this case 11 U.S.C. § 547(b), do not apply extraterritorially."); *Sec. Investor Prot. Corp.

v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014) (Rakoff, J.) ("[T]he

presumption against extraterritorial application of federal statutes has not been rebutted here; the

Trustee therefore may not use section 550(a) to pursue recovery of purely foreign subsequent

transfers.").  *But see, e.g.*, *Weisfelner v. Blavatnik (In re Lyondell Chemical Co.)*, 543 B.R. 127

(Bankr. S.D.N.Y. 2016) (Gerber, J.) (section 548 of the Bankruptcy Code does apply to

extraterritorial transfers).  In each of these cases, the courts applied the Supreme Court's test in

*Morrison v. Nat'l Australia Bank Ltd.* to determine that the statutory provisions at issue (in

*Ampal American*, section 547(b), which governs avoidance of preferential transfers, and in

*Madoff*, section 550(a), which governs avoidance of subsequent transfers of voidable

transactions) were not intended to apply extraterritorially.  *Morrison v. Nat'l Australia Bank Ltd.*,

561 U.S. 247 (2010); *Ampal American*, 2017 WL 75750 at *8; *Madoff*, 513 B.R. at 228-30.

61.     As the Court is aware, HSBC-HK's relationship with the Debtors involves

dealings in Hong Kong and elsewhere outside the United States.  And again, the Trustee has not

alleged or pointed to any facts to suggest a tie between the United States and any transactions

involving HSBC-HK and the Debtors.  Any funds received by HSBC-HK from the Debtors that

the Trustee seeks to investigate would thus have related to purely foreign transactions that,

following the *Ampal American* and *Madoff* decisions, cannot be avoided pursuant to the

Trustee's Bankruptcy Code avoidance powers.  Finally, none of the transactions at issue would

involve CFG Peru—with which HSBC-HK has had no prior dealings—and the Trustee has failed

to explain how investigating transactions involving other parts of the Pacific Andes Group will

maximize the value of the Peruvian Business.[25]

62.     Moreover, to the extent payments by the Debtors to HSBC-HK cannot be avoided

in their own right, they also cannot be used as a basis to disallow or reduce HSBC-HK's claim

pursuant to section 502(d) of the Bankruptcy Code.  *In re Maxwell Commc'n Corp.*, 93 F.3d at

---

[25] It remains to be seen whether either creditors of the Peruvian OpCos (which are not Debtors) or creditors of CFG Peru will suffer any losses, if action is taken expeditiously toward a possible value-maximizing transaction or other strategy (rather than the immediate dissipation of assets through discovery or otherwise).  Indeed, the questions of who actually has losses, and what caused them, cannot be answered until some transaction or other option occurs, which is all the more reason that the Trustee's Motion is premature.

1054 (transfers found not to be avoidable under section 547 of the Bankruptcy Code "cannot in

any way be included among the 'transfers avoidable' listed in § 502(d)").

63.      In sum, the 2004 Motion should be denied insofar as it seeks discovery related to

HSBC-HK's lawful petitioning activities before foreign courts, transactions that are not subject

to avoidance under the Bankruptcy Code, and other matters that would not appropriately be

heard in a United States court applying the doctrines of international comity and *forum non

conveniens*.  *See In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991)

("[T]here are important limits to the scope of an examination taken pursuant to Rule 2004," and

discovery regarding "matters having no relationship or no effect on the administration of an

estate is improper.").

64.      At a minimum, these issues must be fully addressed before any discovery is

allowed to proceed.  At the same time, however, HSBC-HK respectfully submits that there is no

reason for the Court and the parties to deal with these issues at this juncture (if ever).  As noted

in the Limited Objection, depending on the results of a possible sale process, refinancing or other

transaction, these issues may become moot because the estate may collect proceeds sufficient to

repay all creditors.  [*See* ECF No. 333 at 6.]

## IV.    The Specific Proposed Discovery "Topics" Are Objectionable for Additional Reasons

65.      In any event, the Trustee's proposed discovery as described in the Motion goes

well beyond what is warranted in the context of the proceedings and permissible under prevailing

law.  "Despite its characterization as being tantamount to a 'fishing expedition' a Rule 2004

examination must be both relevant and reasonable."  *In re Symington*, 209 B.R. 678, 684 (Bankr.

D. Md. 1997) (citation omitted); *see also In re SunEdison, Inc.*, No. 16-10992, 2017 WL 187558,

at *4 (Bankr. S.D.N.Y. Jan 18, 2017) (observing that with the rise in "the cost of compliance" in

recent years, the "spirit of proportionality," should limit Rule 2004 examinations); *id.* ("The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks," and "the examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." (quotations omitted)); *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred.").

66.     The Trustee has not suggested that HSBC-HK has had extensive (or any) dealings with the particular Debtor to which he has been assigned—CFG Peru.  In addition, although the Trustee writes that his investigation into HSBC-HK could provide information about "potential defenses to [HSBC-HK's] claims," [ECF No. 299 at 3], HSBC-HK has no claims that relate to CFG Peru.  The Trustee has failed to articulate any connection at all between his Debtor and HSBC-HK.

67.     The discovery "topics" listed in the 2004 Motion as those which the Trustee "initially" intends to focus on [ECF No. 299 at 4] are also variously objectionable because: (1) they are vague and/or overbroad; (2) they seek information from HSBC-HK that could and should be more easily obtained directly from the Debtors; (3) they seek information that is in the possession of other parties, including parties such as the JPLs for whom HSBC-HK does not act or speak; (4) they seek information that is likely to be privileged or subject to restrictions on disclosure from the laws of other jurisdictions;[26] (5) the Trustee has not demonstrated the

---

[26] Indeed, HSBC-HK is subject to confidentiality restrictions under local law which may conflict with any discovery order made in favor of the Trustee.

necessity of any of the information he requests; (6) the costs of compliance would far outweigh the benefit to the Trustee's mandate; and (7) certain Topics have no conceivable relevance whatsoever to these proceedings.[27]

68.    Finally, the Trustee seeks an order authorizing issuance of "subpoenas to HSBC for the production of documents and examination of witnesses relating to the[se] topics" [ECF No. 299-1], but has not submitted to the Court the actual discovery requests it seeks to propound. Although the 2004 Motion should be denied in its entirety for the reasons discussed above, in light of these additional objections, if the Trustee is permitted to serve any subpoenas on HSBC-HK, he should be required to submit to the Court for review and approval a copy of the *specific* requests he proposes to serve.[28]

## **CONCLUSION**

69.    In light of the foregoing, HSBC-HK respectfully requests that the Court deny the 2004 Motion.  The Court is without jurisdiction to enforce a subpoena against HSBC-HK, and in any event the broad discovery sought by the Trustee is not consistent with the goal of maximizing the value of the Peruvian Business at this time.  The 2004 Motion further ignores several important legal hurdles that counsel in favor of this Court declining to hear the very

---

[27] Solely by way of illustration, the Trustee purports to require information on "interactions between (a) HSBC (and its professionals) and/or the JPLs (and their professionals), on the one hand, and (b) the CF Group's investors, creditors, lenders, customers, suppliers, trade counterparties, and/or employees as well as actual or potential bidders for the CF Group's assets, on the other hand[.]"  [ECF No. 299 at 3.]  Leaving aside the vague and plainly overbroad nature of this topic, this topic also seeks information that is likely to be privileged or subject to foreign-law disclosure restrictions, as well as information that by its own terms is to be found in the possession of the JPLs and the Debtors.  Similarly, the Trustee purports to seek information about "the wrongdoing or inappropriate conduct of the CF Group or its officers, employees, affiliates, or shareholders that has been alleged by HSBC and the JPLs; and HSBC's and the JPLs' understanding of any such conduct that has been asserted by others[.]"  [*Id.*]  This topic is likewise vague and overbroad, and also seeks information that is possessed by the JPLs themselves.  These types of infirmities apply to each of the "topics" set forth in the 2004 Motion.

[28] HSBC-HK reserves the right to respond and object more specifically to any requests for documents or testimony if and when the Trustee is authorized by the Court to issue such requests.

issues that the Trustee purports to investigate through his request for discovery. To the extent the Court concludes that the 2004 Motion is merely premature, any future request by the Trustee to take discovery from HSBC-HK should be accompanied by a review of the Trustee's efforts to maximize the value of the Peruvian Business and his ability to fulfill the mandate contemplated by this Court's order of appointment.

Dated:   New York, New York
         February 6, 2017

DAVIS POLK & WARDWELL LLP

By:    /s/ Elliot Moskowitz
Donald S. Bernstein
Timothy Graulich
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telephone:    (212) 450-4000
Facsimile:    (212) 701-5800

BOIES SCHILLER FLEXNER LLP

By:    /s/ Scott E. Gant
Scott E. Gant (*pro hac vice*)
1401 New York Avenue, NW
Washington, DC 20005
Telephone:    (202) 237-2727
Facsimile:    (202) 237-6131

- and -

Damien J. Marshall
575 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-2300
Facsimile:    (212) 446-2350

*Counsel to The Hongkong and Shanghai Banking Corporation Limited*