SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
Lisa Laukitis
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

Sarah E. Pierce (admitted *pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

-and-

Elizabeth M. Downing (admitted *pro hac vice*)
500 Boylston Street
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Fax: (617) 573-4870

*Counsel for William A. Brandt, Jr.,*
  *Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | : | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

---

[1] The Debtors are China Fishery Group Limited (Cayman) ("CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), Super Investment Limited (Cayman) ("Super Investment") and Pacific Andes Resources Development Ltd. ("PARD").

| | |
|---|---|
| In re: | Chapter 11 |
| CFG Peru Investments Pte. Limited (Singapore), Debtor. | Case No. 16-11914 (JLG) |
| | (Jointly Administered) |

**DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF THE CHAPTER 11 TRUSTEE'S MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), 541(a)(1), AND 1108, AND BANKRUPTCY RULES 2002, 6004, AND 9006 (I) AUTHORIZING (A) THE PRIVATE SALE OF A NON-DEBTOR VESSEL AND (B) THE CHAPTER 11 TRUSTEE TO CONSENT TO AND TAKE ALL CORPORATE GOVERNANCE ACTIONS DESIRABLE OR NECESSARY IN CONNECTION THEREWITH**

I, William A. Brandt, Jr., being duly sworn, depose and say:

1. I am the Executive Chairman and founder of Development Specialists, Inc. ("DSI"), a restructuring and financial advisory firm that specializes in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. DSI maintains offices at 110 E. 42nd Street, Suite 1818, New York, New York 10017.

2. I have approximately forty years of experience in the practice of turnarounds and restructurings and have served as either a Chapter 11 Trustee, a Chapter 7 Trustee, an Examiner, a Chief Restructuring Officer, a Designated Party for the Debtor in Possession or in other similar fiduciary capacities in the insolvency industry in thousands of cases.

3. I submit this Declaration in support of my request, in my capacity as Chapter 11 Trustee (the "Trustee") of CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), of the relief requested in the *Chapter 11 Trustee's Motion for Order Pursuant to Bankruptcy Code Sections 105(A), 363(b), 541(a)(1), And 1108, And Bankruptcy Rules 2002, 6004, And 9006 Authorizing (A) The Private Sale of A Non-Debtor Vessel And (B) The Chapter*

2

*11 Trustee to Consent to And Take All Corporate Governance Actions Desirable or Necessary in Connection Therewith* (the "Motion"). Except as otherwise noted, I have personal knowledge of the matters set forth herein, either directly or through professionals working at my direction or through my representatives and advisors and, if called as a witness, I would testify competently thereto.

4. Following the motion by Coöperatieve Rabobank U.A. ("Rabobank"), Standard Chartered Bank (Hong Kong) Limited ("Standard Chartered") and DBS Bank (Hong Kong), Limited ("DBS," and together with Rabobank and Standard Chartered, the "Club Lender Parties") seeking the appointment of a Chapter 11 trustee [Dkt. No. 59], the Court granted the motion [Dkt. No. 203] on October 28, 2016 with respect to CFG Peru Singapore.

5. On November 10, 2016, the U.S. Trustee sought approval of my retention as the Chapter 11 Trustee of CFG Peru Singapore [Dkt. No. 218]. On that same date, the Court entered an order approving the my selection as the Chapter 11 Trustee [Dkt. No. 219].

**I.     The Pacific Voyager**

6. Through the Motion, I request entry of an order (i) authorizing the Chapter 11 Trustee to take all corporate actions desirable or necessary to effectuate the private sale (the "Sale Transaction") of the Pacific Voyager (the "Asset") pursuant to a Memorandum of Agreement ("MoA") and Letter Agreement Regarding Pacific Voyager ("Side Letter," together with the MoA, the "Sale Agreement") by and between SFR and Arctic Raven Pelagic A/S or its nominee ("Arctic Raven" or the "Buyer"); and (ii) approving the Sale Transaction pursuant to the terms of the Sale Agreement.

7. The Pacific Voyager is part of a fleet of fishing vessels ("SFR Vessels") owned by Sustainable Fishing Resources, S.A.C., ("SFR" or the "Seller"), one of the Peruvian OpCos. The Pacific Voyager was built in 1997 in Norway, registered under the Peruvian flag,

3

and served as one of the Damanzaihao's "catcher" vessels, which would catch fish and deliver them to the Damanzaihao for processing. SFR and the SFR Vessels have not operated since October 2014. The Peruvian OpCos business is largely focused on harvesting anchovies pursuant to a valuable quota and the production of fishmeal and fish oil from its anchovy harvest. The SFR Vessels are not equipped to fish for anchovies. Accordingly, because the SFR Vessels are not utilized in the Peruvian OpCos' core anchovy business, they are non-core, dispensable assets.

8. I have determined, in my business judgment, that the sale of the non-operational SFR Vessels, including the Pacific Voyager, is in the Debtor's best interest and would bring additional, necessary liquidity to the Debtor's estate. The proceeds for the Sale Transaction will be used to repay Copeinca for intercompany loans totaling approximately $2,000,000 USD for various expenses including but not limited to regulatory fees, taxes, customs, inspection and maintenance fees of the SFR Vessels, legal fees, and rental property fees as well; as to potentially pay administrative costs such as the U.S. Trustee quarterly fees and fees and expenses for professionals who have not yet received payment in these cases. While I believe that Court approval may not be necessary for the Sale Transaction given that SFR is not a Debtor before this Court, out of an abundance of caution, and a desire for full transparency with respect to my actions to sell non-core assets, I request approval of the Sale Transaction as set forth in the Motion.

II. **Sale and Marketing Process**

9. Along with the management of SFR, I have been an active participant in the marketing process of the Asset. In February 2017, I initiated the marketing process for the SFR Vessels by utilizing the services of Atlantic Shipping A/S (the "Broker"), who has been and will

4

continue to serve as a point of contact for interested parties to discuss the purchase of the SFR Vessels.

10. The market for large scale pelagic vessels is limited. To the best of my knowledge, the Broker is the leading broker in the world for large scale pelagic trawlers and has extensive industry knowledge and contacts with most—if not all— major fishing companies, which has enabled the Broker to canvas almost the entire market. At my direction, the Broker published a separate advertisement for the sale of the SFR vessels on its website and sent written notice of the offer to over 500 contacts. It is my understanding that the offer from Arctic Raven has been the only serious one for the vessel on an individual basis. There has also been serious interest in other SFR Vessels. The Broker has also received a few inquiries regarding the sale of all of the catcher vessels together but there have been no serious offers for the sale of all the vessels to date, and the Broker has informed me that it does not believe that the sale of vessels together is likely to result in a higher aggregate value being paid for the vessels.

11. On or around February 20, 2017, a representative from Arctic Raven expressed interest in the Asset. On or around February 23, 2017, representatives from Arctic Raven toured the SFR Vessels, including the Asset. My advisors and I subsequently engaged in arm's length negotiations with Arctic Raven for the Asset, and Arctic Raven made its $4 million indicative offer for the Asset on February 27, 2017 at a meeting with the Seller in Lima, Peru. Given the lack of any other interested buyers at the time, I assisted in drafting the Sale Agreement with Arctic Raven that will be executed if Court approval for the Sale Transaction is granted.

12. The Buyer has requested that the Sale Transaction be consummated as expeditiously as  possible as it is aware that the naval shipyard in Callao, Peru, has a limited

5

availability to drydock the Asset. Additionally, the Buyer has informed me that it needs to complete the purchase of the Asset and flag it in Greenland as a matter of urgency in order to qualify as a Greenland flagged vessel for a mackerel license without which the Buyer would incur much higher tax charges and would not have access to the herring market. Furthermore, the Buyer has informed me that it has limited time to get the vessel fully upgraded, repaired, and repositioned in the north Atlantic by the beginning of the fishing season in early June. The Buyer has estimated that the repairs and upgrades could take up to two months plus an additional four weeks for the ship to be repositioned in the north Atlantic. Moreover, in the event the Sale Transaction is not approved by the Court or is otherwise not consummated, the Buyer has indicated that it would then need to start the process over with finding another vessel.

### III.    The Proposed Private Sale of the Pacific Voyager

13.    I believe that it is in the best interests of the Debtor to consummate the sale of the Asset via a private sale for various reasons. First, the Arctic Raven bid represents the only serious indication of interest in the Asset received during the Broker's direct marketing process, as set forth above. I have already sought, through the Broker, higher and better offers, and no such offers were forthcoming. In addition, based on my discussions with management of SFR and the Broker, and based on bids received by the Broker for other similar vessels, I believe that the Purchase Price represents fair consideration and represents reasonably equivalent value for the Asset. Moreover, I believe the Expense Reimbursement, as set forth in the Side Letter, is fair and reasonable and preserves SFR's ability to solicit and accept alternative offers for the Asset up to and until the objection deadline for the Sale Motion has passed. Thus, I believe that the Sale Transaction set forth in the Sale Agreement represents the best opportunity for the Debtor to maximize the value of the Asset.

14. Moreover, I believe that the private sale of the Asset, as opposed to a time-consuming public auction is favorable because a public auction would require the incurrence of substantial additional costs but would be unlikely to result in additional value, especially relative to the value of the vessel. In addition, the expedience that a private sale affords is necessary because the Buyer has indicated that the Sale Agreement must be executed promptly so as to enable it to flag the Asset in Greenland, make the necessary repairs and upgrades, and to transfer the Asset to Greenland all before the fishing season begins in early June.

15. I do not believe the process of noticing and conducting a public auction of the Asset can accommodate the time pressures presented by the Buyer. Given that there were no other serious offers for the Asset, I believe that the benefit of the private sale to Arctic Raven outweighs any benefit of an auction because of the delay and potential risk of the Buyer rescinding its offer or offering a substantially reduced purchase price if the auction was not completed within the parameters set forth above. Furthermore, I do not believe that an auction is warranted on account of the substantial additional cost and time to conduct an auction process for the Asset as compared to its value.

## IV.     Corporate Governance Authority

16. As Chapter 11 Trustee, I control CFG Peru Singapore. Given that CFG Peru Singapore is the 100% (or close to 100%) owner of the Peruvian OpCos, which includes SFR, I effectively control the Peruvian OpCos and have the ability to effectuate corporate governance decisions on their behalf. Specifically, I control 195,691,073 shares in SFR. The only other shareholder of SFR is J. Wiludi & Asociados S.A.C., who owns one (1) share in SFR. Given my status as controlling shareholder of SFR, Peruvian counsel has informed me that I may adopt any decision with respect to SFR including but not limited to: authorizing issuance of proxies; delegating my powers to any manager, officer, or other representative for purposes of

7

participating at a shareholders' meeting; and ultimately, execution of the documents constituting the Sale Agreement.

17. As such, through the Motion, I request authorization to exercise this corporate governance authority to adopt any decision with respect to SFR including but not limited to convening shareholders' meetings; voting CFG Peru Singapore's shares; passing shareholders' resolutions; directing the managers of SFR to execute any necessary documentation and to pay any necessary broker commissions and taxes; and taking any other action that I determine, in my business judgment, desirable or necessary or advisable to consummate the Sale Transaction.

## V.     Arm's Length Negotiations, Good Faith, and Best Interests of Debtor

18. For the reasons set forth herein, I believe the consummation of the Sale Transaction of the Pacific Voyager through a private sale is fair and reasonable. To my knowledge, the parties have entered into the Sale Agreement without collusion, in good faith, and from arm's length bargaining positions with the Buyer, who is an unaffiliated third party. Further, I am not aware of any indication of fraud, collusion, or other conduct that would taint the sale process.

19. I believe that I have sound business justification for causing the sale of the Asset as contemplated by the Sale Motion, and that the Sale Transaction is consistent with this Court's mandate to "assess the highest and best value" of the assets owned by the Peruvian OpCos and the "means for Debtors to realize maximum benefits from those assets." [Dkt. 203 at 49]. The Sale Transaction will provide the Debtor with significant liquidity and will also aid in paying intercompany loans and administrative expenses. This potential liquidity easily outweighs the value of the Asset to the estate, given that the Asset, like all SFR Vessels, have been dormant for two years, their operations have no impact on the core anchovy business of the

Peruvian OpCos, and in fact, the SFR Vessels may create the potential for liability for the Peruvian OpCos instead. In my professional opinion, I believe that the sale of the Asset pursuant the Sale Agreement is in the best interests of the Debtor and is the best course of action to maximize value of the Asset for the creditors and other stakeholders in these Chapter 11 Cases.

20. Moreover, Skadden Arps engaged with a representative of the U.S. Trustee in advance of submitting the Motion and Proposed Order, and the U.S. Trustee's representative does not object to entry of the Proposed Order.

21. Accordingly, it is in the best interests of all parties in interest for the Court to enter the proposed Order.

22. No previous application for similar relief has been made by the Trustee.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information, and belief, the foregoing is true and correct.

Dated: March 21, 2017
      New York, New York

                                      */s/ William A. Brandt, Jr.*_____
                                      William A. Brandt, Jr.