**Hearing Date: April 12, 2017 at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: April 5, 2017 at 4:00 p.m. (prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
Lisa Laukitis
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

Sarah E. Pierce (admitted *pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

-and-

Elizabeth M. Downing (admitted *pro hac vice*)
500 Boylston Street
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Fax: (617) 573-4870

*Counsel for William A. Brandt, Jr.*
 *Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.,* | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

---

[1]    The Debtors are China Fishery Group Limited (Cayman) ("CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), Super Investment Limited (Cayman) ("Super Investment") and Pacific Andes Resources Development Ltd. ("PARD").

|  | : |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| **Debtor.** | : |  |
|  | : | **(Jointly Administered)** |
|  | : |  |

**NOTICE OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(a), 363(b), 541(a)(1), AND 1108 AND
BANKRUPTCY RULES 2002, 6004, AND 9006 AUTHORIZING AND APPROVING
PROCEDURES FOR (A) THE SALE OR TRANSFER OF CERTAIN NON-DEBTOR
ASSETS AND (B) TAKING ALL DESIRABLE OR NECESSARY CORPORATE
<u>GOVERNANCE ACTIONS IN CONNECTION THEREWITH</u>**

       **PLEASE TAKE NOTICE** that William A. Brandt, Jr., not individually but

solely in his capacity as chapter 11 trustee (the "<u>Trustee</u>" or the "<u>Chapter 11 Trustee</u>") of CFG

Peru Investments Pte. Limited (Singapore) ("<u>CFG Peru Singapore</u>" or the "<u>Debtor</u>") in the

above-captioned chapter 11 cases, by his attorneys, Skadden, Arps, Slate, Meagher & Flom LLP,

hereby files the *Chapter 11 Trustee's Motion For Order Pursuant To Bankruptcy Code Sections*

*105(A), 363(B), 541(A)(1), And 1108 And Bankruptcy Rules 2002, 6004, And 9006 Authorizing*

*And Approving Procedures For (A) The Sale Or Transfer Of Certain Non-Debtor Assets And (B)*

*Taking All Desirable Or Necessary Corporate Governance Actions In Connection Therewith* (the

"<u>Motion</u>").

       **PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held

before the Honorable James L. Garrity, United States Bankruptcy Judge for the Southern District

of New York, in the United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, Courtroom 601, New York, New York 10004 (the "<u>Bankruptcy Court</u>"), on

**April 12, 2017 at 2:00 p.m. (prevailing Eastern Time)** (the "<u>Hearing</u>"), or as soon thereafter as

counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the

Motion  and the relief requested therein, if any, must be made in writing and (a) filed with the

Bankruptcy Court no later than **4:00 p.m. (prevailing Eastern Time) on April 5, 2017**  (the

"Objection Deadline") and (b) served so as to be actually received by the following parties by the

Objection Deadline:

> (i)    counsel for William A. Brandt, Jr., the Chapter 11 Trustee for the bankruptcy estate of CFG Peru Investments Pte. Ltd., Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Attn: Lisa Laukitis (lisa.laukitis@skadden.com), and Skadden, Arps, Slate, Meagher & Flom LLP, 500 Boylston Street, Boston, Massachusetts 02116, Attn: Elizabeth Downing (elizabeth.downing@skadden.com);

> (ii)    proposed counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matthew S. Barr, Esq. (matt.barr@weil.com), Marcia Goldstein, Esq. (marcia.goldstein@weil.com), and Gabriel A. Morgan, Esq. (gabriel.morgan@weil.com);

> (iii)    the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Susan Golden (susan.golden@usdoj.gov); and

> (iv)    the Chapter 11 Trustee, 110 East 42nd Street, Suite 1818, New York, New York 10017, Attn: William A. Brandt, Jr. (bbrandt@dsi.biz).

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the

Motion, with proof of service, is filed with the Bankruptcy Court and a courtesy copy delivered

to the Honorable James L. Garrity's chambers by the Objection Deadline, the Chapter 11 Trustee

may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in

the form of the proposed order attached to the Motion, which order may be entered with no

further notice or opportunity to be heard.

Dated: March 29, 2017
New York, New York

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  */s/ Lisa Laukitis*
  Jay M. Goffman
  Lisa Laukitis
  Four Times Square
  New York, New York 10036-6522
  Telephone: (212) 735-3000
  Fax: (212) 735-2000

  -and-

  Sarah E. Pierce (admitted *pro hac vice*)
  One Rodney Square
  P.O. Box 636
  Wilmington, Delaware 19899-0636
  Telephone: (302) 651-3000
  Fax: (302) 651-3001

  -and-

  Elizabeth M. Downing (admitted *pro hac vice*)
  500 Boylston Street
  Boston, Massachusetts 02116
  Telephone: (617) 573-4800
  Fax: (617) 573-4870

  *Counsel for William A. Brandt, Jr.*
   *Chapter 11 Trustee*

**Hearing Date: April 12, 2017 at 2:00 p.m.** (Prevailing Eastern Time)
**Objection Deadline: April 5, 2017 at 4:00 p.m.** (Prevailing Eastern Time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
Lisa Laukitis
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

Sarah E. Pierce (admitted *pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

-and-

Elizabeth M. Downing (admitted *pro hac vice*)
500 Boylston Street
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Fax: (617) 573-4870

*Counsel for William A. Brandt, Jr.,*
 *Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

---

[1]  The Debtors are China Fishery Group Limited (Cayman) ("CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), Super Investment Limited (Cayman) ("Super Investment") and Pacific Andes Resources Development Ltd. ("PARD").

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| **Debtor.** | : |  |
|  | : | **(Jointly Administered)** |
| _____ | : |  |

### CHAPTER 11 TRUSTEE'S MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), 541(a)(1), AND 1108 AND BANKRUPTCY RULES 2002, 6004, AND 9006 AUTHORIZING AND APPROVING PROCEDURES FOR (A) THE SALE OR TRANSFER OF CERTAIN NON-DEBTOR ASSETS AND (B) TAKING ALL DESIRABLE OR NECESSARY CORPORATE GOVERNANCE ACTIONS IN CONNECTION THEREWITH

William A. Brandt, Jr., not individually but solely in his capacity as chapter 11 trustee (the "Trustee" or the "Chapter 11 Trustee") of CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore" or the "Debtor") in the above-captioned chapter 11 cases, by his attorneys, Skadden, Arps, Slate, Meagher & Flom LLP, hereby moves (the "Motion") before this Court (the "Court") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 363(b), 541(a)(1), and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the  Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") authorizing and approving procedures (the "Sale Procedures") enabling the Chapter 11 Trustee to (a) sell or transfer certain limited non-core, non-Debtor assets (the "Non-Core Assets") of the CFG Peru Singapore Subsidiaries (defined below) without any further need for this Court's approval of such transactions; and (b) consent to and to take all corporate governance actions desirable or necessary to effectuate the sale or transfer of the Non-Core Assets including, but not limited to, voting stock, passing shareholders' resolutions, directing the managers of the CFG Peru Singapore Subsidiaries to execute any desirable or necessary documentation, paying broker

2

commissions and taxes, or other actions that the Trustee determines are desirable or necessary in connection with (a). In support of the Motion, the Chapter 11 Trustee relies upon and incorporates by reference the Declaration of William A. Brandt, Jr., filed contemporaneously herewith. In further support of the Motion, the Chapter 11 Trustee, by and through his undersigned counsel, respectfully represents:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 541(a)(1), and 1108 and Bankruptcy Rules 2002, 6004, and 9006, and Local Rule 6004-1.

## BACKGROUND

3.      On June 30, 2016 (the "Petition Date"), each of the debtors in the above-captioned cases (the "Debtors"), except PARD, filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court. On September 29, 2016, PARD filed its Chapter 11 bankruptcy case (collectively with the other Debtors' Chapter 11 cases, the "Chapter 11 Cases").

4.      To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee").

5.      The Debtors constitute a small part of a group of companies that collectively constitute the world's twelfth largest fishing company. The Debtors consist principally of holding companies and defunct, non-operating companies. Their value is derived largely from their indirect or direct interests in three Peruvian operating companies which are

3

non-Debtor subsidiaries – CFG Investments S.A.C. ("CFGI"), Corporacion Pesquera Inca S.A.C. ("Copeinca"), and Sustainable Fishing Resources S.A.C. ("SFR," and together with CFGI and Copeinca, the "Peruvian OpCos"). CFGI and Copeinca operate the Pacific Andes Group's anchovy fishing business and together control a significant percentage of the anchovy fishing quotas fixed by the Peruvian government. SFR owns a fleet of fishing vessels used to catch blue water fish for human consumption consisting primarily of mackerel and jack mackerel. The fleet includes the largest factory vessel in the world, the Damanzaihao. CFG Peru Singapore is the direct or indirect parent of the Peruvian OpCos.

6.      In addition to the Peruvian OpCos, CFG Peru Singapore is the direct or indirect parent of the following subsidiaries: CFG Investments Shanghai Ltd.; China Fishery Group Limited (Hong Kong); Consorcio Vollmacht S.A.C.; Copeinca AS; Copeinca International SLU; Corporacion Pesquera Frami S.A.C.; Immobilaria Gainesville S.A.C.; Immobilaria Y Constructora Pahk S.A.C.; Inversiones Pesquera West S.A.C.; J. Wiludi & Asociados S.A.C.; Macro Capitales S.A.; Protein Trading Limited; and Sustainable Pelagic Fishery S.A.C. (collectively with the Peruvian OpCos, the "CFG Peru Singapore Subsidiaries").[2] In addition to the property owned by the Peruvian OpCos, certain of the CFG Peru Singapore Subsidiaries own additional real property, including vessels and real estate.

7.      On November 10, 2016, the U.S. Trustee sought approval of William A. Brandt, Jr., as the Chapter 11 Trustee of CFG Peru Singapore [Dkt. No. 218]. On that same date, the Court entered an order approving the selection of Mr. Brandt as the Chapter 11 Trustee [Dkt. No. 219].

---

[2]    Protein Trading is a Debtor in these Chapter 11 Cases which is a subsidiary of CFG Peru Singapore. To the best of the Trustee's knowledge, Protein Trading is non-operational and holds no real property, and as such, the Trustee does not anticipate selling any real property belonging to Protein Trading. The remaining CFG Peru Singapore Subsidiaries are not Debtors in these Chapter 11 Cases.

## RELIEF REQUESTED

8.      By this Motion, the Chapter 11 Trustee seeks entry of an order, pursuant to Bankruptcy Code sections 105(a), 363(b), 541(a)(1), and 1108 and Bankruptcy Rules 2002, 6004, and 9006, and Local Rule 6004-1 authorizing and approving procedures enabling CFG Peru Singapore to sell or transfer the Non-Core Assets.  In conjunction with such sales, the Chapter 11 Trustee requests the entry of an order authorizing the Chapter 11 Trustee to take all corporate governance actions desirable or necessary to effectuate the sale or transfer of the Non-Core Assets, including but not limited to voting stock, passing shareholders' resolutions, directing managers to execute any desirable or necessary documentation, paying broker commissions and taxes or other actions that are, in the Chapter 11 Trustee's business judgment, desirable or necessary to sell or transfer the Non-Core Assets.

9.      For the reasons set forth herein, the Chapter 11 Trustee submits that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest, and therefore, should be granted.

## PRELIMINARY STATEMENT

10.      As mentioned above, the Debtors' estates, including CFG Peru Singapore's bankruptcy estate, are comprised almost entirely of their interests in the Peruvian OpCos, which are non-Debtor subsidiaries.  The Peruvian OpCos have repeatedly been acknowledged to be the "crown jewels" of these Chapter 11 Cases and are likely to be the prime source of creditors' recoveries across all Debtor entities.  The Chapter 11 Trustee controls CFG Peru Singapore.  Given that CFG Peru Singapore is the 100% (or close to 100%) owner of the Peruvian OpCos, the Trustee also effectively controls these entities.  Beyond the Peruvian OpCos, the Trustee also effectively controls the additional CFG Peru Singapore Subsidiaries.

5

11.    As such, the Chapter 11 Trustee seeks entry of an order establishing the Sale Procedures to facilitate the sale or transfer of the Non-Core Assets in order to maximize value to the Debtor's estate.  Concomitant with implementing the Sale Procedures, the Chapter 11 Trustee seeks this Court's permission to take all corporate actions that he determines are desirable or necessary to effectuate the sale or transfer of the Non-Core Assets.

12.    The Chapter 11 Trustee has determined, in his business judgment, that the sale or transfer of the non-operational and non-core assets of the CFG Peru Singapore Subsidiaries will bring additional, necessary liquidity to the Debtor's estate and to the Peruvian OpCos.

## BASIS FOR RELIEF

### A.    Description of the Non-Core Assets

13.    The Chapter 11 Trustee, in his discretion, plans to utilize the Sale Procedures with respect to the Non-Core Assets listed below, which, as previously defined, encompass limited categories of non-core, non-Debtor assets:[3]

(a)    SFR Catcher Vessels:  The Chapter 11 Trustee may seek to sell or transfer vessels owned by SFR used to catch and process mackerel and jack mackerel (the "SFR Catcher Vessels"), pursuant to a broker agreement with Atlantic Shipping A/S attached hereto as Exhibit B (the "A/S Broker Agreement").  The SFR Catcher Vessels are: (1) the "Liajford"; (2) the "Pacific Hunter"; (3) the "Pacific Champion"; and (4) the "Enterprise";[4]

(b)    Other Non-Debtor Vessels:  The Chapter 11 Trustee may seek to sell or transfer other non-Debtor vessels (the "Other Non-Debtor Vessels").  They are: (1) The "Westella," owned by Copeinca; and (2) the "Sheriff," owned by J. Wilundi & Asociados S.A.C., which is also covered by the A/S Broker Agreement;

---

[3]    To the extent there are non-Debtor assets that do not fall within the Non-Core Assets, the Chapter 11 Trustee will file separate motions seeking authorization from this Court to exercise his corporate governance authority to enter into such sales or transfers and to otherwise approve such sales or transfers.

[4]    A fifth SFR Catcher Vessel, the Pacific Voyager, already has a buyer and approval of its sale and the Chapter 11 Trustee's corporate governance authority to effectuate the sale is pending before the Court.  [Dkt. No. 396].

(c)    Commercial Real Estate in Lima, Peru:  The Chapter 11 Trustee may seek to sell or transfer commercial office space owned by Inmobilaria Gainesville S.A.C. located at Av. Nicolás Arriola 804, Urb. Santa Catalina, La Victoria, Lima that is located in the alley adjacent to Copeinca's headquarters (the "Commercial Real Estate"); and

(d)    Residential Property in Lima, Peru: The Chapter 11 Trustee may seek to sell or transfer residential property owned by Inmobilaria y Constructora Pahk S.A.C. located at Calle El Manatial No. 265, Urb. La Plaicie, La Molina, Lima (the "Residential Property").

14.    The SFR Catcher Vessels and the Other Non-Debtor Vessels that the Chapter 11 Trustee seeks to sell or transfer are not equipped to fish for anchovies.  Further, under Peruvian law, the SFR Catcher Vessels are not permitted to fish within Peruvian territorial waters because the vessels were not manufactured in Peru.  Thus, because the SFR Vessels and Other Non-Debtor Vessels are not utilized in the Peruvian OpCos' anchovy business, they are non-core, dispensable assets.   Moreover, the SFR Catcher Vessels have never operated under SFR's ownership and have thus never produced any revenue for SFR.  As for the Other Non-Debtor Vessels, the Westella, anchored in Chimbote, Peru, only has a mackerel license and has not operated since Copeinca purchased it.  Its use would require further refurbishment efforts that the Trustee has determined in his business judgement would not be an efficient use of the Peruvian OpCos' assets at this time.  Similarly, the Sherriff, anchored in Walvis Bay, Namibia, is not expected to fish while under the ownership and control of the Peruvian OpCos.  It has, however, been inspected for safety and marketing.  As a result, the SFR Vessels and Other Non-Debtor Vessels impose unnecessary costs on the Peruvian OpCos, including for crew, vessel maintenance, and commissioning, among other expenses.  Accordingly, because these vessels are non-core and costly to the estate, they are appropriate assets for the Chapter 11 Trustee to market and sell or transfer for the benefit of the estate and its creditors.

7

15.     In addition, the Commercial Real Estate that the Chapter 11 Trustee seeks to sell or transfer pursuant to the Sale Procedures is a non-core asset.  The real estate consists of office space on the second floor of a commercial building above retail space, located at Av. Nicolás Arriola 804, Urb. Santa Catalina, La Victoria, Lima and owned by Inmobilaria Gainesville.  As mentioned above, this office space is located across the alley from Copeinca's headquarters located at Calle Francisco Graña No. 155 Urb. Santa Catalina, La Victoria, Lima. These adjacent properties were purchased in anticipation of consolidating the entire block where the headquarters are located as part of a real estate project.  Given the uncertainties caused by the appointment of the joint provisional liquidators and then the subsequent initiation of these Chapter 11 Cases, there are no longer plans to execute a real estate project on this land.  Further, given that the real estate project remains unfinished, it has not been possible to rent the office space adjacent to the headquarters.  Thus, there is no reason to keep this unused commercial office space, and proceeds from the sale could be used to benefit the Debtor's estate and its creditors.

16.     The Residential Property in Lima, Peru is a non-core asset.  This property is owned by Inmobilaria y Constructora Pahk S.A.C. located at Calle El Manatial No. 265, Urb. La Plaicie, La Molina, Lima on a golf course that has been completely demolished. Accordingly, the sale of the residential property would also provide liquidity to the estate without impacting core operations.

**B.      Corporate Governance Authority and Broker Agreements**

17.     In conjunction with the sale or transfer of the Non-Core Assets, the Chapter 11 Trustee requests the entry of an order authorizing the Chapter 11 Trustee to take all corporate governance actions desirable or necessary to effectuate the sale or transfer of the Non-

8

Core Assets, including but not limited to voting stock, passing shareholders' resolutions, directing managers to execute any desirable or necessary documentation, paying broker commissions and taxes or other actions that are, in the Chapter 11 Trustee's business judgment, desirable or necessary to effectuate such sale or transfer.

18.    The Trustee requests the authority to enter into any broker agreements (collectively with the A/S Broker Agreement, the "Broker Agreements") that the Trustee deems are in the best interests of the estate pursuant to his business judgment with respect to these vessels and property. Additionally, in conjunction with entering into sales of the Non-Core Assets, the Chapter 11 Trustee intends to cause the CFG Peru Singapore Subsidiaries to pay the commissions in accordance with his corporate governance authority and as required under the Broker Agreements (the "Broker Commissions").

## C.    The Sale Procedures

19.    Although the Chapter 11 Trustee does not believe that Court approval is necessary for the CFG Peru Singapore Subsidiaries to consummate sales of non-Debtor assets, out of an abundance of caution and a desire for transparency, the Chapter 11 Trustee has developed the Sale Procedures to effectuate the sale or transfer of the non-core, non-Debtor Non-Core Assets. The Chapter 11 Trustee requests the Sale Procedures to streamline the sale or transfer of the Non-Core Assets. Moreover, the request for approval of the Sale Procedures is consistent with the Court's mandate to assess the highest and best use of the assets of the Peruvian OpCos given the fact that CFG Peru Singapore derives most, if not all of its value from its interests in the Peruvian OpCos.

20.    The Chapter 11 Trustee proposes to sell or transfer the Non-Core Assets and to provide any corporate consent or authorization desirable or necessary to consummate any

9

such sale or transfer, taking into consideration the exigencies and circumstances in each such sale, transfer, or authorization, under the following Sale Procedures:

(a)    With regard to sales or transfers of Non-Core Assets in any individual transaction or a series of related transactions to a single buyer or group of related buyers, the Chapter 11 Trustee shall give written notice of such sale or transfer (the "Sale Notice") detailing the CFG Peru Singapore Subsidiary involved, the assets being sold, and the consideration therefor to: (i) the office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) U.S. counsel to Standard Chartered Bank (Hong Kong) Limited, Cooperatieve Rabobank U.A., and DBS Bank (Hong Kong) Limited; (iii) U.S. counsel to China CITIC Bank International Limited; (iv) U.S. counsel to the ad hoc noteholders committee; (v) U.S. counsel to Bank of America, N.A.; (vi) U.S. counsel to Malayan Banking Berhad, Hong Kong Branch; (vii) U.S. counsel to Fredrich von Kaltenborn-Stachue, the insolvency administrator for the Pickenpack companies; (viii) U.S. counsel for the Debtors; (ix) counsel to any official committee appointed in these Chapter 11 Cases; and (x) any known affected creditor(s) (collectively, the "Notice Parties") at least ten (10) days prior to closing such sale or effectuating such transfer;

(b)    The content of the Sale Notice sent to the Notice Parties shall consist of (i) identification of the Non-Core Assets being sold or transferred; (ii) identification of the purchaser of the assets; (iii) the purchase price; (iv) the material terms of the sale or transfer agreement; and (v) any Broker Commission to be paid to the extent an asset is marketed by a broker and the Broker Commission is owed under the terms of a Broker Agreement;

(c)    If no written objections to the Sale Notice are filed with this Court by any of the Notice Parties within ten (10) days of the date of the Sale Notice, the Chapter 11 Trustee is authorized to take any and all actions, and to execute any and all resolutions and other documents desirable or necessary to effectuate such sale or transfer, without any further need to seek this Court's review or approval of such sale or transfer;

(d)    If, after the Sale Notice is sent to the Notice Parties but prior to the expiration of such ten (10) day period, the Trustee receives an overbid on any of the Non-Core Assets to be sold, the Trustee will have the discretion, in his business judgment, to take steps to determine the highest and best bid. If the overbid results in the Trustee's decision to sell the Non-Core Asset to a different purchaser than disclosed in the Sale Notice, the Trustee shall send a revised Sale Notice to the Notice Parties. In this event, the Notice Parties will have seven (7) days to object to such revised Sale Notice.

(e)    If a written objection to the Sale Notice is filed with this Court by a Notice Party within such ten (10) day period that cannot be resolved, a hearing on the matter (the "Disputed Transaction") will be scheduled with the Court so as to seek this Court's determination whether (i) under Bankruptcy Code sections 541(a)(1) and 363(b)(1), the Disputed Transaction requires this Court's approval and (ii) if the Court determines that this Court's approval is required, then whether the Court approves the Disputed Transaction;

(f)    Nothing contained herein, nor CFG Peru Singapore's compliance with or failure to comply with the foregoing procedures, shall constitute a waiver by the Chapter 11 Trustee of any right or argument in support of any sale or transfer, and all such rights or arguments are expressly reserved.

21.    The foregoing procedures will ensure that parties in interest will receive notice of the Non-Core Assets.  Accordingly, the Chapter 11 Trustee submits that the Sale Procedures are desirable and in the best interests of the Debtor's estate, creditors, and other parties in interest in these Chapter 11 Cases.

## APPLICABLE AUTHORITY

**A.    The Sale or Transfer of the Non-Core Assets Pursuant to the Sale Procedures are Within the Chapter 11 Trustee's Sound Business Judgment**

22.    Bankruptcy Code section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  As noted above, the Chapter 11 Trustee submits that Court approval may not be required in order for the CFG Peru Singapore Subsidiaries to sell or transfer non-Debtor assets, which include in the Non-Core Assets.  However, because the interests in the Peruvian OpCos and assets held by the Peruvian OpCos constitute almost all of the value of CFG Peru Singapore, Court approval of the aforementioned procedures are prudent and in the best interests of the estates.  Thus, out of an abundance of caution and out of a desire for transparency, the Chapter 11 Trustee requests that this Court approve the notice procedures proposed herein.  The Chapter 11 Trustee submits that the Court may grant such relief pursuant to section 105(a) using the same principles and standards that the Court would use to approve a transaction outside of the ordinary course of a debtor's business under Bankruptcy Code section 363(b).

23.    Specifically, Bankruptcy Code section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary

course of business, property of the estate." 11 U.S.C. § 363(b)(1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is an "articulated business justification" for the action to be taken. See Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) (citation omitted); accord Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983). When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re  Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted).

24.    Here, the Chapter 11 Trustee has a clear business justification for implementing the Sale Procedures. Disposing of the Non-Core Assets will provide additional liquidity to further stabilize the business and to pay necessary capital expenditures and administrative expenses. Moreover, parties with an interest in the Non-Core Assets are fully protected by the opportunity to object and to attend a hearing, if desired. Accordingly, the proposed Sale Procedures are in the best interests of all of the Debtors' estates and creditors.

**B.    Authorizing the Approval of the Chapter 11 Trustee to Take Desirable or Necessary Corporate Governance Actions with Respect to the Non-Core Assets Is Appropriate**

25.    In addition, the Chapter 11 Trustee hereby seeks authorization to provide any consents and to take any other corporate governance actions that he determines are desirable or necessary to cause the sale or transfer of the Non-Core Assets by the CFG Peru Singapore Subsidiaries to be consummated. While the CFG Peru Singapore Subsidiaries are not debtors in

bankruptcy before this Court,[5] the Chapter 11 Trustee needs to take corporate governance actions to approve and facilitate sales or transfers of non-Debtor assets, which include the Non-Core Assets. Further, out of an abundance of caution, to the extent the Court were to consider the actions by the Chapter 11 Trustee to be the sale or use of property outside the ordinary course of business, the Chapter 11 Trustee seeks authorization to take such actions.

26. Consistent with the Court's Memorandum Decision and Order Granting Motion for the Appointment of a Chapter 11 Trustee, the Chapter 11 Trustee controls CFG Peru Singapore. [Dkt. No. 203]. Given that CFG Peru Singapore is the 100% (or close to 100%) owner of the Peruvian OpCos and the other CFG Peru Singapore Subsidiaries, the Trustee effectively controls these entities. [Dkt. No. 203]. In order to effectuate the sale or transfer of assets held by the CFG Peru Singapore Subsidiaries, the Chapter 11 Trustee requests permission to convene shareholders' meetings; vote CFG Peru Singapore's shares; pass shareholders' resolutions; direct the managers of the CFG Peru Singapore Subsidiaries to execute any desirable or necessary documentation and to pay any necessary Broker Commissions and taxes; and to take any other actions that he determines desirable or necessary and within the parameters of the corporate governance documents of the CFG Peru Singapore Subsidiaries. Such actions are consistent with the Court's mandate that the Chapter 11 Trustee "assess the highest and best value of those assets and the means for Debtors to realize maximum benefits from those assets." [Dkt. 203 at 49]. Accordingly, out of an abundance of caution and in the interest of full disclosure, the Chapter 11 Trustee seeks entry of the Proposed Order confirming the Chapter 11 Trustee's corporate governance authority to effectuate the sale or transfer of the Non-Core Assets.

---

[5]    With the exception of Protein Trading, as mentioned *supra* at footnote 2.

**C.    Approval of the Sale or Transfer of Non-Core Assets on Shortened and Limited
Notice Is Appropriate**

27.    The notice and hearing requirements contained in section 363(b)(1) are

satisfied if appropriate notice and an opportunity for a hearing are provided in light of the

particular circumstances.  <u>See</u> 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to

mean such notice and an opportunity for a hearing "as [are] appropriate in the particular

circumstances").  Moreover, "[a] requirement of 'notice and a hearing' really means notice and

*the opportunity for* a hearing . . . [T]he Bankruptcy Code is explicit in defining 'after notice and

a hearing' as 'authorizing an act without an actual hearing if such notice is given properly' *and*

no interested party requests a hearing."  <u>Morlan v. Universal Guar. Life Ins. Co.</u>, 298 F.3d 609,

618 (7th Cir. 2002) (citing 11 U.S.C. § 102(1)(B)).

28.    Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require debtors in

possession to provide a minimum of 21 days' notice by mail of proposed sales of property

outside the ordinary course of business to "the debtor, the trustee, all creditors and indenture

trustee[]" as well as any committee appointed under Bankruptcy Code section 1102.  <u>See</u> Fed. R.

Bankr. P. 2002(a)(2), 2002(i).   Courts are authorized to shorten the 21-day notice period

generally applicable to asset sales, or to direct another method of giving notice, upon a showing

of "cause."  <u>See</u> Fed. R. Bankr. P. 2002(a)(2).  Moreover, courts are authorized to limit notice of

asset sales outside of the ordinary course of a debtor's business, even without a prior showing of

cause, to any official committee appointed under Bankruptcy Code section 1102 and any creditor

or equity holder requesting notice.  <u>See</u> Fed. R. Bankr. P. 2002(i).

29.    Bankruptcy courts are guided by fundamental notions of procedural due

process when determining whether notice is appropriate under the circumstances.  <u>See, e.g.</u>, <u>In re</u>

<u>Boomgarden</u>, 780 F.2d 657, 661 (7th Cir. 1985).  Due process requires that any notice is

14

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." Gates v. City of

Chicago, 623 F.3d 389, 401 (7th Cir. 2010) (quoting Mullane v. Cent. Hanover Bank & Tr. Co.,

339 U.S. 306, 314 (1950)); see also Drexel Burnham Lambert Grp. v. Claimants Identified on

Schedule I (In re Drexel Burnham Lambert Grp., Inc.), 995 F.2d 1138, 1143-44 (2d Cir. 1993).

   30. Even if the sale or transfer of Non-Core Assets are deemed to constitute

transactions outside of the ordinary course of business, the proposed Sale Procedures provide all

interested parties ample notice and an opportunity to object.  Moreover, the Sale Procedures

provide that if an interested party objects to a proposed sale or transfer, the Chapter 11 Trustee

may not proceed with such sale or transfer without seeking Court approval and providing the

objecting party an opportunity for a hearing.  Because the Sale Procedures are reasonably

calculated to provide interested parties notice, an opportunity to object and, if necessary, a

hearing, the proposed procedures satisfy applicable due process standards.

**D.**  **Other Courts Have Approved Similar Relief**

   31. Courts have entered orders authorizing a debtor to cause its non-debtor

affiliates to enter into transactions for the benefit of a debtor's estate.  See, e.g.,  In re Abeinsa

Holding Inc., Case No. 16-10790 (KJC) (Bankr. D. Del. May 25 2016) (authorizing debtor to sell

substantially all assets of non-debtor subsidiaries); In re Haggen Holdings, LLC, Case No. 15-

11874 (KG) (Bankr. D. Del. Apr. 26, 2016) (authorizing debtor to monetize assets of non-debtor

affiliates); In re Variant Holding Co., Case No. 14-12021 (BLS) (Bankr. D. Del. June 5, 2015)

(authorizing debtor to sell assets of non-debtor subsidiaries pursuant to purchase agreement); In

re Savient Pharms., Inc., Case No. 13-12680 (MFW) (Bankr. D. Del. Nov. 4, 2013) (authorizing

debtors to dissolve foreign non-debtor subsidiaries); In re Arcapita Bank B.S.C.(c), Case No. 12-

11076 (SHL) (Bankr. S.D.N.Y. Dec. 18, 2012) (authorizing debtor to grant consents and

15

approvals in connection with sale by non-debtor subsidiary pursuant to purchase agreement); <u>In re Tribune Company</u>, Case No. 08-13141 (KJC) (Bankr. D. Del. Feb. 25, 2011) (authorizing debtor to cause non-debtor affiliate to make capital contribution in another entity); <u>In re Calpine Corp.</u>, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Mar. 1, 2006) (authorizing and approving sale procedures for non-debtor subsidiaries).

32.    Accordingly, the Trustee respectfully requests that the Court approve the relief sought herein.

## <u>WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)</u>

33.    The Chapter 11 Trustee also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Chapter 11 Trustee seeks in this Motion is necessary to preserve value for its estate.  Accordingly, the Chapter 11 Trustee respectfully requests that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## <u>RESERVATION OF RIGHTS</u>

34.    Nothing contained herein is or should be construed as:  (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Trustee's rights to dispute any claim on any grounds or to seek information through other means; or (c) a promise to pay any claim.

## <u>NOTICE</u>

35.    The Trustee will provide notice of this Motion to the following parties, or, in lieu thereof, their counsel: (a) the U.S. Trustee; (b) creditors holding the fifty largest claims as

16

set forth in the consolidated list filed with the Debtors' petitions; (c) U.S. counsel to Standard Chartered Bank (Hong Kong) Limited, Cooperatieve Rabobank, U.A., and DBS Bank (Hong Kong) Limited; (d) U.S. counsel to China CITIC Bank International Limited; (e) U.S. counsel to the ad hoc noteholders committee; (f) U.S. counsel to Bank of America N.A.; (g) U.S. counsel to Malayan Banking Berhad, Hong Kong Branch; (h) U.S. counsel to Fredrich von Kaltenborn-Stachue, the insolvency administrator for the Pickenpack companies; (i) U.S. counsel to the Debtors; (j) the United States Attorney's Office for the Southern District of New York; (k) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  A copy of this Motion is also available on the Court's website.  The Trustee submits that no other or further notice need be provided.

## NO PRIOR REQUEST

36.    No previous request for the relief sought herein has been made to this Court or any other court.

17

## CONCLUSION

WHEREFORE, the Trustee  respectfully requests that the Court enter an order,

substantially in the forms annexed hereto, granting the relief requested in the Motion and such

other and further relief as may be just and proper.

Dated: March 29, 2017
       New York, New York

                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                              By:  */s/ Lisa Laukitis*
                                   Jay M. Goffman
                                   Lisa Laukitis
                                   Four Times Square
                                   New York, New York 10036-6522
                                   Telephone: (212) 735-3000
                                   Fax: (212) 735-2000

                                   -and-

                                   Sarah E. Pierce (admitted *pro hac vice*)
                                   One Rodney Square
                                   P.O. Box 636
                                   Wilmington, Delaware 19899-0636
                                   Telephone: (302) 651-3000
                                   Fax: (302) 651-3001

                                   -and-

                                   Elizabeth M. Downing (admitted *pro hac vice*)
                                   500 Boylston Street
                                   Boston, Massachusetts 02116
                                   Telephone: (617) 573-4800
                                   Fax: (617) 573-4870

                                   *Counsel for William A. Brandt, Jr.*
                                   *Chapter 11 Trustee*

18

## <u>EXHIBIT A</u>

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | Chapter 11 |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** *et al.*, | **Case No. 16-11895 (JLG)** |
| Debtors.[1] | **(Jointly Administered)** |

---

| | |
|---|---|
| In re: | Chapter 11 |
| **CFG Peru Investments Pte. Limited (Singapore),** Debtor. | **Case No. 16-11914 (JLG)** |
| | **(Jointly Administered)** |

---

**ORDER GRANTING CHAPTER 11 TRUSTEE'S MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), 541(a)(1), AND 1108 AND BANKRUPTCY RULES 2002, 6004, AND 9006 AUTHORIZING AND APPROVING PROCEDURES FOR (A) THE SALE OR TRANSFER OF CERTAIN NON-DEBTOR ASSETS AND (B) TAKING ALL DESIRABLE OR NECESSARY CORPORATE GOVERNANCE ACTIONS IN CONNECTION THEREWITH**

Upon the motion (the "Motion"),[2] dated March 29, 2017, by William A. Brandt, Jr., not individually but solely in his capacity as Chapter 11 Trustee of CFG Peru Singapore, for an order (this "Order") pursuant to sections 105(a), 363(b), 541(a)(1), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 9006 of the Federal Rules

---

[1]    The Debtors are China Fishery Group Limited (Cayman) ("CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), Super Investment Limited (Cayman) ("Super Investment") and Pacific Andes Resources Development Ltd. ("PARD").

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the

United States Bankruptcy Court for the Southern District of New York (the "Local Rules")

authorizing and approving procedures (the "Sale Procedures") enabling the Chapter 11 Trustee to

(a) sell or transfer certain non-core, non-Debtor assets of the CFG Peru Singapore Subsidiaries

(the "Non-Core Assets") without any further need for this Court's approval of such transactions;

and (b) consent to and to take all corporate governance actions desirable or necessary to

effectuate the sale or transfer of the Non-Core Assets including but not limited to voting stock,

passing shareholders' resolutions, directing managers to execute any desirable or necessary

documentation, paying Broker Commissions and taxes, or other actions that he determines, in the

Chapter 11 Trustee's business judgment, desirable or necessary in connection with (a), all as

more fully set forth in the Motion; and due and sufficient notice of the Motion having been given

under the particular circumstances; and it appearing that no other or further notice need be

provided; and it appearing that the relief requested by the Motion is in the best interests of the

Debtors, their estates, their creditors, their stakeholders, and other parties in interest; and after

due deliberation thereon, and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that**:

1.       The Motion is GRANTED as set forth herein.

2.       Pursuant to Bankruptcy Code sections 105(a), 363(b), 541(a)(1), and

1108, the Chapter 11 Trustee is authorized to sell or transfer any of the Non-Core Assets under

the following Sale Procedures:

(a)       With regard to sales or transfers of Non-Core Assets in any
individual transaction or a series of related transactions to a single buyer or group of related
buyers, the Chapter 11 Trustee shall give written notice of such sale or transfer (the "Sale
Notice") detailing the CFG Peru Singapore Subsidiary involved, the assets being sold, and the
consideration therefor to: (i) the office of the United States Trustee for the Southern District of
New York (the "U.S. Trustee"); (ii) U.S. counsel to Standard Chartered Bank (Hong Kong)

Limited, Cooperatieve Rabobank U.A., and DBS Bank (Hong Kong) Limited; (iii) U.S. counsel to China CITIC Bank International Limited; (iv) U.S. counsel to the ad hoc noteholders committee; (v) U.S. counsel to Bank of America, N.A.; (vi) U.S. counsel to Malayan Banking Berhad, Hong Kong Branch; (vii) U.S. counsel to Fredrich von Kaltenborn-Stachue, the insolvency administrator for the Pickenpack companies; (viii) U.S. counsel for the Debtors; (ix) counsel to any official committee appointed in these Chapter 11 Cases; and (x) any known affected creditor(s) (collectively, the "Notice Parties") at least ten (10) days prior to closing such sale or effectuating such transfer;

(b)    The content of the Sale Notice sent to the Notice Parties shall consist of (i) identification of the Non-Core Assets being sold or transferred; (ii) identification of the purchaser of the assets; (iii) the purchase price; (iv) the material terms of the sale or transfer agreement; and (v) any Broker Commission to be paid to the extent an asset is marketed by a broker and the Broker Commission is owed under the terms of a Broker Agreement;

(c)    If no written objections to the Sale Notice are filed with this Court by any of the Notice Parties within ten (10) days of the date of the Sale Notice, the Chapter 11 Trustee is authorized to take any and all actions, and to execute any and all resolutions and other documents desirable or necessary to effectuate such sale or transfer, without any further need to seek this Court's review or approval of such sale or transfer;

(d)    If, after the Sale Notice is sent to the Notice Parties but prior to the expiration of such ten (10) day period, the Trustee receives an overbid on any of the Non-Core Assets to be sold, the Trustee will have the discretion, in his business judgment, to take steps to determine the highest and best bid.  If the overbid results in the Trustee's decision to sell the Non-Core Assets to a different purchaser than disclosed in the Sale Notice, the Trustee shall send a revised Sale Notice to the Notice Parties.  In this event, the Notice Parties will have seven (7) days to object to such revised Sale Notice.

(e)    If a written objection to the Sale Notice is filed with this Court by a Notice Party within such ten (10) day period that cannot be resolved, a hearing on the matter (the "Disputed Transaction") will be scheduled with the Court so as to seek this Court's determination whether (i) under Bankruptcy Code sections 541(a)(1) and 363(b)(1), the Disputed Transaction requires this Court's approval and (ii) if the Court determines that this Court's approval is required, then whether the Court approves the Disputed Transaction;

(f)    Nothing contained herein, nor CFG Peru Singapore's compliance with or failure to comply with the foregoing procedures, shall constitute a waiver by the Chapter 11 Trustee of any right or argument in support of any sale or transfer, and all such rights or arguments are expressly reserved.

3.    The Chapter 11 Trustee is authorized to take all corporate governance

actions desirable or necessary including but not limited to convening shareholders' meetings;

voting CFG Peru Singapore's shares; passing shareholder resolutions; directing the managers of

3

the CFG Peru Singapore Subsidiaries to execute any desirable or necessary documentation and to pay any necessary Broker Commissions and taxes; and taking any other actions that he determines, in his business judgment, desirable or necessary or advisable to consummate any such sale or transfer of the Non-Core Assets, taking into consideration the exigencies and circumstances in each such sale, transfer, or authorization.

4.      Service of this Order and the Sale Notice as set forth in the Sale Procedures is sufficient notice of the sale or transfer of the Non-Core Assets.

5.      Nothing contained herein shall prejudice the rights of the Chapter 11 Trustee to seek authorization for the sale of any asset under 11 U.S.C. § 363.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

7.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

8.      The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

9.      The Chapter 11 Trustee is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

10.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:  New York, New York
        _____, 2017

                        _____
                        HON. JAMES L. GARRITY
                        UNITED STATES BANKRUPTCY JUDGE

4

## **EXHIBIT B**

**A/S Broker Agreement**



**ATLANTIC SHIPPING A/S**
RYSENSTEENSGADE 14
1564 COPENHAGEN V
DENMARK

PHONE: +45 3332 3997
E-MAIL: info@atlanticship.dk
WEB: www.atlanticship.dk

# Broker Agreement of 20th February 2017

**Between**

**Sustainable Fishing Resources S.A.C.**
and
**Wiludi Asociados Consultores en Pesca S.A.C.**
both at
Calle Amador Merino Reyna No. 307
Piso 9
San Isidro
Lima, 15046
Peru

(hereinafter called **"the Owner"**)

**and**

**Atlantic Shipping A/S**
Rysensteensgade 14
1564 Copenhagen V
Denmark

(hereinafter called **"the Broker"**)

The Owner appoints the Broker as exclusive broker for the sale of their Vessels, correspondently:

**Pacific Voyager – IMO: 9167904**
**Pacific Hunter – IMO: 8519667**
**Pacific Champion – IMO: 9184627**
**Liafjord – IMO: 9167916**
**Enterprise – IMO: 9207211**
**Damanzaihao – IMO: 7913622**
**Sheriff – IMO 8721088**
**Tavrida – IMO 9179359**
**Westella – IMO 8024454**

(hereinafter called "the Vessels").

The Vessels are aimed to be sold at market price level. This includes all fishing equipment and everything else on board not rented or privately owned by crew or officers at the time of every given inspection by prospective buyers, but excluding fuel oil on board (if any above 30 m3) at the time of delivery.





**ATLANTIC SHIPPING**
SHIPBROKERS

ATLANTIC SHIPPING A/S
RYSENSTEENSGADE 14
1564 COPENHAGEN V
DENMARK

PHONE:   +45 3332 3997
E-MAIL:   info@atlanticship.dk
WEB:   www.atlanticship.dk

The Broker shall advertise the Vessels for sale on a 'no cure, no pay' basis.

The broker commission is 2,25 % of the purchase price of each Vessel, but not under USD 60,000 for each Vessel (the "Commission").

CFG Peru Investments Pte. Ltd. ("CFG Peru") is the parent company of the Owner. CFG Peru is a chapter 11 debtor before the Southern District of New York Bankruptcy Court (the "Bankruptcy Court"). Under certain circumstances, the Bankruptcy Court must approve the sale of property of CFG Peru's estate, which includes assets of the Owner. William A. Brandt Jr., as chapter 11 trustee of CFG Peru, will file a motion through his counsel, Skadden, Arps, Slate, Meagher & Flom LLP, before the Bankruptcy Court seeking approval of the sale of any Vessels and the payment of any corresponding Commission. Absent an order from the Bankruptcy Court, the Owner is not obligated to sell any Vessels or pay any corresponding Commission. The Commission shall be paid promptly following entry of the order by the Bankruptcy Court approving such Commission.

The Broker pays all ordinary broker expenses in connection with advertising the Vessels for sale, presenting them to potential buyers, including own travel expenses, usual communication expenses, accommodation, car hires and the like. However, the Broker will get reimbursed up to USD 30,000 for actual expenses incurred, in, and only in the event that, after diligently performing all of its obligations in this agreement, no vessels are sold during the validity of this agreement. Hence, in the event one or more vessels are sold, no reimbursement of any expenses to the Broker shall result applicable.

In addition the Broker has agreed to pay for a technical inspection of the Vessels by an experienced external Marine Surveyor from Denmark, appointed by the Broker, planned to take place during week 8 2017. ("Sheriff" may be inspected by other marine surveyor as she is in Namibia)

Procuration of information regarding the Vessels, i.e. technical information as well as class certificates and reports drawings of the Vessels, stability calculations etc. shall be arranged by the Owner for his own account.

All correspondence with Atlantic Shipping A/S is to go via the CEO, Mr. Ture Korsager, tk@atlanticship.dk, or via shipbroker Høgni Iversen, hi@atlanticship.dk.

All inspections shall be coordinated with Mr. José Miguel Tirado, jtirado@copeinca.com.pen, with copies to Mr. Steven L. Victor, svictor@dsi.biz, and Mr. William A. Brandt, Jr., bbrandt@dsi.biz.
All offers shall be sent to Mr. Steven L. Victor, svictor@dsi.biz, with copies to Mr. Mr. William A. Brandt, Jr., bbrandt@dsi.biz.





| | ATLANTIC SHIPPING A/S | PHONE: | +45 3332 3997 |
| | RYSENSTEENSGADE 14 | E-MAIL: | info@atlanticship.dk |
| | 1564 COPENHAGEN V | WEB: | www.atlanticship.dk |
| | DENMARK | | |

**Among other the Owner hereby agrees to:**

- inform the Broker about every potential buyer that the Owner knows of and who may have contacted the Owner prior to the date of this agreement, including the names of other broking companies so that the Broker may contact these in his sales efforts.

- direct all interested parties - including buyers, other broking companies and anybody else interested in purchase, charter, joint venture, or any other kind of acquisition, or future co-operation regarding operation of the Vessels - who may contact the Owner to the Broker, informing the interested parties that the Broker is exclusive broker on this sale.

- support the Broker actively in the effort of selling the Vessels, including procuration of all necessary technical material regarding the Vessels and other information which may be of relevance to the future use of the Vessels.

- pay the Broker the above mentioned Commission in connection with a sale, subject to Bankruptcy Court approval. Commission shall be paid on each Vessel that is sold whether or not the sale is concluded via the Broker, subject to Bankruptcy Court approval. Commission is not dependant on the sale of all Vessels. If a Vessel is sold within 3 months after this agreement has been terminated (cf. below), the Broker is still entitled to the Commission, subject to Bankruptcy Court approval, if the following applies:

  - sale to buyers who were introduced by the Broker or sale via other brokers who were introduced by the Broker (hereinafter, the Potential Buyers).

  - sale to buyers with whom a dialogue regarding sale has started prior to the termination of this agreement.

**The Broker agrees to:**

- actively market the Vessels in the international market as per usual standards, such as: presentation via www.atlanticship.dk web page, presentation in the fishing exhibitions Atlantic Shipping A/S participates in, direct mail presentation to Atlantic's client base etc.

- seek the best possible price and the best possible conditions for the Owner.

- continuously report to the Owner (and only to the Owner as defined in the introduction of this document) with reasonable intervals in respect of the development in the sales efforts, and to maintain such reports confidential.

- provide the Owner with a list of the Potential Buyers that they have contacted and/or introduced.





ATLANTIC SHIPPING A/S
RYSENSTEENSGADE 14
1564 COPENHAGEN V
DENMARK

PHONE:  +45 3332 3997
E-MAIL:  info@atlanticship.dk
WEB:  www.atlanticship.dk

The Commission is earned when a valid sales contract has been signed with a Potential Buyer, included in the aforementioned list, or included in later reporting, prior to termination of this contract, provided to the Owner by the Broker and the purchase price is paid. The Commission will also be earned if the sales contract is signed with a Potential Buyer within 3 months after the expiration of this agreement, provided that the purchase price is paid and that the actual buyer is not a direct or indirect subsidiary of CFG Peru. As noted above, actual payment of the Commission is subject to Bankruptcy Court approval.

The Broker is not responsible for the performance or non-performance of the contract to which the Broker has been the intermediary.

The Broker may also look for other business alternatives for the vessels, such as long term charters, if this is deemed the best option. This may relate especially to the vessel "Damanzaihao".

This agreement is valid from the date it is signed by the parties until it is terminated by the Owner or the Broker, however minimum until 1st August 2017. Thereafter the agreement can be terminated by the Owner or by the Broker with 1 (one) month's written notice.

**Liability limitation**
The Broker will, subject to the provisions of this clause, be liable to the Owner for loss or damage directly caused by the failure to perform the services under this agreement with the reasonable skill and care expected of a professional shipbroker provided always that the Broker will **not** be liable for:

- loss of profits, loss of or interruption to business, loss of reputation and/or goodwill, loss of data, loss of use or indirect or consequential losses.
- loss or damage caused by any event or cause that the Broker was unable to avoid and/or the consequences of which could not have been prevented by the exercise by the Broker of reasonable diligence.
- loss or damage which was not solely caused by the act or omission of the Broker or which would have occurred in any event.

The total liability of the Broker arising from or in connection with the services under this agreement shall in no circumstances exceed the lower of (i) the amount of Commission in fact paid to the Broker by the Owner in respect of the particular services (or, as relevant, the particular sale) in connection with which the claim arises or (ii) the sum of USD 200,000.

The exclusions and/or limitations set out in this clause shall not apply when the claim against the Broker is brought in tort due to gross negligence or breach of statutory duty.





**ATLANTIC SHIPPING A/S**
RYSENSTEENSGADE 14
1564 COPENHAGEN V
DENMARK

PHONE: +45 3332 3997
E-MAIL: info@atlanticship.dk
WEB:    www.atlanticship.dk

Any claim against the Broker must be made in writing and notified to the Broker within 60 days of the date on which the Owner became aware or ought to have become aware of the circumstances giving rise to the claim and any claim not so notified shall be deemed waived and absolutely barred. The Broker shall in any event be discharged of all liability arising out of the services, and any claim in respect thereof shall be extinguished, unless suit is brought and served upon the Broker within one (1) year after the end of the services/sale in question.

**Law and Arbitration**
This agreement shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this agreement shall be referred to arbitration in London, in accordance with the UK Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 100,000 the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

**Signatures:**

Date: 20th February 2017

_____
Mr.
Sustainable Fishing Resources S.A.C

_____
Mr. Ture Korsager, CEO
Atlantic Shipping A/S

Mr. William A. Brandt, Jr.
Chapter 11 Trustee for CFG Investments Pte. Ltd.