SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
Lisa Laukitis
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

Sarah E. Pierce (admitted *pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

-and-

Elizabeth M. Downing (admitted *pro hac vice*)
500 Boylston Street
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Fax: (617) 573-4870

*Counsel for William A. Brandt, Jr.,*
 *Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

---

[1] The Debtors are China Fishery Group Limited (Cayman) ("CFGL"), Pacific Andes International Holdings Limited (Bermuda) ("PAIH"), N.S. Hong Investment (BVI) Limited ("NS Hong"), South Pacific Shipping Agency Limited (BVI) ("SPSA"), China Fisheries International Limited (Samoa) ("CFIL"), CFGL (Singapore) Private Limited ("CFGLPL"), Chanery Investment Inc. (BVI) ("Chanery"), Champion Maritime Limited (BVI) ("Champion"), Growing Management Limited (BVI) ("Growing Management"), Target Shipping Limited (HK) ("Target Shipping"), Fortress Agents Limited (BVI) ("Fortress"), Ocean Expert International Limited (BVI) ("Ocean Expert"), Protein Trading Limited (Samoa) ("Protein Trading"), CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), Smart Group Limited (Cayman) ("Smart Group"), Super Investment Limited (Cayman) ("Super Investment") and Pacific Andes Resources Development Ltd. ("PARD").

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | Case No. 16-11914 (JLG) |
| Debtor. | : | |
| | : | (Jointly Administered) |
| | : | |

**DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF THE CHAPTER 11 TRUSTEE'S MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), 541(a)(1), AND 1108 AND BANKRUPTCY RULES 2002, 6004, AND 9006 AUTHORIZING AND APPROVING PROCEDURES FOR (A) THE SALE OR TRANSFER OF CERTAIN NON-DEBTOR PRINCIPAL ASSETS AND (B) TAKING ALL DESIRABLE OR NECESSARY CORPORATE GOVERNANCE ACTIONS IN CONNECTION THEREWITH**

I, William A. Brandt, Jr., being duly sworn, depose and say:

1. I am the Executive Chairman and founder of Development Specialists, Inc. ("DSI"), a restructuring and financial advisory firm that specializes in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. DSI maintains offices at 110 E. 42nd Street, Suite 1818, New York, New York 10017.

2. I have approximately forty years of experience in the practice of turnarounds and restructurings and have served as either a Chapter 11 Trustee, a Chapter 7 Trustee, an Examiner, a Chief Restructuring Officer, a Designated Party for the Debtor in Possession or in other similar fiduciary capacities in the insolvency industry in thousands of cases.

3. I submit this Declaration in support of my request, in my capacity as Chapter 11 Trustee (the "Trustee") of CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), of the relief requested in the *Chapter 11 Trustee's Motion for Order Pursuant to Bankruptcy Code Sections 105(a), 363(b), 541(a)(1), and 1108 and Bankruptcy Rules 2002, 6004, 9006 Authorizing and Approving Procedures for (A) The Sale or Transfer of Certain Non-*

2

*Debtor Assets and (B) Taking All Desirable or Necessary Corporate Governance Actions in Connection Therewith* (the "Motion") filed concurrently herewith.[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein, either directly or through professionals working at my direction or through my representatives and advisors and, if called as a witness, I would testify competently thereto.

4. Following the motion by Coöperatieve Rabobank U.A. ("Rabobank"), Standard Chartered Bank (Hong Kong) Limited ("Standard Chartered") and DBS Bank (Hong Kong), Limited ("DBS," and together with Rabobank and Standard Chartered, the "Club Lender Parties") seeking the appointment of a Chapter 11 trustee [Dkt. No. 59], the Court granted the motion [Dkt. No. 203] on October 28, 2016 with respect to CFG Peru Singapore.

5. On November 10, 2016, the U.S. Trustee sought approval of my retention as the Chapter 11 Trustee of CFG Peru Singapore [Dkt. No. 218]. On that same date, the Court entered an order approving the my selection as the Chapter 11 Trustee [Dkt. No. 219].

## I. Description of the Non-Core Assets to be Sold Pursuant to the Sale Procedures

6. Through the Motion, I seek entry of an order establishing the Sale Procedures to facilitate the sale or transfer of the Non-Core Assets. Although I do not believe that Court approval is necessary for the CFG Peru Singapore Subsidiaries to consummate sales of non-Debtor assets, out of an abundance of caution and a desire for transparency, I seek approval of the Sale Procedures to effectuate the sale or transfer of the following Non-Core Assets:

(a) <u>SFR Catcher Vessels</u>: I may seek to sell or transfer vessels owned by SFR used to catch and process mackerel and jack mackerel (the "SFR Catcher Vessels"), pursuant to a broker agreement with Atlantic Shipping A/S attached to the Motion as Exhibit B

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3

(the "A/S Broker Agreement").  The SFR Catcher Vessels are: (1) the "Liajford"; (2) the "Pacific Hunter"; (3) the "Pacific Champion"; and (4) the "Enterprise";[3]

(b)     Other Non-Debtor Vessels:  I may seek to sell or transfer other non-Debtor vessels (the "Other Non-Debtor Vessels").  They are: (1) The "Westella," owned by Copeinca; and (2) the "Sheriff," owned by J. Wilundi & Asociados S.A.C., which is also covered by the A/S Broker Agreement;

(c)     Commercial Real Estate in Lima, Peru:  I may seek to sell or transfer commercial office space owned by Inmobilaria Gainesville S.A.C. located at Av. Nicolás Arriola 804, Urb. Santa Catalina, La Victoria, Lima that is located in the alley adjacent to Copeinca's headquarters (the "Commercial Real Estate"); and

(d)     Residential Property in Lima, Peru: I may seek to sell or transfer residential property owned by Inmobilaria y Constructora Pahk S.A.C. located at Calle El Manatial No. 265, Urb. La Plaicie, La Molina, Lima (the "Residential Property").

7.     To the best of my knowledge, the SFR Catcher Vessels and the Other Non-Debtor Vessels that I may seek to sell or transfer are not equipped to fish for anchovies.  Further, I have been advised that under Peruvian law, the SFR Catcher Vessels are not permitted to fish within Peruvian territorial waters because the vessels were not manufactured in Peru.  Thus, because the SFR Vessels and Other Non-Debtor Vessels are not utilized in the Peruvian OpCos' anchovy business, they are non-core, dispensable assets.  Moreover, the SFR Catcher Vessels have never operated under SFR's ownership and have thus never produced any revenue for SFR.  As for the Other Non-Debtor Vessels, the Westella, anchored in Chimbote, Peru, only has a mackerel license and has not operated since Copeinca purchased it.  Its use would require further refurbishment efforts that I have determined in my business judgement would not be an efficient use of the Peruvian OpCos' assets at this time.  Similarly, the Sherriff, anchored in Walvis Bay, Namibia, is not expected to fish while under the ownership and control of the Peruvian OpCos.  It has, however, been inspected for safety and marketing.  As a result, the SFR Vessels and Other

---

[3]     A fifth SFR Catcher Vessel, the Pacific Voyager, already has a buyer and approval of its sale and the Chapter 11 Trustee's corporate governance authority to effectuate the sale is pending before the Court.  [Dkt. No. 396].

4

Non-Debtor Vessels impose unnecessary costs on the Peruvian OpCos, including for crew, vessel maintenance, and commissioning, among other expenses.  Accordingly, because these vessels are non-core and costly to the estate, they are appropriate assets to market and sell or transfer for the benefit of the estate and its creditors.

8. In addition, the Commercial Real Estate that I may seek to sell or transfer pursuant to the Sale Procedures is a non-core asset.  The real estate consists of office space on the second floor of a commercial building above retail space, located at Av. Nicolás Arriola 804, Urb. Santa Catalina, La Victoria, Lima and owned by Inmobilaria Gainesville.  As mentioned above, this office space is located across the alley from Copeinca's headquarters located at Calle Francisco Graña No. 155 Urb. Santa Catalina, La Victoria, Lima.  These adjacent properties were purchased in anticipation of consolidating the entire block where the headquarters are located as part of a real estate project.  Given the uncertainties caused by the appointment of the joint provisional liquidators and then the subsequent initiation of these Chapter 11 Cases, there are no longer plans to execute a real estate project on this land.  Further, given that the real estate project remains unfinished, it has not been possible to rent the office space adjacent to the headquarters.  Thus, there is no reason to keep this unused commercial office space, and proceeds from the sale could be used to benefit the Debtor's estate and its creditors.

9. The Residential Property in Lima, Peru is a non-core asset.  This property is owned by Inmobilaria y Constructora Pahk S.A.C. located at Calle El Manatial No. 265, Urb. La Plaicie, La Molina, Lima on a golf course that has been completely demolished.  Accordingly, the sale of the residential property would also provide liquidity to the estate without impacting core operations.

5

**II.      The Sale Procedures and Sales Are in the Best Interests of the Debtors' Estates**

10.    If approved, the Sale Procedures would streamline the sale or transfer of the Non-Core Assets, and use of such organized system is consistent with the Court's mandate to assess the highest and best use of the assets of the Peruvian OpCos given the fact that CFG Peru Singapore derives most, if not all of its value from its interests in the Peruvian OpCos.

11.    Moreover, I believe a clear business justification exists for implementing the Sale Procedures.  Disposing of the Non-Core Assets will provide additional liquidity to further stabilize the business and to pay necessary capital expenditures and administrative expenses.  This potential liquidity easily outweighs the value of the Non-Core Assets to the estate, given that the Non-Core Assets have been non-operational and have no impact on the core anchovy business of the Peruvian OpCos, and in fact, may create the potential for liability for the Peruvian OpCos instead.  Moreover, parties with an interest in the Non-Core Assets are fully protected by the opportunity to object and to attend a hearing, if desired.  Accordingly, in my professional opinion, I believe that the sale of the Non-Core Assets pursuant to the Sale Procedures is in the best interests of the Debtor and is the best course of action to maximize value of the Asset for the creditors and other stakeholders in these Chapter 11 Cases.

**III.     The Chapter 11 Trustee Possesses Corporate Governance Authority to Sell or Transfer the Assets of the CFG Peru Singapore Subsidiaries**

12.    As Chapter 11 Trustee, I effectively control CFG Peru Singapore.  Given that CFG Peru Singapore is the 100% (or close to 100%) owner of the Peruvian OpCos and the other CFG Peru Singapore Subsidiaries, I effectively control these entities.  [Dkt. No. 203].  In order to effectuate the sale or transfer of the Non-Core Assets held by the CFG Peru Singapore Subsidiaries, I request permission to convene shareholders' meetings; vote CFG Peru Singapore's shares; pass shareholders' resolutions; direct the managers of the CFG Peru

Singapore Subsidiaries to execute any desirable or necessary documentation and to pay any necessary Broker Commissions and taxes; and to take any other actions that I determine desirable or necessary and within the parameters of the corporate governance documents of the CFG Peru Singapore Subsidiaries.

13. I believe that such corporate governance actions are consistent with the Court's mandate that I "assess the highest and best value of those assets and the means for Debtors to realize maximum benefits from those assets."

14. Accordingly, it is in the best interests of all parties in interest for the Court to enter the proposed Order.

15. No previous application for similar relief has been made by the Trustee.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information, and belief, the foregoing is true and correct.

Dated: March 29, 2017
New York, New York

_____
William A. Brandt, Jr.