NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

| | | |
|---|---|---|
| *In re:* | : | Chapter 11 |
| | : | |
| CHINA FISHERY GROUP LIMITED | : | Case No. 16-11895 (JLG) |
| (CAYMAN), *et al.* | : | |
| | : | |
| *Debtors.* | : | (Jointly Administered) |

---------------------------------------------------------:

| | | |
|---|---|---|
| *In re:* | : | Chapter 11 |
| | : | |
| CFG PERU INVESTMENTS PTE. LTD. | : | Case No. 16-11914 (JLG) |
| (SINGAPORE), | : | |
| | : | |
| *Debtor.* | : | |

---------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER GRANTING TRUSTEE'S**
**MOTION FOR ORDER AUTHORIZING ISSUANCE OF SUBPOENAS TO**
**HONGKONG SHANGHAI BANKING CORPORATION LIMITED**

**A P P E A R A N C E S :**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave, 22nd Floor
New York, New York 10010
By:     Susheel Kirpalani, Esq.
        James C. Tecce, Esq.
        Jordan Harap, Esq.

*Special Litigation Counsel to William A. Brandt Jr.,*
*Chapter 11 Trustee for CFG Peru Investments Ptd. Ltd. (Singapore)*

DAVIS POLK & WARDELL LLP
450 Lexington Avenue
New York, New York 10017
By:     Donald S. Bernstein, Esq.
        Timothy Graulich, Esq.
        Elliot Moskowitz, Esq.

-and-

BOIES SCHILLER FLEXNER LLP

1401 New York Avenue, NW
Washington, DC 20005
By:     Scott E. Gant, Esq.

575 Lexington Avenue
New York, New York 10022
By:     Damien Marshall, Esq.

*Counsel to The Hongkong and Shanghai Banking Corporation Limited*

**HON. JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

## Introduction

The Pacific Andes Group of companies collectively constitute the world's twelfth largest fishing company. The seventeen debtors in these jointly administered chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), consist principally of holding companies and defunct operating companies, and comprise a small part of that group.[1] They derive their value from their interests in the following three Peruvian operating companies: CFG Investments S.A.C. ("CFGI"), Corporacion Pesquera Inca S.A.C. ("Copecina"), and Sustainable Fishing Resources S.A.C. ("SFR," and with CFGI and Copecina, the "Peruvian OpCos"). None of the Peruvian OpCos are Debtors. CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru"), a holding company and Debtor herein, is the 100% direct and indirect owner of the Peruvian OpCos.

William Brandt (the "Trustee") is the Court-appointed chapter 11 trustee of CFG Peru. The matter before the Court is his Motion Pursuant To 11 U.S.C. §§ 105(a) And 1106(a)(3), Fed. R. Bankr. P. 2004 And 9016, And L. Bankr. R. 2004-1, For Order Authorizing Issuance Of Subpoenas To Hongkong Shanghai Banking Corporation Limited Directing Production Of Documents And Examination Of Witnesses And Granting Related Relief [ECF No. 299] (the

---

[1]    The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman) and Pacific Andes Resources Development Limited.

After this motion was fully submitted, an additional 20 entities in the Pacific Andes Group filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code herein. Those cases are being jointly administered with the Debtors' cases. The filing of those cases has no bearing on the resolution of this motion.

3

"Motion").[2]  The Hongkong Shanghai Banking Corporation Limited ("HSBC-HK") opposes the

Motion.  *See* Objection of The Hongkong and Shanghai Banking Corporation Limited To The

Motion of William A. Brandt, Jr., Chapter 11 Trustee Pursuant to 11 U.S.C. §§ 105(a) and

1106(a)(3), Fed. R. Bankr. P. 2004 and 9016, and L. Bankr. R. 2004-1, For Order Authorizing

Issuance Of Subpoenas To Hongkong Shanghai Banking Corporation Limited Directing

Production Of Documents and Examination of Witnesses and Granting Related Relief [ECF No.

344] (the "Objection").[3]

        For the reasons set forth below, the Objection is OVERRULED and the Motion is

GRANTED to the extent set forth herein.

## Facts[4]

        On June 30, 2016 (the "Petition Date"), the Debtors filed voluntary petitions in this Court

for relief under chapter 11 of the Bankruptcy Code.  On July 14, 2016, the Court entered an order

consolidating the Debtors' cases for procedural purposes only.[5]  By order dated November 10,

2016, the Court appointed William Brandt as chapter 11 trustee of CFG Peru.[6]  In doing so, the

Court granted, in part, the motion of Coöperatieve Rabobank U.A., Standard Chartered Bank

---

[2]    The Trustee filed the Motion in the jointly administered chapter 11 cases and in CFG Peru's chapter 11 case. *See* ECF No. 299 (jointly administered cases, Case No. 16-11895), ECF No. 50 (CFG Peru chapter 11 case, Case No. 16-11914).

[3]    HSBC North America Holdings, Inc., HSBC North America, Inc. and HSBC USA, Inc. also jointly objected to the Motion.  *See* ECF Nos. 341, 342.  The Trustee resolved that objection at the hearing on the Motion. Accordingly, the Court will not further address it herein.

[4]    The facts are not in dispute and are derived from the documents of record in these cases and this Court's memorandum decision granting, in part, the Club Lender Parties' (defined below) motion for the appointment of a chapter 11 trustee for each Debtor.  *See* Memorandum Decision and Order Granting Motion For The Appointment of a Chapter 11 Trustee [ECF No. 203 (jointly administered cases), ECF No. 23 (CFG Peru chapter 11 case)] (the "Trustee Decision").

[5]    *See* ECF No. 27 (Case No. 16-11895) (Order Directing Joint Administration Of Chapter 11 Cases).

[6]    *See* Order Approving Appointment Of Chapter 11 Trustee [ECF No. 219 (jointly administered cases), ECF No. 25 (CFG Peru chapter 11 case)].

(Hong Kong) Limited and DBS Bank (Hong Kong), Limited (collectively, the "Club Lender Parties") pursuant to section 1104(a)(2) of the Bankruptcy Code seeking the appointment of a chapter 11 trustee for each of the Debtors.

HSBC-HK is a non-public banking entity incorporated and headquartered in the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong"). *See* Objection ¶ 10. Historically, it has had a significant lending relationship with members of the Pacific Andes Group. Indeed, from the Debtors' perspective, entering 2014, their primary banking relationship was with HSBC-HK. *See* Ng Declaration in Support of Debtors' First Day Motions [ECF No. 2] (the "First Day Decl.") ¶ 103. In November 2014, at the height of that relationship, HSBC-HK's exposure to the group was approximately $200,000,000. However, by year end, as a result of HSBC-HK's demands, the Debtors repaid $102,177,000 of that indebtedness. *See id.* As of December 2014, the principal amount of HSBC-HK's exposure to the Debtors totaled approximately $96 million. That was based solely on HSBC-HK's participation with the Club Lender Parties and China CITIC Bank (the Club Lender Parties, HSBC-HK and China CITIC Bank are collectively referred to herein as the "Club Lenders") in a $650 million unsecured credit facility agreement dated March 20, 2014 (the "Club Facility"). *See* Trustee Decision at 9.

The Peruvian OpCos are part of a group of companies (the "CF Group") that includes thirteen of the seventeen Debtors (the "CF Group Debtors"). *See* Org. Chart (First Day Decl., Ex. A). The CF Group operates as a separate business within the Pacific Andes Group (the "Peruvian Business") and the Peruvian OpCos constitute the CF Group's most valuable assets. *See* Trustee Decision at 8. Those entities specialize in the sourcing, harvesting, processing, and delivery of fish products to consumers worldwide. *See id.* CFGI and Copeinca operate the CF

Group's anchovy fishing business and together control a significant percentage of the anchovy fishing quotas fixed by the Peruvian government. *See id.* The Club Lenders extended the Club Facility to help finance a corporate restructuring of the Peruvian Business, including the satisfaction of debt incurred in connection with the acquisition of that business. *See id.* at 9-10. Debtor China Fisheries International Limited ("CFIL") and two of the Peruvian OpCos, CFGI and Copeinca (collectively, the "Club Borrowers"), are the borrowers under the Club Facility. Debtor China Fishery Group Limited ("CFGL") and the Club Borrowers are guarantors under the Club Facility. In addition, Debtor N.S. Hong Investments (BVI) Limited ("N.S. Hong") has executed a separate guaranty relating to the Club Facility and Debtor Smart Group Limited (Cayman) ("Smart Group") is an obligor under the Club Facility. CFG Peru is not a borrower, guarantor or obligor under the Club Facility. *See* Trustee's Omnibus Reply in Further Support of Motion Authorizing Issuance of Subpoenas to HSBC-HK Directing Production of Documents and Examination of Witnesses [ECF No. 375] ("Reply") ¶ 13.

Within a month of closing the Club Facility, the Pacific Andes Group began to experience financial problems largely resulting from the downturn in the Peruvian Business occasioned by subpar anchovy fishing seasons in 2014 and 2015, and the associated loss of revenue from the CF Group. *See* Trustee Decision at 14. Over the next several months, the Club Lenders agreed to eight separate extension and waiver agreements with respect to the Club Facility. *See id.* at 14-18. Shortly after the expiration of the eighth waiver agreement, HSBC-HK broke ranks with the other Club Lenders and on November 25 and 27, 2015, respectively, it commenced winding-up proceedings against CFIL and CFGL in Hong Kong and the Cayman Islands. *See id.* at 19. At the outset of those proceedings, HSBC-HK obtained the *ex parte* appointment of joint provisional liquidators for each debtor (the "Hong Kong JPLs" and

"Cayman JPLs," respectively). *See id.* In January 2016, CFIL and CFGL, with the support of

the Club Lender Parties, successfully moved the Hong Kong court for an order dismissing the

appointment of the Hong Kong JPLs (the "Hong Kong JPL Decision"). *See id.* at 22. In the

wake of that development, HSBC-HK advised CFIL and CFGL that it intended to appeal that

ruling and to proceed with the winding-up petitions in both Hong Kong and the Cayman Islands.

*See id.* To resolve the dispute among the parties, on January 20, 2016, HSBC-HK, CFGL and

CFIL executed a Deed of Undertaking pursuant to which CFGL and CFIL agreed, among other

things, to sell the Peruvian OpCos and related assets by July 15, 2016, repay the Club Facility in

full, and appoint a Chief Restructuring Officer ("CRO") to oversee the sale process. *See id.* at

22-23. In return, HSBC-HK agreed not to appeal the Hong Kong JPL Decision, and to withdraw

the Hong Kong and Cayman Islands winding-up petitions, subject to its right to apply to the

Cayman Court for the immediate appointment of the JPLs if the Debtors breached the Deed of

Undertaking. CFIL and CFGL agreed that in the face of such a breach, it would consent to the

reappointment of the Cayman JPLs. *See id.* at 23-24. The Debtors appointed a CRO but did not

sell the Peruvian OpCos. Instead, on June 30, 2016, the Debtors filed their chapter 11 cases

herein. In addition, on or about the Petition Date, creditors in Peru commenced involuntary

insolvency proceedings against each of the Peruvian OpCos. *See id* at 30. On the Petition Date,

the Peruvian OpCos filed petitions under chapter 15 of the Bankruptcy Code for recognition of

the Peruvian insolvency proceedings. *See* Chapter 15 Petition for each of CFGI, Copeinca and

SFR [ECF No. 1 (in Case Nos. 16-11891, 16-11892, and 16-11894, respectively)].

　　　The Trustee has been actively involved in these cases. Promptly after his appointment,

he engaged in negotiations with creditors and regulators in Peru that culminated in the

withdrawal of the involuntary proceedings against the Peruvian OpCos and, thereafter, the

dismissal of their chapter 15 petitions.[7] Moreover, he has conducted a comprehensive review of

the Peruvian Business and is formulating a strategy for monetizing CFG Peru's interest in the

business. *See* Status Report Of The Chapter 11 Trustee [ECF No. 481] at 20, 58-59. He has also

taken steps to preserve CFG Peru's claims in these cases. CFGI issued $300 million 9.75%

senior notes due 2019 (the "Senior Notes"). Each of the CF Group Debtors, including CFG

Peru, CFIL, CFGL, N.S. Hong and Smart Group, has guaranteed the Senior Notes. *See* Trustee

Decision at 12; *see also* Reply at 4. Thus, each holds contingent claims against the others based

upon their alleged right of contribution, indemnification and reimbursement from the others. In

furtherance of his statutory duties, in January 2017, the Trustee caused CFG Peru to file proofs

of claim against CFIL, CFGL, Smart Group and N.S. Hong, on account of each such entity's

potential liability as a guarantor or co-obligor of the Senior Notes.[8]

HSBC-HK has had some involvement in these chapter 11 cases. On or about January 31,

2017, it filed a Notice of Appearance in the jointly administered cases. *See* ECF No. 332.

Moreover, in addition to objecting to the Motion, it objected to the Trustee's motion to retain

special litigation counsel. The Court overruled that objection and granted that motion.[9] Finally,

on or about January 12 and 13, 2017, after the Trustee filed the Motion, HSBC-HK filed proofs

---

[7]    *See* Consent Order dated 12/27/2016 Withdrawing Chapter 15 Petitions for Recognition for each of CFGI,
Copeinca and SFR [ECF Nos. 28 (Case No. 16-11891), 11 (Case No. 16-11892), and 11 (Case No. 16-11894),
respectively].

[8]    *See* Claim No. 35-1 (CFG Peru against CFGL); Claim No. 21-1 (CFG Peru against Smart Group); Claim No.
40-1 (CFG Peru against CFIL); and Claim No. 24-1 (CFG Peru against N.S. Hong).

[9]    *See* Application of Chapter 11 Trustee for an Order Pursuant to 11 U.S.C. §§ 327(a), 328(a) and 330,
Authorizing Retention of Quinn Emanuel Urquhart & Sullivan, LLP as Special Litigation Counsel [ECF No. 303];
Limited Objection of HSBC-HK, to Application of Chapter 11 Trustee for Order, Pursuant to 11 U.S.C. §§ 327(a),
328(a) and 330, Authorizing Retention of Quinn Emanuel Urquhart & Sullivan, LLP as Special Litigation Counsel
[ECF No. 333] ("HSBC-HK's Objection to Quinn Emanuel Retention"); Order Granting Application Of Chapter 11
Trustee For Order Pursuant To §§ 327(a), 328(a), And 330, Authorizing Retention Of Quinn Emanuel Urquhart &
Sullivan, LLP As Special Litigation Counsel [ECF No. 388].

of claim against CFIL, CFGL, and Smart Group, each in the approximate sum of $104,000,000, on account of principal, interest and other charges allegedly due and owing to it under the Club Facility and related agreements.  HSBC-HK also filed claims against N.S. Hong in the sum of $14,198,119.85, on account of a Deed of Guarantee dated June 5, 2014.[10]

In support of his Motion, the Trustee contends that "over the last two years, HSBC-HK has spearheaded an aggressive campaign to obtain repayment of its loans . . . even at the risk of disrupting the operations of the CF Group and to the possible detriment of CFG Peru and its other creditors and stakeholders."  Motion ¶ 2.  He complains that in addition to demanding and receiving repayment of approximately $102 million of its loans in December 2014, applying *ex parte* for the appointment of the JPLs in Hong Kong and the Cayman Islands, and foisting the Deed of Undertaking on the Debtors, HSBC-HK may have interfered with the operation of the Peruvian Business by communicating directly with the CF Group's suppliers, customers, working capital providers, and employees.  *See id.*  He also says that HSBC-HK, for its own benefit, attempted to acquire the claims of certain creditors of CFGI and Copeinca in order to interfere with the insolvency proceedings then pending against them in Peru.  *See id.*

In substance, the Trustee contends that this is a textbook case for granting Rule 2004 discovery.  He explains that to date, his understanding of HSBC-HK's actions in regard to the Debtors and the Peruvian OpCos has been based solely on publicly available information.  He maintains that if he is permitted to take Rule 2004 discovery of HSBC-HK, he will be able to gain a thorough understanding of HSBC-HK's conduct, including the extent, if any, to which HSBC-HK interfered with the CF Group's relationships with its lenders, suppliers, and trade

---

[10]    *See* Claim Nos. 98-1, 105-1 (HSBC-HK against CFGL); Claim Nos. 76-1, 77-1 (HSBC-HK against Smart Group); Claim No. 95-1 (HSBC-HK against CFIL); Claim Nos. 62-1 and 86-1 (HSBC-HK against N.S. Hong) (collectively, the "HSBC-HK Proofs of Claim").

counterparties, constrained the CF Group's liquidity, and negatively impacted the CF Group's ability to resume normal operations. *See id.* ¶ 3. He contends that the results of his investigation could (i) support defenses to the claims filed by HSBC-HK in these cases, *e.g.*, avoidable transfers, equitable subordination under section 510(c) of the Bankruptcy Code, or other theories of lender liability, and potentially other affirmative estate claims; and (ii) identify potential claims and causes of action the estate may have against other parties. *See id.* He states that he initially intends to focus his discovery on pursuing documents, communications, and testimony relating to the following topics:

- the relationship between the CF Group and HSBC-HK, including loans extended and repaid since 2014, the Club Facility, the facts and circumstances surrounding the negotiation, advancement, and repayment of any loans and waivers or releases granted in connection with them, and the injunctive relief obtained by Peruvian counsel for CFGI and Copeinca against HSBC-HK dated September 27, 2016;

- applications filed in Hong Kong and the Cayman Islands seeking the Hong Kong and Cayman JPLs, respectively, including information known to HSBC-HK at the time and documents and communications between HSBC-HK (and its professionals) and the JPLs (and their professionals);

- interactions between (a) HSBC-HK (and its professionals) and/or the JPLs (and their professionals), on the one hand, and (b) the CF Group's investors, creditors, lenders, customers, suppliers, trade counterparties, and/or employees as well as actual or potential bidders for the CF Group's assets, on the other hand;

- HSBC-HK's actual or attempted acquisition of claims held by creditors of the CF Group;

- the wrongdoing or inappropriate conduct of the CF Group or its officers, employees, affiliates, or shareholders that has been alleged by HSBC-HK and the JPLs; and HSBC-HK's and the JPLs' understanding of any such conduct that has been asserted by others;

- the Deeds Of Undertaking; and

- any efforts by HSBC-HK to dispose of its claims against the CF Group in an effort to "cleanse" itself of its potential exposure to the estate, including for equitable subordination.

*Id.* ¶ 4.  The Trustee did not annex copies of proposed document requests or subpoenas to the

Motion.

## Discussion

Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest the court

may order the examination of any entity."  Fed. R. Bankr. P. 2004(a).  The purpose of Rule 2004

is to permit a broad investigation into the affairs of the debtor, and to "assist a party in interest in

determining the nature and extent of the bankruptcy estate, revealing assets, examining

transactions and assessing whether wrongdoing has occurred."  *In re Recoton, Corp*., 307 B.R.

751, 755 (Bankr. S.D.N.Y. 2004) (citation omitted).  Accordingly, a Rule 2004 examination can

include both document production and depositions, and extends to "the acts, conduct, or property

or to the liabilities and financial condition of the debtor, or to any matter which may affect the

administration of the debtor's estate . . . ."  Fed. R. Bankr. P. 2004(b), 2004(c).  In this way,

"Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and

has fewer procedural safeguards. It can be legitimately compared to a fishing expedition."  *In re*

*Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).  *See also In re*

*Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (noting that Rule 2004 examination "has

been likened to a quick 'fishing expedition' into general matters and issues regarding the

administration of the bankruptcy case.") (citation omitted).

As a court-appointed fiduciary in CFG Peru's case, the Trustee is a party-in-interest with

standing to conduct Rule 2004 discovery in that case.  *See In re MF Global, Inc.*, No. 11-02790,

2013 WL 74580 at *1 (Bankr. S.D.N.Y. Jan. 8, 2013) (noting that parties-in-interest under Rule

2004 include a "trustee").  *See also In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002)

(authorizing joint liquidators that commenced ancillary proceeding to pursue Rule 2004

discovery against Bermudian debtor's auditors).  He also has standing to seek Rule 2004 discovery in the chapter 11 cases of CFIL, CFGL, Smart Group and N.S. Hong, because CFG Peru is a creditor of each of those Debtors and the Trustee filed the CFG Proofs of Claim against them.  *See In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (noting that a Rule 2004 examination "may be conducted by any party in interest, including a creditor.") (internal quotation marks and citation omitted); *In re Drexel Burnham Lambert Grp., Inc.,* 123 B.R. at 712 (finding that FDIC and RTC, as creditor of debtors, had standing to participate in Rule 2004 examination of debtors).

"Rule 2004 provides that the Court 'may' order disclosure thereunder, giving the Court significant discretion."  *See In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001).  It is settled that in exercising that discretion, the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production."  *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. at 712.  *See also In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("[T]he scope of [a Rule 2004] examination is not limitless; the examination [of the debtor] should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor.").  Courts deny requests for leave to conduct Rule 2004 examinations when the movant seeks discovery into matters that are not relevant to its basic inquiry or if the movant seeks the examination "for purposes of abuse or harassment."  *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984).

As a preliminary matter, HSBC-HK denies that it is subject to the jurisdiction of this Court and, as such, asserts that it cannot be compelled to respond to a Rule 2004 subpoena, let

alone a judgment entered against it in any litigation brought against it by the Trustee.  *See*
Objection ¶ 41.  It is well settled that "[a] federal court's jurisdiction is not determined by its
power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction."  *Marc
Rich & Co., A.G. v. United States*, 707 F.2d 663, 669 (2d Cir. 1983) (citation omitted).  Absent
consent, a foreign defendant will be subject to the jurisdiction of a U.S. court only if the court
has either general or specific jurisdiction over the defendant.  *See J. McIntyre Mach., Ltd. v.
Nicasto*, 564 U.S. 873, 880-81 (2011).  *See also Waldman v. Palestine Liberation Org.*, 835 F.3d
317, 331 (2d Cir. 2016).

       The Trustee bears the burden of pleading and proving that this Court has jurisdiction over
HSBC-HK.  *See Sunward Elecs. Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff
must establish the court's jurisdiction with respect to *each* claim asserted.") (citation omitted).
*See also Picard v. Estate (Succession) of Igoin (In re Bernard Madoff Inv. Sec. LLC)*, 525 B.R.
871, 882 (Bankr. S.D.N.Y. 2015) ("On a motion to dismiss for lack of personal jurisdiction
pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden
of showing that the court has jurisdiction over the defendant.") (citation omitted).  The Trustee
maintains that he has met that burden, because by filing the HSBC Proofs of Claim in the CFIL,
CFGL, Smart Group and N.S. Hong cases, HSBC-HK has consented to the Court's exercise of
personal jurisdiction over it in those cases.  *See* Reply ¶ 43.  HSBC-HK denies that is so, and
points out that each of the HSBC-HK Proofs of Claim explicitly disclaims consent to this Court's
jurisdiction by the following language:

       This Proof of Claim is filed to protect the Claimant from forfeiture of the Claim.
       **The filing of this Proof of Claim is not**: (a) a waiver or release of the Claimant's
       rights against any person, entity or property; (b) **a consent by the Claimant to
       the jurisdiction of the Bankruptcy Court with respect to the subject matter of
       the Claim or any objection or other proceeding commenced in this case
       against or otherwise involving the Claimant;** (c) a waiver of the right to move

to withdraw the reference or otherwise to challenge the jurisdiction of this
reference or otherwise challenge the jurisdiction of the Bankruptcy Court; (d) an
election of remedy; (e) a waiver of any rights or claims the Claimant has against
the Debtor or any person or entity with respect to any pending or future litigation
or to any matters related to such litigation; or (f) a waiver of past, present or
future defaults or events of default.

*See, e.g.*, Proof of Claim 98-1 (emphasis added).[11]  *See also* Objection ¶ 36.

However, that waiver language notwithstanding,[12] it is well settled that "the filing of a

proof of claim waives an individual's due process right to insist on minimum contacts within the

forum state before being subject to the court's jurisdiction." *Arecibo Cmty. Health Care, Inc. v.*

*Puerto Rico*, 270 F.3d 17, 26 (1st Cir. 2001).  That is because "by filing a claim against a

bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,'

thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp,*

498 U.S. 42, 44 (1990) (per curiam) (citing *Granfinanciera v. Nordberg*, 492 U.S. 33, 58-59 &

n.14 (1989)).  *See also In re Hooker Inv., Inc.*, 937 F.2d 833, 838 (2d Cir. 1991) (noting the

claims allowance process "is integral to the restructuring of the debtor-creditor relationship

through the bankruptcy court's equity jurisdiction, which the creditor has invoked by filing the

claim."); *Buena Vista TV v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307

B.R. 404, 418 (Bankr. S.D.N.Y. 2004) (finding that "[a]s the Supreme Court's decisions . . .

---

[11]    Other HSBC-HK filed documents contain similar language disclaiming any waivers as to jurisdiction and
reserving all rights, including defenses as to jurisdiction.  *See, e.g.*, Notice of Appearance and Request for Service of
Papers [ECF No. 332] at 2-3; Objection ¶ 5, n.5; HSBC-HK's Objection to Quinn Emanuel Retention ¶ 4, n.5.

[12]    That reservation of rights does not insulate HSBC-HK from this Court's jurisdiction.  *See Buena Vista TV v.*
*Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 404, 412 & n.7 (Bankr. S.D.N.Y. 2004)
(noting that "[i]t may be, as stated in [the reservation of rights] paragraph, that the Copyright Owners did not
'intend,' by filing the Proof of Claim, to consent to the jurisdiction of the Bankruptcy Code or to waive the right to a
jury trial, but under the holdings of many courts, including the United States Supreme Court, that was the effect.").
In this regard, HSBC-HK's reliance on *Picard v. Estate (Succession) of Igoin (In re Bernard L. Madoff Inv. Sec.*
*LLC)*, 525 B.R. 871 (Bankr. S.D.N.Y. 2015), is misplaced.  *See* Objection ¶ 36.  In that case, the creditor did not
purport to limit its consent to the court's jurisdiction in a claim filed in the SIPC case.  Rather, the parties to an
adversary proceeding in the SIPC case stipulated that the creditor/defendant reserved its right to argue that the
bankruptcy court lacked *in personam* jurisdiction.

14

particularly *Langenkamp*—make clear, when the Copyright Owners filed proofs of claim in the bankruptcy court, they submitted to the equitable jurisdiction of this Court . . . ."). Indeed, some courts liken the filing of a proof of claim to the filing of a complaint against a debtor. *See, e.g.*, *In re Stokes*, 320 B.R. 821, 825 (Bankr. D. Md. 2004) (noting that in filing a proof of claim, the IRS submitted to the personal jurisdiction of the District Court since the proof of claim "is analogous to a complaint filed in the District Court."); *Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 330 (Bankr. E.D.N.Y. 2002) ("[A] proof of claim filed by a creditor is conceptually analogous to a civil complaint, an objection to the claim is akin to an answer or defense and an adversary proceeding initiated against the creditor that filed the proof of clam is like a counterclaim.").

Still, HSBC-HK argues that in filing the HSBC-HK Proofs of Claim, it did not consent to this Court's jurisdiction because once these chapter 11 cases were permitted to proceed and this Court entered a bar date order in the cases, the submission of those claims was effectively involuntary. Objection ¶ 39. Relying principally on *Stern v. Marshall*, 564 U.S. 462 (2011), it maintains that since it was forced to choose between either foregoing repayment of money owed to it by the Debtors for which it is a creditor, or potentially subjecting itself to claims against it in a forum with which it has no contacts and in which it engaged in no relevant conduct, it cannot be found to have voluntarily subjected itself to the jurisdiction of this Court. *Id.* However, *Stern* is inapposite since it does not speak to the court's jurisdiction. In *Stern*, the Supreme Court held that in certain core proceedings under 28 U.S.C. § 157(b), a bankruptcy court lacks authority under Article III of the Constitution to enter final order and judgments. 564 U.S. at 487. The case law is clear that *Stern* does not alter the jurisdictional ramifications of filing a claim. *See, e.g.*, *In re Extended Stay*, 466 B.R. 188, 202 & n.73 (S.D.N.Y. 2011) (denying motion to

withdraw reference; noting, among other things, that "[m]any of these claims are asserted against creditors who filed proofs of claim in the Debtors' bankruptcy …. [*Stern*] categorizes itself as a 'narrow' decision[.]"); *In re Ambac Fin. Group, Inc.,* 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011) (finding bankruptcy court had authority to approve compromise of estate claims and rejecting argument that *Stern* required bankruptcy court to abstain). *See also In re Potter*, No. 7–05–1407, 2013 WL 2897036, at *1 (Bankr. D.N.M. June 12, 2013) (finding court had personal jurisdiction over party that filed proof of claim and noting *Stern* "does not question a bankruptcy court's authority to resolve issues raised in the claims allowance process that may be based upon state law claims.").

The Court finds that in filing the HSBC-HK Proofs of Claim against CFIL, CFGL, Smart Group and N.S. Hong, HSBC-HK has submitted itself to the jurisdiction of this Court in those cases and in doing so, vested the Court with the "full power to inquire into the validity of any alleged debt or obligation upon which a demand or a claim against the estate is based." *Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.)*, 302 B.R. 792, 803 (Bankr. S.D.N.Y. 2003) (quoting *Katchen v. Landy*, 382 U.S. 323, 329 (1966)). *See also Buena Vista TV v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 404, 419-20 (Bankr. S.D.N.Y. 2004) ("The Copyright Owners did not seriously argue, as they could not, that the submission to bankruptcy court jurisdiction that results from the filing of a proof of claim is limited to the adjudication of the claims itself. *Katchen, Langenkamp* and their progeny uphold the imposition of bankruptcy [court] jurisdiction even when the estate 'goes on offense,' as plaintiff, following the filing of a proof of claim, and consistently speak of submission to the jurisdiction of the bankruptcy court, or its equitable jurisdiction, to determine claims against [the] estate, as a consequence of the filing of a proof of claim."); *Schwinn Plan Comm. v. TI*

*Reynolds 531 Ltd. (In re Schwinn Bicycle Co.)*, 182 B.R. 526, 531 (Bankr. N.D. Ill. 1995) ("Once Reynolds entered the jurisdiction of this Court for purposes of bringing its proof of claim, it also entered this Court's realm of authority to resolve any claims necessary to determine the extent of allowance of its secured claim."). That is broad enough to include the Rule 2004 discovery at issue herein.

The issue of *in personam* jurisdiction aside, HSBC-HK maintains that, as a "threshold matter," the Trustee should be denied discovery since HSBC-HK has no relationship, contractual or otherwise, with CFG Peru, that it is not, and never has been, a creditor of CFG Peru, and that it did not file a claim against CFG Peru. *See* Objection ¶ 45. The Court finds no merit to that contention. Although the Trustee was appointed only in CFG Peru's chapter 11 case, he filed the Motion in the jointly-administered cases, including those of CFIL, CFGL, Smart Group and N.S. Hong, and can investigate the claims of competing creditors, like HSBC-HK, in those cases. *See In re Valley Forge Plaza Assocs*., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (stating that Rule 2004 allows "trustee, or others interested in accomplishing the same ends, to discover and investigate . . . . [the rule is] creditor and trustee oriented.") (internal citations and quotation marks omitted); *In re Fearn*, 96 B.R. 135, 137-39 (Bankr. S.D. Ohio 1989) ("[A]n inquiry pursuant to Rule 2004 may cut a broad swath through the debtor's affairs, those associated with him, *and those who might have had business dealings with him*" and noting that Rule 2004 investigations also "may properly extend to creditors") (internal quotation marks and citations omitted). Moreover, and in any event, the scope of Rule 2004 extends beyond the creditors of a debtor. Indeed, "[b]ecause the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y.

1993), *aff'd* 17 F.3d 600 (2d Cir. 1994).  As explained below, HSBC-HK fits that bill with respect to CFG Peru.

Further, HSBC-HK argues that the Court should deny the Motion because the Trustee's pursuit of Rule 2004 discovery at this time is at odds with the Court's mandate that he focus his efforts on maximizing the value of the Peruvian Business for the benefit of all creditors.  *See* Objection ¶¶ 44, 48.  It also argues that, in any event, the requested discovery is premature since if the Trustee is successful in maximizing the value of the Debtors' interests in the Peruvian OpCos, he may realize enough value to satisfy estate creditors in full and need not pursue litigation against HSBC-HK or any other party.  *Id.*  To be sure, part of the Court's rationale in appointing the Trustee for CFG Peru was that he would be "in the best position to evaluate the optimal way to maximize the value of the Peruvian Business and to determine how to realize that value for the benefit of the Debtors' estates and creditors."  Trustee Decision at 47-48.  The Trustee has fully embraced that challenge and is actively pursuing that goal.  In seeking the discovery, the Trustee is acting in furtherance of his obligation to investigate CFG Peru's assets and financial condition.  *See* 11 U.S.C. § 1106(a)(3).  In appointing the Trustee the Court did not in any way limit the Trustee's exercise of his statutory duties.  Moreover, there is nothing inconsistent with the Trustee's request to conduct Rule 2004 discovery and this Court's mandate that he maximize the value of the Peruvian Business since the value of claims asserted against the Peruvian OpCos may impact the Trustee's assessment of how best to realize that goal.  Nor is there good reason to stay discovery until after the Trustee has resolved the many issues related to the operations of the Peruvian Business and how to best maximize the value of that business for the benefit of CFG Peru's estate and its creditors.

Next, HSBC-HK contends that the Trustee has failed to establish "good cause" for conducting Rule 2004 discovery, since the sole basis for seeking that discovery is to uncover grounds for challenging HSBC-HK's claims against the Peruvian OpCos, and this Court lacks jurisdiction to adjudicate any actions involving those entities. *See* Objection ¶ 46. It notes that while two of the Peruvian OpCos are obligors under the Club Facility, neither is a Debtor herein (or in bankruptcy proceedings currently pending in the United States or elsewhere). Thus, HSBC-HK asserts that the Court is powerless to adjudicate the validity of claims asserted against the Peruvian OpCos. *See id.* That may be so, but it is not a bar to the discovery the Trustee is seeking. As the 100% direct and indirect owner of the Peruvian OpCos, CFG Peru plainly has a significant interest in determining the value of the claims asserted against those entities since that clearly will impact the value of CFG Peru's interest in the Peruvian OpCos. Although the Court cannot exert direct control over the Peruvian OpCos, it has jurisdiction to adjudicate any challenge by CFIL, CFGL, Smart Group and N.S. Hong, as borrower, guarantor, and/or obligor under the Club Facility, to the enforcement of that indebtedness. As a creditor of those entities, CFG Peru is a party in interest that could be heard in those cases in connection with any challenge to the validity of or defenses to, the Club Facility. *See* 11 U.S.C. § 502(a). The information that the Trustee is seeking is relevant to such a determination and, as such, the Trustee has established cause for conducting Rule 2004 discovery.

HSBC-HK also asserts that it should not be subjected to Rule 2004 discovery because the conduct that the Trustee seeks leave to investigate amounts to lawful activity by HSBC-HK in courts outside the United States that cannot serve as a basis for affirmative relief against it in this Court. *See* Objection ¶ 57. HSBC-HK contends that because the matters that the Trustee seeks to investigate are "inextricably tied to conduct and events that occurred in foreign jurisdictions

and involved foreign parties and assets, there is considerable doubt as to whether any suits

arising from the Trustee's investigation could be heard by a U.S. court." *Id.* ¶ 50.  *See also id.* ¶

6 (asserting that "even a cursory examination of the record reveals that HSBC-HK's actions took

place under the supervision of foreign courts and/or administrative bodies . . . .").[13]  It asserts

that the legal obstacles to actions that the Trustee may pursue include: (i) application of the

principles of international comity and *forum non conveniens* (*id.* ¶¶ 53-56); (ii) protections that

attach to HSBC-HK's lawful petitioning activities outside the United States (*id.* ¶¶ 57-59); and

(iii) the limitations on the territorial reach of the Bankruptcy Code's avoidance powers.  *Id.* ¶¶

60-64.  HSBC-HK maintains that a Rule 2004 examination of it would serve no purpose if the

Trustee is ultimately unable to sustain litigation against it in this Court for those or other reasons.

*Id.* ¶ 52.  Thus, it argues that the Court should evaluate the merits of those defenses in

determining whether to authorize the Rule 2004 examination.

However, in assessing the merits of the Motion, the Court need not consider the defenses

to claims that the Trustee may assert against HSBC-HK using the fruits of the discovery unless it

would be "a foregone conclusion that the [T]rustee will be precluded from enforcing its remedies

against [HSBC-HK]."  *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 515 (Bankr. E.D.N.Y. 1991)

(rejecting argument that 2004 examination request should be denied because trustee would not

be able to avoid transfer).  HSBC-HK has made no such showing.  Application of the principles

of comity and *forum non conveniens* is discretionary with the Court and will turn on the

---

[13]    HSBC-HK contends that although the Trustee is a creature of the Bankruptcy Code, it is likely that the laws of
foreign jurisdictions, rather than U.S. law, will be central to any dispute between it and the Trustee.  *See* Objection ¶
54.  That is because CFG Peru is incorporated in Singapore and has its principal place of business in Peru, and
HSBC-HK is a Hong Kong-based bank whose principal relationship with the Debtors and certain of the Peruvian
OpCos is through the Club Facility, which is governed by English law documents.  As such, HSBC-HK maintains
that it is "unlikely, if not impossible, that the subject matter of the 2004 Motion could give rise to a claim by the
Trustee that involves prevalent U.S. interests, let alone primacy of U.S. law."  *Id.*  However, while the resolution of
those issues may be left for another day, the issues have no bearing on the merits of the Motion.

particular facts and circumstances of the matters, if any, put before the Court by the Trustee.[14]

To that end, the Court is well aware of the importance that the Second Circuit attaches to judicial

deference to foreign bankruptcy proceedings.[15]  Nonetheless, there is simply no basis for

applying those principles to deny the Trustee's request to obtain Rule 2004 discovery from

HSBC-HK.

Next, HSBC-HK is correct that the Trustee is seeking discovery with respect to HSBC-

HK's activities in Peru, Hong Kong and the Cayman Islands.  *See* Opposition ¶ 58.  But even

---

[14]    Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S. Ct. 139, 40 L. Ed. 95 (1895).  Although the Second Circuit "has frequently underscored the importance of judicial deference to foreign bankruptcy proceedings [,]" *In re Compania de Alimentos Fargo, S.A.,* 376 B.R. 427, 434 (Bankr. S.D.N.Y. 2007), it is well settled that the decision to grant comity to a foreign proceeding is a matter within the trial court's discretion.  *See JP Morgan Chase Bank v. Altos Hornos de Mexico S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) (noting that the doctrine of comity "is not an imperative obligation of courts but rather is a discretionary rule of practice, convenience and expediency.") (internal quotation marks omitted).  *See also Samportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (2d Cir. 1971) ("Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation."); *Allstate Life Ins. Co. v. Linter Grp. Ltd.,* 994 F.2d 996, 999 (2d Cir. 1993) (noting that an appellate court reviews a trial court's decision to grant or withhold comity under an abuse of discretion standard, and stating that "since comity is an affirmative defense, the [moving party] carrie[s] the burden of proving that comity [is] appropriate.").

    Application of the doctrine of *forum non conveniens* is likewise within the discretion of the trial court.  Under that doctrine, a trial court can decline to exercise jurisdiction over a matter "whenever it appears that such [a] case may be more appropriately tried in another forum, either for the convenience of the parties or to serve the ends of justice." *Pollux Hold Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 67 (2d Cir. 2003).  "The *forum non conveniens* determination is committed to the sound discretion of the trial court.  It may be reversed only when there has been a clear abuse of discretion[.]" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).  *See also Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (noting that the decision to dismiss a case on *forum non conveniens* grounds "lies wholly within the broad discretion of the district court and may be overturned only when we believe that discretion has been *clearly abused*." (quoting *Scottish Air. Int'l Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996)).  When ruling on a motion to dismiss for *forum non conveniens*, the trial court can consider and credit any evidence in the record.  *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 149 (2d Cir. 1980) (en banc).

[15]    *See, e.g.*, *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) (stating that the Court has "repeatedly noted the importance of extending comity to foreign bankruptcy proceedings."); *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding . . . . In such cases, deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and (consistent with the principles of Lord Mansfield's holding) do not contravene the laws or public policy of the United States."); *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) ("American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities.").

assuming, *arguendo,* that the activities were lawful—as HSBC-HK contends—it does not follow that the Trustee should be barred from obtaining that discovery. The Trustee's examination may lead to a determination that no claims exist as to HSBC-HK. It could also reveal claims against third parties. There are good reasons permitting the Trustee to conduct Rule 2004 discovery. The Court disagrees with HSBC-HK that the conduct of such discovery is inconsistent with principles of international comity. Finally, there is no *per se* bar to the Trustee's pursuit of avoidance actions against HSBC-HK under the Bankruptcy Code.[16] As such, there are no grounds for denying the Trustee discovery on those matters.

Lastly, HSBC-HK contends that the Motion must be denied because the discovery "topics" listed in the Motion that the Trustee intends to focus on are objectionable because: (1) they are vague and/or overbroad; (2) they seek information from HSBC-HK that could and should be more easily obtained directly from the Debtors; (3) they seek information that is in the possession of other parties, including parties such as the JPLs for whom HSBC-HK does not act or speak; (4) they seek information that is likely to be privileged or subject to restrictions on disclosure from the laws of other jurisdictions; (5) the Trustee has not demonstrated the necessity of any of the information he requests; (6) the costs of compliance would far outweigh the benefit to the Trustee's mandate; and (7) certain topics have no conceivable relevance whatsoever to these proceedings. *Id.* ¶ 67.

---

[16]    To be sure, if the Trustee brings avoidance actions against HSBC-HK in this Court, there are significant questions whether U.S. law will apply. *See In re Ampal-American Israel Corp.*, No. 12-13689, 2017 WL 75750, at *8 (Bankr. S.D.N.Y. Jan. 9, 2017) (Bernstein, J.) ("[T]he avoidance provisions of the Bankruptcy Code, in this case 11 U.S.C. § 547(b), do not apply extraterritorially."); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 231 (S.D.N.Y. 2014) (Rakoff, J.) ("[T]he presumption against extraterritorial application of federal statutes has not been rebutted here; the Trustee therefore may not use section 550(a) to pursue recovery of purely foreign subsequent transfers."). *But see, e.g.*, *Weisfelner v. Blavatnik (In re Lyondell Chemical Co.)*, 543 B.R. 127, 148-49 (Bankr. S.D.N.Y. 2016) (Gerber, J.) (finding that section 548 of the Bankruptcy Code applies to extraterritorial transfers). Still, that does not bar the discovery that the Trustee is seeking.

The Court disagrees.  The topics listed in the Motion are neither vague nor overbroad and while some of the information that the Trustee is seeking may be obtained directly from the Debtors, that does not bar the discovery request.  The Court expects that as the Trustee moves forward with his Rule 2004 discovery, and as applicable, he will first seek to obtain information from the Debtors.  Moreover, as set forth above, the Trustee has demonstrated that the information he is seeking is relevant to these proceedings and that he requires the information in order to fulfill his statutory duties herein.  The Court is not persuaded that the costs of compliance outstrip the benefits to the Trustee's mandate.

## Conclusion

Based on the foregoing, the Objection is OVERRULED.  The Trustee is authorized to conduct Rule 2004 discovery of HSBC-HK with respect to the matters set forth in the Motion, but subject to the Trustee's compliance with, without limitation, all applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Federal Rules of Civil Procedure.

IT IS SO ORDERED.


Dated: New York, New York
       July 19, 2017

                                                    /s/ James L. Garrity, Jr.
                                                HON. JAMES L. GARRITY, JR.
                                                U.S. BANKRUPTCY JUDGE