**Hearing Date: August 16, 2017 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: August 9, 2017 at 4:00 p.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
Lisa Laukitis
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

Elizabeth M. Downing (admitted *pro hac vice*)
500 Boylston Street
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Fax: (617) 573-4870

*Counsel for William A. Brandt, Jr., Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| Debtor. | : | |
| | : | **(Jointly Administered)** |

---

[1]    The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

**NOTICE OF MOTION FOR AN ORDER (I) APPROVING BIDDING PROCEDURES,
(II) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that William A. Brandt, Jr., not individually but solely in his capacity as chapter 11 trustee (the "Trustee" or the "Chapter 11 Trustee") of CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore" or the "Debtor") in the above-captioned chapter 11 cases, by his attorneys, Skadden, Arps, Slate, Meagher & Flom LLP, hereby files the *Motion for an Order (I) Approving Bidding Procedures, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before the Honorable James L. Garrity, United States Bankruptcy Judge for the Southern District of New York, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 601, New York, New York 10004 (the "Bankruptcy Court"), on **August 16, 2017 at 11:00 a.m. (prevailing Eastern Time)** (the "Hearing"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion and the relief requested therein, if any, must be made in writing and (a) filed with the Bankruptcy Court no later than **4:00 p.m. (prevailing Eastern Time) on August 9, 2017** (the "Objection Deadline") and (b) served to as to be actually received by the following parties by the Objection Deadline:

(i)      counsel for William A. Brandt, Jr., the Chapter 11 Trustee for the bankruptcy estate of CFG Peru Investments Pte. Ltd., Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Attn: Lisa Laukitis (lisa.laukitis@skadden.com), and Skadden, Arps, Slate, Meagher & Flom LLP, 500 Boylston Street, Boston, Massachusetts 02116, Attn: Elizabeth Downing (elizabeth.downing@skadden.com);

2

(ii)    counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matthew S. Barr, Esq. (matt.barr@weil.com), Marcia Goldstein, Esq. (marcia.goldstein@weil.com), and Gabriel A. Morgan, Esq. (gabriel.morgan@weil.com);

(iii)    the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Susan Golden (susan.golden@usdoj.gov); and

(iv)    the Chapter 11 Trustee, 110 East 42nd Street, Suite 1818, New York, New York 10017, Attn: William A. Brandt, Jr. (bbrandt@dsi.biz).

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the Motion, with proof of service, is filed with the Bankruptcy Court and a courtesy copy delivered to the Honorable James L. Garrity's Chambers by the Objection Deadline, the Chapter 11 Trustee may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order attached to the Motion, which order may be entered with no further notice or opportunity to be heard.

Dated: New York, New York
      July 26, 2017

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  */s/ Lisa Laukitis*
     Jay M. Goffman
     Lisa Laukitis
     Four Times Square
     New York, New York 10036-6522
     Telephone: (212) 735-3000
     Fax: (212) 735-2000

     -and-

     Elizabeth M. Downing (admitted *pro hac vice*)
     500 Boylston Street
     Boston, Massachusetts 02116
     Telephone: (617) 573-4800
     Fax: (617) 573-4870

     *Counsel for William A. Brandt, Jr.,*
     *Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |
| | : | |

_____

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| Debtor. | : | |
| | : | **(Jointly Administered)** |
| | : | |

_____

## CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER (I) APPROVING BIDDING PROCEDURES, (II) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF

William A. Brandt, Jr., not individually but solely in his capacity as chapter 11

trustee (the "Trustee" or the "Chapter 11 Trustee") of CFG Peru Investments Pte. Limited

(Singapore) ("CFG Peru Singapore" or the "Debtor") in the above-captioned chapter 11 cases, by

his attorneys, Skadden, Arps, Slate, Meagher & Flom LLP, hereby moves (the "Motion") this

---

[1]   The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

Court (the "Court") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Bidding Procedures Order</u>"), pursuant to sections 105, 363, and 1123 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"); Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"); Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>"); and the Guidelines for the Conduct of Asset Sales promulgated by General Order M-383 of the Bankruptcy Court (the "<u>Sale Guidelines</u>"):

(i)  approving the proposed auction (the "<u>Auction</u>") and establishing bidding procedures (the "<u>Bidding Procedures</u>"), substantially in the form attached as <u>Exhibit 1</u> to the Bidding Procedures Order, in connection with the sale (the "<u>Sale</u>" or "<u>Sale Transaction</u>") of its equity interests in CFGI (the "<u>CFGI Equity Interests</u>") pursuant to a plan of liquidation (as it may be amended or modified, the "<u>Plan</u>") to be filed in this Court by the Chapter 11 Trustee;

(ii)  authorizing the Chapter 11 Trustee, in his discretion, exercised in good faith, to enter into a stalking horse purchase agreement with respect to a bid for the CFGI Equity Interests (a "<u>Stalking Horse Agreement</u>") pursuant to the terms of the Bidding Procedures, which shall be subject to Court approval in all respects; or, in the alternative, to set a minimum threshold bid for CFGI Equity Interests (the "<u>Sale Threshold</u>");

(iii)  approving the manner of notice of the Auction, if any; and

(iv)  granting related relief.

In support of this Motion, the Chapter 11 Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Debtor's estate, and the estates of all Debtors in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"), are comprised almost entirely of their interests in two Peruvian operating companies which are non-Debtor subsidiaries—CFG Investments S.A.C. ("<u>CFGI</u>") and Corporacion Pesquera Inca S.A.C. ("<u>Copeinca</u>," and together with CFGI, the "<u>Peruvian OpCos</u>").  Together, CFGI and Copeinca operate the anchovy business of the Pacific

Andes Group (defined below), and control a significant percentage of the anchovy fishing quotas fixed by the Peruvian government. The Peruvian OpCos have repeatedly been acknowledged to be the "crown jewels" of these Chapter 11 Cases and will serve as the prime source of the creditors' recoveries across all Debtors in these Chapter 11 Cases.

2.      The Court appointed the Chapter 11 Trustee at CFG Peru Singapore because it is the entity that is close to 100% owner of the Peruvian OpCos. In the Court's Memorandum Decision and Order Granting Motion for the Appointment of a Chapter 11 Trustee [Docket No. 203], the Court emphasized that the Trustee's most important role is "to evaluate the optimal way to maximize the value of the Peruvian Business and to determine how to realize that value for the benefit of the Debtors' estates and creditors." Id. at 47-48.

3.      Rounding the nine-month mark of his appointment, the Chapter 11 Trustee has worked to stabilize the operations of the Peruvian OpCos. As of the filing of this Motion, the Peruvian OpCos have rebounded to profitability following a debilitating El Niño weather pattern from 2014 through 2016 that substantially disrupted two consecutive anchovy fishing seasons. As such, the Chapter 11 Trustee is now poised to capture maximum value of the Peruvian OpCos through a sale of CFG Peru Singapore's direct or indirect equity stake in them to a third party.

4.      Specifically, for purposes of the sale structure, the Chapter 11 Trustee likely seeks to sell the CFGI Equity Interests, which are CFG Peru Singapore's direct equity interest in CFGI and indirect equity interests in several non-Debtor subsidiaries of CFGI.[2] Such contemplated sale structure will ensure that the entire value of the Peruvian OpCos is captured because of CFGI's indirect ownership of Copeinca. Accordingly, the Chapter 11 Trustee

---

[2]      The entities comprising CFGI Equity Interests are CFG Peru Singapore's equity interest in CFGI as well as CFGI's direct or indirect equity interests in Inmmobiliara Y Constructora Pahk S.A.C. (Peru); J. Wiludi & Asociados S.A.C. (Peru); Copeinca AS (Norway); Copeinca International SLU (Spain); and Copeinca.

believes that entry of the proposed Bidding Procedures will expedite and provide order to the process of marketing and selling the Peruvian OpCos (the "Sale Process").

5.      The Bidding Procedures will provide the formal framework for the Sale Process, which has been designed to elicit value-maximizing bids for the CFGI Equity Interests. Among other things, the Bidding Procedures (i) set forth the timeline for the Sale Process that is reasonable and appropriate to elicit value-maximizing bids for the CFGI Equity Interests, and (ii) set forth the basic rules for submitting bids for the CFGI Equity Interests and the date for a potential Auction. The proposed Bidding Procedures comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Sale Guidelines, and therefore should be approved.

6.      To the extent that the Chapter 11 Trustee determines that it is in the best interest of the estate to enter into a stalking horse purchase agreement with respect to a bid for the purchase of the CFGI Equity Interests (a "Stalking Horse Agreement"), the Chapter 11 Trustee reserves the right to, at a later date, file a separate motion requesting that the Court approve the Stalking Horse Agreement, if such agreement is executed, and any bid protections including a breakup fee and/or expense reimbursement, that may be contained in the Stalking Horse Agreement.

7.      At this time, the Chapter 11 Trustee only seeks Court approval of the Bidding Procedures, and does not seek final approval of the Sale. As discussed in further detail below, approval of the Sale of the CFGI Equity Interests contemplated by the Bidding Procedures will be sought following confirmation of the Plan.

8.      For the convenience of the Court and parties in interest, the following is a summary timeline identifying the potential relevant dates and proposed deadlines in connection

with the Bidding Procedures and Sale.  The following dates are aspirational and are subject to change depending on a number of factors, including, but not limited to, the volume of bids and/or other indications of interest during the earliest stages of the Sale Process:

- August 9, 2017: Deadline for objections to the Bidding Procedures

- August 13, 2017: Deadline for replies to objections to the Bidding Procedures

- August 16, 2017: Hearing to approve the Bidding Procedures

- October 16, 2017: Deadline to set a Sale Threshold

- October 20, 2017: Service of the Auction and Sale Hearing Notice (as defined below)

- October 20, 2017: Date of publication of the Auction and Sale Hearing Notice

- November 2017: Estimated Confirmation of the Plan

- December 8, 2017: Qualified Bids (as defined below) due and deadline for execution of a Stalking Horse Agreement, if any

- December 13, 2017: Auction (if necessary)

- December [●], 2017: Sale Hearing (defined below)

- January 15, 2018: Estimated Plan effective date and closing of the Sale Transaction

## **BACKGROUND**

9.      On June 30, 2016 (the "Petition Date"), each of the debtors in the above-captioned cases (the "Debtors"), except PARD, Nouvelle, Golden Target, PAIH (BVI), Zhonggang, and the Additional Debtors (defined below) filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court.  On September 29, 2016, PARD filed its Chapter 11 bankruptcy case.  On March 27, 2017, Nouvelle and Golden Target filed Chapter 11 bankruptcy cases.  On April 17, 2017, PAIH (BVI) and Zhonggang filed Chapter 11 bankruptcy cases.

Lastly, on May 2, 2017, an additional sixteen[3] Debtors filed Chapter 11 bankruptcy cases (the

"Additional Debtors," collectively, with PARD, Nouvelle, Golden Target,  PAIH (BVI),

Zhonggang, and the other Debtors' Chapter 11 cases, the "Chapter 11 Cases").

10.     To date, no creditors' committee has been appointed in these Chapter 11

Cases by the Office of the United States Trustee for the Southern District of New York (the

"U.S. Trustee").

11.     The Debtors constitute a small part of the Pacific Andes Group of

companies (the "Pacific Andes Group") that collectively constitute the world's twelfth largest

fishing company.  The Debtors consist principally of holding companies and defunct, non-

operating companies.  Their value is derived largely from their indirect or direct interests in

CFGI and Copeinca.  As set forth above, CFGI and Copeinca operate the Pacific Andes Group's

anchovy fishing business and together control a significant percentage of the anchovy fishing

quotas fixed by the Peruvian government, and CFG Peru Singapore is the direct or indirect

parent of CFGI and Copeinca.

12.     As part of its business, the Pacific Andes Group engages in harvesting,

sourcing, ocean logistics and transportation, food safety testing, processing, marketing and

distribution of frozen fish products, as well as fishmeal and fish oil.  The Pacific Andes Group's

businesses span the globe with major operations in the People's Republic of China, the United

States, and Peru, as well as processing businesses in China, Germany, France, the United States,

and Peru.

---

[3]    The Additional Debtors are: Admired Agents Limited, Chiksano Management Limited, Clamford Holding
Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore)
Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International
Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea
Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and
Toyama Holdings Limited (BVI).

13.     On November 10, 2016, the U.S. Trustee sought approval of William A. Brandt, Jr., as the Chapter 11 Trustee of CFG Peru Singapore [Dkt. No. 218]. On that same date, the Court entered an order approving the selection of Mr. Brandt as the Chapter 11 Trustee [Dkt. No. 219].

### JURISDICTION

14.     The United States Bankruptcy Court for the Southern District of New York has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### THE PROPOSED SALE TRANSACTION AND BIDDING PROCEDURES

**A.     The Proposed Sale Transaction**

15.     As set forth above, the Chapter 11 Trustee seeks to sell the CFGI Equity Interests, which includes, among other above-listed entities, CFG Peru Singapore's direct and indirect interests in CFGI and Copeinca. Pursuant to this Motion, the Chapter 11 Trustee is seeking approval of the Bidding Procedures and certain related relief that will govern the proposed Sale Process. This Motion does not seek approval of the Sale at this time. The Trustee currently anticipates that such relief will be sought in connection with confirmation of the Plan, which will set forth the mechanism by which proceeds from the Sale of the CFGI Equity Interests will be distributed. The Trustee will file the Plan and the accompanying disclosure statement at a later date. However, the Chapter 11 Trustee contemplates that the Plan may not go effective if the proceeds are insufficient to provide creditors at the CFG Peru Singapore level a significant recovery. For this reason, the Trustee may determine it is in the best interest of the estate to set a minimum price for the CFGI Equity Interests (to the extent established, the "Sale Threshold") on or prior to October 16, 2017. To the extent a Sale Threshold is set, the Trustee

will file a notice on the docket and serve it on the Notice Parties and all Interested Parties (as defined below).

16.     Although at this time the Chapter 11 Trustee expects to file a Plan pursuant to which proceeds from the Sale Transaction will be distributed, he reserves the right to proceed with the Sale Transaction prior to filing or confirmation of the Plan, or alternatively, outside the context of a Plan if he determines that it is in the best interest of the estate of CFG Peru Singapore.

**B.     The Sale Process**

17.     The Sale Process is being managed by Development Specialists, Inc. ("DSI"), accountants to the Chapter 11 Trustee.  To date, DSI has identified approximately sixty-five (65) parties who either participated in the prior sale process, have contacted the Chapter 11 Trustee directly or through an intermediary, or who the Chapter 11 Trustee believes may be interested in bidding on the CFGI Equity Interests.  Several parties have already executed confidentiality agreements with the Chapter 11 Trustee allowing them access to an electronic data room of due diligence information related to CFG Peru Singapore and the Peruvian OpCos.

18.     DSI and the Chapter 11 Trustee are in the process of developing procedures for the dissemination of confidential information to potential parties interested in purchasing the CFGI Equity Interests.  The procedures contemplate two tiers of bidders whose classification depends largely on whether the bidder has submitted a committed bid and has demonstrated financial ability and requisite corporate authority to close the transaction.

19.     The Chapter 11 Trustee, with the assistance of DSI, expects to conduct facility tours from approximately mid-August 2017 to mid-October 2017 and management meetings on a rolling basis commencing mid-August through mid-November 2017.

### C.     Extraordinary Provisions Under the Sale Guidelines

20.     The proposed Bidding Procedures Order and the proposed Sale Order (defined below) contain the following, which may be considered an Extraordinary Provision under the Sale Guidelines:[4]

(a)     <u>Relief from Bankruptcy Rule 6004(h)</u>: The Chapter 11 Trustee seeks relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

### D.     The Bidding Procedures

21.     The Chapter 11 Trustee is requesting that the Court approve the Bidding Procedures for the sale of the CFGI Equity Interests.  The following is a summary of the proposed Bidding Procedures that contains the key terms that are required to be highlighted pursuant to Local Rule 6004-1 and the Sale Guidelines.[5]

(a)     <u>Important Dates</u>: The Chapter 11 Trustee will:

1.     assist Approved Bidders (as defined below) in conducting their respective due diligence investigations and accept Qualified Bids (as defined below) until the deadline for receipt of Qualified Bids, which is 5:00 p.m. (Eastern Time) on **December 8, 2017**;

2.     negotiate with Qualified Bidders (as defined below) in preparation for the Auction scheduled to begin at 10:00 a.m. (Eastern Time) on **December 13, 2017**; and

3.     select the Successful Bidder (as defined below) and seek authority to consummate the Sale Transaction with such Successful Bidder at a hearing (the "<u>Sale Hearing</u>") to be held at **11:00 a.m. on December [●], 2017** or such other date and time as set by the Court.

---

[4]     The following Extraordinary Provision, as such term is defined in the Sale Guidelines, is not intended to be an admission that this is unusual relief in a sale of significant assets of a large chapter 11 debtor pursuant to Bankruptcy Code section 363.  Extraordinary Provisions that are not applicable here have not been included in the following list.

[5]     This summary is qualified in its entirety by the provisions of the Bidding Procedures and Bidding Procedures Order.  Unless otherwise defined within this Motion, capitalized terms used within this summary only shall have the meanings ascribed to them in the Bidding Procedures or the Bidding Procedures Order, as applicable.

(b)     Permitted Asset Groups:  The Chapter 11 Trustee will only consider bids on all of the CFGI Equity Interests.

Further information on the CFGI Equity Interests being offered for sale pursuant to the Bidding Procedures is available upon request from Development Specialists, Inc., 110 East 42nd Street, Suite 1818, New York, New York 10017, (212) 425-4141, Attn: Joseph Luzinski (jluzinski@dsi.biz) and William A. Brandt, Jr. (bbrandt@dsi.biz).

(c)     Participation Requirements.  Unless otherwise ordered by the Court for cause shown, each interested person or entity that has affirmatively indicated an interest in participating in the Sale Process (each, an "Interested Party") must provide the Chapter 11 Trustee with the following in the first instance in order to gain initial access to the Chapter 11 Trustee's confidential electronic data room (the "Data Room") and information about the Sale Process:

1.     an executed non-disclosure agreement in form and substance acceptable to the Chapter 11 Trustee; and

2.     initial reasonable demonstration (to be evaluated in the Trustee's sole discretion) of financial ability to close the transaction; provided, however, that the Trustee reserves the right, in his sole discretion, to waive this requirement with respect to a specific Interested Party if he determines such waiver is in the best interest of the estate and the Sale Process.

If the Chapter 11 Trustee determines that an Interested Party has complied with the requirements above, the Chapter 11 Trustee will inform such Interested Party that it is an "Approved Bidder."  No later than two business days after the Chapter 11 Trustee makes that determination, he will provide to such Approved Bidder: (1) an information package containing information and financial data with respect to the CFGI Equity Interests; (2) an electronic copy of a form of agreement (the "Proposed Agreement")[6]; and (3) access to confidential information in the Data Room.  The Chapter 11 Trustee may, but shall not be required to, disclose its identity to the Stalking Horse Bidder, if applicable, the Notice Parties (as defined in the Bidding Procedures and described below) and other Approved Bidders.

(d)     Due Diligence. Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Chapter 11 Trustee will provide any Approved Bidder with such due diligence access or additional information as may be reasonably requested by the Approved Bidder that the Chapter 11 Trustee determines to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to Joseph Luzinski of DSI

---

[6]     Copies of the Proposed Agreement will be filed with the Court on or around October 2, 2017.

at jluzinski@dsi.biz.  In the event that any such due diligence material is in written form and has not previously been provided to any other Approved Bidder, the Chapter 11 Trustee will simultaneously provide such materials to all Approved Bidders.[7]

Unless otherwise determined by the Chapter 11 Trustee, the availability of additional due diligence to an Approved Bidder will cease if (1) the Approved Bidder does not become a Qualified Bidder by the Bid Deadline, or (2) the bidding process is terminated.  Except as provided above, neither the Chapter 11 Trustee nor his representatives will be obligated to furnish any information of any kind whatsoever relating to the CFGI Equity Interests to any party.

(e)    Bid Deadline.  An Approved Bidder that desires to make a bid shall deliver written and electronic copies of its bid in both PDF and WORD format to the Notice Parties so as to be received no later than 5:00 p.m. (Eastern Time) on **December 8, 2017** (the "Bid Deadline").

Information that must be provided to the "Notice Parties" under the Bidding Procedures must be provided to the following parties: (1) Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522 (Attn: Lisa Laukitis, Esq.) and Skadden, Arps, Slate, Meagher & Flom LLP, 500 Boylston Street Boston, Massachusetts 02116 (Attn: Liz Downing, Esq.) and at lisa.laukitis@skadden.com and elizabeth.downing@skadden.com; and (2) Development Specialists, Inc., 110 East 42nd Street, Suite 1818, New York, New York 10017 (Attn: William A. Brandt, Jr.) and Development Specialists, Inc. 500 West Cypress Creek Road, Suite 400, Fort Lauderdale, Florida 33309 (Attn: Joseph Luzinski), and at bbrandt@dsi.biz and jluzinksi@dsi.biz.

(f)    Form and Content of a Qualified Bid.  A bid is a signed document from an Approved Bidder that provides, at a minimum, that:

1.    the bid offers to purchase the CFGI Equity Interests at the purchase price and upon the terms and conditions set forth in the asset purchase agreement enclosed therewith, marked to show any proposed amendments and modifications to the Proposed Agreement, or the Stalking Horse Agreement, as applicable (the "Marked Agreement");

---

[7]    To preserve trade secrets or confidential research, development or commercial information, the Chapter 11 Trustee may limit the information provided to any Approved Bidder that is, in the Chapter 11 Trustee's judgment, a competitor of CFG Peru Singapore or any of its direct or indirect subsidiaries.  Such limitations may include the redaction of certain information or the establishment of access to information on a "professionals' eyes only" basis.  To the extent that the Chapter 11 Trustee determines that any limitation should be imposed, he will advise the Approved Bidder of the extent of any such limitation in writing.   If the Approved Bidder contests any such limitation, it may seek relief from the Bankruptcy Court.

2.      the bid provides that the Approved Bidder has made or will make all necessary filings under applicable regulatory, antitrust, and other laws, if applicable, and pay the fees associated with such filings;

3.      the bid is accompanied by a copy of a board resolution or similar document demonstrating the authority of the Approved Bidder to make a binding and irrevocable bid;

4.      the bid is formal, binding, and unconditional (except for those conditions expressly set forth in the applicable Marked Agreement) and is not subject to any due diligence or financing contingency and is irrevocable until the earlier of April 2, 2018, or the first business day following the closing of the Sale Transaction;

5.      the bid (other than a bid pursuant to a Stalking Horse Agreement, if applicable) is not entitled to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and includes a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to the bid;

6.      the bid is accompanied by written evidence of available cash, a written commitment for financing signed by a bank (not subject to any conditions other than those the Trustee finds to be acceptable) in the form of a commitment letter signed by a bank or other financial institution or such other evidence of ability to consummate the contemplated sale transaction as the Trustee may reasonably request;

7.      to the extent that a Sale Threshold has been established, the purchase price set forth in the bid is equal to or higher than such Sale Threshold;

8.      the bid is accompanied by a deposit, by wire transfer, with an escrow agent selected by the Chapter 11 Trustee (the "Deposit Agent") equal to 10% of the cash purchase price set forth in the Marked Agreement (a "Good Faith Deposit"); and

9.      if a Stalking Horse Agreement has been approved by the Court, the terms of the bid are not materially more burdensome or conditional than the terms of such Stalking Horse Agreement or any such increase in burdensomeness or conditionality is offset by a material increase in the purchase price, which determination may take into consideration:

    A.      whether the bid requires any indemnification of the bidder on terms that are materially more burdensome than the terms of the Stalking Horse Agreement, if applicable;

    B.      whether the bid does not provide sufficient cash consideration to pay transfer taxes, or other cash costs of the transaction

12

(including professionals' fees, breakup fee, or expense reimbursement, if any);

C.   any risks associated with regulatory approvals that may be required before such bid could be consummated; and

D.   any other factors the Chapter 11 Trustee may deem relevant.

The Chapter 11 Trustee will have the right to determine that a bid that satisfies all of the foregoing requirements is a "Qualified Bid." Each bidder that has submitted a Qualified Bid will be considered a "Qualified Bidder."

If a bid is received and, in the Chapter 11 Trustee's judgment, it is not clear whether the bid is a Qualified Bid, the Chapter 11 Trustee may consult with the relevant Approved Bidder and seek additional information in an effort to establish whether or not such bid is a Qualified Bid.

A Qualified Bid and any bids at the Auction may be valued by the Chapter 11 Trustee based upon such factors as: (1) the cash purchase price set forth in the Qualified Bid; (2) the net economic effect upon the Debtor's bankruptcy estate after any payment of a bid protection, including a breakup fee and expense reimbursement, if applicable; (3) contingencies with respect to the applicable Sale Transaction and the likelihood of closing the proposed Sale Transaction without delay, and any incremental costs to the Debtor from any closing delays; (4) the ability to obtain any and all necessary antitrust and other regulatory approvals; and (5) any other factors the Chapter 11 Trustee may deem relevant.

The Chapter 11 Trustee may, but shall not be required to, share copies of some or all of the Qualified Bids with other Qualified Bidders bidding on the CFGI Equity Interests (with such distribution permissible by electronic means, including posting to the Data Room). The Chapter 11 Trustee reserves the right to impose additional terms and conditions with respect to all Qualified Bids.

(g)   Baseline Bid. Taking into account any breakup fee or expense reimbursement pursuant to a Stalking Horse Agreement, if any, the Chapter 11 Trustee will select what he determines to be the highest or otherwise best Qualified Bid for the CFGI Equity Interests (the "Baseline Bid"), which may be the Stalking Horse Agreement, if applicable. As soon as practicable, the Chapter 11 Trustee will identify the Baseline Bid to all Qualified Bidders.

(h)   Auction. If more than one Qualified Bid is received by the Bid Deadline for the CFGI Equity Interests, the Chapter 11 Trustee will conduct the Auction for the CFGI Equity Interests.

The Auction will take place at 10:00 a.m. (Eastern Time) on **December 13, 2017**, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, located at

13

Four Times Square, New York, New York 10036-6522, or such other time as the Chapter 11 Trustee may notify all Qualified Bidders. Only the Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Chapter 11 Trustee may impose in good faith.

(i)  Minimum Overbid. At the Auction, participants will be permitted to increase their bids. Bidding will start at the purchase price and other terms proposed in the applicable Baseline Bid, and will proceed thereafter in $ 5,000,000 increments (the "Minimum Overbid"). The Chapter 11 Trustee reserves the right to change any Minimum Overbid prior to or during the Auction.

If there is a Stalking Horse Bidder, such bidder will be entitled to a "credit" in the amount of the breakup fee, if any, and the full amount of the expense reimbursement, if any, to be counted towards its bid, such that the cash and other consideration proposed by the Stalking Horse Bidder plus the breakup fee and expense reimbursement, if any, must exceed the most recent bid by at least the Minimum Overbid amount.

(j)  Additional Rules for Auction. The Chapter 11 Trustee may adopt additional rules for the Auction at any time that the Chapter 11 Trustee determines to be appropriate to promote the goals of the bidding process and are not inconsistent with these Bidding Procedures. The identity of each bidder at the Auction will be fully disclosed to all other bidders and all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other bidders throughout the entire Auction, and each Qualified Bidder will be permitted what the Chapter 11 Trustee determines to be an appropriate amount of time to respond to the previous bid at the Auction.

The Chapter 11 Trustee reserves the right to, and may reject at any time before entry of the Sale Order (defined below) any bid that, in the Chapter 11 Trustee's judgment, is: (1) inadequate or insufficient; (2) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the Sale Transaction; or (3) contrary to the best interests of the Debtor and its estate. In doing so, the Chapter 11 Trustee may take into account the factors set forth in Section VII of the Bidding Procedures (attached as Exhibit 1 to the Bidding Procedures Order) regarding the contents of a Qualified Bid.

(k)  Selection of Successful Bid. Prior to the conclusion of the Auction, the Chapter 11 Trustee will: (1) review and evaluate each bid made at the Auction and other financial and contractual terms and other relevant factors, including those factors affecting the speed and certainty of consummating the relevant Sale Transaction; (2) identify the highest or otherwise best offer (the "Successful Bid") and the next highest or otherwise best bid (the "Next Highest Bid"); and (3) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the identity of the party having submitted

14

each Successful Bid (the "Successful Bidder"), the amount and other material terms of the Successful Bid and the identity of the party that submitted each Next Highest Bid (each, the "Next Highest Bidder").

(l)     The Sale Hearing.  At the Sale Hearing, the Chapter 11 Trustee may seek the entry of an order authorizing and approving the Sale Transaction with the Successful Bidder (the "Sale Order").  The Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties, including by (1) an announcement of such adjournment at the Sale Hearing or at the Auction or (2) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

(m)     Acceptance of Qualified Bids.  The Chapter 11 Trustee's presentation of a Successful Bid to the Bankruptcy Court for approval does not constitute the Chapter 11 Trustee's acceptance of such bid.  The Chapter 11 Trustee will be deemed to have accepted a Successful Bid only when such bid has been approved by the entry of the Sale Order.

If for any reason a Successful Bidder fails to consummate its purchase, the Chapter 11 Trustee may proceed to a Sale Transaction with the Next Highest Bid as soon as is commercially reasonable.  If such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Chapter 11 Trustee shall have the right to retain such Successful Bidder's Good Faith Deposit (unless required to return it by an order of the Bankruptcy Court) and shall reserve the right to seek all available additional damages from the Successful Bidder.

(n)     Return of Deposits.  The Good Faith Deposits of all Qualified Bidders, including the Stalking Horse Bidder, if applicable, will be held in escrow by the Deposit Agent and while held in escrow will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder and the Next Highest Bidder until the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits of the other Qualified Bidders will be returned within five (5) business days of the entry of the Sale Order.  At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its/their Good Faith Deposit.  The Good Faith Deposit of the Next Highest Bidder will be released by the Chapter 11 Trustee five (5) business days after the closing of the Sale Transaction.  Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that will have accrued thereon.

(o)     Limitations on Representations and Warranties.  Except for representations and warranties expressly set forth in the Stalking Horse Agreement, if any, or in the Marked Agreement with the Successful Bidder that is approved by the

15

Bankruptcy Court and consummated, the Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Chapter 11 Trustee, his agents or the Debtor's estate, whether written or verbal, whether express, implied or by operation of law. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the CFGI Equity Interests prior to making its bid, and that it has relied solely upon its own independent review and investigation in making its bid.

(p)     Modification to Bidding Procedures.  The Chapter 11 Trustee may amend the Bidding Procedures at any time and from time to time in any manner consistent with the terms of the Plan and that he determines will best promote the goals of the bidding process, including extending or modifying any of the dates set forth herein.

22.     Pursuant to the Sale Guidelines, each bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.  The Auction will be conducted openly and will be transcribed.

23.     In addition, on or around October 2, 2017, the Chapter 11 Trustee will file with the Court a copy of the Proposed Agreement he intends to send to Approved Bidders and will highlight the relevant provisions required by Local Rule 6004-1 and the Sale Guidelines.

24.     As stated above, the Chapter 11 Trustee reserves the right, in his discretion, exercised in good faith, to enter into a Stalking Horse Agreement with a Qualified Bidder in conjunction with the Bidding Procedures, subject to Court approval.  In the event that a Stalking Horse Agreement is entered into, the Chapter 11 Trustee will promptly file a motion with the Court seeking approval of the Stalking Horse Bidder and the bid protections, if any, granted to such Stalking Horse Bidder.  The effectiveness of any agreement between the Chapter 11 Trustee and any Stalking Horse Bidder is subject to entry of further order of the Court.

25.     In addition, the dates and deadlines set forth above in the Bidding Procedures and listed elsewhere in the Motion are aspirational and subject to change.  Based on the progress of the Sale Process, the Chapter 11 Trustee will have a better idea of appropriate

timing and, if necessary, reserves the right to amend the dates and deadlines if doing so, in his

discretion, would serve to maximize the value of the purchase price of the CFGI Equity Interests.

If the Chapter 11 Trustee amends any of the dates and deadlines set forth in the Bidding

Procedures, he will file an amended Auction and Sale Hearing Notice (defined below) and serve

such notice on the Bidding Procedures Motion Notice Parties (defined below) and all Interested

Parties.

## REQUEST FOR APPROVAL OF THE BIDDING PROCEDURES

26.    Section 1123(a)(5)(D) of the Bankruptcy Code permits the sale of all or

some of a debtor's assets pursuant to a plan.  11 U.S.C. § 1123(a)(5)(D).  Moreover, under

section 105(a) of the Bankruptcy Code, "[t]he court may issue any order . . . that is necessary or

appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  In essence, the Court

may enter an order that safeguards the value of the debtor's estate if doing so is consistent with

the Bankruptcy Code.  See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440,

1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders

as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props.

Liquidating Tr., Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (acknowledging that "the

[b]ankruptcy [c]ourt is one of equity and as such it has a duty to protect whatever equities a

debtor may have in property for the benefit of its creditors as long as that protection is

implemented in a manner consistent with the bankruptcy laws.").

27.    As it relates specifically to the sale of estate assets, section 363(b)(1) of

the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing,

may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11

U.S.C. § 363(b)(1).  The use, sale, or lease of property of the estate, other than in the ordinary

course of business, is authorized when there is an "articulated business justification" for the

17

action to be taken.  See Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th

Cir. 1991) (citation omitted).  When a valid business justification exists, the law vests the

trustee's decision to use property out of the ordinary course of business with a strong

presumption that such decision was made on a good faith, informed basis, and in the honest

belief that the action taken was in the estate's best interests.  Official Comm. of Subordinated

Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc), 147 B.R. 650, 656-57 (S.D.N.Y.

1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed

according to the deferential "business judgment" standard, under which such arrangements are

"presumptively valid"); see also Licensing By Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380,

387 (2d Cir. 1997); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d

1063, 1070 (2d Cir. 1983); In re Global Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y.

2003).

28.     Pursuant to Bankruptcy Code sections 105 and 363, courts recognize that

procedures intended to enhance competitive bidding are consistent with the goal of maximizing

the value received by the estate, and, therefore, are appropriate in the context of bankruptcy

sales.  See In re Integrated Res., Inc., 147 B.R. at 659 (finding bidding procedures "encourage

bidding and . . . maximize the value of the debtor's assets"); In re Fin. News Network, Inc., 126

B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("Court-imposed rules for the disposition of assets . . .

[should] provide an adequate basis for comparison of offers, and [should] provide for a fair and

efficient resolution of bankrupt estates.").

29.     The Chapter 11 Trustee believes that the Bidding Procedures are

appropriately tailored to ensure that the bidding process is fair and reasonable and will yield the

maximum value for their estates and creditors.  The proposed Bidding Procedures are designed

18

to maximize the value received for the CFGI Equity Interests by facilitating a competitive

bidding process in which all potential bidders are encouraged to participate and submit

competing bids.  The Bidding Procedures provide potential bidders with sufficient notice and an

opportunity to acquire information necessary to submit a timely and informed bid.  At the same

time, the Bidding Procedures provide the Chapter 11 Trustee with the opportunity to consider all

competing offers and to select, in his reasonable business judgment, the highest or otherwise best

offer for the CFGI Equity Interests.

30.     Accordingly, the Chapter 11 Trustee believes the Court should approve

the Bidding Procedures.  The Bidding Procedures contain features — including bid deadlines,

auction procedures and bid criteria — that are largely consistent with other procedures

previously approved by courts in this District in other large chapter 11 cases.  See, e.g., In re

SunEdison, Inc., No. 16-10992 (SMB) (Bankr. S.D.N.Y. Aug. 19, 2016); In re Great Atlantic &

Pacific Tea Co., Inc., No. 15-23007 (RDD) (Bankr. S.D.N.Y. Nov. 16, 2015); In re Relativity

Fashion, LLC, No. 15-11989 (MEW) (Bankr. S.D.N.Y. Sept. 1, 2015); In re Excel Mar. Carriers

Ltd., No. 13-23060 (RDD) (Bankr. S.D.N.Y. July 3, 2013); In re Alexander Gallo Holdings,

LLC, No. 11-14220 (ALG) (Bankr. S.D.N.Y. Oct. 6, 2011).   Like those approved in other cases,

the Bidding Procedures that the Chapter 11 Trustee proposes will help maximize the value of the

bids received for the CFGI Equity Interests.

**NOTICE OF THE AUCTION AND SALE HEARING**

31.     The Chapter 11 Trustee will provide notice of the final deadlines relevant

to the Bidding Procedures and Sale pursuant to a notice filed regarding the Action and Sale

Hearing (the "Auction and Sale Hearing Notice"), attached hereto as Exhibit B.  The Auction

and Sale Hearing Notice will include, among other things: the Bid Deadline; the date time and

place of the Auction; and the date, time, and place of the Sale Hearing, and will therefore comply

with Bankruptcy Rule 2002(c).

32.     The Auction and Sale Hearing Notice will be served on (i) the U.S.

Trustee; (ii) creditors holding the fifty largest claims as set forth in the consolidated list filed

with the Debtors' petitions; (iii) U.S. counsel to Standard Chartered Bank (Hong Kong) Limited,

Cooperatieve Rabobank, U.A., and DBS Bank (Hong Kong) Limited; (iv) U.S. counsel to China

CITIC Bank International Limited; (v) U.S. counsel to the Senior Noteholders Committee; (vi)

U.S. counsel to Bank of America N.A.; (vii) U.S. counsel to Malayan Banking Berhad, Hong

Kong Branch; (viii) U.S. counsel to Fredrich von Kaltenborn-Stachue, the insolvency

administrator for the Pickenpack companies; (ix) U.S. counsel to the TMF Trustee Limited; (x)

U.S. counsel to the Debtors; (xi) the Internal Revenue Service; (xii) all persons or entities that

have filed proofs of claim in the Debtor's case that have not been previously disallowed by order

of this Court and have been processed by the Debtor's claims agent prior to the mailing of the

Disclosure Statement Notice; (xiii) all persons or entities listed in the Debtor's Schedules of

Assets and Liabilities, and any amendments thereto; (xiv) all other parties in interest that have

filed requests for notice pursuant to Bankruptcy Rule 2002 in these Chapter 11 Cases; (xv) any

other known holders or potential holders of claims against the Debtor; (xvi) all Interested Parties;

and (xvii) any such other parties as are required to be served under the Sale Guidelines.

33.     In addition, the Chapter 11 Trustee will (a) run a publication version of the

Auction and Sale Hearing Notice one time in *The Wall Street Journal* (national and international

editions), *El Comercio*, a leading newspaper in Peru, the *Economist* (Hong Kong edition), and

the *Straits Times*, a leading newspaper in Singapore, and (b) publish the Auction and Sale

Hearing Notice on the case website at http://dm.epiq11.com/#/case/CHF/info.  The Auction and

20

Sale Hearing Notice provide that any party that wishes to obtain a copy of this Motion, including

all exhibits, may do so by submitting a request to Development Specialists, Inc. at 110 East 42nd

Street, Suite 1818, New York, New York 10017, (212) 425-4141, Attn: Joseph Luzinski

(jluzinski@dsi.biz) and William A. Brandt, Jr. (bbrandt@dsi.biz); by submitting a request to the

Chapter 11 Trustee's claims and noticing agent, Epiq Systems, Inc. at

epiqteamblue@epiqsystems.com; or by accessing the case website at

http://dm.epiq11.com/#/case/CHF/info.

      34.    The Chapter 11 Trustee submits that proposed notice of the Sale Motion,

the Auction, and the Sale Hearing as provided in the Auction and Sale Hearing Notice constitutes

good and adequate notice of the Sale Transaction and proceedings with respect thereto.

Therefore, the Chapter 11 Trustee respectfully requests that this Court approve the notice

procedures proposed above.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

      35.    The Chapter 11 Trustee also requests that the Court waive the stay

imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale,

or lease of property other than cash collateral is stayed until the expiration of 14 days after entry

of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above,

the relief that the Chapter 11 Trustee seeks in this Motion is necessary for the Chapter 11 Trustee

to ensure a successful sale process and resolution of the Chapter 11 Case. Accordingly, the

Chapter 11 Trustee respectfully requests that this Court waive the fourteen-day stay imposed by

Bankruptcy Rule 6004(h).

## NOTICE

      36.    The Trustee will provide notice of this Motion to the following parties, or,

in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) creditors holding the fifty largest claims as

set forth in the consolidated list filed with the Debtors' petitions; (iii) U.S. counsel to Standard

Chartered Bank (Hong Kong) Limited, Cooperatieve Rabobank, U.A., and DBS Bank (Hong

Kong) Limited; (iv) U.S. counsel to China CITIC Bank International Limited; (v) U.S. counsel to

the ad hoc noteholders committee; (vi) U.S. counsel to Bank of America N.A.; (vii) U.S. counsel

to Malayan Banking Berhad, Hong Kong Branch; (viii) U.S. counsel to Fredrich von Kaltenborn-

Stachue, the insolvency administrator for the Pickenpack companies; (ix) U.S. counsel to the

TMF Trustee Limited; (x) U.S. counsel to the Debtors; (xi) the Internal Revenue Service; (xii)

any party that has requested notice pursuant to Bankruptcy Rule 2002; (xiii) and such other

parties as are required to be served under the Sale Guidelines (collectively, the "<u>Bidding

Procedures Motion Notice Parties</u>").  A copy of this Motion is also available on the Court's

website.  The Trustee submits that no other or further notice need be provided.

## <u>NO PRIOR REQUEST</u>

37.    No prior request for the relief sought in this Motion has been made to this

or any other Court.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, the Chapter 11 Trustee respectfully requests that the Court (i) enter the

Bidding Procedures Order, substantially in the form attached hereto as <u>Exhibit A</u>; (ii) approve

the form of Auction and Sale Hearing Notice attached hereto as <u>Exhibit B</u>; and (iii) grant the

Chapter 11 Trustee such other and further relief as the Court may deem proper.

Dated:  New York, New York
           July 26, 2017

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  */s/ Lisa Laukitis*
     Jay M. Goffman
     Lisa Laukitis
     Four Times Square
     New York, New York 10036-6522
     Telephone: (212) 735-3000
     Fax: (212) 735-2000

     -and-

     Elizabeth M. Downing (admitted *pro hac vice*)
     500 Boylston Street
     Boston, Massachusetts 02116
     Telephone: (617) 573-4800
     Fax: (617) 573-4870

     *Counsel for William A. Brandt, Jr.,*
    *Chapter 11 Trustee*

## **EXHIBIT A**

**Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : |  |
| Debtors.[1] | : | **(Jointly Administered)** |
|  | : |  |

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| Debtor. | : |  |
|  | : | **(Jointly Administered)** |

**ORDER (I) APPROVING BIDDING PROCEDURES, (II) APPROVING THE FORM**
**AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the Motion of the Chapter 11 Trustee for

an Order (i) Approving Bidding Procedures; (ii) Approving the Form and Manner of Notice

Thereof; and (iii) Granting Related Relief (the "Motion"),[2] filed by the Chapter 11 Trustee to

CFG Peru Singapore, William A. Brandt, Jr.; the Court having reviewed the Motion and having

considered the statements of counsel and the evidence adduced with respect to the Motion at a

---

[1]  The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

[2]  Capitalized terms not otherwise defined herein have the meanings given to them in the Motion or the applicable exhibits to the Motion, or, if not defined therein, the Bidding Procedures.

hearing before the Court (the "Hearing"), if any; and the Court having found that (i) the Court

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in

this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28

U.S.C. § 157(b) and (iv) notice of the Motion and the Hearing was sufficient under the

circumstances; after due deliberation the Court having determined that the relief requested in the

Motion is in the best interests of the Debtor, its estate, and its creditors; and good and sufficient

cause having been shown;

**IT IS HEREBY FOUND AND CONCLUDED, as follows:**

A.      The Chapter 11 Trustee has offered good and sufficient reasons for, and

the best interests of its estate will be served by, this Court granting the Motion to the extent

provided in this Order, including approval of (i) the Bidding Procedures, attached hereto as

Exhibit 1, and (ii) the manner of notice of the Auction and Sale Hearing described in the Motion.

B.      The issuance and immediate effectiveness of this Order as of the date

hereof, including approval of the Bidding Procedures, is supported by evidence of compelling

business justifications and other circumstances demonstrating that the relief granted by this

Order is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

C.      The proposed notice of the Auction and Sale and the other matters to be

considered at the Sale Hearing, substantially in the form attached to the Motion as Exhibit B (the

"Auction and Sale Hearing Notice") is appropriate and reasonably calculated to provide all

interested parties with timely and proper notice of the Bidding Procedures, Auction, Sale Motion,

Sale Hearing, and Sale.

D.      No further or other notice beyond that described in the foregoing

paragraphs is required in connection with the foregoing.

E.     The Bidding Procedures are reasonably designed to maximize the value to be achieved for the CFGI Equity Interests.

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED as set forth herein.  Any objections or responses to the Motion that have not been withdrawn, waived, or settled prior to the entry of this order are hereby OVERRULED.

2.     The Bidding Procedures, attached hereto as Exhibit 1, are hereby approved, are incorporated herein by reference and shall govern all bids and proceedings relating to the CFGI Equity Interests.

3.     The Chapter 11 Trustee is authorized to establish the Sale Threshold on or before October 16, 2017.  To the extent the Sale Threshold is established, the Trustee shall file notice of the Sale Threshold with the Court and provide notice of the Sale Threshold to the Bidding Procedures Motion Notice Parties and Interested Parties.

4.     If more than one Qualified Bid is received by the Bid Deadline as set forth in the Auction and Sale Hearing Notice, the Chapter 11 Trustee will conduct the Auction.  If one or fewer Qualified Bids are received by the Bid Deadline, the Chapter 11 Trustee shall not conduct the Auction.

5.     The Auction, if necessary pursuant to the terms of this Order and the Bidding Procedures, will take place at 10:00 a.m. (Eastern Time) on the date set forth in the Auction and Sale Hearing Notice, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522, or such other time as the Chapter 11 Trustee may notify Qualified Bidders who have submitted Qualified Bids.

6.      Each bidder participating at the Auction will be required to confirm in writing, that (a) it has not engaged in any collusion with respect to the bidding process and (b) its bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

7.      The Auction will be conducted openly and will be transcribed.

8.      As soon as reasonably practicable following the conclusion of the Auction, the Chapter 11 Trustee shall file copies of the Successful Bid and the Next Highest Bid with the Court.

9.      Final approval of the Sale shall be considered by the Court at the Sale Hearing on a date to be set by the Auction and Sale Hearing Notice.  The Sale Hearing may be continued from time to time by the Court without further notice or with limited or shortened notice to parties other than the announcement of the adjourned date at the Sale Hearing or any continued hearing.

10.      Promptly after the conclusion of the Auction, but no later than before the Sale Hearing, the Chapter 11 Trustee shall file the proposed Sale Order, which shall include approval of the Sale as agreed upon between the Chapter 11 Trustee and the Successful Bidder.

11.      The Chapter 11 Trustee reserves the right to, at a later date, file a separate motion requesting that the Court approve a Stalking Horse Agreement, if such agreement is executed, and any bid protections including a breakup fee and/or expense reimbursement, that may be contained in the Stalking Horse Agreement.

12.      The Chapter 11 Trustee reserves the right to amend the dates and deadlines set forth in the Bidding Procedures.

4

13.     The Chapter 11 Trustee reserves the right to seek Court approval of the Sale Transaction alternatively outside the context of a Plan if he determines that it is in the best interest of the estate of CFG Peru Singapore.

14.     The Auction and Sale Hearing Notice is sufficient to provide effective notice to all interested parties of the Bidding Procedures, Auction, Sale Motion, Sale Hearing, and Sale pursuant to Bankruptcy Rules 2002 and 6004, Local Rule 6004-1, and the Sale Guidelines.

15.     As soon as reasonably practicable, but in no event later than twenty-one (21) days before the Sale Hearing, the Chapter 11 Trustee shall serve the Auction and Sale Hearing Notice by first class mail, postage prepaid, and/or via overnight mail, facsimile, hand delivery or electronic transmission upon the Bidding Procedures Motion Notice Parties.

16.     As soon as reasonably practicable, but in no event later than twenty-one (21) days before the Sale Hearing, the Chapter 11 Trustee shall publish the Auction and Sale Hearing Notice (a) one time in *The Wall Street Journal* (national and international editions), *El Comercio*, a leading newspaper in Peru, the *Economist* (Hong Kong edition), and the *Straits Times*, a leading newspaper in Singapore, and (b) publish the Auction and Sale Hearing Notice on the case website at http://dm.epiq11.com/#/case/CHF/info.

17.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

18.     To the extent the provisions of this Order are inconsistent with the provisions of the Motion, the provisions of this Order shall control and govern.

19.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

5

20.     The Chapter 11 Trustee is authorized and empowered to take all actions

necessary to implement the relief granted in this Order.

21.     This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation and/or interpretation of this Order

Dated:  New York, New York

_____, 2017


_____
HONORABLE JAMES L. GARRITY

## EXHIBIT 1 TO BIDDING PROCEDURES ORDER

**Bidding Procedures**

EXHIBIT 1 TO BIDDING
PROCEDURES ORDER

## BIDDING PROCEDURES[1]

By motion (the "Motion") dated **July 26, 2017**, CFG Peru Investments Pte. Ltd. (Singapore) ("CFG Peru Singapore"), sought, among other things, approval of the process and procedures for soliciting bids for and obtaining approval of one or more transactions for the sale (each, a "Sale Transaction") of CFG Peru Singapore's direct equity interest in CFG Investments S.A.C. ("CFGI") and indirect equity interests in several non-Debtor subsidiaries of CFGI (together, with CFGI, the "CFGI Equity Interests").[2]

On August [●], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order") that, among other things, authorized the Chapter 11 Trustee to pursue the Sale Transaction through the bidding procedures set forth below (the "Bidding Procedures").

The Sale Transaction will be subject to the approval of the Bankruptcy Court, which approval shall be sought following the confirmation of the Chapter 11 Trustee's Plan of Liquidation (the "Plan"), to be filed with the Bankruptcy Court.   If the Plan is not confirmed, the Chapter 11 Trustee reserves the right to proceed with the Sale Transaction prior to filing or confirmation of the Plan, or alternatively, outside the context of the Plan if he determines that it is in the best interest of the estate of CFG Peru Singapore.

A hearing by the Bankruptcy Court on the approval of the Sale Transaction is currently scheduled for **December [●], 2017**, at **11:00 a.m.** (Eastern Time) (the "Sale Hearing").

## I.    Important Dates and Contact Information

The Chapter 11 Trustee will:

(A)    assist Approved Bidders (as defined below) in conducting their respective due diligence investigations and accept Qualified Bids (as defined below) until the deadline for receipt of Qualified Bids, which is 5:00 p.m. (Eastern Time) on **December 8, 2017**;

---

[1]    Capitalized terms not otherwise defined herein have the meanings given to them in the Bidding Procedures Order (as defined below).

[2]    The entities comprising CFGI Equity Interests are CFG Peru Singapore's equity interest in CFGI as well as CFGI's direct or indirect equity interests in Inmmobiliara Y Constructora Pahk S.A.C. (Peru); J. Wiludi & Asociados S.A.C. (Peru);  Copeinca AS (Norway); Copeinca International SLU (Spain); and Corporacion Pesquera Inca S.A.C. (Peru) ("Copeinca").

(B)     negotiate with Qualified Bidders (as defined below) in preparation for the Auction scheduled to begin at 10:00 a.m. (Eastern Time) on **December 13, 2017**; and

(C)     select the Successful Bidder (as defined below) and seek authority to consummate the Sale Transaction with such Successful Bidder at a hearing (the "Sale Hearing") to be held at **11:00 a.m. on December [●], 2017**, or such other date and time set by the Court.

Information that must be provided to the "Notice Parties" under the Bidding Procedures must be provided to the following parties: (1) Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522 (Attn: Lisa Laukitis, Esq.) and Skadden, Arps, Slate, Meagher & Flom LLP, 500 Boylston Street Boston, Massachusetts 02116 (Attn: Liz Downing, Esq.) and at lisa.laukitis@skadden.com and elizabeth.downing@skadden.com; and (2) Development Specialists, Inc., 110 East 42nd Street, Suite 1818, New York, New York 10017 (Attn: William A. Brandt, Jr.) and Development Specialists, Inc. 500 West Cypress Creek Road, Suite 400, Fort Lauderdale, Florida 33309 (Attn: Joseph Luzinski), and at bbrandt@dsi.biz and jluzinksi@dsi.biz.

## II.    Permitted Asset Groups

The Chapter 11 Trustee will only consider bids on all of the CFGI Equity Interests.

**Further information on the CFGI Equity Interests being offered for sale pursuant to the Bidding Procedures is available upon request from Development Specialists, Inc., 110 East 42nd Street, Suite 1818, New York, New York 10017, (212) 425-4141, Attn: Joseph Luzinski (jluzinski@dsi.biz) and William A. Brandt, Jr. (bbrandt@dsi.biz).**

## III.   Participation Requirements

Unless otherwise ordered by the Court for cause shown, each interested person or entity that has affirmatively indicated an interest in participating in the Sale Process (each, an "Interested Party") must provide the Chapter 11 Trustee with the following in the first instance in order to gain initial access to the Chapter 11 Trustee's confidential electronic data room (the "Data Room") and information about the Sale Process:

(A)     an executed non-disclosure agreement in form and substance acceptable to the Chapter 11 Trustee; and

(B)     initial reasonable demonstration (to be evaluated in the Trustee's sole discretion) of financial ability to close the transaction; provided, however, that the Trustee reserves the right, in his sole discretion, to waive this requirement with respect to a specific Interested Party if he determines such waiver is in the best interest of the estate and the Sale Process.

If the Chapter 11 Trustee determines that an Interested Party has complied with the requirements above, the Chapter 11 Trustee will inform such Interested Party that it is an "Approved Bidder."  No later than two business days after the Chapter 11 Trustee makes that determination, he will provide to such Approved Bidder: (1) an information package containing

information and financial data with respect to the CFGI Equity Interests; (2) an electronic copy of a form of agreement (the "Proposed Agreement")[3]; and (3) access to confidential information in the Data Room.  The Chapter 11 Trustee may, but shall not be required to, disclose its identity to the Stalking Horse Bidder, if applicable, the Notice Parties (as defined in the Bidding Procedures and described below) and other Approved Bidders.

## IV.    Due Diligence

Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Chapter 11 Trustee will provide any Approved Bidder with such due diligence access or additional information as may be reasonably requested by the Approved Bidder that the Chapter 11 Trustee determines to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to Joseph Luzinski of DSI at jluzinski@dsi.biz.  In the event that any such due diligence material is in written form and has not previously been provided to any other Approved Bidder, the Chapter 11 Trustee will simultaneously provide such materials to all Approved Bidders.

Unless otherwise determined by the Chapter 11 Trustee, the availability of additional due diligence to an Approved Bidder will cease if (1) the Approved Bidder does not become a Qualified Bidder by the Bid Deadline, or (2) the bidding process is terminated.  Except as provided above, neither the Chapter 11 Trustee nor his representatives will be obligated to furnish any information of any kind whatsoever relating to the CFGI Equity Interests to any party.

## V.    Diligence Limitations With Respect to Commercially Sensitive Information

To preserve trade secrets or confidential research, development or commercial information, the Chapter 11 Trustee may limit the information provided to any Approved Bidder that is, in the Chapter 11 Trustee's judgment, a competitor of CFG Peru Singapore or any of its direct or indirect subsidiaries.  Such limitations may include the redaction of certain information or the establishment of access to information on a "professionals' eyes only" basis.  To the extent that the Chapter 11 Trustee determines that any limitation should be imposed, he will advise the Approved Bidder of the extent of any such limitation in writing.  If the Approved Bidder contests any such limitation, it may seek relief from the Bankruptcy Court.

## VI.    Bid Deadline

An Approved Bidder that desires to make a bid shall deliver written and electronic copies of its bid in both PDF and WORD format to the Notice Parties so as to be received no later than 5:00 p.m. (Eastern Time) on **December 8, 2017** (the "Bid Deadline").

## VII.    Form and Content of a Qualified Bid

A bid is a signed document from an Approved Bidder that provides, at a minimum, that:

---

[3]    Copies of the Proposed Agreement will be filed with the Court on or around October 2, 2017.

(A)    the bid offers to purchase the CFGI Equity Interests at the purchase price and upon the terms and conditions set forth in the asset purchase agreement enclosed therewith, marked to show any proposed amendments and modifications to the Proposed Agreement, or the Stalking Horse Agreement, as applicable (the "<u>Marked Agreement</u>");

(B)    the bid provides that the Approved Bidder has made or will make all necessary filings under applicable regulatory, antitrust, and other laws, if applicable, and pay the fees associated with such filings;

(C)    the bid is accompanied by a copy of a board resolution or similar document demonstrating the authority of the Approved Bidder to make a binding and irrevocable bid;

(D)    the bid is formal, binding, and unconditional (except for those conditions expressly set forth in the applicable Marked Agreement) and is not subject to any due diligence or financing contingency and is irrevocable until the earlier of April 2, 2018, or the first business day following the closing of the Sale Transaction;

(E)    the bid (other than a bid pursuant to a Stalking Horse Agreement, if applicable) is not entitled to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and includes a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to the bid;

(F)    the bid is accompanied by written evidence of available cash, a written commitment for financing signed by a bank (not subject to any conditions other than those the Trustee finds to be acceptable) in the form of a commitment letter signed by a bank or other financial institution or such other evidence of ability to consummate the contemplated sale transaction as the Trustee may reasonably request;

(G)    to the extent that a Sale Threshold has been established, the purchase price set forth in the bid is equal to or higher than such Sale Threshold;

(H)    the bid is accompanied by a deposit, by wire transfer, with an escrow agent selected by the Chapter 11 Trustee (the "<u>Deposit Agent</u>") equal to 10% of the cash purchase price set forth in the Marked Agreement (a "<u>Good Faith Deposit</u>"); and

(I)    if a Stalking Horse Agreement has been approved by the Court, the terms of the bid are not materially more burdensome or conditional than the terms of such Stalking Horse Agreement or any such increase in burdensomeness or conditionality is offset by a material increase in the purchase price, which determination may take into consideration: (1) whether the bid requires any indemnification of the bidder on terms that are materially more burdensome than the terms of the Stalking Horse Agreement, if applicable; (2) whether the bid does not provide sufficient cash consideration to pay transfer taxes, or other cash costs

of the transaction (including professionals' fees, breakup fee, or expense reimbursement, if any); (3) any risks associated with regulatory approvals that may be required before such bid could be consummated; and (4) any other factors the Chapter 11 Trustee may deem relevant.

The Chapter 11 Trustee will have the right to determine that a bid that satisfies all of the foregoing requirements is a "Qualified Bid." Each bidder that has submitted a Qualified Bid will be considered a "Qualified Bidder."

If a bid is received and, in the Chapter 11 Trustee's judgment, it is not clear whether the bid is a Qualified Bid, the Chapter 11 Trustee may consult with the relevant Approved Bidder and seek additional information in an effort to establish whether or not such bid is a Qualified Bid.

A Qualified Bid and any bids at the Auction may be valued by the Chapter 11 Trustee based upon such factors as: (1) the cash purchase price set forth in the Qualified Bid; (2) the net economic effect upon the Debtor's bankruptcy estate after any payment of a bid protection, including a breakup fee and expense reimbursement, if applicable; (3) contingencies with respect to the applicable Sale Transaction and the likelihood of closing the proposed Sale Transaction without delay, and any incremental costs to the Debtor from any closing delays; (4) the ability to obtain any and all necessary antitrust and other regulatory approvals; and (5) any other factors the Chapter 11 Trustee may deem relevant.

The Chapter 11 Trustee may, but shall not be required to, share copies of some or all of the Qualified Bids with other Qualified Bidders bidding on the CFGI Equity Interests (with such distribution permissible by electronic means, including posting to the Data Room). The Chapter 11 Trustee reserves the right to impose additional terms and conditions with respect to all Qualified Bids.

## VIII.   **Baseline Bid**

Taking into account any breakup fee or expense reimbursement pursuant to a Stalking Horse Agreement, if any, the Chapter 11 Trustee will select what he determines to be the highest or otherwise best Qualified Bid for the CFGI Equity Interests (the "Baseline Bid"), which may be the Stalking Horse Agreement, if applicable. As soon as practicable, the Chapter 11 Trustee will identify the Baseline Bid to all Qualified Bidders.

## IX.   **Auction**

If more than one Qualified Bid is received by the Bid Deadline for the CFGI Equity Interests, the Chapter 11 Trustee will conduct the Auction for the CFGI Equity Interests.

The Auction will take place at 10:00 a.m. (Eastern Time) on **December 13, 2017**, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, located at Four Times Square, New York, New York 10036-6522, or such other time as the Chapter 11 Trustee may notify all Qualified Bidders. Only the Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Chapter 11 Trustee may impose in good faith.

At the Auction, participants will be permitted to increase their bids. Bidding will start at the purchase price and other terms proposed in the applicable Baseline Bid, and will proceed thereafter in $ 5,000,000 increments (the "Minimum Overbid"). The Chapter 11 Trustee reserves the right to change any Minimum Overbid prior to or during the Auction.

If there is a Stalking Horse Bidder, such bidder will be entitled to a "credit" in the amount of the breakup fee, if any, and the full amount of the expense reimbursement, if any, to be counted towards its bid, such that the cash and other consideration proposed by the Stalking Horse Bidder plus the breakup fee and expense reimbursement, if any, must exceed the most recent bid by at least the Minimum Overbid amount.

The Chapter 11 Trustee may adopt additional rules for the Auction at any time that the Chapter 11 Trustee determines to be appropriate to promote the goals of the bidding process and are not inconsistent with these Bidding Procedures. The identity of each bidder at the Auction will be fully disclosed to all other bidders and all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other bidders throughout the entire Auction, and each Qualified Bidder will be permitted what the Chapter 11 Trustee determines to be an appropriate amount of time to respond to the previous bid at the Auction.

The Chapter 11 Trustee reserves the right to, and may reject at any time before entry of the Sale Order (defined below) any bid that, in the Chapter 11 Trustee's judgment, is: (1) inadequate or insufficient; (2) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the Sale Transaction; or (3) contrary to the best interests of the Debtor and its estate. In doing so, the Chapter 11 Trustee may take into account the factors set forth in Section VII above regarding the contents of a Qualified Bid.

Prior to the conclusion of the Auction, the Chapter 11 Trustee will: (1) review and evaluate each bid made at the Auction and other financial and contractual terms and other relevant factors, including those factors affecting the speed and certainty of consummating the relevant Sale Transaction; (2) identify the highest or otherwise best offer (the "Successful Bid") and the next highest or otherwise best bid (the "Next Highest Bid"); and (3) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the identity of the party having submitted each Successful Bid (the "Successful Bidder"), the amount and other material terms of the Successful Bid and the identity of the party that submitted each Next Highest Bid (each, the "Next Highest Bidder").

## X.    **The Sale Hearing**

At the Sale Hearing, the Chapter 11 Trustee may seek the entry of an order authorizing and approving the Sale Transaction with the Successful Bidder (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties, including by (1) an announcement of such adjournment at the Sale Hearing or at the Auction or (2) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

### XI. Acceptance of Qualified Bids

  The Chapter 11 Trustee's presentation of a Successful Bid to the Bankruptcy Court for approval does not constitute the Chapter 11 Trustee's acceptance of such bid.  The Chapter 11 Trustee will be deemed to have accepted a Successful Bid only when such bid has been approved by the entry of the Sale Order.

  If for any reason a Successful Bidder fails to consummate its purchase, the Chapter 11 Trustee may proceed to a Sale Transaction with the Next Highest Bid as soon as is commercially reasonable.  If such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Chapter 11 Trustee shall have the right to retain such Successful Bidder's Good Faith Deposit (unless required to return it by an order of the Bankruptcy Court) and shall reserve the right to seek all available additional damages from the Successful Bidder.

### XII. Limitations on Representations and Warranties

  Except for representations and warranties expressly set forth in the Stalking Horse Agreement, if any, or in the Marked Agreement that is approved by the Bankruptcy Court and consummated, the Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Chapter 11 Trustee, his agents or the Debtor's estate, whether written or verbal, whether express, implied or by operation of law.  Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the CFGI Equity Interests prior to making its bid, and that it has relied solely upon its own independent review and investigation in making its bid.

### XIII. Modification of Bidding Procedures

  The Chapter 11 Trustee may amend the Bidding Procedures at any time and from time to time in any manner consistent with the terms of the Plan and that he determines will best promote the goals of the bidding process, including extending or modifying any of the dates set forth herein.

### XIV. Return of Good Faith Deposit

  The Good Faith Deposits of all Qualified Bidders, including the Stalking Horse Bidder, if applicable, will be held in escrow by the Deposit Agent and while held in escrow will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder and the Next Highest Bidder until the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits of the other Qualified Bidders will be returned within five (5) business days of the entry of the Sale Order.  At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its/their Good Faith Deposit.  The Good Faith Deposit of the Next Highest Bidder will be released by the Chapter 11 Trustee five (5) business days after the closing of the Sale Transaction.  Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that will have accrued thereon.

## **EXHIBIT B**

**Auction and Sale Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |
| | : | |
| In re: | : | **Chapter 11** |
| | : | |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| **Debtor.** | : | |
| | : | **(Jointly Administered)** |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

        1.      On July 26, 2017, William A. Brandt, Jr., not individually but solely in his capacity as chapter 11 trustee (the "Trustee" or the "Chapter 11 Trustee") of CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore" or the "Debtor") in the above-captioned chapter 11 cases, by his attorneys, Skadden, Arps, Slate, Meagher & Flom LLP, filed with the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") the Chapter 11 Trustee's Motion for an Order (I) Approving Bidding Procedures, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief [Dkt. No.[●]] (the "Bidding Procedures Motion").

        2.      The Chapter 11 Trustee requests authority to sell (the "Sale" or "Sale Transaction") CFG Peru Singapore's direct equity interest in CFGI and indirect equity interests in several non-Debtor subsidiaries[2] of CFG Investments S.A.C. ("CFGI," and together with

---

[1]     The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

[2]     The entities comprising CFGI Equity Interests are CFG Peru Singapore's equity interest in CFGI as well as CFGI's direct or indirect equity interests in Inmmobiliara Y Constructora Pahk S.A.C. (Peru); J. Wiludi &

*(cont'd)*

interests in its non-Debtor subsidiaries the "CFGI Equity Interests") to the highest and best bidder.

3.       On [●], 2017, the Bankruptcy Court entered an order (the "Bidding Procedures Order") approving the auction and sale procedures (the "Bidding Procedures") for the CFGI Equity Interests.  Capitalized terms not otherwise defined herein have the meanings assigned to them in the Bidding Procedures Order or the Bidding Procedures.

4.       All interested parties are invited to contact the Chapter 11 Trustee's accountant, Development Specialists, Inc. at 110 East 42nd Street, Suite 1818, New York, New York 10017, (212) 425-4141, Attn: Joseph Luzinski (jluzinski@dsi.biz) and William A. Brandt, Jr. (bbrandt@dsi.biz) if they are interested in bidding on the CFGI Equity Interests.

5.       In the event that the Chapter 11 Trustee timely receives one or more Qualified Bids for the CFGI Equity Interests on or before **December 8, 2017 at 5:00 p.m. prevailing Eastern Time (the "Bid Deadline"),** an auction (the "Auction") for the CFGI Equity Interests shall be held on **December 13, 2017 at 10:00 a.m. (prevailing Eastern Time)** at the offices of counsel for the Chapter 11 Trustee, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036, or such other time as the Chapter 11 Trustee may notify all Qualified Bidders.  If no Qualified Bids with respect to the CFGI Equity Interests are received on or before the Bid Deadline, the Chapter 11 Trustee will not conduct the Auction with respect to the CFGI Equity Interests.

6.       The Chapter 11 Trustee will review and evaluate each Qualified Bid and determine which offer is the highest or otherwise best offer from among the Qualified Bids submitted at the auction (such bid, the "Successful Bid," and the Qualified Bidder submitting such Successful Bid, the "Successful Bidder"), which shall be subject to Bankruptcy Court approval.

7.       The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sale on **December [●], 2017 at 10:00 a.m. (prevailing Eastern Time)**, before the Honorable James L. Garrity, United States Bankruptcy Judge for the Southern District of New York, One Bowling Green, Courtroom 601, New York, NY 10004-1408, or as soon thereafter as counsel may be heard.

8.       Objections to the Sale Motion or any of the relief sought therein must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York, and (d) be filed with the Bankruptcy Court and served in accordance with the rules of the Bankruptcy Court upon (1) Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522 (Attn: Lisa Laukitis, Esq.) and Skadden, Arps, Slate, Meagher & Flom LLP, 500 Boylston Street Boston, Massachusetts

_____
*(cont'd from previous page)*
   Asociados S.A.C. (Peru); Copeinca AS (Norway); Copeinca International SLU (Spain); and Corporacion
   Pesquera Inca S.A.C. (Peru).

2

02116 (Attn: Liz Downing, Esq.) and at lisa.laukitis@skadden.com and elizabeth.downing@skadden.com; and (2) Development Specialists, Inc., 110 East 42nd Street, Suite 1818, New York, New York 10017 (Attn: William A. Brandt, Jr.) and Development Specialists, Inc. 500 West Cypress Creek Road, Suite 400, Fort Lauderdale, Florida 33309 (Attn: Joseph Luzinski), and at bbrandt@dsi.biz and jluzinksi@dsi.biz (the "Notice Parties") so as to be actually received by **no later than December [●], at 4:00 p.m. (prevailing Eastern Time)**.

9.      The Auction and/or Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Bankruptcy Court's calendar.

10.      **THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE SALE MOTION, THE SALE ORDER, AND THE SALE TRANSACTION.**

**[Remainder of Page Intentionally Left Blank]**

11.     This notice summarizes the relief requested by the Bidding Procedures Motion and the consequences thereof, and is qualified in its entirety by the Bidding Procedures Motion and Bidding Procedures Order as entered by the Bankruptcy Court.  You should refer to the Bidding Procedures Motion for the full scope of requested relief.  You may obtain a copy of any of the foregoing documents, the Sale Motion, and the Proposed Agreement free of charge by submitting a request to the Chapter 11 Trustee's claims and noticing agent, Epiq Systems, Inc. at epiqteamblue@epiqsystems.com or by accessing the case website available at http://dm.epiq11.com/#/case/CHF/info.

Dated:  New York, New York
　　　[●], 2017

　　　　　　　　　　　　SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

　　　　　　　　　By: _____
　　　　　　　　　　　Jay M. Goffman
　　　　　　　　　　　Lisa Laukitis
　　　　　　　　　　　Four Times Square
　　　　　　　　　　　New York, New York 10036-6522
　　　　　　　　　　　Telephone: (212) 735-3000
　　　　　　　　　　　Fax: (212) 735-2000

　　　　　　　　　　　-and-

　　　　　　　　　　　Elizabeth M. Downing (admitted *pro hac vice*)
　　　　　　　　　　　500 Boylston Street
　　　　　　　　　　　Boston, Massachusetts 02116
　　　　　　　　　　　Telephone: (617) 573-4800
　　　　　　　　　　　Fax: (617) 573-4870

　　　　　　　　　　　*Counsel for William A. Brandt, Jr.,*
　　　　　　　　　　　　*Chapter 11 Trustee*