WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matthew S. Barr
Marcia Goldstein
Gabriel A. Morgan

*Attorneys for Certain Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED** | : | **Case No. 16-11895 (JLG)** |
| **(CAYMAN),** *et al.,* | : | |
| | : | **(Jointly Administered)** |
| Debtors.[1] | : | |

-------------------------------------------------------------------x

### STATEMENT OF CERTAIN DEBTORS REGARDING<br>CHAPTER 11 TRUSTEE'S BIDDING PROCEDURES MOTION

China Fishery Group Limited (Cayman) and certain of its debtor affiliates, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),[2]

hereby submit this statement ("**Statement**") regarding the motion filed on June 26, 2017 by the

---

[1] The Debtors in these chapter 11 cases are as follows: China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore) ("**CFG Peru Singapore**"), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Golden Target Pacific Limited (BVI), Nouvelle Foods International Ltd. (BVI), Pacific Andes International Holdings (BVI) Limited, and Zhonggang Fisheries Limited, Admired Agents Limited (BVI), Chiksano Management Limited (BVI), Clamford Holding Limited (BVI), Excel Concept Limited (BVI), Gain Star Management Limited (BVI), Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited (BVI), Loyal Mark Holdings Limited (BVI), Metro Island International Limited (BVI), Mission Excel International Limited (BVI), Natprop Investments Limited, Pioneer Logistics Limited (BVI), Sea Capital International Limited (BVI), Shine Bright Management Limited (BVI), Superb Choice International Limited (BVI), and Toyama Holdings Limited (BVI).

[2] As used herein, the term "Debtors" shall not include CFG Peru Investments Pte. Limited (Singapore) unless otherwise stated.

chapter 11 trustee for CFG Peru Singapore (the "**Chapter 11 Trustee**") seeking entry of an order (I) approving bidding procedures, (II) approving the form and manner of notice, and (III) granting related relief [ECF No. 646] (the "**Motion**")[3] in connection with the proposed sale of certain assets of CFG Peru Singapore, and respectfully represent as follows:

<u>STATEMENT</u>

1.      In the Motion, the Chapter 11 Trustee seeks entry of an order approving the proposed auction and establishing bidding procedures in connection with the proposed sale ("**Sale**") of CFG Peru Singapore's equity interest in CFG Investments S.A.C.

2.      By filing this Statement, the Debtors seek only approval of certain targeted revisions to the Bidding Procedures (described below) that are necessary to ensure value is maximized for the benefit of as many estates and creditors above CFG Peru Singapore in the corporate structure—as mandated by duties owed by the estates' fiduciaries. When engaging with creditors and the Chapter 11 Trustee, the Debtors have consistently reiterated their support for the Sale Process, and the Debtors support approval of an appropriate Bidding Procedures Order. Indeed, the Debtors (i) have made public statements, including through certain Stock Exchange Announcements annexed hereto as **<u>Exhibit A</u>**, emphasizing that the Debtors intend to work with the Chapter 11 Trustee on a restructuring plan that "is complementary to, and in no way competitive with, the process being undertaken by the Chapter 11 trustee"; and (ii) have made clear when providing draft term sheets to the creditors (and the Chapter 11 Trustee) in connection with the third exclusivity order [ECF No. 583] that any proposed restructuring transactions are intended to establish a baseline sale price that complements and supports the

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

Chapter 11 Trustee's Sale Process and does not supersede it (unless the creditors and the Chapter 11 Trustee decide otherwise).

3.     Indeed, the Debtors' interests are aligned with the Chapter 11 Trustee's stated goal of maximizing the value of the Peruvian business and realizing the highest and best value possible for such assets for the benefit of the Debtors' estates and creditors.  *See* Motion ¶¶ 5, 29. By virtue of their corporate group structure, the Debtors expect that any residual value from the CFGI Equity Interests will provide a significant source of recoverable value for a number of the Debtors' estates in addition to CFG Peru Singapore.  Accordingly, the Debtors (and the Chapter 11 Trustee) are focused on ensuring there is a process established that maximizes the value of the Peruvian business for the benefit of all of the Debtors' estates and creditors.

4.     To that end, the Debtors engaged in discussions with the Chapter 11 Trustee regarding certain revisions to the Bidding Procedures.  The Debtors comments mainly focused on two concepts:   (i) providing the process flexibility to accept bids that provide for consideration other than just cash as currently contemplated, and (ii) providing the Debtors with consultation (not consent) rights on certain of the key and/or material decisions the Chapter 11 Trustee will make during the Sale Process and Auction, which the Debtors are confident will yield value for estates above CFG Peru Singapore in the corporate structure.  The Debtors' suggested changes are designed to assist in maximizing the benefit to as many of the Debtors' estates and creditors as possible.  Despite the good faith efforts of both the Debtors and the Chapter 11 Trustee, however, the parties did not reach an agreement on the Debtors' proposed revisions to the Bidding Procedures.  Annexed hereto as **Exhibit B** is a redline version of the Bidding Procedures Order reflecting the Debtors' proposed revisions to the form of order submitted with the Motion.

5.      In summary, the Debtors' proposed revisions fall into the following categories:

(i)      **Consultation –** The Bidding Procedures should be revised to provide that the Chapter 11 Trustee will conduct the Sale Process in consultation with the Debtors. While decision-making authority with respect to the Sale Process ultimately belongs with the Chapter 11 Trustee, recoveries for the Debtors' estates above CFG Peru Singapore, and the distinct set of creditors at those entities, are largely dependent on the outcome of any Sale. Accordingly, the Debtors should be afforded an opportunity to participate in the Sale Process.

(ii)      **Information –** The Bidding Procedures should be revised to provide that the Chapter 11 Trustee will provide the Debtors with information about the Sale. Again, given the position of various Debtors "above" CFG Peru Singapore in the corporate structure, the Debtors represent significant and distinct interests that have a stake in the outcome of any Sale. Accordingly, the Debtors should be afforded an opportunity to participate meaningfully in the Sale Process by receiving information in connection with that process.

(iii)      **Non-Cash Bids –** The Bidding Procedures should be revised to provide the Chapter 11 Trustee with flexibility on the form of bids and the overall design of the Sale Process. In particular, the Bidding Procedures should (a) provide that qualified bids may offer cash, equity, debt instruments, or a combination of the three, as consideration for the assets of CFG Peru Singapore, and (b) allow for the Sale to be implemented through a plan of reorganization, plan of liquidation, or outside of a chapter 11 plan, depending on which approach provides for the greatest benefit for as many of the Debtors' estates and creditors as possible. These proposed revisions do not prejudice the Chapter 11 Trustee or the Sale Process. Rather, they provide the Chapter 11 Trustee with more options regarding potential sale and bid structures, including the possibility of using a consensual chapter 11 plan of reorganization as a

4

baseline bid that would establish a floor price for the Peruvian business and thereby increase certainty around the Sale Process.  In addition, greater flexibility around potential bid structures should promote increased participation in the Sale Process, which, in conjunction with an established base line bid, facilitates the Chapter 11 Trustee's stated goal of maximizing value. Accordingly, the Chapter 11 Trustee should maintain flexibility with respect to the form of bids and the overall design of the Sale Process.

Dated:    August 11, 2017
          New York, New York

                                        /s/ Matthew  S. Barr
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007
                                        Matthew S. Barr
                                        Marcia Goldstein
                                        Gabriel A. Morgan

                                        *Attorneys for Certain Debtors
                                        and Debtors in Possession*

WEIL:\96239341\9\35234.0003

## **Exhibit A**

**Debtors' Stock Exchange Announcements**

*Hong Kong Exchanges and Clearing Limited and The Stock Exchange of Hong Kong Limited (the "**Stock Exchange**") take no responsibility for the contents of this announcement, make no representation as to its accuracy or completeness, and expressly disclaim any liability whatsoever for any loss howsoever arising from or in reliance upon the whole or any part of the contents of this announcement.*



## PACIFIC ANDES INTERNATIONAL HOLDINGS LIMITED
### 太平洋恩利國際控股有限公司
*(Incorporated in Bermuda with limited liability)*
**(STOCK CODE: 1174)**

# UPDATE ON SUSPENSION OF TRADING

This announcement is made by Pacific Andes International Holdings Limited (the "**Company**") pursuant to Rule 13.24A of the Rules Governing the Listing of Securities on the Stock Exchange.

## UPDATE ON RESTRUCTURING INTIATIVES

The board of directors (the "**Board**") of the Company wishes to provide an update on Chapter 11 proceedings currently before the United States Bankruptcy Court in the Southern District of New York (the "**NY Court**"), in addition to the steps taken by the Company to progress a comprehensive and consensual restructuring.

As announced previously, on 8 June 2017, pursuant to the Company's Chapter 11 filings, the NY Court granted an order (the "**Exclusivity Order**") extending until 1 November 2017 the period during which the Company has the exclusive right to file with the NY Court a plan of reorganization. In granting the order, the NY Court required that the Chapter 11 debtors meet the obligations set down in an exclusivity protocol, which lays out a time line for key milestones leading up to the filing of a disclosure statement and Chapter 11 plan on 29 September 2017. The Company has successfully complied with that time line.

In order to take that process forward, group and individual meetings were convened by the Company, its New York counsel and financial advisor during the week commencing 26 June 2017 in order to provide economic restructuring proposals to those creditors bound by confidentiality agreement. The key purpose was to obtain feedback from creditors that could help shape the restructuring plan. Importantly, in the course of the meetings, emphasis was given to the fact that the plan being developed by the Company is complementary to, and in no way competitive with, the process being undertaken by the Chapter 11 trustee. The Company's objective in making the Chapter 11 filings has always been to maximize economic return to all creditors, and that remains the focus of the restructuring planning.

In accordance with the exclusivity protocol, term sheets were distributed on 15 July 2017 to creditors which are before the NY Court and bound by confidentiality. The term sheets outline the principal terms of a proposed financial restructuring of the debtors under a joint Chapter 11 plan. The intention is that the term sheets be the focus of negotiations with creditors to develop as much consensus as possible in advance of the debtors' deadline under the Exclusivity Order to file the restructuring plan by 29 September 2017. Further meetings with creditors have been held, and will continue to be held to gain feedback on the term sheets and carry forward the process of restructuring plan development.

As of the date of this announcement, the Company has not entered into any binding agreement with any party with respect to the financial restructuring of the Company and its subsidiaries.

On 24 July 2017, the Singapore High Court (the "**Court**") heard an *ex parte* application that the appointment of William A. Brandt, Jr (the "**Chapter 11 Trustee**"), as Chapter 11 trustee of an indirect subsidiary of the Company, CFG Peru Investments Pte. Ltd. ("**CFG Peru Singapore**"), be recognized in Singapore. The Court granted the recognition and held that the Chapter 11 Trustee shall have the like powers in relation to the property and assets of CFG Peru Singapore located in Singapore (and the proceeds thereof) as he would have under the US Bankruptcy Code, provided that such powers are available to a judicial manager appointed under the Companies Act (Chapter 50 of Singapore). The Court also held that the Chapter 11 Trustee be recognized as the foreign representative of CFG Peru Singapore and be entrusted with the administration and realization of all or any part of the property and assets of CFG Peru Singapore located in Singapore. In addition, the Court ordered that, for so long as the CFG Peru Singapore Chapter 11 proceedings (including any extensions thereto) are in force, except with the consent of the Chapter 11 Trustee, or with the leave of the Court and (where the Court gives leave) subject to such terms as the Court may impose:

(1)　no receiver, manager, receiver and manager, judicial manager, or administrative receiver of all or any of the CFG Peru Singapore's property, assets or undertakings shall be appointed;

(2)   no actions or proceedings (whether in rem or in personam or otherwise), including winding up proceedings or arbitration, and no arrest, attachment, sequestration, seizure, detention, enforcement, execution or other legal process shall be commenced or continued and no distress may be levied against the CFG Peru Singapore or its property, assets and undertakings; and

(3)   no steps shall be taken to enforce security over the CFG Peru Singapore's property or assets or to repossess any goods under any hire-purchase agreement, chattels leasing agreement or retention of title agreement.

The Company will make further announcements as material developments arise.

**CONTINUED SUSPENSION OF TRADING**

At the request of the Company, trading in the shares of the Company (the "**Shares**") on the Stock Exchange was halted from 9:00 a.m. on 26 November 2015 (automatically converted to "**being suspended**" thereafter), and will remain suspended until further notice. Shareholders and potential investors of the Company should exercise caution when dealing in the Shares.

The Company will keep the public informed of the latest developments by making further announcement(s) as and when appropriate.

By Order of the Board
**Pacific Andes International Holdings Limited**
**Ng Puay Yee (Jessie)**
*Managing Director*

Hong Kong, 28 July 2017

*As at the date of this announcement, the executive directors of the Company are Ms. Ng Puay Yee (Jessie), Mr. Ng Joo Kwee and Mr. Ng Joo Puay, Frank, the non-executive director of the Company is Madam Teh Hong Eng whilst the independent non-executive directors of the Company are Mr. Lew V Robert, Mr. Tao Kwok Lau, Clement and Mr. Nguyen Van Tu, Peter.*

**PACIFIC ANDES RESOURCES DEVELOPMENT LIMITED**
(Incorporated in Bermuda with limited liability)
(the "**Company**")

───────────────────────────────────────────────────────

### UPDATE ON CHAPTER 11 PROCESS

───────────────────────────────────────────────────────

The board of directors (the "**Board**") of the Company wishes to provide an update on Chapter 11 proceedings currently before the United States Bankruptcy Court in the Southern District of New York (the "**NY Court**"), in addition to the steps taken by the Company to progress a comprehensive and consensual restructuring.

On 8 June 2017, pursuant to the Company's Chapter 11 filings, the NY Court granted an order (the "**Exclusivity Order**") extending until 1 November 2017 the period during which the Company has the exclusive right to file with the NY Court a plan of reorganization. In granting the order, the NY Court required that the Chapter 11 debtors meet the obligations set down in an exclusivity protocol, which lays out a time line for key milestones leading up to the filing of a disclosure statement and Chapter 11 plan on 29 September 2017.  The Company has successfully complied with that time line.

One of the milestones in the exclusivity protocol was to provide to certain lenders before the NY Court, subject to non-disclosure requirements, a report prepared by RSM Corporate Advisory (Hong Kong) Limited ("**RSM**") regarding its forensic review no later than 15 June 2017. In accordance with the protocol, a draft interim forensic report was delivered by RSM to the Independent Review Committees of Pacific Andes International Holdings and Pacific Andes Resources Development on 15 June 2017, subject to strict confidentiality agreement. The report delivered was very much an interim draft and RSM's forensic review continues to be on-going.  As the review is being conducted independently, the timing of its completion is not within the control of the Company. An announcement of the findings of RSM's review will be made following its completion.

Under the Exclusivity Order, the Company and other Chapter 11 debtors across the broader Pacific Andes Group are required to develop and file a Chapter 11 plan.  In order to take that process forward, group and individual meetings were convened by the Company, its New York counsel and financial advisor during the week commencing 26 June 2017 in order to provide economic restructuring proposals to those creditors bound by confidentiality agreement.  The key purpose was to obtain feedback from creditors that could help shape the restructuring plan.  Importantly, in the course of the meetings, emphasis was given to the fact that the plan being developed by the Company is complementary to, and in no way competitive with, the process being undertaken by the Chapter 11 trustee.  The Company's objective in making the Chapter 11 filings has always been to maximize economic return to all creditors, and that remains the focus of the restructuring planning.

In accordance with the exclusivity protocol, term sheets were distributed on 15 July 2017 to creditors which are before the NY Court and bound by confidentiality.  The term sheets outline the principal terms of a proposed financial restructuring of the debtors under a joint

Chapter 11 plan. The intention is that the term sheets be the focus of negotiations with creditors to develop as much consensus as possible in advance of the debtors' deadline under the Exclusivity Order to file the restructuring plan by 29 September 2017.  Further meetings with creditors have been held, and will continue to be held to gain feedback on the term sheets and carry forward the process of restructuring plan development.

As of the date of this announcement, the Company has not entered into any binding agreement with any party with respect to the financial restructuring of the Company and its subsidiaries.

On 24 July 2017, the Singapore High Court (the "**Court**") heard an *ex parte* application that the appointment of William A. Brandt, Jr (the "**Chapter 11 Trustee**"), as Chapter 11 trustee of an indirect subsidiary of the Company, CFG Peru Investments Pte. Ltd. ("**CFG Peru Singapore**"), be recognized in Singapore.  The Court granted the recognition and held that the Chapter 11 Trustee shall have the like powers in relation to the property and assets of CFG Peru Singapore located in Singapore (and the proceeds thereof) as he would have under the US Bankruptcy Code, provided that such powers are available to a judicial manager appointed under the Companies Act (Chapter 50 of Singapore).  The Court also held that the Chapter 11 Trustee be recognized as the foreign representative of CFG Peru Singapore and be entrusted with the administration and realization of all or any part of the property and assets of CFG Peru Singapore located in Singapore.  In addition, the Court ordered that, for so long as the CFG Peru Singapore Chapter 11 proceedings (including any extensions thereto) are in force, except with the consent of the Chapter 11 Trustee, or with the leave of the Court and (where the Court gives leave) subject to such terms as the Court may impose:

(1)  no receiver, manager, receiver and manager, judicial manager, or administrative receiver of all or any of the CFG Peru Singapore's property, assets or undertakings shall be appointed;

(2)  no actions or proceedings (whether in rem or in personam or otherwise), including winding up proceedings or arbitration, and no arrest, attachment, sequestration, seizure, detention, enforcement, execution or other legal process shall be commenced or continued and no distress may be levied against the CFG Peru Singapore or its property, assets and undertakings; and

(3)  no steps shall be taken to enforce security over the CFG Peru Singapore's property or assets or to repossess any goods under any hire-purchase agreement, chattels leasing agreement or retention of title agreement.

The Company will make further announcements as material developments arise.


On behalf of the Board

Ng Puay Yee (Jessie)
Executive Chairman

28 July 2017

# CHINA FISHERY GROUP LIMITED

(Incorporated in the Cayman Islands)

---

### Update on Chapter 11 Process

---

The board of directors (the "**Board**") of China Fishery Group Limited (the "**Company**") wishes to provide an update on Chapter 11 proceedings currently before the United States Bankruptcy Court in the Southern District of New York (the "**NY Court**"), in addition to the steps taken by the Company to progress a comprehensive and consensual restructuring.

On 8 June 2017, pursuant to the Company's Chapter 11 filings, the NY Court granted an order (the "**Exclusivity Order**") extending until 1 November 2017 the period during which the Company has the exclusive right to file with the NY Court a plan of reorganization. In granting the order, the NY Court required that the Chapter 11 debtors meet the obligations set down in an exclusivity protocol, which lays out a time line for key milestones leading up to the filing of a disclosure statement and Chapter 11 plan on 29 September 2017.  The Company has successfully complied with that time line.

One of the milestones in the exclusivity protocol was to provide to certain lenders before the NY Court, subject to non-disclosure requirements, a report prepared by RSM Corporate Advisory (Hong Kong) Limited ("**RSM**") regarding its forensic review no later than 15 June 2017. In accordance with the protocol, a draft interim forensic report was delivered by RSM to the Independent Review Committees of Pacific Andes International Holdings and Pacific Andes Resources Development on 15 June 2017, subject to strict confidentiality agreement. The report delivered was very much an interim draft and RSM's forensic review continues to be on-going.  As the review is being conducted independently, the timing of its completion is not within the control of the Company. An announcement of the findings of RSM's review will be made following its completion.

Under the Exclusivity Order, the Company and other Chapter 11 debtors across the broader Pacific Andes Group are required to develop and file a Chapter 11 plan.  In order to take that process forward, group and individual meetings were convened by the Company, its New York counsel and financial advisor during the week commencing 26 June 2017 in order to provide economic restructuring proposals to those creditors bound by confidentiality agreement.  The key purpose was to obtain feedback from creditors that could help shape the restructuring plan.  Importantly, in the course of the meetings, emphasis was given to the fact that the plan being developed by the Company is complementary to, and in no way competitive with, the process being undertaken by the Chapter 11 trustee.  The Company's objective in making the Chapter 11 filings has always been to maximize economic return to all creditors, and that remains the focus of the restructuring planning.

In accordance with the exclusivity protocol, term sheets were distributed on 15 July 2017 to creditors which are before the NY Court and bound by confidentiality.  The term sheets outline the principal terms of a proposed financial restructuring of the debtors under a joint Chapter 11 plan. The intention is that the term sheets be the focus of negotiations with creditors to develop as much consensus as possible in advance of the debtors' deadline under the Exclusivity Order to file the restructuring plan by 29 September 2017.  Further meetings with creditors have been held, and will continue to be held to gain feedback on the term sheets and carry forward the process of restructuring plan development.

As of the date of this announcement, the Company has not entered into any binding agreement with any party with respect to the financial restructuring of the Company and its subsidiaries.

On 24 July 2017, the Singapore High Court (the "**Court**") heard an *ex parte* application that the appointment of William A. Brandt, Jr (the "**Chapter 11 Trustee**"), as Chapter 11 trustee of CFG Peru Investments Pte. Ltd. ("**CFG Peru Singapore**") be recognized in Singapore.  The Court granted the recognition and held that the Chapter 11 Trustee shall have the like powers in relation to the property and assets of CFG Peru Singapore located in Singapore (and the proceeds thereof) as he would have under the US Bankruptcy Code, provided that such powers are available to a judicial manager appointed under the Companies Act (Chapter 50 of Singapore).  The Court also held that the Chapter 11 Trustee be recognized as the foreign representative of CFG Peru Singapore and be entrusted with the administration and realization of all or any part of the property and assets of CFG Peru Singapore located in Singapore.  In addition, the Court ordered that, for so long as the CFG Peru Singapore Chapter 11 proceedings (including any extensions thereto) are in force, except with the consent of the Chapter 11 Trustee, or with the leave of the Court and (where the Court gives leave) subject to such terms as the Court may impose:

(1) no receiver, manager, receiver and manager, judicial manager, or administrative receiver of all or any of the CFG Peru Singapore's property, assets or undertakings shall be appointed;

(2) no actions or proceedings (whether in rem or in personam or otherwise), including winding up proceedings or arbitration, and no arrest, attachment, sequestration, seizure, detention, enforcement, execution or other legal process shall be commenced or continued and no distress may be levied against the CFG Peru Singapore or its property, assets and undertakings; and

(3) no steps shall be taken to enforce security over the CFG Peru Singapore's property or assets or to repossess any goods under any hire-purchase agreement, chattels leasing agreement or retention of title agreement.

The Company will make further announcements as material developments arise.

By Order of the Board

Ng Puay Yee (Jessie)
Executive Director and Chief Executive Officer

28 July 2017

**<u>Exhibit B</u>**

**Revised Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** *et al.*, | : | **Case No. 16-11895 (JLG)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |
| | : | |
| In re: | : | **Chapter 11** |
| | : | |
| **CFG Peru Investments Pte. Limited (Singapore),** Debtor. | : | **Case No. 16-11914 (JLG)** |
| | : | |
| | : | **(Jointly Administered)** |
| | : | |

**ORDER (I) APPROVING BIDDING PROCEDURES, (II) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the Motion of the Chapter 11 Trustee for an Order (i) Approving Bidding Procedures; (ii) Approving the Form and Manner of Notice Thereof; and (iii) Granting Related Relief (the "Motion"),[2] filed by the Chapter 11 Trustee to CFG Peru Singapore, William A. Brandt, Jr.; the Court having reviewed the Motion and having considered the statements of counsel and the evidence adduced with respect to the Motion at a

---

[1]   The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

[2]   Capitalized terms not otherwise defined herein have the meanings given to them in the Motion or the applicable exhibits to the Motion, or, if not defined therein, the Bidding Procedures.

hearing before the Court (the "Hearing"), if any; and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (iv) notice of the Motion and the Hearing was sufficient under the circumstances; after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors; and good and sufficient cause having been shown;

**IT IS HEREBY FOUND AND CONCLUDED, as follows:**

A.     The Chapter 11 Trustee has offered good and sufficient reasons for, and the best interests of its estate will be served by, this Court granting the Motion to the extent provided in this Order, including approval of (i) the Bidding Procedures, attached hereto as Exhibit 1, and (ii) the manner of notice of the Auction and Sale Hearing described in the Motion.

B.     The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

C.     The proposed notice of the Auction and Sale and the other matters to be considered at the Sale Hearing, substantially in the form attached to the Motion as Exhibit B (the "Auction and Sale Hearing Notice") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, Auction, Sale Motion, Sale Hearing, and Sale.

2

D.      No further or other notice beyond that described in the foregoing paragraphs is required in connection with the foregoing.

E.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the CFGI Equity Interests.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.  Any objections or responses to the Motion that have not been withdrawn, waived, or settled prior to the entry of this order are hereby OVERRULED.

2.      The Bidding Procedures, attached hereto as Exhibit 1, are hereby approved, are incorporated herein by reference and shall govern all bids and proceedings relating to the CFGI Equity Interests.

3.      The Chapter 11 Trustee, in consultation with the Debtors,[3] is authorized but not directed to establish the Sale Threshold on or before October 16, 2017, which Sale Threshold may be (i) a minimum cash bid or (ii) the terms of a proposed chapter 11 plan, among other things.  To the extent the Sale Threshold is established, the Trustee shall file notice of the Sale Threshold with the Court and provide notice of the Sale Threshold to the Bidding Procedures Motion Notice Parties and Interested Parties.

4.      If more than one Qualified Bid is received by the Bid Deadline as set forth in the Auction and Sale Hearing Notice and in accordance with the Bidding Procedures,

---

[3] As used herein, the term "Debtors" shall not include CFG Peru Singapore unless otherwise stated.

3

the Chapter 11 Trustee will conduct the Auction.  If one or fewer Qualified Bids are received by the Bid Deadline, the Chapter 11 Trustee shall not conduct the Auction.

5.      The Auction, if necessary pursuant to the terms of this Order and the Bidding Procedures, will take place at 10:00 a.m. (Eastern Time) on the date set forth in the Auction and Sale Hearing Notice, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522, or such other time as the Chapter 11 Trustee may notify Qualified Bidders who have submitted Qualified Bids.

6.      Each bidder participating at the Auction will be required to confirm in writing, that (a) it has not engaged in any collusion with respect to the bidding process and (b) its bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

7.      The Auction will be conducted openly and will be transcribed.  Only the Chapter 11 Trustee, the Debtors, any Stalking Horse Bidder, and any other Qualified Bidder, in each case, along with their respective representatives and counsel, may attend the Auction.[4]

8.      As soon as reasonably practicable following the conclusion of the Auction, the Chapter 11 Trustee shall file copies of the Successful Bid and the Next Highest Bid with the Court.

9.      Final approval of the Sale shall be considered by the Court at the Sale Hearing on a date to be set by the Auction and Sale Hearing Notice.  The Sale Hearing may

---

[4] NTD:  Chapter 11 Trustee to consider other attendees.

WEIL:\96234000\5\35234.0003

be continued from time to time by the Court without further notice or with limited or

shortened notice to parties other than the announcement of the adjourned date at the Sale

Hearing or any continued hearing.

10.    Promptly after the conclusion of the Auction, but no later than before the

Sale Hearing, the Chapter 11 Trustee shall file the proposed Sale Order, which shall include

approval of the Sale as agreed upon between the Chapter 11 Trustee and the Successful

Bidder.

11.    The Chapter 11 Trustee reserves the right to, at a later date, file a

separate motion requesting that the Court approve a Stalking Horse Agreement, if such

agreement is executed, and any bid protections including a breakup fee and/or expense

reimbursement, that may be contained in the Stalking Horse Agreement.

12.    The Chapter 11 Trustee reserves the right to amend, in consultation with

the Debtors, the dates and deadlines set forth in the Bidding Procedures.

13.    The Chapter 11 Trustee reserves the right to seek, in consultation with

the Debtors, Court approval of the Sale Transaction alternatively outside the context of a Plan

if he determines that it is in the best interest of the estate of CFG Peru Singapore.

14.    The Auction and Sale Hearing Notice is sufficient to provide effective

notice to all interested parties of the Bidding Procedures, Auction, Sale Motion, Sale Hearing,

and Sale pursuant to Bankruptcy Rules 2002 and 6004, Local Rule 6004-1, and the Sale

Guidelines.

15.    As soon as reasonably practicable, but in no event later than twenty-one

(21) days before the ~~Sale Hearing~~Auction, the Chapter 11 Trustee shall serve the Auction and

Sale Hearing Notice and form of Sale Order by first class mail, postage prepaid, and/or via

5

overnight mail, facsimile, hand delivery or electronic transmission upon the Bidding Procedures Motion Notice Parties.

16.     As soon as reasonably practicable, but in no event later than twenty-one (21) days before the ~~Sale Hearing~~Auction, the Chapter 11 Trustee shall publish the Auction and Sale Hearing Notice (a) one time in *The Wall Street Journal* (national and international editions), *El Comercio*, a leading newspaper in Peru, the *Economist* (Hong Kong edition), and the *Straits Times*, a leading newspaper in Singapore, and (b) publish the Auction and Sale Hearing Notice on the case website at http://dm.epiq11.com/#/case/CHF/info.

17.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

18.     To the extent the provisions of this Order are inconsistent with the provisions of the Motion, the provisions of this Order shall control and govern.

19.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

20.     The Chapter 11 Trustee is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

21.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

Dated:  New York, New York

_____, 2017

_____
HONORABLE JAMES L. GARRITY

6

WEIL:\96234000\5\35234.0003

## EXHIBIT 1 TO BIDDING PROCEDURES ORDER

**Bidding Procedures**

EXHIBIT 1 TO BIDDING
PROCEDURES ORDER

## BIDDING PROCEDURES[1]

By motion (the "Motion") dated **July 26**, **2017**, CFG Peru Investments Pte. Ltd. (Singapore) ("CFG Peru Singapore"), sought, among other things, approval of the process and procedures for soliciting bids for and obtaining approval of one or more transactions for the sale (each, a "Sale Transaction") of CFG Peru Singapore's direct equity interest in CFG Investments S.A.C. ("CFGI") and indirect equity interests in several non-Debtor subsidiaries of CFGI (together, with CFGI, the "CFGI Equity Interests").[2]

On August [●], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order") that, among other things, authorized the Chapter 11 Trustee to pursue the Sale Transaction through the bidding procedures set forth below, which may be implemented through a section 363 sale process or chapter 11 plan effectuating a sale or reorganization (the "Bidding Procedures").

The Sale Transaction will be subject to the approval of the Bankruptcy Court, which approval shall be sought following the confirmation of ~~the~~a ~~C~~chapter 11 ~~Trustee's P~~plan ~~of Liquidation~~ (the "Plan"), to be filed with the Bankruptcy Court.   If the Plan is not confirmed, the Chapter 11 Trustee reserves the right to proceed with the Sale Transaction prior to filing or confirmation of the Plan, or alternatively, outside the context of the Plan if he reasonably determines~~,~~ in consultation with the Debtors, that it is in the best interest of the estate of CFG Peru Singapore.

A hearing by the Bankruptcy Court on the approval of the Sale Transaction is currently scheduled for **December [●]**, **2017**, at **11:00 a.m.** (Eastern Time) (the "Sale Hearing").

### Important Dates and Contact Information

The Chapter 11 Trustee will:

---

[1]    Capitalized terms not otherwise defined herein have the meanings given to them in the Bidding Procedures Order (as defined below

[2]    The entities comprising CFGI Equity Interests are CFG Peru Singapore's equity interest in CFGI as well as CFGI's direct or indirect equity interests in Inmmobiliara Y Constructora Pahk S.A.C. (Peru); J. Wiludi & Asociados S.A.C. (Peru);  Copeinca AS (Norway); Copeinca International SLU (Spain); and Corporacion Pesquera Inca S.A.C. (Peru) ("Copeinca").

(A)     assist Approved Bidders (as defined below) in conducting their respective due diligence investigations and accept Qualified Bids (as defined below) until the deadline for receipt of Qualified Bids, which is 5:00 p.m. (Eastern Time) on **December 8, 2017**;

(B)     negotiate with Qualified Bidders (as defined below) in preparation for the Auction scheduled to begin at 10:00 a.m. (Eastern Time) on **December 13, 2017**; and

(C)     select the Successful Bidder (as defined below) and seek authority to consummate the Sale Transaction with such Successful Bidder at a hearing (the "Sale Hearing") to be held at **11:00 a.m.** on **December [●], 2017**, or such other date and time set by the Court.

Information that must be provided to the "**Notice Parties**" under the Bidding Procedures must be provided to the following parties: (1) Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036-6522 (Attn: Lisa Laukitis, Esq.) and Skadden, Arps, Slate, Meagher & Flom LLP, 500 Boylston Street Boston, Massachusetts 02116 (Attn: Liz Downing, Esq.) and at lisa.laukitis@skadden.com and elizabeth.downing@skadden.com; ~~and~~ (2) Development Specialists, Inc., 110 East 42nd Street, Suite 1818, New York, New York 10017 (Attn: William A. Brandt, Jr.) and Development Specialists, Inc. 500 West Cypress Creek Road, Suite 400, Fort Lauderdale, Florida 33309 (Attn: Joseph Luzinski), and at bbrandt@dsi.biz and jluzinksi@dsi.biz~~.~~; and (3) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Matthew S. Barr, Esq. and Gabriel A. Morgan, Esq.) and at matt.barr@weil.com and gabriel.morgan@weil.com.

To the extent these Bidding Procedures require the Chapter 11 Trustee to consult with any party in connection with making a determination or taking an action, or in connection with any other matter related to the Bidding Procedures, the Auction, or the Sale Transaction, the Chapter 11 Trustee shall do so in a regular and timely manner prior to making such determination or taking such action.

**Permitted Asset Groups**

The Chapter 11 Trustee will only consider bids on all of the CFGI Equity Interests.

**Further information on the CFGI Equity Interests being offered for sale pursuant to the Bidding Procedures is available upon request from Development Specialists, Inc., 110 East 42nd Street, Suite 1818, New York, New York 10017, (212) 425-4141, Attn: Joseph Luzinski (jluzinski@dsi.biz) and William A. Brandt, Jr. (bbrandt@dsi.biz).**

**Participation Requirements**

Unless otherwise ordered by the Court for cause shown, each interested person or entity that has affirmatively indicated an interest in participating in the Sale Process (each, an "**Interested Party**") must provide the Chapter 11 Trustee with the following in the first

2

instance in order to gain initial access to the Chapter 11 Trustee's confidential electronic data room (the "Data Room") and information about the Sale Process:

(A)    an executed non-disclosure agreement in form and substance acceptable to the Chapter 11 Trustee; and

(B)    initial reasonable demonstration (to be evaluated ~~in~~by the Trustee~~'s sole discretion~~in consultation with the Debtors) of financial ability to close the transaction; provided, however, that the Trustee reserves the right, in his sole discretion, to waive this requirement with respect to a specific Interested Party if he determines such waiver is in the best interest of the estate and the Sale Process.

If the Chapter 11 Trustee, in consultation with the Debtors, determines that an Interested Party has complied with the requirements above, the Chapter 11 Trustee will inform such Interested Party that it is an "Approved Bidder."  No later than two business days after the Chapter 11 Trustee makes that determination, he will provide to such Approved Bidder: (1) an information package containing information and financial data with respect to the CFGI Equity Interests; (2) an electronic copy of a form of agreement (the "Proposed Agreement")[3]; and (3) access to confidential information in the Data Room (collectively, the "Approved Bidder Materials").  The Chapter 11 Trustee will also provide the Debtors with copies of the Approved Bidder Materials.  The Chapter 11 Trustee may, but shall not be required to, disclose ~~its~~the identity of an Approved Bidder to the Stalking Horse Bidder, if applicable, ~~the Notice Parties (as defined in the Bidding Procedures and described below) and~~or other Approved Bidders.  For the avoidance of doubt, the Chapter 11 Trustee shall disclose the identity of all Interested Parties and Approved Bidders to the Debtors.

**Due Diligence**

Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Chapter 11 Trustee will provide any Approved Bidder with such due diligence access or additional information as may be reasonably requested by the Approved Bidder that the Chapter 11 Trustee determines to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to Joseph Luzinksi of DSI at jluzinski@dsi.biz.  In the event that any such due diligence material is in written form and has not previously been provided to any other Approved Bidder or the Debtors, the Chapter 11 Trustee will simultaneously provide such materials to all Approved Bidders and the Debtors.

Unless otherwise determined by the Chapter 11 Trustee, the availability of additional due diligence to an Approved Bidder will cease if (1) the Approved Bidder does not become a Qualified Bidder by the Bid Deadline, or (2) the bidding process is terminated.  Except as

---

[3]    Copies of the Proposed Agreement will be filed with the Court on or around October 2, 2017.

3

provided above, neither the Chapter 11 Trustee nor his representatives will be obligated to furnish any information of any kind whatsoever relating to the CFGI Equity Interests to any party.

### Diligence Limitations With Respect to Commercially Sensitive Information

To preserve trade secrets or confidential research, development or commercial information, the Chapter 11 Trustee may limit the information provided to any Approved Bidder that is, in the Chapter 11 Trustee's judgment, a competitor of CFG Peru Singapore or any of its direct or indirect subsidiaries. Such limitations may include the redaction of certain information or the establishment of access to information on a "professionals' eyes only" basis. To the extent that the Chapter 11 Trustee determines that any limitation should be imposed, he will advise the Approved Bidder of the extent of any such limitation in writing. If the Approved Bidder contests any such limitation, it may seek relief from the Bankruptcy Court.

### Bid Deadline

An Approved Bidder that desires to make a bid shall deliver written and electronic copies of its bid in both PDF and WORD format to the Notice Parties so as to be received no later than 5:00 p.m. (Eastern Time) on **December 8, 2017** (the "Bid Deadline").

### Form and Content of a Qualified Bid

A bid is a signed document from an Approved Bidder that provides, at a minimum, that:

(A)     the bid offers to purchase the CFGI Equity Interests at the purchase price and upon the terms and conditions set forth in the ~~asset~~stock purchase agreement enclosed therewith, marked to show any proposed amendments and modifications to the Proposed Agreement, or the Stalking Horse Agreement, as applicable (the "Marked Agreement"); provided, however, that the Chapter 11 Trustee may, in consultation with the Debtors, accept bids that offer non-cash consideration if he reasonably determines that it is in the best interest of the estate of CFG Peru Singapore;

(B)     the bid provides that the Approved Bidder has made or will make all necessary filings under applicable regulatory, antitrust, and other laws, if applicable, and pay the fees associated with such filings;

(C)     the bid is accompanied by a copy of a board resolution or similar document demonstrating the authority of the Approved Bidder to make a binding and irrevocable bid;

(D)     the bid is formal, binding, and unconditional (except for those conditions expressly set forth in the applicable Marked Agreement) and is not subject to any due diligence or financing contingency and is irrevocable until the earlier of

WEIL:\96234000\1\35234.0003WEIL:\96234000\5\35234.0003

April 2, 2018, or the first business day following the closing of the Sale Transaction;

(E)    the bid (other than a bid pursuant to a Stalking Horse Agreement, if applicable) is not entitled to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and includes a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to the bid;

(F)    the bid is accompanied by written evidence of available cash, a written commitment for financing signed by a bank (not subject to any conditions other than those the Trustee finds to be acceptable) in the form of a commitment letter signed by a bank or other financial institution or such other evidence of ability to consummate the contemplated sale transaction as the Chapter 11 Trustee may reasonably request;

(G)    to the extent that a Sale Threshold has been established, the purchase price set forth in the bid is equal to or higher or otherwise better than such Sale Threshold;

(H)    the bid is accompanied by a deposit, by wire transfer, with an escrow agent selected by the Chapter 11 Trustee (the "Deposit Agent") equal to 10% of the cash purchase price set forth in the Marked Agreement (a "Good Faith Deposit"); and

(I)    if a Stalking Horse Agreement has been approved by the Court, the terms of the bid are not materially more burdensome or conditional than the terms of such Stalking Horse Agreement or any such increase in burdensomeness or conditionality is offset by a material increase in the purchase price, which determination may take into consideration: (1) whether the bid requires any indemnification of the bidder on terms that are materially more burdensome than the terms of the Stalking Horse Agreement, if applicable; (2) whether the bid does not provide sufficient cash consideration to pay transfer taxes, or other cash costs of the transaction (including professionals' fees, breakup fee, or expense reimbursement, if any); (3) any risks associated with regulatory approvals that may be required before such bid could be consummated; and (4) any other factors the Chapter 11 Trustee may deem relevant.

The Chapter 11 Trustee will have the right to determine, in consultation with the Debtors, that a bid that satisfies all of the foregoing requirements is a "Qualified Bid." Each bidder that has submitted a Qualified Bid will be considered a "Qualified Bidder."

If a bid is received and, in the Chapter 11 Trustee's judgment, it is not clear whether the bid is a Qualified Bid, the Chapter 11 Trustee may consult with the relevant Approved Bidder and seek additional information in an effort to establish whether or not such bid is a Qualified Bid.

5

A Qualified Bid and any bids at the Auction may be valued by the Chapter 11 Trustee, in consultation with the Debtors, based upon such factors as: (1) the cash purchase price set forth in the Qualified Bid; (2) the net economic effect upon the Debtor's' bankruptcy estates after any payment of a bid protection, including a breakup fee and expense reimbursement, if applicable; (3) contingencies with respect to the applicable Sale Transaction and the likelihood of closing the proposed Sale Transaction without delay, and any incremental costs to the Debtor from any closing delays; (4) the ability to obtain any and all necessary antitrust and other regulatory approvals; and (5) any other factors the Chapter 11 Trustee may deem relevant.

The Chapter 11 Trustee may, but shall not be required to, share copies of some or all of the Qualified Bids with other Qualified Bidders bidding on the CFGI Equity Interests (with such distribution permissible by electronic means, including posting to the Data Room). For the avoidance of doubt, the Chapter 11 Trustee shall share copies of all Qualified Bids with the Debtors. The Chapter 11 Trustee reserves the right to impose, in consultation with the Debtors, additional terms and conditions with respect to all Qualified Bids.

**Baseline Bid**

Taking into account any breakup fee or expense reimbursement pursuant to a Stalking Horse Agreement, if any, the Chapter 11 Trustee will select, in consultation with the Debtors, what he determines to be the highest or otherwise best Qualified Bid for the CFGI Equity Interests (the "Baseline Bid"), which may be the Stalking Horse Agreement, if applicable. As soon as practicable, the Chapter 11 Trustee will identify the Baseline Bid to all Qualified Bidders.

**Auction**

If more than one Qualified Bid is received by the Bid Deadline for the CFGI Equity Interests, the Chapter 11 Trustee will conduct the Auction for the CFGI Equity Interests.

The Auction will take place at 10:00 a.m. (Eastern Time) on **December 13, 2017**, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, located at Four Times Square, New York, New York 10036-6522, or such other time as the Chapter 11 Trustee may notify all Qualified Bidders. and the Debtors. Only the Chapter 11 Trustee, the Debtors, any Stalking Horse Bidder, and any other Qualified Bidder, in each case, along with their respective representatives and counsel, may attend the Auction.[4] Only the Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Chapter 11 Trustee may impose in good faith and in consultation with the Debtors.

---

[4] NTD: Chapter 11 Trustee to consider other attendees.

WEIL:\96234000\1\35234.0003WEIL:\96234000\5\35234.0003

At the Auction, participants will be permitted to increase their bids. Bidding will start at the purchase price and other terms proposed in the applicable Baseline Bid, and will proceed thereafter in $~5,000,000 increments (the "Minimum Overbid"). The Chapter 11 Trustee reserves the right to change any Minimum Overbid prior to or during the Auction.

If there is a Stalking Horse Bidder, such bidder will be entitled to a "credit" in the amount of the breakup fee, if any, and the full amount of the expense reimbursement, if any, to be counted towards its bid, such that the cash and other consideration proposed by the Stalking Horse Bidder plus the breakup fee and expense reimbursement, if any, must exceed the most recent bid by at least the Minimum Overbid amount.

The Chapter 11 Trustee may adopt additional rules for the Auction at any time that the Chapter 11 Trustee determines to be appropriate to promote the goals of the bidding process and are not inconsistent with these Bidding Procedures. The identity of each bidder at the Auction will be fully disclosed to all other ~~bidders~~attendees and all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other ~~bidders~~attendees throughout the entire Auction, and each Qualified Bidder will be permitted what the Chapter 11 Trustee determines to be an appropriate amount of time to respond to the previous bid at the Auction.

The Chapter 11 Trustee reserves the right to, and may reject, in consultation with the Debtors, at any time before entry of the Sale Order (defined below) any bid that, in the Chapter 11 Trustee's judgment, is: (1) inadequate or insufficient; (2) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the Sale Transaction; or (3) contrary to the best interests of the Debtor and its estate. In doing so, the Chapter 11 Trustee may take into account the factors set forth in Section VII above regarding the contents of a Qualified Bid.

Prior to the conclusion of the Auction, the Chapter 11 Trustee will: (1) review and evaluate each bid made at the Auction and other financial and contractual terms and other relevant factors, including those factors affecting the speed and certainty of consummating the relevant Sale Transaction; (2) identify, in consultation with the Debtors, the highest or otherwise best offer (the "Successful Bid") and the next highest or otherwise best bid (the "Next Highest Bid"); and (3) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the identity of the party having submitted each Successful Bid (the "Successful Bidder"), the amount and other material terms of the Successful Bid and the identity of the party that submitted each Next Highest Bid (each, the "Next Highest Bidder").

**The Sale Hearing**

At the Sale Hearing, the Chapter 11 Trustee may seek the entry of an order authorizing and approving the Sale Transaction with the Successful Bidder (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled by the Chapter 11 Trustee, in consultation with the Debtors and subject to the Bankruptcy Court's approval, without notice or with limited and shortened notice to parties, including by (1) an announcement of such adjournment at the Sale

7

Hearing or at the Auction or (2) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

### Acceptance of Qualified Bids

The Chapter 11 Trustee's presentation of a Successful Bid to the Bankruptcy Court for approval does not constitute the Chapter 11 Trustee's acceptance of such bid. The Chapter 11 Trustee will be deemed to have accepted a Successful Bid only when such bid has been approved by the entry of the Sale Order.

If for any reason a Successful Bidder fails to consummate its purchase, the Chapter 11 Trustee may proceed to a Sale Transaction with the Next Highest Bid as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Chapter 11 Trustee shall have the right to retain such Successful Bidder's Good Faith Deposit (unless required to return it by an order of the Bankruptcy Court) and shall reserve the right to seek all available additional damages from the Successful Bidder.

### Limitations on Representations and Warranties

Except for representations and warranties expressly set forth in the Stalking Horse Agreement, if any, or in the Marked Agreement that is approved by the Bankruptcy Court and consummated, the Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Chapter 11 Trustee, his agents or the Debtor's estate, whether written or verbal, whether express, implied or by operation of law. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the CFGI Equity Interests prior to making its bid, and that it has relied solely upon its own independent review and investigation in making its bid.

### Modification of Bidding Procedures

The Chapter 11 Trustee may, in consultation with the Debtors, amend the Bidding Procedures at any time and from time to time in any manner consistent with the terms of the Plan and that he determines will best promote the goals of the bidding process, including extending or modifying any of the dates set forth herein.

### Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders, including the Stalking Horse Bidder, if applicable, will be held in escrow by the Deposit Agent and while held in escrow will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court. The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder and the Next Highest Bidder until the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within five (5) business days of the entry of the Sale Order. At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its/their Good Faith Deposit. The Good Faith Deposit of the Next

WEIL:\96234000\1\35234.0003 WEIL:\96234000\5\35234.0003

~~Highest Bidder will be released by the Chapter 11 Trustee five (5) business days after the closing of the Sale Transaction.~~ Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that will have accrued thereon.