Hearing Date: **June 19, 2018 at 11:00 a.m. (Eastern Time)**
Objection Deadline: **June 12, 2018 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matthew S. Barr
Marcia Goldstein
Gabriel A. Morgan

*Attorneys for Certain Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------------x | **Chapter 11** |
| **In re:** : | **Case No. 16-11895 (JLG)** |
| : | **(Jointly Administered)** |
| **CHINA FISHERY GROUP LIMITED** : | |
| **(CAYMAN),** *et al.,* : | |
| : | |
| **Debtors.**[1] : | |
| ------------------------------------------------------------x | |

**NOTICE OF MOTION OF CERTAIN**
**DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 FOR ORDER**
**ESTABLISHING PROCEDURES TO SELL GOLF CLUB MEMBERSHIPS**

---

[1] The "**Debtors**" in these chapter 11 cases are as follows: China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore) ("**CFG Peru Singapore**"), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd. (BVI), Golden Target Pacific Limited (BVI), Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited (BVI), Admired Agents Limited (BVI), Chiksano Management Limited (BVI), Clamford Holding Limited (BVI), Excel Concept Limited (BVI), Gain Star Management Limited (BVI), Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited (BVI), Loyal Mark Holdings Limited (BVI), Metro Island International Limited (BVI), Mission Excel International Limited (BVI), Natprop Investments Limited, Pioneer Logistics Limited (BVI), Sea Capital International Limited (BVI), Shine Bright Management Limited (BVI), Superb Choice International Limited (BVI), and Toyama Holdings Limited (BVI). As used herein, the term "**Debtors**" shall not include CFG Peru Singapore unless otherwise noted.

PLEASE TAKE NOTICE that a hearing to consider the *Motion of Certain Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363 for Order Establishing Procedures to Sell Golf Club Memberships* (the "**Motion**") will be held before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004**,** on **June 19, 2018 at 11:00 a.m. (Eastern Time) (the "Hearing").**

PLEASE TAKE FURTHER NOTICE that responses or objections to the Motion, if any, shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall set forth the basis for the response or objection and the specific grounds therefore, and shall be filed with the Court electronically in accordance with General Order M–399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with two (2) hard copies single-sided delivered directly to the Chambers of the Honorable James L. Garrity, Jr., pursuant to Local Rule 9070-1 and served so as to be **actually received** no later than **June 12, 2018 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**"), on: (a) counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Matthew S. Barr, Esq. and Gabriel A. Morgan, Esq.); (b) counsel for the Chapter 11 Trustee of CFG Peru Investments Pte. Ltd. (Singapore), Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, (Attn: Lisa Laukitis, Esq. and Elizabeth Downing, Esq.) and Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., New York, New York 10010 (Attn: Susheel Kirpalani, Esq. and James Tecce, Esq.); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Richard Morrissey, Esq.); and (d) all other

WEIL:\96590713\1\35234.0003

parties required to be served pursuant to and in accordance with the Bankruptcy Rules, the Local Rules, and General Order M–399.

PLEASE TAKE FURTHER NOTICE that, if no objections are timely filed and served as set forth above, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: May 29, 2018
New York, New York

/s/ Matthew S. Barr
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Matthew S. Barr
Marcia Goldstein
Gabriel A. Morgan

*Attorneys for Certain Debtors*
*and Debtors in Possession*

WEIL:\96590713\1\35234.0003

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matthew S. Barr
Marcia Goldstein
Gabriel A. Morgan

*Attorneys for Certain Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED** | : | **Case No. 16-11895 (JLG)** |
| **(CAYMAN)**, *et al.*, | : | |
| | : | **(Jointly Administered)** |
| **Debtors.**[1] | : | |

-------------------------------------------------------------x

## MOTION OF CERTAIN DEBTORS
## PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 FOR ORDER
## ESTABLISHING PROCEDURES TO SELL GOLF CLUB MEMBERSHIPS

China Fishery Group Limited (Cayman) ("**CFGL**") and certain of its debtor

affiliates, as debtors and debtors-in-possession (collectively, the "**Debtors**")[2] in the above-

---

[1] The "Debtors" in these chapter 11 cases are as follows: China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda) ("**PAIH**"), N.S. Hong Investment (BVI) Limited ("**N.S. Hong**"), South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Golden Target Pacific Limited (BVI), Nouvelle Foods International Ltd. (BVI) ("**Nouvelle**"), Pacific Andes International Holdings (BVI) Limited ("**PAIH BVI**"), and Zhonggang Fisheries Limited, Admired Agents Limited (BVI), Chiksano Management Limited (BVI), Clamford Holding Limited (BVI) ("**Clamford**"), Excel Concept Limited (BVI), Gain Star Management Limited (BVI), Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited (BVI), Loyal Mark Holdings Limited (BVI), Metro Island International Limited (BVI), Mission Excel International Limited (BVI), Natprop Investments Limited, Pioneer Logistics Limited (BVI), Sea Capital International Limited (BVI), Shine Bright Management Limited (BVI), Superb Choice International Limited (BVI), and Toyama Holdings Limited (BVI).

[2] As it is used herein, the term "Debtors" shall not refer to CFG Peru Investments Pte. Limited (Singapore) ("**CFG Peru Singapore**") unless otherwise stated.

captioned chapter 11 cases (the "**Chapter 11 Cases**"), submit this motion (the "**Motion**") pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") for authority to establish procedures to sell the Golf Club Memberships (as defined below), and respectfully represent:

### Background

1.    On June 30, 2016 (the "**Commencement Date**"), CFGL and certain of the other Debtors (including CFG Peru Singapore) commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  From time to time after the Commencement Date, the additional Debtors have commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

2.    On October 28, 2016, the Court appointed a chapter 11 trustee (the "**Chapter 11 Trustee**") for CFG Peru Singapore [ECF No. 203].  On November 10, 2016, the Court entered an order approving the selection of Mr. William Brandt, Jr. as the Chapter 11 Trustee for CFG Peru Singapore [ECF No. 219].  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases, except as explained above. The Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

3.    On September 30, 2016, the Debtors filed the *Motion for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363 (i) Authorizing the Private Sale of Golf Club Membership Nunc Pro Tune to August 25, 2016, (ii) Approving the Terms of the Sale, (iii) Authorizing the Employment, Retention of and Payment to Everfine Membership Services Limited, as Broker, Nunc Pro Tune to June 30, 2016, and (iv) Granting Related Relief* [ECF

2

No. 160] (the "**First Golf Club Membership Motion**"), seeking authority to sell a corporate membership in the Hong Kong Golf Club.  On November 15, 2016, the Court entered an order approving the First Golf Club Membership Motion.

### Jurisdiction

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

5.      By this Motion, the Debtors request entry of an order, pursuant to sections 105(a) and 363 of the Bankruptcy Code, for authority to establish certain procedures for the Debtors to sell the Golf Club Memberships, free and clear of any liens, claims, encumbrances, or other interests (each, a "**Sale Transaction**"), and take any and all actions that are in the Debtors' business judgment reasonably necessary or appropriate to consummate a Sale Transaction, including, but not limited to, paying broker commissions, taxes, and other fees.  A proposed form of order is attached hereto as **Exhibit A** (the "**Proposed Order**").

### Proposed Sale of Golf Club Memberships

6.      The Debtors are in the process of marketing a corporate membership at the Hong Kong Golf Club, memorialized by Certificate No. 1024 (the "**1024 Membership**"), and may market for sale another corporate membership at the Hong Kong Golf Club, memorialized by Certificate No. 1031 (the "**1031 Membership**" and, together with the 1024 Membership, the "**Golf Club Memberships**," and the proceeds arising from the sale of either Golf Club

3

Membership, the "**Golf Club Proceeds**"). [3]  There are no liens, mortgages, or encumbrances (the "**Encumbrances**") on the Golf Club Memberships.  The Debtors intend to use the Golf Club Proceeds for payment of administrative expenses for the PAIH estate.  There is a monthly subscription fee of approximately $400 (HK$ 3,150) associated with each of the Golf Club Memberships.

7.    The Debtors have worked diligently to promote a competitive marketing process that will maximize the value of the 1024 Membership.  To date, the Debtors contacted no fewer than five brokers specializing in the sale and purchase of private club memberships to identify potential buyers for the 1024 Membership.  As is customary in Hong Kong, the Debtors do not retain a broker until the Debtors identify a buyer through the broker, at which time the Debtors officially retain the broker pursuant to a sale confirmation agreement between the Debtors and the broker (the "**Confirmation Agreement**").  With the broker's assistance, the Debtors will then execute a sale and purchase agreement with the buyer (the "**Purchase Agreement**").  Together, the Purchase Agreement and Confirmation Agreement would lay out the terms of a proposed Sale Transaction and the retention terms for the broker, including the commission fee, which typically constitutes one-percent (1%) of the gross sale price for the Sale Transaction (the "**Purchase Price**").  In addition, the Hong Kong Golf Club's approval is required to sell a membership at that club, and the Hong Kong Golf Club charges a transfer fee equal to the greater of twenty percent (20%) of the Purchase Price and the transfer fee for the last consummated transaction of a golf club membership at the Hong Kong Golf Club.

---

[3] As disclosed in PAIH's Schedule of Assets and Liabilities and Statement of Financial Affairs filed on April 13, 2017 (Case No. 16-11890, ECF No. 15), PAIH is the owner of five golf club memberships at the Hong Kong Golf Club.  Three of those memberships, identified in the schedules as "The Hong Kong Golf Club Nominee Membership," are transferable to third parties, while the other two memberships, identified in the schedules as "The Hong Kong Golf Club Entrance Fee – Five Day Membership," are not transferable to third parties.  One of the transferable memberships was sold pursuant to the First Golf Club Membership Motion and the other two transferable memberships are the subject to this Motion.

4

8.       The Debtors have received indicative offers from five independent brokers for the 1024 Membership. Together with market information provided by the Hong Kong Golf Club, the Debtors have determined that an amount of not less than approximately $2 million (HK$ 17 million) is a fair and reasonable Purchase Price for the 1024 Membership. Since the rights and privileges conferred by the 1031 Membership at the Hong Kong Golf Club are similar to the 1024 Membership, the Debtors estimate that the 1031 Membership would likely yield a similar Purchase Price.

9.       The Debtors intend to seek the highest or otherwise best possible offer for the Golf Club Memberships. However, when such a bid becomes available, the Debtors may face a limited window of time to consummate the Sale Transaction. To provide the flexibility needed to maximize the value of the Golf Club Memberships, the Debtors seek approval of the procedures set forth below (the "**Sale Procedures**") to consummate a Sale Transaction.

## Sale Procedures for Sale Transactions

10.      The Debtors propose the following Sale Procedures for Sale Transactions:

a.       Upon execution of the Confirmation Agreement and the Purchase Agreement, the Debtors will file a notice of such transaction (the "**Transaction Notice**") with the Court under seal and serve a copy thereof by electronic mail, facsimile, overnight courier, or hand delivery on the Sale Notice Parties identified below. The Transaction Notice will include: (i) the identity of the purchaser and any relationship such party has with the Debtors; (ii) the identities of lienholders known to the Debtors as holding liens on the Golf Club Membership; (iii) the material economic terms and conditions of the Sale Transaction (which may be provided by attaching the applicable contract or contracts to the Transaction Notice); (iv) any commission, fees, or other similar expenses to be paid in connection with the Sale Transaction, including any broker commissions and transfer fees due to the Hong Kong Golf Club; and (v) instructions regarding the procedures for asserting an objection to the Sale Transaction. The Sale Notice Parties are:  (a) the U.S. Trustee; (b) U.S. counsel to Standard Chartered Bank (Hong Kong) Limited, Cooperatieve Rabobank, U.A., and DBS Bank (Hong Kong) Limited; (c) U.S. counsel to China CITIC Bank International Limited; (d) U.S. counsel to the ad hoc noteholders committee; (e) U.S. counsel to Bank of America N.A.; (f) U.S. counsel to Malayan Banking Berhad, Hong Kong Branch; (g) U.S. counsel to Fredrich von Kaltenborn-Stachue, the insolvency

5

administrator for the Pickenpack companies; (h) U.S. counsel to the TMF Trustee Limited; and (i) parties that may hold or claim to hold any Encumbrances on the Golf Club Membership (collectively, the "**Sale Notice Parties**");

b.      The parties receiving a Transaction Notice shall have ten (10) calendar days after the service of a Transaction Notice to file and serve any objections to the Sale Transaction (the "**Notice Period**");

c.      If any material economic term of the Sale Transaction is amended after transmittal of the Transaction Notice, but prior to the expiration of the Notice Period, the Debtors shall serve a revised Transaction Notice on all parties that received the Transaction Notice describing the proposed Sale Transaction, as amended.  If a revised Transaction Notice is required, the Notice Period shall be extended for an additional seven (7) calendar days;

d.      Any objections to the Sale Transaction (each, an "**Objection**") must: (i) be in writing; (ii) set forth the name of the objecting party; (iii) redact the identity of the purchaser(s) identified in the Transaction Notice; (iv) provide the basis for the Objection and the specific grounds therefor; (v) be delivered to the Court and served on the other Sale Notice Parties; and (vi) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York  10153 (Attn: Matthew S. Barr, Esq. and Gabriel A. Morgan, Esq.) as counsel to the Debtors, **so as to be received on or before 4:00 p.m. (Eastern Time) on the last day of the Notice Period**;

e.      If an Objection is properly filed and served: (i) the Objection shall be deemed a request for a hearing on the Sale Transaction, and the Objection shall be heard at the next scheduled omnibus hearing in these chapter 11 cases that is at least fourteen (14) calendar days after service of the Objection (provided that the Debtors reserve the right to seek a hearing prior to such time); and (ii) the Sale Transaction may not proceed absent (a) written withdrawal of the Objection or (b) entry of an order by the Court specifically approving the Sale Transaction;

f.      If no Objection is timely filed and served, PAIH shall be deemed to be fully authorized by the Court to consummate the Sale Transaction, and no further notice or Court approval shall be required to consummate the Sale Transaction; and

g.      The Debtors may consummate the Sale Transaction prior to expiration of the Notice Period only if they obtain written consent to the Sale Transaction from each party that received a Transaction Notice.

11.     Upon consummation of the Sale Transaction, the purchaser will take the

Golf Club Membership sold by the Debtors pursuant to the Sale Procedures subject to the terms

of the documentation executed in connection with the Sale Transaction.  The Debtors do not

believe there are any Encumbrances on the Golf Club Memberships. However, to the extent any Encumbrances on the Golf Club Membership are discovered, the party holding or claiming to hold such Encumbrances is a Sale Notice Party under the Sale Procedures and the purchaser will further take title to the Golf Club Membership free and clear of liens pursuant to section 363(f) of the Bankruptcy Code. All such Encumbrances, if any, shall attach to the Golf Club Proceeds with the same validity, extent, and priority as had attached to the Golf Club Membership immediately prior to the Sale Transaction.

### Basis for Relief Requested

12.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In order to approve the sale of property outside the ordinary course of business, a bankruptcy judge must "find from the evidence presented before him at the hearing a good business reason to grant such an application." *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Chateaugay Corp.*, 973 F.2d 141, 144-45 (2d Cir. 1992) (affirming that Bankruptcy Court correctly approved an asset sale under 363(b) using "good business reason" standard).

13.     The business judgment standard is generally satisfied if "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Ashley River Consulting*, 2015 WL 4186130, at *7 (citing *In re Integrated Res., Inc.,* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); *see also In re MF Global Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference."); *In re Borders Grp., Inc.*, 453 B.R. at 482 ("[A] debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the

7

company.'"").  Courts are loath to interfere with corporate decisions absent a showing of bad

faith, self-interest, or gross negligence.  *See In re Integrated Res., Inc.*, 147 B.R. at 656.  Parties

opposing the proposed exercise of a debtor's business judgment bear the burden of rebutting the

presumption of validity.  *Id*.

> 14.    Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he

court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a).

**Approval of Sale Procedures Is Warranted**

### A.    Sale Transactions Are an Exercise of Debtors' Sound Business Judgment

> 15.    The Debtors' decision to seek approval of the Sale Procedures to facilitate

potential Sale Transactions is an exercise of sound business judgment and will facilitate the

administration of PAIH's chapter 11 case for the benefit of all stakeholders.  In addition, based

on market information received from the Hong Kong Golf Club and five independent brokers,

the Debtors believe that an amount of not less than approximately $2 million (HK$ 17 million) is

a fair and reasonable Purchase Price for the 1024 Membership.

### B.    Private Sale of Golf Club Membership Is Warranted Under Circumstances

> 16.    Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary

course of business may be by private sale or by public auction."  Courts allow chapter 11 debtors

to sell assets outside the ordinary course of business by private sale when the debtors

demonstrate that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code.  *See,*

*e.g.*, *In re Dewey & Leboeuf LLP*, No. 12-12321 (MG), 2012 Bankr. LEXIS 5116, at *17 (Bankr.

S.D.N.Y. Nov. 1, 2012) (holding that "the Debtor has established a good business reason,"

pursuant to section 363(b), to sell its artwork through a private auction to save costs, reduce

delay, and maximize the sale price); *In re MF Global Ltd.*, 535 B.R. at 605-06, 608 (approving

8

private sale to a buyer already familiar with debtors' assets as an exercise of "sound business judgment" under section 363(b)).

17.     The Debtors' decision to pursue a private sale of the Golf Club Memberships is supported by industry practice. The Debtors intend the Sale Transaction to be a product of good faith and arms'-length negotiation with a purchaser with whom the Debtors have no prior relationship, and the Sale Procedures will enable key parties (i.e., the Sale Notice Parties) to receive notice and have an opportunity to be heard with respect to the Sale Transaction. On the other hand, marketing the Golf Club Membership for sale at a public auction would not only be inconsistent with common practice for assets of this type but also needlessly result in costs that otherwise would not have been incurred at a private sale. Given the nature of the Golf Club Membership as a luxury commodity, the Debtors also believe there is a low likelihood of achieving better terms in a public auction. Moreover, the time associated with pursuing a public sale could jeopardize the proposed Sale Transaction, the Debtors' ability to maximize the value of the Golf Club Memberships, and the PAIH Debtors' ongoing restructuring efforts.[4] A private sale of the Golf Club Membership is in the best interest of PAIH, its estate, and all parties in interest, and is warranted under the circumstances.

## C.     Sale Procedures Are an Exercise of Debtors' Sound Business Judgment

18.     The Debtors submit that the Sale Procedures are both an exercise of sound business judgment and in the best interests of the Debtors' estates, because the Sale Procedures provide for an efficient means of maximizing the value of the Golf Club Memberships. Due to the nature of the Golf Club Membership, the Debtors may face stringent time constraints in meeting the closing deadline established by an interested purchaser. Some interested buyers,

---

[4] The PAIH Debtors include PAIH, PAIH BVI, Nouvelle, N.S. Hong, and Clamford.

such as certain high net-worth individuals, may also be reluctant to disclose their identities in court filings and for public view. The Sale Procedures will permit the Debtors to be responsive to the needs of interested purchasers (thereby minimizing the risk of lost sales) and allow flexibility for the Debtors to identify the highest or otherwise best bids, while still providing key parties appropriate notice to review the proposed Sale Transaction.

### D. Sale Procedures Satisfy Notice and Hearing Requirements Under Section 363(b)(1)

19. The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if appropriate notice and an opportunity for a hearing are given in light of the particular circumstances of a proposed transaction. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances"). Courts have noted that "the notice requirements of bankruptcy law are 'founded in fundamental notions of procedural due process.'" *Morgan Olson L.L.C. v. Frederico* (*In re Grumman Olson Indus., Inc.*), 467 B.R. 694, 706 (S.D.N.Y. 2012) (citations omitted). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (internal quotation marks and citations omitted).

20. Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one (21) days' notice of the proposed sale of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code, unless a debtor shows "cause." *See* Fed. R. Bankr. P. 2002(a)(2) and (i). Once the debtor shows "cause," however, Bankruptcy Rule 2002(a)(2) authorizes this Court to shorten the generally applicable 21-day

notice period and direct a method of giving notice other than by mail.  *See* Fed. R. Bankr. P. 2002(a)(2).

21.    Moreover, this Court is authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any creditor requesting notice.  *See* Fed. R. Bankr. P. 2002(i).  In addition, the sale or transfer of property outside the ordinary course of business may be authorized without an actual hearing, if no party in interest timely requests such a hearing.  *See* 11 U.S.C. § 102(1)(B)(i) (notwithstanding the statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest").

22.    The Sale Procedures comply with the hearing requirements of the Bankruptcy Code, as well as due process, by providing the Sale Notice Parties with an opportunity to present objections and to have a hearing.  The Sale Transaction may be approved without a hearing if no objection is filed with respect thereto.  Furthermore, any known holders of liens will also receive adequate notice and an opportunity to object (although the Debtors do not believe there are such parties).

23.    Based on the foregoing, the Debtors submit that sufficient cause exists to implement the Sale Procedures and such procedures will improve the efficiency of the sale process for the Golf Club Memberships and maximize the value to PAIH's estate.

**E.    Sale Procedures Satisfy Requirements of Section 363(f) and Allow Debtors to Sell Golf Club Membership Free and Clear**

24.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied:

(i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
(ii) such entity consents; (iii) the interest is a lien and the sales price of the property exceeds the
value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the holder of the
interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction
of its interest.  11 U.S.C. § 363(f)(1)-(5).  Section 363(f) is stated in the disjunctive; therefore, it
is only necessary to meet one of the five conditions listed in that section when selling property of
the estate.  *See In re Borders Grp., Inc.*, 453 B.R. at 483-84 (noting that the debtor can sell its
property "free and clear of any interest" if "at least one" of the five conditions under
section 363(f) is met); *see also In re MF Global Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012)
("Satisfaction of any of those requirements [of section 363(f)(1)-(5)] suffices to permit the sale
of the property free and clear of liens and interests.").

26.     The Debtors submit that the Sale Procedures satisfy the requirements of
section 363(f) of the Bankruptcy Code.  The Debtors do not believe that there are any
Encumbrances on the Golf Club Memberships.  Insofar as such Encumbrances exist, the Golf
Club Memberships can be sold free and clear meeting the need for any finding under section
363(f).  However, to the extent any holders of liens on the Golf Club Membership are
discovered, the Sale Procedures require the Debtors provide such parties with a Transaction
Notice prior to the disposition of the Golf Club Membership.  Absent any objection to the Sale
Transaction, a holder of a lien shall be deemed to consent to the Sale Transaction and such asset
may be sold free and clear of such lien.  *See In re Borders Grp., Inc.*, 453 B.R. at 484 ("Under
section 363(f)(2), a lienholder who receives notice of a sale but does not object within the
prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be
sold free and clear of liens."); *see also In re Enron Corp.*, Case No. 01-16034 (AJG), 2003 WL

12

21755006, at *2 (Bankr. S.D.N.Y. July 28, 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)).  In addition, as noted above, the Debtors are not aware of any liens on the Golf Club Memberships.  Nevertheless, the Sale Procedures provide that the interests of a holder of a lien will attach to the proceeds of the Sale Transaction, subject to any rights and defenses of the Debtors with respect thereto.  To the extent consent of a lienholder is not obtained or deemed to have been obtained, the Debtors submit that the holder of any lien could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

### F.    Purchaser of Golf Club Membership Should Be Entitled to Protections of Section 363(m)

26.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  The Second Circuit has observed, "Although the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' . . . most courts have adopted a traditional equitable definition:  'one who purchases the assets for value, in good faith and without notice of adverse claims.'"  *Licensing by Paolo v. Sinatra* (*In re Gucci*), 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted).  Moreover, "A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'"  *Id.*  The Sale Procedures require certain parties to receive notice and have opportunities to object, and the Debtors submit that the Sale Transaction consummated

13

in accordance with the Sale Procedures will be an arms'-length transaction entitling the purchaser to the protections of section 363(m) of the Bankruptcy Code.

### G.    Similar Sale Procedures Have Been Approved in Other Chapter 11 Cases

27.    In light of the demonstrable benefits of streamlined procedures to sell or transfer assets and the legal justifications described above, courts in this District and others have approved procedures similar to the Sale Procedures.  *See, e.g.*, *In re Breitburn Energy Partners LP*, No. 16-11390 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2016) (ECF No. 708) (authorizing sales up to $1 million); *In re Sabine Oil & Gas Corp.*, No. 15–11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015) (ECF No. 314) (authorizing sales up to $3.75 million); *In re Samson Res. Corp.*, No. 15–11934 (CSS) (Bankr. D. Del. May 3, 2015) (ECF No. 910) (authorizing sales up to $2.5 million); *In re Quicksilver Res., Inc.*, No. 15–10585 (LSS) (Bankr. D. Del. Apr. 14, 2015) (ECF No. 205) (authorizing sales up to $2.5 million).

### Waiver of Bankruptcy Rule 6004 (h)

28.    To implement the requested relief immediately, the Debtors seek a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

29.    Notice of this Motion has been provided to the following parties: (a) the U.S. Trustee; (b) U.S. counsel to the Chapter 11 Trustee; (c) U.S. counsel to Standard Chartered Bank (Hong Kong) Limited, Cooperatieve Rabobank, U.A., and DBS Bank (Hong Kong) Limited; (d) U.S. counsel to China CITIC Bank International Limited; (e) U.S. counsel to the ad hoc noteholders committee; (f) U.S. counsel to Bank of America N.A.; (g) U.S. counsel to Malayan Banking Berhad, Hong Kong Branch; (h) U.S. counsel to Fredrich von Kaltenborn-

14

Stachue, the insolvency administrator for the Pickenpack companies; (i) U.S. counsel to the TMF

Trustee Limited; (j) parties that may hold or claim to hold any lien on the Golf Club

Membership; and (k) any party that has requested notice in the Debtors' Chapter 11 Cases

pursuant to Bankruptcy Rule 2002.    The Debtors submit that, in view of the facts and

circumstances, such notice is sufficient and no other or further notice need be provided.

30.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: May 29, 2018
New York, New York                  /s/ Matthew S. Barr
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007
                                    Matthew S. Barr
                                    Marcia Goldstein
                                    Gabriel A. Morgan

                                    *Attorneys for Certain Debtors*
                                    *and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re:                                          :      **Chapter 11**
                                                :
**CHINA FISHERY GROUP LIMITED**                 :      **Case No. 16-11895 (JLG)**
**(CAYMAN)**, *et al.*,                          :
                                                :      **(Jointly Administered)**
            Debtors.                            :
-------------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363
### ESTABLISHING PROCEDURES TO SELL GOLF CLUB MEMBERSHIPS

Upon the motion (the "**Motion**")[1] of China Fishery Group Limited (Cayman) and

certain of its debtor affiliates, as debtors and debtors in possession (the "**Debtors**")[2] in the

above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105(a) and 363

of the Bankruptcy Code, for an order establishing certain procedures for the Debtors to sell the

Golf Club Memberships, free and clear of any liens, claims, encumbrances, or other interests,

and take any and all actions that are in the Debtors' business judgment reasonably necessary or

appropriate to consummate a Sale Transaction, including, but not limited to, paying broker

commissions, taxes, and other fees, all as more fully set forth in the Motion; and this Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January

31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having held a hearing on June 19, 2018

to consider the relief requested in the Motion (the "**Hearing**"); and the Court having found that

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

[2] As it is used herein, the term "Debtors" shall not refer to CFG Peru Investments Pte. Limited (Singapore) unless otherwise stated.

the Debtors' proposed Sale Transactions and use of the Golf Club Proceeds to pay PAIH's administrative expenses represents a sound exercise of the Debtors' business judgment and is in the best interest of the PAIH estate; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to sell the Golf Club Memberships without further Court approval, subject to compliance with the Sale Procedures set forth below.  The Debtors are authorized to execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers and take any and all actions that are, in the Debtors' business judgment, reasonably necessary or appropriate to consummate a Sale Transaction, including, but not limited to, paying broker commissions, taxes, and other fees.

3.      The Sale Procedures for Sale Transactions are approved as follows:

> a.      Upon execution of the Confirmation Agreement and the Purchase Agreement, the Debtors will file a notice of such transaction (the "**Transaction Notice**") with the Court under seal and serve a copy thereof by electronic mail, facsimile, overnight courier, or hand delivery on the Sale Notice Parties identified below.  The Transaction Notice will include: (i) the identity of the purchaser and any relationship such party has with the Debtors; (ii) the identities of lienholders known to the Debtors as holding liens on the Golf Club Membership; (iii) the material economic terms and conditions of the Sale Transaction (which may be provided by attaching the applicable contract or contracts to the Transaction Notice); (iv) any commission, fees, or other similar expenses to be paid in connection with the Sale Transaction, including any broker commissions and transfer fees due to the Hong Kong Golf Club; and (v) instructions regarding the procedures for asserting an objection to the Sale Transaction.  The Sale Notice Parties are:   (a) the U.S. Trustee; (b) U.S. counsel to Standard Chartered Bank (Hong Kong) Limited,

WEIL:\96590713\1\35234.0003

Cooperatieve Rabobank, U.A., and DBS Bank (Hong Kong) Limited; (c) U.S. counsel to China CITIC Bank International Limited; (d) U.S. counsel to the ad hoc noteholders committee; (e) U.S. counsel to Bank of America N.A.; (f) U.S. counsel to Malayan Banking Berhad, Hong Kong Branch; (g) U.S. counsel to Fredrich von Kaltenborn-Stachue, the insolvency administrator for the Pickenpack companies; (h) U.S. counsel to the TMF Trustee Limited; and (i) parties that may hold or claim to hold any Encumbrances on the Golf Club Membership (collectively, the "**Sale Notice Parties**")

b.      The parties receiving a Transaction Notice shall have ten (10) calendar days after the service of a Transaction Notice to file and serve any objections to the Sale Transaction (the "**Notice Period**");

c.      If any material economic term of the Sale Transaction is amended after transmittal of the Transaction Notice, but prior to the expiration of the Notice Period, the Debtors shall serve a revised Transaction Notice on all parties that received the Transaction Notice describing the proposed Sale Transaction, as amended.  If a revised Transaction Notice is required, the Notice Period shall be extended for an additional seven (7) calendar days;

d.      Any objections to the Sale Transaction (each, an "**Objection**") must:  (i) be in writing; (ii) set forth the name of the objecting party; (iii) redact the identity of the purchaser(s) identified in the Transaction Notice; (iv) provide the basis for the Objection and the specific grounds therefor; (v) be delivered to the Court and served on the other Sale Notice Parties; and (vi) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York  10153 (Attn:  Matthew S. Barr, Esq. and Gabriel A. Morgan, Esq.) as counsel to the Debtors, **so as to be received on or before 4:00 p.m. (Eastern Time) on the last day of the Notice Period**;

e.      If an Objection is properly filed and served: (i) the Objection shall be deemed a request for a hearing on the Sale Transaction, as applicable, and the Objection shall be heard at the next scheduled omnibus hearing in these chapter 11 cases that is at least fourteen (14) calendar days after service of the Objection (provided that the Debtors reserve the right to seek a hearing prior to such time); and (ii) the Sale Transaction may not proceed absent (a) written withdrawal of the Objection or (b) entry of an order by the Court specifically approving the Sale Transaction;

f.      If no Objection is timely filed and served, PAIH shall be deemed to be fully authorized by the Court to consummate the Sale Transaction, and no further notice or Court approval shall be required to consummate the Sale Transaction; and

3

g.    The Debtors may consummate the Sale Transaction prior to expiration of the Notice Period only if they obtain written consent to the Sale Transaction from each party that received a Transaction Notice.

h.    Upon consummation of the Sale Transaction, the purchaser will take the Golf Club Membership sold by the Debtors pursuant to the Sale Procedures and subject to the terms of the documentation executed in connection with the Sale Transaction.

4.    The Debtors' sale of the Golf Club Memberships shall be free and clear of liens pursuant to section 363(f) of the Bankruptcy Code.  All Encumbrances, if any, shall attach to the Golf Club Proceeds with the same validity, extent, and priority as had attached to the Golf Club Memberships immediately prior to the Sale Transaction, subject to any claims and defenses the Debtors may possess with respect thereto.

5.    The Sale Transaction shall be deemed an arms'-length transaction and the counterparties to the Sale Transaction shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

6.    Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

7.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.    The Sale Transaction shall be deemed authorized pursuant to the terms of this Order and no further or additional waivers of the fourteen-day stay of Bankruptcy Rule 6004(h) shall be required for the Debtors to consummate the Sale Transaction, subject to compliance with the Sale Procedures.

9.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

WEIL:\96590713\1\35234.0003

10.    This Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation, and/or enforcement of this Order.


Dated: _____, 2018
         New York, New York


_____
HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE