Hearing Date: June  16, 2020 at 11:00 a.m. (Prevailing Eastern Time)
Objection Deadline: June 9, 2020 at 4:00 p.m. (Prevailing Eastern Time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Lisa Laukitis
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

Ebba Gebisa (admitted *pro hac vice*)
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700

*Counsel for William A. Brandt, Jr., Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.,* | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |
| | : | |

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| **Debtor.** | : | |
| | : | **(Jointly Administered)** |
| | : | |

---

[1]    The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

NOTICE OF HEARING OF CHAPTER 11 TRUSTEE'S MOTION FOR
ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363(b)
AND BANKRUPTCY RULES 2002 AND 6004 (I) COMPELLING DEBTORS CHINA
FISHERIES INTERNATIONAL LIMITED AND CFG PERU SINGAPORE TO
EFFECTUATE CERTAIN PRELIMINARY ASPECTS OF THE NETTING OF
INTERCOMPANY CLAIMS, AND (II) AUTHORIZING CORPORATE
GOVERNANCE ACTIONS NECESSARY TO REMOVE OR REPLACE THE
NG SUBSIDIARY DIRECTORS AT CFG PERU SINGAPORE'S SUBSIDIARIES

PLEASE TAKE NOTICE that a hearing on the *Chapter 11 Trustee's Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 363(b) and Bankruptcy Rules 2002 and 6004 (I) Compelling Debtors China Fisheries International Limited and CFG Peru Singapore to Effectuate Certain Preliminary Aspects of the Netting of Intercompany Claims, and (II) Authorizing Corporate Governance Actions Necessary to Remove or Replace the Ng Subsidiary Directors at CFG Peru Singapore's Subsidiaries* (the "Motion") will be held before the Honorable James L. Garrity Jr., United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004 (the "Bankruptcy Court"), on **June 16, 2020 at 11:00 a.m. (Prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that responses or objections, if any, to the relief requested in the Motion, must be made in writing and (a) filed with the Bankruptcy Court no later than **4:00 p.m. (Prevailing Eastern Time) on June 9, 2020** (the "Objection Deadline") and (b) served so as to be actually received by the following parties by the Objection Deadline:

(i) counsel for William A. Brandt, Jr., the Chapter 11 Trustee for the bankruptcy estate of CFG Peru Investments Pte. Ltd., Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001-8602, Attn: Lisa Laukitis (lisa.laukitis@skadden.com), and Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, Illinois 60606-1720, Attn: Ebba Gebisa (ebba.gebisa@skadden.com);

(ii) counsel for the other Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matthew S. Barr, Esq. (matt.barr@weil.com), Marcia Goldstein, Esq. (marcia.goldstein@weil.com), and Gabriel A. Morgan, Esq. (gabriel.morgan@weil.com), and

Klesadt Winters Jureller Southard & Stevens, LLP, Attn: Tracy Klestadt, Esq. (tklestadt@klestadt.com), and John Jureller, Jr., Esq. (jjureller@klestadt.com);

(iii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Richard Morrissey (richard.morrissey@usdoj.gov); and

(iv) the Chapter 11 Trustee, 110 East 42nd Street, Suite 1818, New York, New York 10017, Attn: William A. Brandt, Jr. (bbrandt@dsiconsulting.com).

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543 dated March 20, 2020, all hearings and conferences scheduled to be held at the Bankruptcy Court will be conducted telephonically pending further order of the Bankruptcy Judge assigned to the matter.  Any party wishing to appear at the hearing must make arrangements with Court Solutions LLC, www.court-solutions.com to sign up for an account and to register for a live line. Registration for a hearing must occur no later than 12:00 p.m. on the business day prior to the hearing date.

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the Motion, with proof of service, is filed with the Bankruptcy Court and a courtesy copy delivered to the Honorable James L. Garrity, Jr.'s Chambers by the Objection Deadline, the Chapter 11 Trustee may, on or after the Objection Deadline, submit to the Bankruptcy Court an order, which order may be entered with no further notice or opportunity to be heard.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: May 22, 2020

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Lisa Laukitis*
  Lisa Laukitis
  One Manhattan West
  New York, New York 10001-8602
  Telephone: (212) 735-3000
  Fax: (212) 735-2000

  -and-

  Ebba Gebisa (admitted *pro hac vice*)
  155 N. Wacker Dr.
  Chicago, Illinois 60606-1720
  Telephone: (312) 407-0700
  Fax: (312) 407-0411

*Counsel for William A. Brandt, Jr., Chapter 11 Trustee*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Lisa Laukitis
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

Ebba Gebisa (admitted *pro hac vice*)
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for William A. Brandt, Jr., Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |
| In re: | : | **Chapter 11** |
| | : | |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| Debtor. | : | |
| | : | **(Jointly Administered)** |
| | : | |

---

[1]    The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

**CHAPTER 11 TRUSTEE'S MOTION FOR ORDER PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) AND BANKRUPTCY
RULES 2002 AND 6004 (I) COMPELLING DEBTORS CHINA FISHERIES
INTERNATIONAL LIMITED AND CFG PERU SINGAPORE TO EFFECTUATE
CERTAIN PRELIMINARY ASPECTS OF THE NETTING OF INTERCOMPANY
CLAIMS, AND (II) AUTHORIZING CORPORATE GOVERNANCE ACTIONS
NECESSARY TO REMOVE OR REPLACE THE NG SUBSIDIARY DIRECTORS
AT CFG PERU SINGAPORE'S SUBSIDIARIES**

William A. Brandt, Jr., not individually but solely in his capacity as the chapter 11

trustee (the "Chapter 11 Trustee") of CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru

Singapore" or the "Debtor") in the above-captioned chapter 11 cases, by his attorneys, Skadden,

Arps, Slate, Meagher & Flom LLP, hereby moves (this "Motion") before this Court (the "Court")

for entry of an order (the "Proposed Order"), substantially in the form attached hereto as Exhibit

A, pursuant to sections 105(a) and 363(b) of Title 11 of the United States Code (the "Bankruptcy

Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), (i) compelling Debtors China Fisheries International Limited ("CFIL") and CFG Peru

Singapore to take all actions and execute all documents necessary to effectuate certain preliminary

aspects of the netting of intercompany claims (the "Netting") to net the $459 million intercompany

claim (the "459m Claim") owed by non-Debtor CFG Investment S.A.C. ("CFGI") to CFIL; and

(ii) authorizing, but not directing, the Chapter 11 Trustee to take all corporate governance actions

consistent with Peruvian and Singaporean law, including, but not limited to, issuing proxies,

passing shareholders' resolutions, enabling managers to execute any necessary documentation, or

other actions that are in the Chapter 11 Trustee's business judgment desirable or necessary to

remove or replace the directors, general managers, and legal representatives at CFG Peru

Singapore's direct subsidiaries that are Ng family members (the "Ng Family") or individuals

associated with the Ng Family (collectively, the "Ng Subsidiary Directors") and revoke their

existing powers of attorney.  In support of the Motion, the Chapter 11 Trustee relies upon and

2

incorporates by reference the Declaration of William A. Brandt, Jr., the Chapter 11 Trustee, attached hereto as Exhibit B. In further support of the Motion, the Chapter 11 Trustee, by and through his undersigned counsel, respectfully represents:

## PRELIMINARY STATEMENT[2]

1.      These cases are at a critical juncture. Next month, it is intended that a large number of stakeholders in these Chapter 11 Cases will engage in mediation (the "Mediation") to attempt to resolve two remaining gating items to carving a path out of chapter 11: an intercreditor dispute over the relative priority of third-party funded debt at the Peruvian Opcos, and a dispute involving Hong Kong litigation proceedings initiated by the liquidators appointed by courts in Hong Kong and BVI. The Chapter 11 Trustee is cautiously optimistic that resolution of these gating issues will reignite the CFG Peru Sale process or allow progress to be made on an alternative, value-maximizing path out of chapter 11.

2.      At the same time, the global COVID-19 pandemic has had a significant impact on the Peruvian Opcos. The first fishing season of 2020, which under normal circumstances would have begun at the beginning of April, was delayed until May 13. Further, once begun, there were significant limitations imposed by the Peruvian government which will result in reduced productivity. Although the Peruvian Opcos, in no small part due to the Chapter 11 Trustee's previous efforts, are well-equipped to quickly catch and process a large portion of their quota during the delayed fishing season, it is unlikely that they will realize 100% of their quota. Thus, the Peruvian Opcos are keenly focused on near term liquidity measures that will help them weather the uncertainties of the current fishing season and the ongoing COVID-19 pandemic. To that end, the Chapter 11 Trustee has also determined not to make the anticipated interim

---

[2]    Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to them in the Motion.

distribution to creditors of the Peruvian Opcos at this time and has been focused on other cost-saving measures.

3.    Last fall, the Chapter 11 Trustee, in consultation with management of the Peruvian Opcos and their tax advisors, realized that it is possible for the Peruvian Opcos to save approximately $10.3 million per year in tax costs if certain preliminary aspects of the Netting were effectuated.  Specifically, these material tax savings may be achieved by two simple steps of the Netting: (i) CFIL assigning the 459m Claim owed to it by CFGI to CFG Peru Singapore, and (ii) CFG Peru Singapore subsequently capitalizing the 459m Claim, so as to effectively remove the 459m Claim from CFGI's books.  Netting the 459m Claim in this way would result in immediate tax savings and is fully reversible without tax or other consequences to any of the entities should the CFG Peru Sale or an alternate value-maximizing transaction not occur.

4.    The Chapter 11 Trustee discussed these potential savings with the other Debtors (who are still controlled by the Ng Family) at that time, who were not only amenable to Netting the 459m Claim in order to realize these tax savings, but also filed the Joint Notice with the Chapter 11 Trustee to that effect.  For seemingly no reason, however, the other Debtors now refuse to execute the necessary Netting Documents despite the Chapter 11 Trustee reiterating the potential tax savings, the Peruvian Opcos' need for liquidity, and the fully-reversible nature of the Netting of the 459m Claim.  Every month that goes by is a missed opportunity for needed savings.  As a result, the Chapter 11 Trustee has no choice but to bring this issue to the Court, and request the Court to compel CFIL and CFG Peru Singapore to take necessary actions to effectuate the Netting of the 459m Claim.

5.    The Ng Family and individuals associated with it also remain directors, general managers, and legal representatives at all but one of CFG Peru Singapore's subsidiaries.

4

Given the Ng Family's refusal to cooperate with respect to the Netting of the 459m Claim, the Chapter 11 Trustee has lost all confidence that the Ng Family will cooperate in other aspects of these Chapter 11 Cases, including effectuating the remainder of the Netting at the appropriate time and giving the necessary approvals at entities above CFG Peru Singapore to effectuate the CFG Peru Sale or an alternative, value-maximizing transaction. The Chapter 11 Trustee simply cannot have yet another issue impede progress on these Chapter 11 Cases. Although he has kept the Ng Subsidiary Directors in place at CFG Peru Singapore's subsidiaries until now out of a desire to foster cooperation, the Chapter 11 Trustee believes that the time has come to remove the Ng Subsidiary Directors in order to eliminate the risk that they can further impede progress.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rules 2002 and 6004.

## BACKGROUND

8.      On June 30, 2016 (the "Petition Date"), each of the debtors in the above-captioned cases (the "Debtors"), except Pacific Andes Resources Development Ltd. ("PARD"), Nouvelle Foods International Ltd. ("Nouvelle"), Golden Target Pacific Limited ("Golden Target"), Pacific Andes International Holdings (BVI) Limited ("PAIH (BVI)"), Zhonggang Fisheries Limited ("Zhonggang"), and the Additional Debtors (defined below) filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court. On September 29, 2016, PARD filed its Chapter 11 bankruptcy case. On March 27, 2017, Nouvelle and Golden Target filed

5

Chapter 11 bankruptcy cases. On April 17, 2017, PAIH (BVI) and Zhonggang filed Chapter 11

bankruptcy cases. Last, on May 2, 2017, an additional sixteen (16)[3] Debtors filed Chapter 11

bankruptcy cases (the "Additional Debtors," collectively, with PARD, Nouvelle, Golden Target,

PAIH (BVI), Zhonggang, and the other Debtors' Chapter 11 cases, the "Chapter 11 Cases").

9.     To date, no creditors' committee has been appointed in these Chapter 11

Cases by the Office of the United States Trustee for the Southern District of New York (the "U.S.

Trustee").

10.     The Debtors constitute a small part of a group of companies that once

collectively constituted the world's twelfth largest fishing company. The Debtors consist

principally of holding companies and defunct, non-operating companies. Their value is derived

largely from their indirect or direct interests in two (2) Peruvian operating companies which are

non-Debtor subsidiaries – CFGI and Copeinca (together, the "Peruvian Opcos"). CFGI and

Copeinca operate the Peruvian Opcos' anchovy fishing business and together control a significant

percentage of the anchovy fishing quotas fixed by the Peruvian government.

11.     On October 28, 2016, the Court entered the *Memorandum Decision and

Order Granting Motion for the Appointment of a Chapter 11 Trustee* [Dkt. No. 203] (the "Trustee

Order"). In the Trustee Order, the Court emphasized that the Chapter 11 Trustee's most important

role is "to evaluate the optimal way to maximize the value of the Peruvian Business and to

determine how to realize that value for the benefit of the Debtors' estates and creditors." *See*

Trustee Order at page 47. Indeed, this Court found that "the Debtors have no prospect of

---

[3]    The Additional Debtors are: Admired Agents Limited, Chiksano Management Limited, Clamford Holding
Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private
Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited,
Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital
International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama
Holdings Limited (BVI).

6

rehabilitation if they cannot realize value from their interests in the Peruvian Opcos." *Id.* at page 3.

12.    On November 10, 2016, the U.S. Trustee sought approval of William A. Brandt, Jr., as the Chapter 11 Trustee of CFG Peru Singapore [Dkt. No. 218]. On that same date, the Court entered an order approving the selection of Mr. Brandt as the Chapter 11 Trustee [Dkt. No. 219].

13.    While the Chapter 11 Trustee has been appointed by the Court over CFG Peru Singapore, the Ng Family and individuals associated with them continue to serve as: (i) directors of CFG Peru Singapore; (ii) directors at CFIL; and (iii) directors, general managers, and/or legal representatives at certain of CFG Peru Singapore's direct and indirect subsidiaries, and to hold existing powers of attorney in connection with the foregoing.

14.    CFG Peru Singapore is the direct 100% or close to 100% shareholder of the following entities: (i) CFGI, (ii) Inmobiliaria Gainesville S.A.C., (iii) Sustainable Pelagic Fishery S.A.C., and (iv) Sustainable Fishing Resources S.A.C. (collectively, the "100% Subsidiaries"). Each of the 100% Subsidiaries is a Peruvian entity.

15.    In addition, CFG Peru Singapore owns one or more shares of the following entities: (i) J. Wiludi Asociados Consultores en Pesca S.A.C., (ii) Consorcio Vollmacht S.A.C., (iii) Corporacion Pesquera Frami S.A.C.., (iv) Inmobiliaria y Contructora Pahk S.A.C., and (v) Inversiones Pesqueras West S.A.C. (collectively, the "De Minimis Subsidiaries", and together with the 100% Subsidiaries the "Direct Non-Debtor Subsidiaries").

16.    CFG Peru Singapore is also the direct 100% shareholder of Debtor Protein Trading Limited ("Protein Trading" and together with the Direct Non-Debtor Subsidiaries, the "Direct Subsidiaries").

7

17.    Finally, the following entities are indirect subsidiaries of CFG Peru Singapore: (i) Copeinca AS, (ii) Copeinca Internacional S.A., (iii) Copeinca, (iv) PFB Fisheries B.V., and (v) Macro Capitales S.A. (collectively, the "Indirect Subsidiaries").

## RELIEF REQUESTED

18.    By this Motion, the Chapter 11 Trustee seeks entry of the Proposed Order, pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rules 2002 and 6004 (i) compelling Debtors CFIL and CFG Peru Singapore to take all necessary actions and execute all documents to effectuate the Netting of the 459m Claim; and (ii) authorizing Chapter 11 Trustee to take all corporate governance actions consistent with Peruvian and Singaporean law, including, but not limited to, issuing proxies, passing shareholders' resolutions, enabling managers to execute any necessary documentation, or other actions that are in the Chapter 11 Trustee's business judgment desirable or necessary to remove or replace the Ng Subsidiary Directors at the Direct Subsidiaries and revoke their existing powers of attorney.[4]

19.    For the reasons set forth herein, the Chapter 11 Trustee submits that the relief requested herein is in the best interests of the Debtor, its estate, creditors, stakeholders, and other parties in interest, and therefore, should be granted.

---

[4]    Although the Chapter 11 Trustee is not requesting Court authority with respect to the removal or replacement of the Ng Subsidiary Directors at the Indirect Subsidiaries because removal or replacement of those directors does not require corporate governance actions at CFG Peru Singapore, a description of removal or replacement of those directors is included in this Motion out of a desire for transparency.

*(cont'd)*

## BASIS FOR RELIEF

A.    **The Benefits of Netting the 459m Claim[5]**

20.    Around August 2017, in connection with broader discussions on intercompany claims, the Chapter 11 Trustee and the advisors to the other Debtors began discussions on a potential intercompany settlement agreement to resolve certain large intercompany claims that exist between and among the Debtors and certain of their non-Debtor subsidiaries, including CFG Peru Singapore's subsidiaries (the "Intercompany Settlement Agreement").    The rationale for the Intercompany Settlement Agreement was to lower the threshold price in the sale of CFG Peru Singapore's equity interests in CFGI (the "CFG Peru Sale") and help clear a path out of chapter 11.    Currently, CFGI owes the 459m Claim to CFIL.    Since the proposed CFG Peru Sale will likely take the form of a sale of CFG Peru Singapore's equity interests in CFGI, if the proceeds from the CFG Peru Sale are not enough to pay the 459m Claim in full, a purchaser in the CFG Peru Sale may be liable for any amounts left unpaid even after the conclusion of these Chapter 11 Cases because CFGI is a non-Debtor.    While the Intercompany Settlement Agreement also resolves numerous other intercompany claims, the Netting of the 459m Claim was the main objective.    The Court entered an order approving the Intercompany Settlement Agreement on April 26, 2018 [Dkt. No. 1112] (the "Intercompany Settlement Order").

21.    Although a purchaser in the CFG Peru Sale has not yet surfaced, the Peruvian Opcos' tax advisors, Ernst & Young Peru ("EY") have undertaken further analysis and determined that there are significant benefits to Netting the 459m Claim as soon as possible.    This includes the fact that under applicable Peruvian law, an 8% interest rate is imputed over

---

[5]    The tax and other analyses set forth herein related to the Netting and attributed to EY was undertaken in connection with the original formulation of the Intercompany Settlement Agreement and the subsequent amendments thereto and filing of the Joint Notice.    Such analysis takes into account the current and anticipated circumstances at the relevant entities.

intercompany claims owed by Peruvian entities, including the 459m Claim, and a 30% tax is imposed over this imputed interest rate. This has resulted in CFGI paying approximately $11 million in taxes per year on account of the 459m Claim.

22.    Netting the 459m Claim and removing it from CFGI's books would eliminate most of this $11 million tax burden. EY proposed the Netting of the 459m Claim in two steps. First, CFIL would assign its receivable owed by CFGI on account of the 459m Claim to CFG Peru Singapore (the "Assignment"). This would result in CFGI owing the 459m Claim to CFG Peru Singapore (instead of CFIL), and in CFG Peru Singapore owing an equivalent $459 million intercompany claim to CFIL, as compensation for the assignment. Second, EY proposed that CFG Peru Singapore capitalize the 459m Claim which is now owed to it by CFGI (the "Capitalization"). The Capitalization would allow CFGI to extinguish almost all of the 459m Claim in exchange for increasing CFG Peru Singapore's share capital in CFGI.[6] EY estimates that the Assignment and Capitalization would result in CFGI saving approximately $10.3 million in taxes per year. Notably, the remainder of the Netting (i.e., Netting of numerous intercompany claims other than the 459m Claim) would be effectuated at a later date when a binding offer is received in the CFG Peru Sale.

23.    EY has also determined, based on existing analysis, that the Assignment and Capitalization may be reversed without tax or other consequences in the event that a purchaser does not emerge in the CFG Peru Sale or an alternative transaction does not occur. First, to reverse the Capitalization, CFGI would effectuate a capital reduction transaction, by which it would reduce CFG Peru Singapore's shares in CFGI in exchange for re-creating the 459m Claim. Second, to

---

[6]    The Chapter 11 Trustee does not intend to capitalize the entire 459m Claim, but rather leave a $50 million "cushion" in order to set off against any amounts owed by CFG Peru Singapore to CFGI on account of the superpriority intercompany loan to pay administrative expenses in CFG Peru Singapore's bankruptcy case.

reverse the Assignment, CFG Peru Singapore would simply assign the 459m Claim back to CFIL. This would put all parties back in their original starting positions.

24.     The Chapter 11 Trustee submits that undertaking the Assignment and Capitalization to effectuate the Netting of the 459m Claim and realize $10.3 million in annual tax savings is in the best interests of all parties involved, including the other Debtors.  Moreover, the projected tax savings from the Netting of the 459m Claim is particularly critical to the Peruvian Opcos given the negative impact on the Peruvian fishing industry by the global COVID-19 pandemic.

## B.    The Need to Compel the Directors of CFIL and CFG Peru Singapore to Effectuate the Netting of the 459m Claim

25.     In order to effectuate the Netting of the 459m Claim, certain documents need to be executed by the directors of CFIL and CFG Peru Singapore.[7]  These documents are: (i) a resolution of the directors of CFIL consenting to the Assignment; (ii) a resolution of the directors of CFG Peru Singapore consenting to the Assignment; (iii) an assignment agreement between CFIL and CFG Peru Singapore, executed by duly authorized signatories at each entity; and (iv) a letter from CFIL to the general managers of CFGI informing them of the Assignment (collectively, the "Netting Documents").

26.     The Chapter 11 Trustee, through its counsel, first approached counsel to the other Debtors regarding Netting the 459m Claim in September 2019.  During those conversations, the Chapter 11 Trustee made it clear that there were significant tax savings to Netting the 459m Claim, and that the Chapter 11 Trustee intended to effectuate the Netting of the 459m Claim as

---

[7]    Although the Chapter 11 Trustee has been appointed at CFG Peru Singapore by the Court, EY has advised that under applicable Singaporean law, the board of directors of CFG Peru Singapore (who are still Ng Family members or individuals associated with them) must execute certain documents to effectuate the Netting of the 459m Claim.

soon as EY had completed its analysis in order to realize those tax savings. At that time, the other Debtors were not only amenable to this plan, but submitted a joint notice with the Chapter 11 Trustee to the Court to this effect on September 26, 2019 [Dkt. No. 1736] (the "Joint Notice"). The Joint Notice made clear that given various considerations, including tax efficiencies, the order of certain steps in the Netting would be altered, and expressly provided that "shortly following the filing of this Notice, the Parties intend to enter into the Intercompany Settlement Agreement and *execute certain of the Netting contemplated thereunder*." (Emphasis added.)

27.    Since the filing of the Joint Notice, EY has continued analyzing the Netting of the 459m Claim and drafting the Netting Documents. EY completed its analysis earlier this year, and, on April 7, 2020 – three weeks after Peru enacted quarantine restrictions in response to the global COVID-19 pandemic that disrupted the Peruvian fishing season – counsel to the Chapter 11 Trustee reached out to counsel to the other Debtors with the Netting Documents for their execution. To the Chapter 11 Trustee's surprise, the other Debtors, through their counsel, indicated that they were no longer amenable to Netting the 459m Claim, despite the Chapter 11 Trustee reiterating the substantial tax benefits to the Peruvian Opcos and their need for liquidity, the reversibility of the Assignment and Capitalization, and the other Debtors' previous assent thereto.

28.    Given the Peruvian Opcos' focus on near-term liquidity measures and the material tax savings on the table, the Chapter 11 Trustee has no choice but to bring this issue before the Court, and to request the Court to compel the necessary directors and representatives of CFIL and CFG Peru Singapore to execute the Netting Documents and take all other actions as needed to effectuate the Netting of the 459m Claim.

12

C.     **The Need to Remove or Replace the Ng Subsidiary Directors**

29.     The Ng Subsidiary Directors remain in place at CFG Peru Singapore's subsidiaries.  To date, the Chapter 11 Trustee has deliberately not taken steps to replace the Ng Subsidiary Directors in order to encourage continued cooperation among the parties.  However, in light of prior dealings between the Chapter 11 Trustee and the Ng Family, and their unexpected about face with respect to the Netting of the 459m Claim, the Chapter 11 Trustee has lost all confidence that the Ng Family will be cooperative in other aspects of CFG Peru Singapore's Chapter 11 Case, including, *inter alia*, effectuating the remainder of the Netting at the appropriate time, or giving the necessary approvals in connection with the CFG Peru Sale or an alternative transaction that provides a value-maximizing path out of chapter 11.

30.     Indeed, the Chapter 11 Trustee also believes there is a risk that the Ng Subsidiary Directors could use their authority to actively subvert his objectives at the Peruvian Opcos and other subsidiaries below CFG Peru Singapore.  Accordingly, the Chapter 11 Trustee believes that the time has come to remove the Ng Subsidiary Directors to ensure that the Chapter 11 Trustee can continue to make progress in these Chapter 11 Cases and comply with his directive under the Trustee Order – "to evaluate the optimal way to maximize the value of the Peruvian Business and to determine how to realize that value for the benefit of the Debtors' estates and creditors."  See Trustee Order at page 47.

D.     **The Need for the Chapter 11 Trustee to Take Corporate Governance Actions to Remove or Replace the Ng Subsidiary Directors**

(i)     *The Direct Non-Debtor Subsidiaries*

31.     Each of the Direct Non-Debtor Subsidiaries is a Peruvian entity.  Under Peruvian law, the Ng Subsidiary Directors at the Direct Non-Debtor Subsidiaries may be removed and any existing powers of attorney may be revoked with immediate effect through a shareholders'

13

meeting. Because the Direct Non-Debtor Subsidiaries have other general managers and legal representatives that are not Ng Subsidiary Directors, the Chapter 11 Trustee intends to remove the Ng Subsidiary Directors at certain of[8] the Direct Non-Debtor Subsidiaries without replacing them (and remove their existing powers of attorney).

32.     As is more fully described above, CFG Peru Singapore is a shareholder of each of the Direct Non-Debtor Subsidiaries. The Chapter 11 Trustee is CFG Peru Singapore's representative in its capacity as the shareholder at each Direct Non-Debtor Subsidiaries. In Peru, if a representative of a corporation's shareholder cannot attend a shareholder meeting in person, the representative may designate a person to represent and vote the shareholder's shares at such meeting by issuing a proxy. As the Court is aware, the Chapter 11 Trustee is reasonably often in Peru in connection with this Chapter 11 Case. However, particularly in light of the global COVID-19 pandemic, the Chapter 11 Trustee cannot be sure that he will be in Peru on the exact date of the shareholder meeting to remove the Ng Subsidiary Directors at the Direct Non-Debtor Subsidiaries and revoke their existing powers of attorney. As a result, the Chapter 11 Trustee intends to issue proxies to a manager of each of the Direct Non-Debtor Subsidiaries in order for such manager to vote CFG Peru Singapore's shares in the Direct Non-Debtor Subsidiaries at their shareholder meetings in favor of removing the Ng Subsidiary Directors and revoking their powers of attorney.

    (ii)    *Debtor Protein Trading*

33.     Protein Trading is a Samoan entity. Under Samoan law, Protein Trading's board of directors may be replaced with immediate effect if a holder of more than 75% of its shares

---

[8]    Although the Chapter 11 Trustee believes that the Ng Family may frustrate his goals at each of CFG Peru Singapore's subsidiaries, he intends to prioritize removing or replacing the Ng Subsidiary Directors at only those subsidiaries that are operating entities or have assets. With respect to the subsidiaries that are defunct or non-operating, the Chapter 11 Trustee reserves the right to remove the Ng Subsidiary Directors at those entities but may do so at a later time.

14

executes a written resolution of shareholders without convening a shareholders' meeting.

34.    CFG Peru Singapore owns 100% of the shares of Protein Trading, and the Chapter 11 Trustee is CFG Peru Singapore's representative in its capacity as Protein Trading's shareholder.  Thus, the Chapter 11 Trustee intends to execute a written resolution of shareholders removing the current board of directors of Protein Trading.

(iii)    *The Indirect Subsidiaries*

35.    Removing or replacing the Ng Subsidiary Directors at the Indirect Subsidiaries and revoking their existing powers of attorney does not require the Chapter 11 Trustee to take any corporate governance actions because CFG Peru Singapore is not a shareholder of those entities.  CFGI is the 100% shareholder of Macro Capitales S.A. and Copeinca AS.  Copeinca AS is in turn the 100% shareholder of Copeinca Internacional S.A. Together, Copeinca AS and Copeinca Internacional S.A. are the 100% shareholders of Copeinca.  Finally, Copeinca is the 100% shareholder of PFB Fisheries B.V.  A representative of CFGI will convene a shareholder meeting of Copeinca AS under Norwegian law and vote CFGI's shares to replace the Ng Subsidiary Directors at Copeinca AS and revoke their existing powers of attorney; a representative of Copeinca AS will adopt the decision as the sole shareholder of Copeinca Internacional S.A. under Spanish law to replace the Ng Subsidiary Directors at Copeinca Internacional S.A. and revoke their existing powers of attorney; and a representative of each of Copeinca AS and Copeinca Internacional S.A. will represent those entities at a shareholder meeting of Copeinca under Peruvian law to remove the Ng Subsidiary Directors and revoke their existing powers of attorney.

36.    The Chapter 11 Trustee does not believe it is necessary at this time to remove or replace the directors at (i) Macro Capitales S.A. (a Panamanian entity) because it is a

15

defunct, non-operating entity, or (ii) PFB Fisheries B.V. (a Dutch entity), because the directors of

that entity are not Ng Subsidiary Directors.

## APPLICABLE AUTHORITY

### A.    The Court May Exercise its Equitable Authority Under Section 105 to Compel the Boards to Effectuate the Netting

37.    The Bankruptcy Code authorizes the bankruptcy court to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).   Section 105(a) also authorizes the Court to take any action or make any

determination "necessary or appropriate to enforce or implement" the Court's earlier orders and

prevent abuse of process.   Further, the Bankruptcy Code states that the rights and powers of a

debtor in possession are subject "to such limitations or conditions as the court prescribes." 11

U.S.C. § 1107(a).   The case law demonstrates that bankruptcy courts have considerable authority

to interfere with a debtor corporation's corporate governance and circumscribe certain governance

rights in order to protect the creditors' interests.

38.    There is ample basis for the Court to exercise its section 105 authority here:

the failure by the directors of CFIL and CFG Peru Singapore to execute the Netting Documents

threatens recoveries to creditors by preventing the Peruvian Opcos from being able to realize

substantial tax savings and prevents the Chapter 11 Trustee from exercising his fiduciary duties by

taking steps to maximize the value of the Debtor's estate and clear a path out of chapter 11.

39.    Indeed, bankruptcy and other courts have been willing to circumvent

corporate governance rights where necessary to facilitate a corporate debtor's reorganization and

avoid unnecessary depreciation of value.   For example, courts have found that the court can control

the governance of a corporate debtor where shareholder action threatens the reorganization.   See,

e.g., In re Sagecrest II, LLC, No. 10-Civ.-978(SRU), 2011 WL 134893, *5 (D. Conn. 2011) ("As

a court of equity, the bankruptcy court has the power to excuse compliance with corporate governance rules that threaten the entity's reorganization or risk harming creditors and other interested parties.").

40.    The Second Circuit took a similar view in In re Potter Instrument Co., Inc., 593 F.2d 470 (2d Cir. 1979), holding that the bankruptcy and district courts were justified in denying a major stockholder's petition for a special meeting to elect new directors "in view of the finding that such an election might result in unsatisfactory management and would probably jeopardize both [debtor's] rehabilitation and the rights of creditors and stockholders sounding the 'death knell' to the debtor." Id. at 475.  In Potter, the Second Circuit affirmed the bankruptcy court's order directing the shareholder to deliver to the debtors a proxy empowering the debtors' management to vote the shareholder's shares of stock in favor of the conditions required by the plan, holding that the bankruptcy court had jurisdiction over the shareholder's shares of the corporate debtor's stock because both the corporate debtor and major stockholder were debtors in an ongoing chapter 11 case.  Id.

41.    Here, failure by Debtors CFIL and CFG Peru Singapore to effectuate the Netting of the 459m Claim harms the Debtor's estate because it prevents the Peruvian Opcos from being able to realize immediate and substantial tax savings.  Without this Court's assistance, the Ng Family is likely to continue to withhold execution of the Netting Documents and may impede effectuation of the subsequent stages of the Intercompany Settlement Agreement, and potentially the CFG Peru Sale process.

42.    As was the case in Potter, where the bankruptcy court directed a shareholder to issue a proxy in order to effectuate the plan, here, the Court can and should compel the directors of CFIL and CFG Peru Singapore (i.e., the Ng Family) to take the necessary actions to effectuate

the Netting of the 459m Claim.  The situation is even more clear-cut here.  Whereas in <u>Potter</u>, the

shareholder was attempting to call a special meeting in order to preserve value for itself, here, the

directors of CFIL and CFG Peru Singapore have no reason whatsoever to prevent the Netting of

the 459m Claim, which will inure to the benefit of all Debtors and their stakeholders.

**B.    Taking Corporate Governance Actions Necessary to Enable the Removal and/or Replacement of the Ng Subsidiary Directors at the Direct Subsidiaries is a Proper Exercise of the Chapter 11 Trustee's Business Judgment**

43.    The Chapter 11 Trustee hereby seeks authorization to take any corporate

governance actions consistent with Peruvian and Singaporean law that he determines are desirable

or reasonably necessary to remove or replace the Ng Subsidiary Directors at the Direct

Subsidiaries, and revoke their existing powers of attorney.

44.    The Chapter 11 Trustee submits that application of the section 363(b)

standard for use of property of the estate outside of the ordinary course of a debtor's business is

met here.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part: "[t]he trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property

of the estate."

45.    CFG Peru Singapore's shares in the Direct Subsidiaries are property of this

bankruptcy estate.  <u>See</u> 11 U.S.C. §541(a)(1) ("[The] estate is comprised of all the following

property, wherever located and by whomever held . . . all legal or equitable interests of the debtor

in property as of the commencement of the case.").  Issuing a proxy to vote CFG Peru Singapore's

shares in the Direct Subsidiaries may be considered use of property of the estate outside the

ordinary course of business.  Courts have previously found that "'use' [in section 363] denotes the

act of using, and the exercise of voting rights is one of the uses to which [stock] could be put," and

have allowed debtors to vote their shares under section 363 to effectuate transactions.  <u>See In re</u>

18

Consolidated Auto Recyclers, Inc., 123 B.R. 130, 140 (D. Maine 1991) (holding that the exercise

of voting rights is one of the uses to which stock could be put); see also In re Modanlo, 412 B.R.

715, 731 (Bankr. D. Md. 2006) (recognizing that "[m]ost section 363(b)(1) motions involve use

of tangible property, but property of the estate includes intangible property as well, such as

stockholder equity rights and voting rights" and authorizing chapter 11 trustee to vote the debtor's

equity interests in a subsidiary to call a shareholder meeting), subsequently aff'd, 266 F. App'x

272 (4th Cir. 2008); In re SunEdison, Inc., Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. June 7,

2017) [Dkt. No. 3294] (authorizing debtors to vote their shares under section 363 to enter into

certain merger support agreements); In re Savient Pharms., Inc., Case No. 13-12680 (MFW)

(Bankr. D. Del. Nov. 4, 2013) [Dkt. No. 109] (authorizing debtors to take corporate actions,

including voting stock and passing shareholder resolutions, to dissolve foreign non-debtor

subsidiaries under section 363).

46.     This Court's power under section 363 is supplemented by section 105(a),

which provides in relevant part: "[t]he court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of this title."  As set forth below, the Chapter

11 Trustee submits that he has satisfied the requirements of sections 105 and 363 as those sections

have been construed by courts.

47.     In particular, use, sale, or lease of property of the estate, other than in the

ordinary course of business, is authorized when there is an "articulated business justification" for

the action to be taken.  See Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th

Cir. 1991) (citation omitted); accord Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel

Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983).  When a valid business justification exists, the law

vests the debtor's decision to use property out of the ordinary course of business with a strong

19

presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted).

48.    The Chapter 11 Trustee has a clear business justification for taking corporate governance actions to remove the Ng Subsidiary Directors at the Direct Subsidiaries and revoke their existing powers of attorney, which is to ensure that the Ng Subsidiary Directors are not able to continue to frustrate the Chapter 11 Trustee's value-maximizing actions with respect to these Chapter 11 Cases, including by ensuring that the remainder of the steps of the Netting are completed in due course, and ensuring that the CFG Peru Sale process can proceed without issue. Given prior dealings with and the more recent refusal by the directors (which are Ng Family members or individuals associated with them) at CFIL and CFG Peru Singapore to effectuate the Netting of the 459m Claim—which they previously agreed to do—the Chapter 11 Trustee has lost all confidence in the Ng Family, and now believes that keeping the Ng Subsidiary Directors in place at CFG Peru Singapore's subsidiaries is likely to hinder progress in these Chapter 11 Cases. Accordingly, the Chapter 11 Trustee submits that it would be a proper exercise of his business judgment to take corporate governance actions to remove the Ng Subsidiary Directors at the Direct Subsidiaries and revoke their existing powers of attorney in order to ensure that CFG Peru Singapore's chapter 11 case proceeds smoothly.

49.    Courts have entered orders authorizing debtors to take corporate governance actions to cause non-debtor affiliates to take actions for the benefit of a debtor's estate. See, e.g., In re Abeinsa Holding Inc., Case No. 16-10790 (KJC) [Dkt. No. 280] (Bankr. D. Del. May 25 2016) (authorizing debtor to take any and all actions reasonably necessary to sell assets of

20

non-debtor subsidiaries); <u>In re Haggen Holdings, LLC</u>, Case No. 15-11874 (KG) (Bankr. D. Del.

Apr. 26, 2016) [Dkt. No. 1828] (authorizing debtor to take corporate actions that are desirable or

necessary to monetize assets of non-debtor affiliates); <u>In re Variant Holding Co.</u>, Case No. 14-

12021 (BLS) (Bankr. D. Del. June 5, 2015) [Dkt. No. 381] (authorizing debtor to take all necessary

actions to sell assets of non-debtor subsidiaries pursuant to purchase agreement); <u>In re Savient

Pharms., Inc.</u>, Case No. 13-12680 (MFW) (Bankr. D. Del. Nov. 4, 2013) [Dkt. No. 109]

(authorizing debtors to take corporate actions to dissolve foreign non-debtor subsidiaries); <u>In re

Arcapita Bank B.S.C.(c)</u>, Case No. 12-11076 (SHL) [Dkt. No. 726] (Bankr. S.D.N.Y. Dec. 18,

2012) (authorizing debtor to grant consents and approvals in connection with sale by non-debtor

subsidiary pursuant to purchase agreement notwithstanding the fact that the seller is not a debtor

and not subject to the court's jurisdiction); <u>In re Tribune Co.</u>, Case No. 08-13141 (KJC) (Bankr.

D. Del. Feb. 25, 2011) [Dkt. No. 8150] (authorizing debtor to take any and all necessary actions

to cause non-debtor affiliate to make capital contribution in another entity); <u>In re Calpine Corp.</u>,

Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Mar. 1, 2006) [Dkt. No. 926] (authorizing the debtors

to take all actions necessary to effectuate sale procedures for non-debtor subsidiaries, and

approving same).[9]

## <u>WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)</u>

50.    The Chapter 11 Trustee also requests that the Court waive the stay imposed

by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of

property other than cash collateral is stayed until the expiration of 14 days after entry of the order,

unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that

[9]    Because of the voluminous nature of the orders cited herein, they are not attached to this Motion. Copies of these orders, however, are available upon request.

21

the Chapter 11 Trustee seeks will, *inter alia*, ensure that the Netting of the 459m Claim can be completed as soon as possible in order to realize substantial tax savings and help clear a path out of chapter 11 as the Debtors prepare for mediation on two gating issues in this Chapter 11 Case. Accordingly, the Chapter 11 Trustee respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

51.    Notice of this Motion shall be given to (a) the U.S. Trustee; (b) creditors holding the fifty largest claims as set forth in the consolidated list filed with the Debtors' petitions; (c) U.S. counsel to Standard Chartered Bank (Hong Kong) Limited; (d) U.S. counsel to Coöperatieve Rabobank, U.A.; (e) U.S. counsel to the ad hoc committee of certain entities that hold, or act as investment manager of or advisor to certain funds, controlled accounts, and/or other entities that hold or are beneficial owners of the Notes and the Club Loan; (f) U.S. counsel to Bank of America N.A.; (g) U.S. counsel to Malayan Banking Berhad, Hong Kong Branch; (h) U.S. counsel to Friedrich von Kaltenborn-Stachau, the insolvency administrator for the Pickenpack companies; (i) U.S. counsel to the current Indenture Trustee; (j) U.S. counsel to the other Debtors; (k) the United States Attorney's Office for the Southern District of New York; (l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; (n) Jessie Ng on behalf of the other Debtors; (o) U.S. counsel to FTI Consulting as Joint Provisional Liquidators of Pacific Andes Enterprises (BVI) Limited, Parkmond Group Limited, PARD Trade Limited, and Solar Fish Trading Limited; (p) counsel to certain holders of the Notes and Club Loan, Kasowitz Benson Torres LLP; (q) counsel for Madison Pacific Trust Limited, Hogan Lovells US LLP; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002. A copy of this Motion is also available on the Court's website.

22

## NO PRIOR REQUEST

52.    No previous request for the relief sought herein has been made to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Chapter 11 Trustee respectfully requests that the Court enter

an order, substantially in the form annexed hereto, granting the relief requested in the Motion

and such other and further relief as may be just and proper.

Dated:  May 22, 2020
        New York, New York

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  */s/ Lisa Laukitis*
        Lisa Laukitis
        One Manhattan West
        New York, New York 10001-8602
        Telephone: (212) 735-3000
        Fax: (212) 735-2000

        -and-

        Ebba Gebisa (admitted *pro hac vice*)
        155 N. Wacker Dr.
        Chicago, Illinois 60606-1720
        Telephone: (312) 407-0700
        Fax: (312) 407-0411

        *Counsel for William A. Brandt, Jr.,*
        *Chapter 11 Trustee*

24

**<u>EXHIBIT A</u>**

**Proposed Form of Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| Debtor. | : | |
| | : | **(Jointly Administered)** |
| | : | |

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) AND
BANKRUPTCY RULES 2002 AND 6004 (I) COMPELLING DEBTORS CHINA
FISHERIES INTERNATIONAL LIMITED AND CFG PERU SINGAPORE TO
EFFECTUATE CERTAIN PRELIMINARY ASPECTS OF THE NETTING OF
INTERCOMPANY CLAIMS, AND (II) AUTHORIZING CORPORATE GOVERNANCE
ACTIONS NECESSARY TO REMOVE OR REPLACE THE NG SUBSIDIARY
DIRECTORS AT CFG PERU SINGAPORE'S SUBSIDIARIES**

Upon the motion (the "Motion"),[2] dated May 22, 2020, by William A. Brandt, Jr.,

not individually but solely in his capacity as Chapter 11 Trustee of CFG Peru Singapore, for an

order (this "Order"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code

---

[1]    The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure
(the "Bankruptcy Rules"), (i) compelling Debtors China Fisheries International Limited ("CFIL")
and CFG Peru Singapore to take all actions and execute all documents necessary to effectuate the
netting of certain intercompany claims (the "Netting") to net the $459 million intercompany claim
(the "459m Claim") owed by non-Debtor CFG Investment S.A.C. ("CFGI") to CFIL; and
(ii) authorizing, but not directing, the Chapter 11 Trustee to take all corporate governance actions
consistent with Peruvian and Singaporean law, including, but not limited to, issuing proxies,
passing shareholders' resolutions, enabling managers to execute any necessary documentation, or
other actions that are in the Chapter 11 Trustee's business judgment desirable or necessary to
remove or replace the directors, general managers, and legal representatives at CFG Peru
Singapore's direct subsidiaries that are Ng family members (the "Ng Family") or individuals
associated with the Ng Family (the "Ng Subsidiary Directors") and revoke their existing powers
of attorney, all as more fully set forth in the Motion; and due and sufficient notice of the Motion
having been given under the particular circumstances; and it appearing that no other or further
notice need be provided; and the appearance of all interested parties and all responses and
objections, if any, to the Motion having been duly noted in the record of the hearing on the Motion;
and it appearing that the relief requested by the Motion is in the best interests of the Debtor, its
estate, its creditors, its stakeholders, and other parties in interest; and after due deliberation thereon,
and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that**:

1.    The Motion is GRANTED as set forth herein.

2.      Debtors CFIL and CFG Peru Singapore are hereby directed and compelled to take all necessary actions and execute all necessary documents to effectuate the Netting of the 459m Claim.

3.      The Chapter 11 Trustee is authorized to take all corporate governance actions and to adopt any decision with respect to the Direct Subsidiaries consistent with Peruvian and Singaporean law, including but not limited to issuing proxies; passing shareholders' resolutions; enabling the managers of the Direct Subsidiaries to execute any necessary documentation; and taking any other actions that he determines, in his business judgment, are desirable or reasonably necessary or advisable to remove or replace any directors, general managers, and legal representatives at the Direct Subsidiaries, and to revoke their existing powers of attorney.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

5.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.


Dated: _____, 2020
         New York, New York




        _____
        HON. JAMES L. GARRITY, JR.
        UNITED STATES BANKRUPTCY JUDGE




3

## **EXHIBIT B**

**Brandt Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | **Chapter 11** |
| | : | |
| **CHINA FISHERY GROUP LIMITED (CAYMAN)** | : | **Case No. 16-11895 (JLG)** |
| *et al.*, | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |
| | : | |
| In re: | : | **Chapter 11** |
| | : | |
| **CFG Peru Investments Pte. Limited (Singapore),** | : | **Case No. 16-11914 (JLG)** |
| Debtor. | : | |
| | : | **(Jointly Administered)** |
| | : | |

**DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF**
**CHAPTER 11 TRUSTEE'S MOTION FOR ORDER PURSUANT TO**
**BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) AND BANKRUPTCY**
**RULES 2002 AND 6004 (I) COMPELLING DEBTORS CHINA FISHERIES**
**INTERNATIONAL LIMITED AND CFG PERU SINGAPORE TO EFFECTUATE**
**CERTAIN PRELIMINARY ASPECTS OF THE NETTING OF INTERCOMPANY**
**CLAIMS, AND (II) AUTHORIZING CORPORATE GOVERNANCE ACTIONS**
**NECESSARY TO REMOVE OR REPLACE THE NG SUBSIDIARY DIRECTORS**
**AT CFG PERU SINGAPORE'S SUBSIDIARIES**

I, William A. Brandt, Jr., being duly sworn, depose and say:

1.      I am the Executive Chairman and founder of Development Specialists, Inc.

("DSI"), a restructuring and financial advisory firm that specializes in interim management,

---

[1]     The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.  DSI maintains offices at 110 E. 42nd Street, Suite 1818, New York, New York 10017.

2.      I have approximately forty-five (45) years of experience in the practice of turnarounds and restructurings and have served in various capacities in a large number of cases including as a chapter 11 trustee, a chapter 7 trustee, an examiner, a chief restructuring officer, and other similar fiduciary capacities.

3.      I submit this Declaration in my capacity as Chapter 11 Trustee of CFG Peru Investments Pte. Limited (Singapore) ("CFG Peru Singapore"), in support of the *Chapter 11 Trustee's Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 363(b) and Bankruptcy Rules 2002 and 6004 (I) Compelling Debtors China Fisheries International Limited and CFG Peru Singapore to Effectuate Certain Preliminary Aspects of the Netting of Intercompany Claims, and (II) Authorizing Corporate Governance Actions Necessary to Remove or Replace the Ng Subsidiary Directors at CFG Peru Singapore's Subsidiaries* (the "Motion").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein, either directly or through professionals working at my direction, or through my representatives and advisors and, if called as a witness, I would testify competently thereto.

A.      **The Mediation and the Impact of COVID-19 on the Peruvian Opcos**

4.      These cases are at a critical juncture.  Next month, it is intended that a large number of stakeholders in these Chapter 11 Cases will engage in mediation (the "Mediation") to attempt to resolve two remaining gating items to carving a path out of chapter 11: an intercreditor dispute over the relative priority of third-party funded debt at the Peruvian Opcos, and a dispute

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

involving Hong Kong litigation proceedings initiated by the liquidators appointed by courts in Hong Kong and BVI. I am cautiously optimistic that resolution of these gating issues will reignite the CFG Peru Sale process or allow progress to be made on an alternative, value-maximizing path out of chapter 11.

5.      At the same time, the global COVID-19 pandemic has had a significant impact on the Peruvian Opcos.  The first fishing season of 2020, which under normal circumstances would have begun at the beginning of April, was delayed until May 13.  Further, once begun, there were significant limitations imposed by the Peruvian government which will result in reduced productivity.  Although the Peruvian Opcos, in no small part due to my previous efforts, are well-equipped to quickly catch and process a large portion of their quota during the delayed fishing season, it is unlikely that they will realize 100% of their quota.  Thus, the Peruvian Opcos are keenly focused on near term liquidity measures that will help them weather the uncertainties of the current fishing season and the ongoing COVID-19 pandemic.  To that end, I have also determined not to make the anticipated interim distribution to creditors of the Peruvian Opcos at this time and have been focused on other cost-saving measures.

B.      **The Benefits of Netting the 459m Claim[3]**

6.      Around August 2017, in connection with broader discussions on intercompany claims, the advisors to the other Debtors and I began discussions on a potential intercompany settlement agreement to resolve certain large intercompany claims that exist between and among the Debtors and certain of their non-Debtor subsidiaries, including CFG Peru

---

[3]    I understand that the tax and other analyses set forth herein related to the Netting and attributed to EY was undertaken in connection with the original formulation of the Intercompany Settlement Agreement and the subsequent amendments thereto and filing of the Joint Notice. I understand that such analysis takes into account the current and anticipated circumstances at the relevant entities.

Singapore's subsidiaries (the "Intercompany Settlement Agreement"). The rationale for the Intercompany Settlement Agreement was to lower the threshold price in the sale of CFG Peru Singapore's equity interests in CFGI (the "CFG Peru Sale") and help clear a path out of chapter 11. Currently, CFGI owes the 459m Claim to CFIL. Since the proposed CFG Peru Sale will likely take the form of a sale of CFG Peru Singapore's equity interests in CFGI, if the proceeds from the CFG Peru Sale are not enough to pay the 459m Claim in full, a purchaser in the CFG Peru Sale may be liable for any amounts left unpaid even after the conclusion of these Chapter 11 Cases because CFGI is a non-Debtor. While the Intercompany Settlement Agreement also resolves numerous other intercompany claims, the Netting of the 459m Claim was the main objective. The Court entered an order approving the Intercompany Settlement Agreement on April 26, 2018 [Docket No. 1112] (the "Intercompany Settlement Order").

7.       Although a purchaser in the CFG Peru Sale has not yet surfaced, the Peruvian Opcos' tax advisors, Ernst & Young Peru ("EY") have undertaken further analysis and determined that there are significant benefits to Netting the 459m Claim as soon as possible. This includes the fact that under applicable Peruvian law, an 8% interest rate is imputed over intercompany claims owed by Peruvian entities, including the 459m Claim, and a 30% tax is imposed over this imputed interest rate. This has resulted in CFGI paying approximately $11 million in taxes per year on account of the 459m Claim.

8.       It is my understanding, per consultation with my advisors, that Netting the 459m Claim and removing it from CFGI's books would eliminate most of this $11 million tax burden. EY proposed the Netting of the 459m Claim in two steps. First, CFIL would assign its receivable owed by CFGI on account of the 459m Claim to CFG Peru Singapore (the "Assignment"). This would result in CFGI owing the 459m Claim to CFG Peru Singapore (instead

4

of CFIL), and in CFG Peru Singapore owing an equivalent $459 million intercompany claim to CFIL, as compensation for the assignment. Second, EY proposed that CFG Peru Singapore capitalize the 459m Claim which is now owed to it by CFGI (the "Capitalization"). The Capitalization would allow CFGI to extinguish almost all of the 459m Claim in exchange for increasing CFG Peru Singapore's share capital in CFGI.[4] EY estimates that the Assignment and Capitalization would result in CFGI saving approximately $10.3 million in taxes per year. Notably, the remainder of the Netting (i.e., Netting of numerous intercompany claims other than the 459m Claim) would be effectuated at a later date when a binding offer is received in the CFG Peru Sale.

9.      It is my understanding that EY has also determined, based on existing analysis, that the Assignment and Capitalization may be reversed without tax or other consequences in the event that a purchaser does not emerge in the CFG Peru Sale or an alternative transaction does not occur. First, to reverse the Capitalization, CFGI would effectuate a capital reduction transaction, by which it would reduce CFG Peru Singapore's shares in CFGI in exchange for re-creating the 459m Claim. Second, to reverse the Assignment, CFG Peru Singapore would simply assign the 459m Claim back to CFIL. This would put all parties back in their original starting positions.

10.     I submit that undertaking the Assignment and Capitalization to effectuate the Netting of the 459m Claim and realize $10.3 million in annual tax savings is in the best interests of all parties involved, including the other Debtors. Moreover, the projected tax savings from the Netting of the 459m Claim is particularly critical to the Peruvian Opcos given the negative impact on the Peruvian fishing industry by the global COVID-19 pandemic.

---

[4]     I do not intend to capitalize the entire 459m Claim, but rather leave a $50 million "cushion" in order to set off against any amounts owed by CFG Peru Singapore to CFGI on account of the superpriority intercompany loan to pay administrative expenses in CFG Peru Singapore's bankruptcy case.

C.    **The Need to Compel the Directors of CFIL and CFG Peru Singapore to Effectuate the Netting of the 459m Claim**

11.    In order to effectuate the Netting of the 459m Claim, certain documents need to be executed by the directors of CFIL and CFG Peru Singapore.[5]  These documents are: (i) a resolution of the directors of CFIL consenting to the Assignment; (ii) a resolution of the directors of CFG Peru Singapore consenting to the Assignment; (iii) an assignment agreement between CFIL and CFG Peru Singapore, executed by duly authorized signatories at each entity; and (iv) a letter from CFIL to the general managers of CFGI informing them of the Assignment (collectively, the "Netting Documents").

12.    Through my counsel, I first approached counsel to the other Debtors regarding Netting the 459m Claim in September 2019.  During those conversations, I made it clear that there were significant tax savings to Netting the 459m Claim, and that I intended to effectuate the Netting of the 459m Claim as soon as EY had completed its analysis in order to realize those tax savings.  At that time, the other Debtors were not only amenable to this plan, but submitted a joint notice with me to the Court to this effect on September 26, 2019 [Docket No. 1736] (the "Joint Notice").  The Joint Notice made clear that given various considerations, including tax efficiencies, the order of certain steps in the Netting would be altered, and expressly provided that "shortly following the filing of this Notice, the Parties intend to enter into the Intercompany Settlement Agreement and *execute certain of the Netting contemplated thereunder*." (Emphasis added.)

---

[5]    Although I have been appointed at CFG Peru Singapore by the Court, EY has advised that under applicable Singaporean law, the board of directors of CFG Peru Singapore (who are still Ng Family members or individuals associated with them) must execute certain documents to effectuate the Netting of the 459m Claim.

13.     Since the filing of the Joint Notice, EY has continued analyzing the Netting of the 459m Claim and drafting the Netting Documents.  EY completed its analysis earlier this year, and, on April 7, 2020 – three weeks after Peru enacted quarantine restrictions in response to the global COVID-19 pandemic that disrupted the Peruvian fishing season – my counsel reached out to counsel to the other Debtors with the Netting Documents for their execution.  To my surprise, the other Debtors, through their counsel, indicated that they were no longer amenable to Netting the 459m Claim, despite my reiterating the substantial tax benefits to the Peruvian Opcos and their need for liquidity, the reversibility of the Assignment and Capitalization, and the other Debtors' previous assent thereto.

14.     Given the Peruvian Opcos' focus on near-term liquidity measures and the material tax savings on the table, I have no choice but to bring this issue before the Court, and to request the Court to compel the necessary directors and representatives of CFIL and CFG Peru Singapore to execute the Netting Documents and take all other actions as needed to effectuate the Netting of the 459m Claim.

**D.      The Need to Remove or Replace the Ng Subsidiary Directors**

15.     The Ng Subsidiary Directors remain in place at CFG Peru Singapore's subsidiaries.  To date, I have deliberately not taken steps to replace the Ng Subsidiary Directors in order to encourage continued cooperation among the parties.  However, in light of my prior dealings with the Ng Family, and their unexpected about face with respect to the Netting of the 459m Claim, I have lost all confidence that the Ng Family will be cooperative in other aspects of CFG Peru Singapore's Chapter 11 Case, including, *inter alia*, effectuating the remainder of the Netting at the appropriate time, or giving the necessary approvals in connection with the CFG Peru Sale or an alternative transaction that provides a value-maximizing path out of chapter 11.

7

16.     Indeed, I also believe there is a risk that the Ng Subsidiary Directors could use their authority to actively subvert my objectives at the Peruvian Opcos and other subsidiaries below CFG Peru Singapore.  Accordingly, I believe that the time has come to remove the Ng Subsidiary Directors to ensure that I can continue to make progress in these Chapter 11 Cases and comply with my directive under the Trustee Order – "to evaluate the optimal way to maximize the value of the Peruvian Business and to determine how to realize that value for the benefit of the Debtors' estates and creditors."  See Trustee Order at page 47.

**E.    The Need for Me to Take Corporate Governance Actions to Remove or Replace the Ng Subsidiary Directors**

*(i)    The Direct Non-Debtor Subsidiaries*

17.     Each of the Direct Non-Debtor Subsidiaries is a Peruvian entity.  Under Peruvian law, the Ng Subsidiary Directors at the Direct Non-Debtor Subsidiaries may be removed and any existing powers of attorney may be revoked with immediate effect through a shareholders' meeting.  Because the Direct Non-Debtor Subsidiaries have other general managers and legal representatives that are not Ng Subsidiary Directors, I intend to remove the Ng Subsidiary Directors at certain of[6] the Direct Non-Debtor Subsidiaries without replacing them (and remove their existing powers of attorney).

18.     As detailed in the Motion, CFG Peru Singapore is a direct shareholder of each of the Direct Non-Debtor Subsidiaries.  I am CFG Peru Singapore's representative in its capacity as the shareholder at each Direct Non-Debtor Subsidiaries.  In Peru, if a representative of a corporation's shareholder cannot attend a shareholder meeting in person, the representative may

---

[6]    Although I believe that the Ng Family may frustrate my goals at each of CFG Peru Singapore's subsidiaries, I intend to prioritize removing or replacing the Ng Subsidiary Directors at only those subsidiaries that are operating entities or have assets.  With respect to the subsidiaries that are defunct or non-operating, I reserve the right to remove the Ng Subsidiary Directors at those entities but may do so at a later time.

8

designate a person to represent and vote the shareholder's shares at such meeting by issuing a proxy.  As the Court is aware, I am reasonably often in Peru in connection with this Chapter 11 Case.  However, particularly in light of the global COVID-19 pandemic, I cannot be sure that I will be in Peru on the exact date of the shareholder meeting to remove the Ng Subsidiary Directors at the Direct Non-Debtor Subsidiaries and revoke their existing powers of attorney.  As a result, I intend to issue proxies to a manager of each of the Direct Non-Debtor Subsidiaries in order for such manager to vote CFG Peru Singapore's shares in the Direct Non-Debtor Subsidiaries at their shareholder meetings in favor of removing the Ng Subsidiary Directors and revoking their powers of attorney.

       *(ii)    Debtor Protein Trading*

      19.    Protein Trading is a Samoan entity.  Under Samoan law, Protein Trading's board of directors may be replaced with immediate effect if a holder of more than 75% of its shares executes a written resolution of shareholders without convening a shareholders' meeting.

      20.    CFG Peru Singapore owns 100% of the shares of Protein Trading, and I am CFG Peru Singapore's representative in its capacity as Protein Trading's shareholder.  Thus, I intend to execute a written resolution of shareholders removing the current board of directors of Protein Trading.

       *(iii)    The Indirect Subsidiaries*

      21.    Removing or replacing the Ng Subsidiary Directors at the Indirect Subsidiaries and revoking their existing powers of attorney does not require me to take any corporate governance actions because CFG Peru Singapore is not a shareholder of those entities. CFGI is the 100% shareholder of Macro Capitales S.A. and Copeinca AS.  Copeinca AS is in turn the 100% shareholder of Copeinca Internacional S.A. Together, Copeinca AS and Copeinca

9

Internacional S.A. are the 100% shareholders of Copeinca.  Finally, Copeinca is the 100% shareholder of PFB Fisheries B.V.  A representative of CFGI will convene a shareholder meeting of Copeinca AS under Norwegian law and vote CFGI's shares to replace the Ng Subsidiary Directors at Copeinca AS and revoke their existing powers of attorney; a representative of Copeinca AS will adopt the decision as the sole shareholder of Copeinca Internacional S.A. under Spanish law to replace the Ng Subsidiary Directors at Copeinca Internacional S.A. and revoke their existing powers of attorney; and a representative of each of Copeinca AS and Copeinca Internacional S.A. will represent those entities at a shareholder meeting of Copeinca under Peruvian law to remove the Ng Subsidiary Directors and revoke their existing powers of attorney.

22.    I do not believe it is necessary at this time to remove or replace the directors at (i) Macro Capitales S.A. (a Panamanian entity) because it is a defunct, non-operating entity, or (ii) PFB Fisheries B.V. (a Dutch entity), because the directors of that entity are not Ng Subsidiary Directors.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information, and belief, the foregoing is true and correct.

Dated:  May 22, 2020

*/s/ William A. Brandt, Jr.*
William A. Brandt, Jr., not individually but solely in my capacity as Chapter 11 Trustee of CFG Peru Investments Pte. Ltd.