**UNITED STATES BANKRUPTCY COURT**　　　　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| *In re:* | : | Chapter 11 |
| | : | |
| CHINA FISHERY GROUP LIMITED | : | Case No. 16-11895 (JLG) |
| (CAYMAN), *et al.*, | : | |
| | : | (Jointly Administered) |
| *Debtors.*[1] | : | |

------------------------------------------------------------ x

| | | |
|---|---|---|
| *In re:* | : | Chapter 11 |
| | : | |
| CFG PERU INVESTMENTS PTE. | : | Case No. 16-11914 (JLG) |
| LIMITED (SINGAPORE), | : | |
| | : | (Jointly Administered) |
| *Debtor.* | : | |

------------------------------------------------------------ x

### MEMORANDUM DECISION AND ORDER GRANTING THE MOTION OF WILLIAM A. BRANDT, JR., FORMER CHAPTER 11 TRUSTEE, TO ENFORCE COMPLIANCE WITH FEE ORDER AND CONFIRMATION ORDER; OR, IN THE ALTERNATIVE, TO COMPEL THE POSTING OF A SUPERSEDEAS BOND OR DEPOSIT INTO THE COURT REGISTRY

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
*Counsel for William A. Brandt, Jr. former Chapter 11 Trustee*
600 Montgomery Street, Suite 3100
San Francisco, California 94111
By:　　Robert A. Julian, Esq. (admitted *pro hac vice*)
　　　　David J. Richardson, Esq. (admitted *pro hac vice*)

---

[1]　　The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, Toyama Holdings Limited (BVI), and Pacific Andes Enterprises (Hong Kong) Limited.

WHITE & CASE LLP
*Counsel to the Creditor Plan Proponents*
111 South Wacker Drive, Suite 5100
Chicago, Illinois  60654
By:    Gregory F. Pesce, Esq. (admitted *pro hac vice*)


1221 Avenue of the Americas
New York, New York 10020
By:    J. Christopher Shore, Esq.
        Colin West, Esq.


200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
By:    Laura L. Femino, Esq. (*pro hac vice* pending)


**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**



**Introduction**

Pursuant to the terms of this Court's order dated January 27, 2023 (the "Fee Order"),[2] in

consideration for his services as Chapter 11 Trustee of CFG Peru Investments Pte. Ltd. ("CFG

Peru"), the Court awarded William A. Brandt, Jr. ("Mr. Brandt") a commission in the amount of

$16,358,871.00, expenses in the amount of $326,622.52, and final approval of $355,051.93 in

---

[2]    *Memorandum Decision and Order Resolving First and Final Fee Application of Former Chapter 11 Trustee
William A. Brandt, Jr., for Compensation for Services Rendered as Chapter 11 Trustee for the Period from November
10, 2016 Through and Including June 24, 2021, and Second and Final Application of Former Chapter 11 Trustee
William A. Brandt, Jr., for Reimbursement of Expenses for the Period March 1, 2020 Through and Including June 24,
2021*, ECF No. 3127 (the "Fee Order"). References to "ECF No.__" are to the electronic docket in the main chapter
11 case, No. 16-11895.

previously approved interim expenses (the "Chapter 11 Trustee Fee Claims"). Under the Fee Order and the Court's order (the "Confirmation Order")[3] confirming CFG Peru's chapter 11 plan (the "Plan"),[4] CFG Peru, CFG Investment S.A.C. ("CFGI"), and Corporacion Pesquera Inca S.A.C. ("Copeinca") and any "Newco" established under the Plan (collectively, the "Payor Parties", with CFGI and Copeinca separately collectively defined as the "Peruvian Opcos"), are responsible for paying the Chapter 11 Trustee Fee Claims. The Fee Order directs them to pay the fees.

The matter before the Court is the *Motion of William A. Brandt, Jr., Former Chapter 11 Trustee, to Enforce Compliance with Fee Order and Confirmation Order; Or, in the Alternative, to Compel the Posting of a Supersedeas Bond to Deposit into the Court Registrar*, ECF No. 3133 (the "Motion"). In the Motion, Mr. Brandt requests the entry of an order compelling the Payor Parties to comply with the payment terms in the Fee Order. The Payor Parties did not respond to the Motion. However, Burlington Management DAC ("Burlington") and Monarch Alternative Capital LP ("Monarch", with Burlington, the "Appellants")[5] responded to, and object to the Motion (the "Objection").[6] They have also appealed the Fee Order but have not sought a stay of

---

[3]    *Order Confirming Creditor Plan Proponents' Chapter 11 Plan for CFG Peru Investments Pte.Ltd. (Singapore)* (the "Confirmation Order"), ECF No. 2569.

[4]    *Creditor Plan Proponents' Chapter 11 Plan for CFG Peru Investments Pte. Ltd. (Singapore)*, ECF No. 2564.

[5]    Burlington and Monarch are the "Creditor Plan Proponents" as that term is defined in the Chapter 11 Plan.

[6]    *See Objection of the Creditor Plan Proponents to the Motion of William A. Brandt, Jr., Former Chapter 11 Trustee, to Enforce Compliance with Fee Order and Confirmation Order; or, in the Alternative, to Compel the Posting of a Supersedeas Bond to Deposit into the Court Registrar*, ECF No. 3144 (the "Objection"). In support of the Objection, the Creditor Plan Proponents submitted the *Declaration of Gregory F. Pesce in Support of the Objection of the Creditor Plan Proponents to the Motion of William A. Brandt, Jr., Former Chapter 11 Trustee, to Enforce Compliance with Fee Order and Confirmation Order; Or, in the Alternative, to Compel the Posting of a Supersedeas Bond to Deposit into the Court Registrar*, ECF No. 3145 (the "Pesce Declaraton").

the order pending resolution of the appeal. Mr. Brandt submitted a Reply Brief[7] in support of the Motion and in response to the Objection.

The Court heard argument on the Motion. For the reasons set forth herein, the Court grants the Motion. The Court directs the Payor Parties each to comply with the Fee Order directive to pay Mr. Brandt his allowed Chapter 11 Trustee Fee Claims as determined in the Fee Order no later than three (3) business days from entry of this Memorandum Decision and Order.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. It is not contested that, as there is no stay of the Fee Order pending resolution of the Appellants' appeal, the Court has jurisdiction to enforce the order.[8]

---

[7]    *See Reply Brief of William A. Brandt, Jr., Former Chapter 11 Trustee, in Support of Moton to Enforce Compliance with Fee Order and Confirmation Order; or, in the Alternative, to Compel the Posting of a Supersedeas Bond or Deposit into the Court Registry*, ECF No. 3149 (the "Reply").

[8]    A federal court has the power and jurisdiction to enforce its own orders. *See, e.g., Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934) (stating that a bankruptcy court has jurisdiction to enforce its orders); *In re Johns-Manville Corp.*, 97 B.R. 174, 180 (Bankr. S.D.N.Y. 1989) (finding that the bankruptcy court retains jurisdiction to interpret and enforce its own orders). That jurisdiction continues post-confirmation. *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 153 (2d Cir. 2016) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."). The filing of a notice of appeal of an order does not divest the court of the jurisdiction to enforce the order, absent a stay pending appeal. However, it lacks jurisdiction to alter the order. *See Asbestosis Claimants v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re Prudential Lines)*, 170 B.R. 222, 243 (S.D.N.Y. 1994) ("[W]hile an appeal of an order or judgment is pending, the court retains jurisdiction to implement or enforce the order or judgment . . . Courts have accordingly recognized a distinction in the divestment of jurisdiction between acts undertaken to enforce the judgment and acts which expand upon or alter it."); *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016) ("During the pendency of an appeal of a bankruptcy court order, however, the bankruptcy court is not divested of jurisdiction to enforce or implement the order being appealed, nor is the bankruptcy court divested of jurisdiction 'to decide issues and proceedings different from and collateral to those involved in the appeal.'" (quoting *In re Bd. Of Directors of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001)). In the Motion, Mr. Brandt seeks to enforce, not alter, the Fee Order. The Court therefore has the jurisdiction to address the relief requested in this Motion.

Mr. Brandt and the Plan Proponents have consented to this Court's jurisdiction, to whatever extent

that might be required. The Court has jurisdiction over the Payor Parties.[9]

---

[9]    The Payor Parties are foreign entities. The Court applies a two-pronged test to determine whether it can exercise personal jurisdiction over them.  First, the Court will consider whether the Payor Parties have "the requisite minimum contacts with the United States at large." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R 106, 117 (Bankr. S.D.N.Y. 2011) (quoting *Picard v. Chais In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010)).  Second, the Court will determine whether its exercise of personal jurisdiction is reasonable; that is, whether its exercise of jurisdiction over the Payor Parties will offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., Ltd. v. Super Ct. Cal.*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Court plainly has personal jurisdiction over CFG Peru, as it has been a chapter 11 debtor before this Court for nearly seven years, thereby consenting to this Court's personal jurisdiction upon the filing of its petition. *In re Malek*, 591 B.R. 420, 426 (Bankr. N.D. Cal. 2018) (debtor consents to personal jurisdiction in bankruptcy court by filing petition). The Peruvian Opcos are not debtors herein. However, the facts demonstrate that they have consented to the Court's exercise of personal jurisdiction over them.

Specific jurisdiction exists when a party's conduct connects it to the forum in a meaningful way, even when the conduct occurs entirely outside the relevant forum. *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-CV-9391-GHW, 2017 WL 1169626, at *42 (S.D.N.Y. Mar. 28, 2017).  Indeed, "[a] defendant need not have committed a physical act within the forum state, however, for his contacts with the forum to be sufficient."  *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981, 2015 WL 1514539, at *9 (S.D.N.Y. Mar. 31, 2015).  "[P]ersonal jurisdiction may be asserted by courts where a foreign corporation, through an act performed elsewhere, causes an effect in the United States." *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995); *see S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) (holding that courts permit the exercise of jurisdiction over a defendant whose "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there" and "[o]ne circumstance making such anticipation reasonable is where a defendant has acted in such a way as to have 'caused consequences' in the forum state"). Throughout the course of the CFG Peru chapter 11 case, the Peruvian Opcos have accepted benefits of this Court's jurisdiction. For example:

- This Court approved the "netting" agreement that shifted $459 million of CFGI intercompany debts to CFG Peru, *see Order Approving the Settlement Agreement Netting Intercompany Claims Among and Between CFG Peru Singapore, the Other Debtors, and the Non-Debtor Affiliates, Including the CFG Peru Singapore Subsidiaries, and Approving Stipulation with Bank of America, N.A.*, ECF No. 1112;

- CFGI benefitted from post-petition financing arranged by the Trustee sufficient to resume fishing operations, *see* Fee Order at 21;

- CFGI and CFG Peru benefitted from the sale of certain affiliate vessels, providing funds for operation of the chapter 11 cases, *see* Fee Order at 26-27; and

- The Trustee pursued litigation against HSBC in Hong Kong for the benefit of the Peruvian OpCos, *see* Fee Order at 27-28.

The Peruvian Opcos have consented to this Court's personal jurisdiction. *See In re Motors Liquidation Co.*, 565 B.R. 275, 288 (Bankr. S.D.N.Y. 2017) (holding that an Austrian lender "knowingly consented to the jurisdiction provision in the DIP Order by accepting a transfer of funds"). Moreover, the Plan expressly provides that the Payor Parties will be liable for payment of the Trustee's commission and expenses. Plan art. II.B.  The Appellants filed and confirmed the plan.  Thus, the Motion seeks compliance with an obligation of Appellants' own design, for companies that—pursuant to the Plan—they now control.  The entry of an order enforcing the Fee Order's payment directive will not impose any burden upon any Payor Party. Further, this Court has a significant interest in enforcing its own orders, including the Confirmation Order and the Fee Order.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732

## **Background**

<u>Mr. Brandt's Appointment as the Chapter 11 Trustee for CFG Peru</u>

On June 30, 2016, CFG Peru and certain affiliates commenced voluntary cases under chapter 11 of the Bankruptcy Code in this Court. On October 28, 2016, the Court entered the *Memorandum Decision and Order Granting Motion for the Appointment of a Chapter 11 Trustee*, ECF No. 203, which directed the U.S. Trustee to appoint a chapter 11 trustee in CFG Peru's chapter 11 case. On November 10, 2016, the U.S. Trustee filed an application seeking the appointment of Mr. Brandt as the Chapter 11 Trustee.[10] On November 14, 2016, the Court granted the application and appointed Mr. Brandt as Chapter 11 Trustee.[11] On June 10, 2021, the Court entered the Confirmation Order, confirming the Plan. On November 7, 2022, the Plan became effective.

<u>The Court Awards Mr. Brandt Compensation for His Services and Directs Payment of the Fees</u>

On October 1, 2021, Mr. Brandt filed his application for approval of his requested commission and expenses for services rendered as Chapter 11 Trustee (the "Fee Application").[12] On November 17, 2021, the Appellants filed the sole opposition to the Fee Application,[13] and on

---

F.3d 161, 170 (2d Cir. 2013) (noting that jurisdictional analysis also considers "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief" (quoting *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996))).

[10]    *Application for Order Approving the Appointment of a Chapter 11 Trustee in Debtor CFG Peru Singapore,* ECF No. 218.

[11]    *Notice of Approval and Acceptance of Appointment of Chapter 11 Trustee in CFG Peru Investments Pte. Limited (Singapore)*, ECF No. 226.

[12]    *First and Final Fee Application of Former Chapter 11 Trustee William A. Brandt, Jr.,For Compensation for Services Rendered as Chapter 11 Trustee for the Period from November 10, 2016 through and Including June 24, 2021, and Second and Final Application of Former Chapter 11 Trustee William A. Brandt, Jr., for Reimbursement of Expenses for the Period March 1, 2020 through and Including June 24, 2021*, ECF No. 2712 (the "Fee Application").

[13]    *The Creditor Plan Proponents Objection to the First and Final Fee Application of Former Chapter 11 Trustee William A. Brandt, Jr., for Compensation for Services Rendered as Chapter 11 Trustee for the Period From November 10, 2016 Through and Including June 24, 2021, and Second and Final Application of Former Chapter 11 Trustee William A. Brandt, Jr., for Reimbursement of Expenses for the Period March 1, 2020 Through and Including June 24, 2021*, ECF No. 2813 (the "Fee Objection").

November 29, 2021, Mr. Brandt filed a reply brief in support of his Fee Application.[14] This Court

held an evidentiary hearing on the Fee Application. On January 27, 2023, the Court issued the Fee

Order awarding Mr. Brandt a commission in the amount of $16,358,871.00, expenses in the

amount of $326,622.52, and final approval of $355,051.93 in previously approved interim

expenses.

In part, the Fee Order "directs the parties identified in the CFG Peru Plan as being

responsible for payment of the Trustee's commission and expenses to pay the commission and

expenses." Fee Order at 108. Those parties identified in the CFG Peru Plan are the Payor Parties.

On February 10, 2023, the Appellants filed a Notice of Appeal, appealing the Fee Order.[15] As of

the date of this Motion, they have not sought any stay pending appeal, nor posted any bond. Mr.

Brandt maintains that the Appellants are taking the position that the Fee Order's payment directive

is not enforceable under the Plan, and, as such, they have a *de facto* stay of the Fee Order pending

appeal. Motion ¶ 48. Mr. Brandt reports that his counsel has been informed that payment of his

allowed commission and expenses will not be made under the Fee Order by reason of the filing of

the Notice of Appeal. *Id.* ¶ 23.

Relevant Terms of the CFG Peru Plan

The Plan defines the term "Chapter 11 Trustee Fee Claims" as "the commission (if any) of

the Chapter 11 Trustee to the extent Allowed by the Bankruptcy Court pursuant to section 326(a)

---

[14]   *Reply Brief in Support of First and Final Fee Application of Former Chapter 11 Trustee William A. Brandt, Jr., for Compensation for Services Rendered as Chapter 11 Trustee for the Period from November 10, 2016 through and including June 24, 2021, and Second and Final Application of Former Chapter 11 Trustee William A. Brandt, Jr., for Reimbursement of Expenses for the Period March 1, 2020 through and Including June 24, 2021*, ECF No. 2829.

[15]   *Notice of Appeal*, ECF No. 3131.  Mr. Brandt also filed a Notice of Cross Appeal of the Fee Order.  *Notice of Cross-Appeal*, ECF No. 3137.  The District Court (Cote, J.) has fixed a briefing schedule: Pesce Decl., Exhibit 3.

7

of the Bankruptcy Code." Plan art. I(A)(33).[16] Under the Plan, a Chapter 11 Trustee Claim is

payable under the Plan only after it has been "Allowed" by the Bankruptcy Court.[17] The Plan

defines the term "Allowed Claims," to include "a Claim . . . that is upheld or otherwise allowed . . .

by a Final Order of the Bankruptcy Court." Plan art. I(A)(11)(C). The Plan defines the term "Final

Order" as follows:

> as applicable, an order or judgment of the Bankruptcy Court or other court of
> competent jurisdiction with respect to the relevant subject matter that has not been
> reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11
> Case or the docket of any court of competent jurisdiction, and as to which the time
> to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has
> expired and no appeal or petition for certiorari or other proceedings for a new trial,
> reargument, or rehearing has been timely taken; or as to which any appeal that has
> been taken or any petition for certiorari that has been or may be timely Filed has
> been withdrawn or resolved by the highest court to which the order or judgment
> was appealed or from which certiorari was sought or the new trial, reargument, or
> rehearing will have been denied, resulted in no stay pending appeal of such order,
> or has otherwise been dismissed with prejudice; *provided* that the possibility that a
> motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous
> rule under the Bankruptcy Rules, may be filed with respect to such order will not
> preclude such order from being a Final Order.

Plan art. I(A)(67).

### The Motion and Objection

Mr. Brandt contends that the Plan requires payment of his commission and expenses once

they are an "Allowed Claim," which in turn is dependent on the definition of a "Final Order." He

maintains that the Plan's definition of a "Final Order" plainly provides that it includes an appealed

---

[16]   The Plan defines the term "Claim" to mean "any claim, as defined in section 101(5) of the Bankruptcy Code, against CFG Peru, whether or not assessed or Allowed." Plan art. I(A)(34). As relevant, Section 101(5) of the Bankruptcy Code defines "Claim" to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5).

[17]   *See* Plan art. II(D) ("The Bankruptcy Court shall determine the Allowed amounts of . . . Chapter 11 Trustee Fee Claims and expense reimbursement after notice and a hearing. CFG Peru, the Peruvian OpCos, or NewCo shall pay the Chapter 11 Trustee Fee Claims and expense reimbursement in the amount Allowed by the Bankruptcy Court.").

order that is not subject to a stay pending appeal. Motion ¶ 3. In short, he asserts that the Plan's definition of Final Order "is an extremely long single-sentence definition," and "within those terms, the plain language of the definition states that a 'Final Order' means 'an order or judgment of the Bankruptcy Court . . . as to which any appeal that has been taken . . . resulted in no stay pending appeal of such order." *Id.* ¶ 26 (alterations in original) (quoting Plan art. I(A)(67)). He contends that since the Appellants have neither sought nor obtained a stay pending appeal, the Fee Order is a Final Order under the Plan, and that the commission and expenses awarded to him under the Fee Order are "Allowed" administrative claims under the Plan, subject to immediate payment. *Id.* ¶ 3. He also contends that to the extent the Appellants might argue that this language is ambiguous, they were the drafters of the language as Plan Proponents, and such ambiguity must be held against them. *Id.* ¶ 26. Mr. Brandt asserts that, in any event, the relevant language is unambiguous, and no stay pending appeal has been requested, and so the Fee Order is a Final Order. *Id.* Accordingly, he concludes that "[his] commission and expenses are Allowed Claims under a Final Order and remain subject to the Court's directive that the Payor Parties make payment." *Id.*

The Plan calls for CFG Peru to establish a $30 million reserve fund (the "Reserve") to pay certain professional fees, including Mr. Brandt's fees once "Allowed." The Plan requires that the Reserve is never permitted to drop below $25 million until Mr. Brandt has been paid in full or the Court orders otherwise, and that the Reserve fund was to be established "for CFG Peru" to make such payment, under the control of the Plan Administrator.[18] Mr. Brandt asserts that, initially, both

---

[18]    Article II(B) of the Plan establishes the "Administrative Claims Reserve" in the initial amount of $30 million. However, it provides that the Reserve "shall not be reduced to less than $25,000,000 unless and until the Chapter 11 Trustee Fee Claims have been paid in full, unless ordered otherwise by the Bankruptcy Court." Plan art. II(B).  Article II(B) further provides that the Plan Administrator may reduce the Reserve to the extent that "Chapter 11 Trustee Fee Claims become Allowed Claims and are paid in full in Cash by CFG Peru or by the Peruvian Opcos on behalf of CFG Peru." *Id.*

of these terms were satisfied, as the Reserve funds were placed in a CFG Peru account and did not drop below $25 million. Motion ¶ 4. He contends that since November 7, 2022, when the Plan became effective, the $25 million Reserve funds were transferred piecemeal into a new CFGI account, and for several weeks dropped more than $900,000 below the required amount before being replenished. *Id.*

Mr. Brandt maintains that the security that the Reserve was intended to provide is no longer the safety net it was meant to be. For those reasons, and because, by its terms, the Fee Order allegedly unambiguously requires immediate payment of the Chapter 11 Trustee Fee Claims, Mr. Brandt says that he is entitled to enforce the Fee Order's payment directive. *Id.* Mr. Brandt also requests, in the alternative, that should the Court be unwilling to enforce the Fee Order's payment directive or should the Appellants request and obtain a stay pending appeal, that the Court either order the Appellants to post a bond in the full amount of the Reserve, or order that the entire Reserve be deposited into the Court's Registry, to ensure that the Reserve is fully protected pending completion of Appellants' appeal. *Id.* ¶¶ 48–54.

The Appellants contend that under the plain language of the Plan, a "Claim"—such as the Chapter 11 Trustee Fee Claim—is payable only if it has become "Allowed," which in turn means fixed by the Court under a "Final Order." Objection ¶ 2. They say that an order—such as the Fee Order—that is subject to a pending appeal that has not been "withdrawn or resolved" is not a "Final Order" as defined in the Plan. *Id.* They assert that since the Fee Order is not a "Final Order", the Chapter 11 Trustee Fee Claim is not yet payable under the Plan. *Id.* They also maintain that even if the Fee Order were a Final Order under the Plan, Mr. Brandt's interests are more than adequately protected during the pendency of the appeals by the existing $25 million Reserve. As such, they maintain that the size of any bond required to stay the Fee Order would be $0. *Id.* ¶ 25.

The parties agree that, as defined under the Plan, a "Final Order" is one that (a) has not been "reversed, stayed, modified, or amended," and (b) satisfies one of two possible states of further review, introduced with parallel "**as to which**" language, as follows:

> An order . . . that has not been reversed, stayed, modified, or amended, . . . and *as to which* the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken; *or as to which* any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice[.]

*Id.* ¶ 13; Reply ¶ 1 (quoting Plan art. I(A)(67)). They also agree that their dispute over the meaning of a "Final Order" turns on the interpretation of the second "as to which" clause in the definition. They interpret the identical wording in conflicting manners based on how they divide the lengthy definition of "Final Order" into separate sub-paragraphs.

<u>The Appellants' Interpretation of "Final Order"</u>

The Appellants say that the second "as to which" clause "in the definition contains two independent clauses, each with its own <u>subjects</u> and *verbs*, separated by the word "or." Objection ¶ 14. They alter the formatting of the sentence to make their point more explicit, reproduced as follows:

> <u>any appeal or any petition for certiorari</u> **has been withdrawn or resolved**
>
> **or**
>
> <u>the new trial, reargument, or rehearing</u> **will have been denied, resulted** in no stay pending appeal of such order, *or has* otherwise **been dismissed with prejudice** . . . .

*Id.* They characterize Mr. Brandt's argument as reading the relevant language "as if the subject noun 'appeal' somehow jumped past its own verb, past the 'or' separating two independent

clauses, and past the subject noun of the second independent clause in order to claim the verb 'resulted' as its own." *Id.* ¶ 15.

The Appellants agree with Mr. Brandt that the definition is unambiguous. *Id.* ¶ 17. They argue in the alternative that, if the Court finds the provision ambiguous, it should not construe the Plan against them as drafters because "the Chapter 11 Plan is the result of nearly six years of effort by the [Appellants], including extensive discussion with the Chapter 11 Trustee on his proposed modifications (which the [Appellants] accepted) to the treatment of his ultimate trustee commission." *Id.* ¶ 19. Moreover, they say that Mr. Brandt withdrew his objection to the proposed language after it was modified at his request, and so the agreed-upon language should not be construed against the other party. *Id.* (citing *Baeshen v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c))*, 520 B.R. 15, 26 (Bankr. S.D.N.Y. 2014)).

<u>Mr. Brandt's Interpretation of "Final Order"</u>

Mr. Brandt asserts that, when "the exact wording of the definition of 'Final Order' is broken up by appropriate paragraph numbering and line breaks—but retaining its exact wording and punctuation"—it plainly reads in his favor. Reply ¶ 3. He does not contend that the second "as to which" clause contains two independent clauses. In explaining his interpretation of "Final Order," he has divided the definitional sentence into subparagraphs to make his point, reproduced as follows:

> "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter
>
> > [(A)] that has not been reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and
> >
> > > [(i)] **as to which** the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for

certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken; or

[(ii)] **as to which any appeal that has been taken** or any petition for certiorari that has been or may be timely Filed

[(a)] has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied,

[(b)] **resulted in no stay pending appeal of such order**, or

[(c)] has otherwise been dismissed with prejudice; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

*Id.*

In this light, he says that it is clear that the term "Final Order" applies to any order "as to which" an appeal was not filed within the time permitted, or "as to which" an appeal has been filed, but any one of three conditions is met: (i) it has been fully resolved by the appellate court, (ii) there is no stay pending appeal, or (iii) it has been dismissed with prejudice. *Id.* ¶ 3. He maintains that under this reading, the definition identifies the "natural conditions" that would render an order final after it has been appealed, challenged by a petition for a writ of certiorari, or been subjected to a motion for a new trial or rehearing. *Id.* ¶ 4.

### <u>Applicable Legal Principles</u>

The Plan is governed by New York law and construed as a contract thereunder. *See* Plan art. I(D) ("Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York . . . shall govern the rights, obligations, construction, and implementation of the Plan . . . ."); *see also Solus Alt. Asset Mgmt., LP v. Delphi Auto. PLC (In re DPH Holdings Corp.)*, 553 B.R. 20, 25–26 (Bankr. S.D.N.Y. 2016) ("Confirmed chapter 11 plans are construed as contracts under

the governing state's law"); *In re Dynegy Inc.*, 486 B.R. 585, 590 (Bankr. S.D.N.Y. 2013) ("When interpreting a confirmed plan, the principles of contract law apply.").

Under New York law, the threshold inquiry for the Court is whether the contractual language under dispute is clear on its face or is ambiguous. *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998) "Ambiguity is determined by looking within the four corners of the document, not to outside sources . . . ."); *see also Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 755 (S.D.N.Y. 2012) ("Whether a contractual provision is ambiguous or not is a 'threshold question of law to be determined by the court.'" (quoting *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006))). Contractual language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk–In Medical Ctrs., Inc. v. Breuer Cap. Corp.*, 818 F.2d 260, 263 (2d Cir. 1987) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F. Supp. 987, 994 (S.D.N.Y.1968)).

If a court determines that contractual language is not ambiguous, then interpretation is "a question of law for the court," which is "to enforce [the contract] as written." *Reyes*, 840 F. Supp. 2d at 755 (first quoting *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002); and then quoting *Vill. of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)). A court should determine unambiguous meaning objectively by looking to the language of the contract. *See Klos v. Lotnnicze*, 133 F.3d 164, 168 (2d Cir. 1997).

If a court determines that a contractual provision is ambiguous, then its meaning becomes a question of fact. *See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) (quoting *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005)). In

that case, a court may consider "extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275-76 (2d Cir. 2006).

### Discussion

Central to the resolution of the Motion is the interpretation of the term "Final Order" as defined in article I(A)(67) of the Plan. Neither party contends that provision is ambiguous and the Court finds that the plain language of the definition is unambiguous. As noted above and as discussed below, the parties construe the definition differently. The fact that the parties offer alternative constructions of the definition does not render it ambiguous. *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (If the meaning of contractual language is otherwise plain, the language "does not become ambiguous merely because the parties urge different interpretations in the litigation . . . [and] no ambiguity exists where the alternative construction would be unreasonable."); *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) ("Parties to a contract may not create an ambiguity merely by urging conflicting interpretations of their agreement. "). Thus, there is no question of fact for the court to examine, nor is there a need for the court to take evidence in resolving the dispute between the parties. *See LaSalle Bank*, 424 F.3d at 205. Accordingly, the Court's role is limited to interpretation of the disputed contractual term in the Plan, and the prompt enforcement thereof. *Reyes*, 840 F. Supp. 2d at 755.

Having considered the arguments advanced by both parties, the Court agrees with Mr. Brandt that his "plain reading" of the definition of "Final Order" tracks the natural conditions that render as "Final" any order that has been appealed, challenged by writ, or seeks a new trial/rehearing. Either: (i) there has been resolution of any challenge to the order, (ii) the order has

not been stayed pending an appeal, or (iii) the appeal/writ has been dismissed with prejudice. Reply

¶ 4. Finality arises if any of these three modifiers applies to an order of this Court that has been

challenged by appeal, writ, or motion for a new trial. This plain reading of the definition of a "Final

Order" also is consistent with federal law. *See, e.g.*, *Najjar v. Ashcroft*, 273 F.3d 1330, 1338 (11th

Cir. 2001) (explaining that when "mandate issues, the appeal will no longer be pending and a final

order on appeal will have been entered. Hence, by its terms, the [stay] will terminate upon the

issuance of this Court's mandate").

Moreover, as Mr. Brandt asserts, and the Court agrees, there are flaws in the Appellants'

construction of the term "Final Order," particularly with respect to their contention that the second

"as to which" clause should be read to contain two independent clauses. The complete wording of

the definition of "Final Order" with the separation of the second "as to which" clause into

"independent clauses" as the Appellants advocate, would read as follows:

> "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other
> court of competent jurisdiction with respect to the relevant subject matter
>
> > [(A)] that has not been reversed, stayed, modified, or amended, as entered on the
> > docket in any Chapter 11 Case or the docket of any court of competent jurisdiction,
> > and
> >
> > > [(1)] **as to which** the time to appeal, or seek certiorari or move for a new trial,
> > > reargument, or rehearing has expired and no appeal or petition for certiorari
> > > or other proceedings for a new trial, reargument, or rehearing has been timely
> > > taken; or
> > >
> > > [(2)(a)] **as to which any appeal that has been taken** or any petition for
> > > certiorari that has been or may be timely Filed has been withdrawn or
> > > resolved by the highest court to which the order or judgment was appealed or
> > > from which certiorari was sought or
> > >
> > > [(b)] the new trial, reargument, or rehearing will have been denied, **resulted
> > > in no stay pending appeal of such order**, or has otherwise been dismissed
> > > with prejudice;

> provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil
> Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to
> such order will not preclude such order from being a Final Order.

Reply ¶ 8 (quoting Plan art. I(A)(67)). As Mr. Brandt correctly notes, the Appellants' separation

of these two "independent clauses" separates an "appeal" from the concept of "dismissed with

prejudice." He is correct that Appellants' interpretation contemplates that an appeal will become

final only if it is "withdrawn or resolved by the highest court," while dismissal with prejudice

becomes an action that establishes finality solely for a new trial/rehearing. *Id.* ¶ 9. But that is

inconsistent with settled law, as the withdrawal of an appeal is a voluntary act that typically arises

in administrative and criminal appeals and is distinct from dismissal with prejudice. *See, e.g.*,

*United States v. Camacho*, 302 F.3d 35, 36 (2d Cir. 2002) (government requested withdrawal of

appeal without prejudice to permit filing of motion for reconsideration before district court, after

previous motion by defense for withdrawal to permit motions for a new trial had been granted);

*Martinez v. United States*, No. 05 CR. 773, 2010 WL 4840085, at *2 (S.D.N.Y. Nov. 12, 2010)

(noting distinction between "when the defendant withdraws his appeal or the Second Circuit

dismisses it"). Under the Appellants' construction of the definition of "Final Order", "dismissed

with prejudice" is a meaningful act only when applied to a new trial or rehearing, and it has no

meaning when applied to an appeal. However, motions for a new trial or rehearing are either

granted or denied. They are not "dismissed with prejudice"—appeals are dismissed with prejudice.

*Compare Grimsley v. Nike Corp.*, No. 21-cv-10745, 2022 WL 1831170 (S.D.N.Y. June 2, 2022)

(denying a motion for rehearing), *and Daane v. Ryder Truck Rental, Inc.*, No. 18-cv-10489, 2023

WL 2330256 (S.D.N.Y. Mar. 2, 2023) (denying a motion for reconsideration and reargument),

*with Wrighten v. Glowski*, 232 F.3d 119 (2d Cir. 2000) (per curiam) (dismissing an appeal with

prejudice for appellant's failure to provide trial transcripts that were necessary for appellate

review), *and Elgard Corp. v. Brennan Constr. Co.*, 248 F. App'x 220 (2d Cir. 2007) (summary order) (dismissing an appeal with prejudice for "multiple failures to observe the rules and orders" of the appellate court). The Court agrees that Mr. Brandt's interpretation of "Final Order" properly provides that an appeal can be "dismissed with prejudice," while a new trial or rehearing is more correctly denied, and that each of these circumstances creates a "Final Order." Reply ¶ 10.

There is another defect in the Appellants' reliance on the two "independent clauses" in interpreting the Final Order. As Mr. Brandt correctly notes, the second "independent clause" contains a reference to "such order," but the only prior reference to any order is the "order" on appeal described in the first "independent clause," now separated by Appellants' interpretation. Reply ¶ 11. To sustain the Appellants' separation of these "independent clauses," the reference to "such order" in the second clause would have to mean a previously mentioned order described within that same clause. However, since there is no order mentioned in that clause, the reference must be to an implied order denying a new trial or rehearing. To sustain that interpretation, this would mean that the entire concept of a stay pending appeal would only ever be relevant under the Plan to "such order" denying a new trial or rehearing, and the lack of a "stay pending appeal" during an actual appeal of any other type of order would be meaningless to finality. Reply ¶ 11. Moreover, the plain meaning of second independent clause yields a senseless result. Under the Appellants' reading, if the Court enters an order denying a new trial, and a party appeals that order without obtaining a stay, that order will be simultaneously final and non-final under Appellants' interpretation. It will be non-final under the first "independent clause" as "any appeal" of an order that has not yet been withdrawn or resolved (without any discussion of whether a stay was obtained or not obtained). It will also be a "Final Order" under the second "independent clause" because it is an order denying a new trial for which no stay pending appeal was obtained.

Mr. Brandt is plainly correct that the "independent" nature of the two "independent clauses" separated by "or" means that each should be capable of being read as a grammatically correct sentence that begins with the definition's opening phrase. Reply ¶ 12. As reproduced below, as interpreted by Mr. Brandt, the Final Order reads, as follows:

> "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter …
>
> > [(B)] **as to which any appeal that has been taken** or any petition for certiorari that has been or may be timely Filed
> >
> > > [(i)] has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied,
> > >
> > > [(ii)] **resulted in no stay pending appeal of such order**, or
> > >
> > > [(iii)] has otherwise been dismissed with prejudice …

Reply ¶ 12 (quoting Plan art. I.A(67)). Under this interpretation, the introductory clause flows cleanly into the second section of the definition. In contrast, under Appellants' interpretation, the second independent clause is not independent, as it reads as follows:

> "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter …
>
> > [(b)] the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice …

Reply ¶ 13. (quoting Plan art. I.A(67)). Appellants' second "independent clause" makes no grammatical sense unless it is part of the preceding "independent clause" in the manner interpreted by Mr. Brandt.

In coming to the conclusion that Mr. Brandt's reading of the definition is the only construction that can give practical effect to the text, the Court notes that the Appellants make a

separate argument that a grammatical analysis can support only their interpretation of the text. Objection ¶¶ 14–15. They say that theirs is the only "grammatically sound reading of the definition." *Id.* ¶15. Further, they assert that Mr. Brandt's interpretation is grammatically unsound because it "reads this language as if the subject noun 'appeal' somehow jumped past its own verb, past the 'or' separating two independent clauses, and past the subject noun of the second independent clause in order to claim the verb 'resulted' as its own." *Id.* In support of this view, the Appellants rightly point out that, in New York, "a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000). The Court acknowledges the Appellants' arguments on this point, but it disagrees with their syntactical analysis of the sentence. In particular, the Court rejects their point that the disputed portion of the definition is bifurcated into two "independent clauses" by the conjunction "or." From a purely grammatical standpoint, that simply cannot be so.

As noted, this dispute principally concerns the text "as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice." In asserting that the conjunction "or" in "or the new trial" is used to introduce an independent clause, the Appellants ignore a fundamental grammar rule. A comma must be placed before a conjunction introducing an independent clause.[19] As the Appellants correctly note, a contractual provision should not be read

---

[19]    *See, e.g.*, WILLIAM STRUNK, JR. & E.B. WHITE, THE ELEMENTS OF STYLE, 5 (4th ed. 2000) ("Place a comma before a conjunction introducing an independent clause."); THE CHICAGO MANUAL OF STYLE § 6.22 (17th ed. 2017) (requiring a comma before a conjunction that introduces an independent clause); BRYAN A. GARNER, THE REDBOOK:

in a manner that would "render[] a comma grammatically incorrect." Objection ¶ 15 (citing *Larsen v. Roanoke Int'l Agency*, No. 86 CIV. 5697, 1988 WL 75018, at *3 (S.D.N.Y. July 13, 1988). The corollary is also true—a court should not read a contractual provision in a manner that renders the *absence* of a comma grammatically incorrect. As the Appellants note, "the Chapter 11 Plan is the result of nearly six years of effort by the Creditor Plan Proponents, including extensive discussion with the Chapter 11 Trustee." *Id.* ¶ 19. The Appellants' representations that this text was heavily negotiated in a process that lasted more than half a decade merely bolsters Mr. Brandt's argument that the conjunction "or" does not introduce a second independent clause within the definition.

Instead, the text should be analyzed as one long relative clause that begins with the relative pronoun "which," fronted by the prepositions "as to." That is, each "as to which" introduces a relative clause that modifies the subjects of the overarching relative clause, "order or judgment."[20] While a relative clause typically contains a subject and a verb, it is still a dependent clause that cannot exist independent of the sentence's main subject.[21] The disputed text following the second "as to which" begins with the subjects of this relative clause: "any appeal . . . or any petition."[22] Next, the disputed text contains a series of three sets of verbs. The first set of verbs is followed by a prepositional phrase, which is in turn followed by a relative clause. This begins with two verbs in the present perfect tense, "has been withdrawn" or "resolved." It is followed by the prepositional phrase "by the highest court," which refers to either of the aforementioned subjects, "appeal" or

---

A MANUAL ON LEGAL STYLE § 1.4 (2d ed. 2006) ("Use a comma to separate two independent clauses joined by a coordinating conjunction (*and*, *but*, *or*, *nor*, *for*, *yet*, *so*)").

[20]    As the disputed paragraph is a definition, the subject of the sentence is the defined term "Final Order," and the predicate begins with the verb "means," encompassing the rest of the sentence.

[21] THE CHICAGO MANUAL OF STYLE § 5.56.

[22]    Each of these subjects is followed by a restrictive relative clause introduced by the relative pronoun "that."  The subject "appeal" is limited by the relative clause "that has been taken," and "petition for certiorari" is likewise limited by "that has been or may be timely Filed."  To the Appellants' credit, these subjects do not explicitly include a reference to a "motion" for new trial, reargument, or rehearing.

"petition." Next, it is followed by another relative clause with a fronted preposition: "to which the order or judgment was appealed or the new trial, reargument, or rehearing will have been denied." That full clause relates to the "highest court" mentioned in the preceding prepositional phrase. Crucially, the "or" that follows "was appealed" merely includes the "new trial, reargument, or rehearing" as an alternate descriptor of the "highest court" within the relative clause. To the Appellants' credit, the inclusion of "new trial, reargument, or rehearing" within this phrase is an odd choice, since these modes of relief are not typically sought by an "appeal" or a "petition," the subjects of the relative clause in which they appear. However, the denial of a "new trial, reargument, or rehearing" could be accomplished by an "order or judgment," the subjects of the overarching relative clause. Thus, it is not illogical that these three forms of relief would be mentioned in the relative clause modifying "highest court."

Applying this reading, the remainder of the sentence becomes remarkably clear. The next verb is "resulted." This applies to the subjects of this disputed relative clause, "appeal" or "petition." Accordingly, this portion of the text can be read to form another sufficient condition for rendering an order final. Thus a Final Order is "an order or judgment . . . as to which any appeal . . . or petition . . . resulted in no stay pending appeal of such order." Likewise, the next set of verbs, "has . . . been dismissed," creates the last condition for rendering an order final. Pursuant to that language, a Final Order is also: "an order or judgment . . . as to which any appeal . . . or petition . . . has otherwise been dismissed with prejudice." The clarity of these two final conditions stands in stark contrast to the practical problems created by the Appellants' reading, as described above.

Based on the foregoing, the Court finds that because these Appellants' appeal of the Fee Order is not yet fully resolved or withdrawn, and because it has not been dismissed, the Appellants'

failure to obtain (or even request) "a stay pending appeal of such order" renders this Court's Fee Order a "Final Order" under the Plan despite the pending appeals.

It is "well-established" that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995). That is the case when an order directs an affirmative act in compliance with its findings, such as the fulfillment of a payment obligation. "A party is in contempt of court when he 'violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order.'" *SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673, 678 (D.D.C. 1995) (quoting *SEC v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. Oct. 1981)).

As noted, the Appellants contest the argument that denial of this motion would require posting a supersedeas bond. Objection ¶ 20. They say first that the Plan controls whether the Fee Order is final, and thus whether it should be paid, and there is nothing in the Plan requiring the Appellants to post a bond pending appeal. *Id.* ¶ 21. Moreover, they assert that "a bond is contemplated only where a stay pending appeal is in fact sought." *Id.* ¶ 21 (citing Fed. R. Bankr. P. 8007(a)(1)(B)). In the alternative, the Appellants contend that even if a supersedes bond were required, "that requirement would be already satisfied by the $25 million reserve put aside at the Chapter 11 Trustee's request to ensure payment of the Chapter 11 Trustee Fee Claims." *Id.* ¶ 22. As now relevant, the Appellants represent that "the $25 million reserve is more than enough to protect Mr. Brandt from any risk of non-payment of the $16,358,871 in Chapter 11 Trustee Fee Claims allowed by the Trustee Compensation Order." *Id.* Finally, the Appellants state that the Fee Order is also subject to Mr. Brandt's appeal, and so the Appellants should not have to "shoulder alone any bond requirement arising from the delay caused by both appeals."

First, the Court does not need to address the Appellants' argument against the proposed requirement to post a supersedeas bond, since no such bond will be imposed. *Id.* ¶ 21. Likewise, the Court need not consider the Appellants' argument that they should not be required to "shoulder alone" the bond requirement. *Id.* ¶ 23.

In effect, the Appellants represent that the Trustee is already adequately protected by the $25 million Reserve. *Id.* ¶ 22. That argument was also presented in the context of a hypothetical supersedeas bond, and the Appellants have not argued that it should impact whether the Court simply directs payment to Mr. Brandt, so the Court need not resolve it, either. However, as now relevant, it is worth noting that the Appellants' representation omits some key facts that undermine the view that Mr. Brandt is adequately protected absent some form of relief requested in the Motion. There is no dispute that the Plan required the Reserve to be established "for CFG Peru" to make a payment, but that the funds have since been "transferred piecemeal into a new CFGI account." Motion ¶ 4. More germanely, the fund was for several weeks permitted to "drop more than $900,000 below the required amount before being replenished." *Id.* ¶ 4; *see id.* ¶ 28. Mr. Brandt also points out in his Reply that the Objection fails to address this deficit. Reply ¶ 18. Moreover, because Mr. Brandt receives the statements of the Reserve's account after the relevant month has ended, rather than in real time, he cannot be certain whether the fund has again been depleted or misused until the following month, further diminishing the protections provided by the reserve fund. *Id.* Finally, by the explicit terms of the Plan, the Reserve is specifically meant to protect Mr. Brandt during the period awaiting issuance of the Final Order settling his fee claim, not for an unspecified and amorphous period following thereafter.

By this Motion, Mr. Brandt requests enforcement of the Fee Order's payment directive. The Fee Order already contains the terms that direct each of the Payor Parties to pay Mr. Brandt's

allowed commission and expenses. Moreover, Appellants are not merely aware of the Plan—instead, they wrote it and pursued its confirmation in order to secure ownership of the Peruvian OpCos. They were the sole creditors to object to Mr. Brandt's fees, and are the sole Appellants appealing the Court's Fee Order, and therefore are certainly aware of this Court's directive in the Fee Order that the Payor Parties they control are obligated to arrange for payment of Mr. Brandt's allowed commission and expenses. The Court finds that given Mr. Brandt's personal circumstances, the fact that he has not been compensated for his services for more than six years and the uncertain duration of the appeal process, that the Payor Parties'/Appellants' refusal to comply with the Fee Order is extremely prejudicial to him, and that he has demonstrated grounds for the Court to issue an order directing the Payor Parties to comply with the Fee Order.

### <u>Conclusion</u>

Based on the foregoing, the Court grants the Motion. The Court directs the Payor Parties each to comply with the Fee Order directive to pay Mr. Brandt his allowed Chapter 11 Trustee Fee Claims as determined in the Fee Order no later than three (3) business days from entry of this Memorandum Decision and Order.

IT IS SO ORDERED.

Dated: New York, New York
       March 8, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

25